

OFFICE OF ADMINISTRATIVE HEARINGS

State of California

SPECIAL EDUCATION DIVISION
2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833-4231
(916) 263-0880 phone / (916) 376-6319 fax
www.oah.dgs.ca.gov

Department of General Services

# SPECIAL EDUCATION DIVISION
# QUARTERLY REPORT

## FIRST QUARTER 2007/2008 FISCAL YEAR
### July 1, 2007 – September 30, 2007

1

---

**Regional Offices**

| **Los Angeles** | **Oakland** | **San Diego** | **Laguna Hills** | **Van Nuys** |
|---|---|---|---|---|
| 320 West Fourth Street | 1515 Clay Street | 1350 Front Street. | 23046 Avenida De La Carlota | 15350 Sherman Way |
| Suite 630 | Suite 206 | Suite 6022 | Suite 750 | Suite 300 |
| Los Angeles, CA 90013 | Oakland, CA 94612 | San Diego, CA 92101 | Laguna Hills, CA 92653 | Van Nuys, CA 91406 |
| (213) 576-7200 | (510) 622-2722 | (619) 525-4475 | (949) 598-5850 | (818) 904-2383 |
| Fax (213) 576-7244 | Fax (510) 622-2743 | Fax (619) 525-4419 | Fax (949) 598-5860 | Fax (818) 904-2360 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 2

## CASE FILINGS

During the first quarter for fiscal year 2007-2008, the Office of Administrative Hearings (OAH) received 732 new case filings. Case filings increased by 22 cases over those filed during first quarter fiscal year 2006-2007. Overall, the 732 cases filed are broken down to 590 student filed cases, 87 district filed cases, three student filed expedited hearings, and two student filed cases involving expedited and non-expedited issues (dual hearings). Additionally, the total case filings includes 41 student filed and nine district filed mediation only requests.

| Fiscal Year 2005-2006[1] | Filings | Fiscal Year 2006-2007 | Filings | Fiscal Year 2007-2008 | Filings |
|---|---|---|---|---|---|
| Jul, 2005 | 600 | Jul, 2006 | 247 | Jul, 2007 | 277 |
| Aug, 2005 | 335 | Aug, 2006 | 251 | Aug, 2007 | 279 |
| Sep, 2005 | 329 | Sep, 2006 | 212 | Sep, 2007 | 176 |
| Oct, 2005 | 274 | Oct, 2006 | 322 | | |
| Nov, 2005 | 289 | Nov, 2006 | 166 | | |
| Dec, 2005 | 492 | Dec, 2006 | 192 | Total Filings | 732 |
| Jan, 2006 | 401 | Jan, 2007 | 194 | | |
| Feb, 2006 | 266 | Feb, 2007 | 188 | | |
| Mar, 2006 | 251 | Mar, 2007 | 220 | | |
| Apr, 2006 | 200 | Apr, 2007 | 206 | | |
| May, 2006 | 284 | May, 2007 | 258 | | |
| Jun, 2006 | 291 | Jun, 2007 | 292 | | |
| Total Filings | 4012 | Total Filings | 2748 | | |



SE Matters Opened by Matter Type

3, 41, 87, 9, 2, 590

- District DPH with Mediation
- District Mediation Only
- Student DPH with Mediation
- Student Dual
- Student Expedited
- Student Mediation Only

---

[1] This was the initial year OAH held the contract with the California Department of Education to conduct special education due process hearings. The case filings for fiscal year 2005-2006 are artificially inflated due to the number of cases in "off-calendar" status which were transferred to OAH from the Special Education Hearing Office, the previous contract holder, for resolution.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 3

SE Matters filed – Month to Month Comparison



■■ 2006 - Filings
■■ 2007 - Filings
■■ 2008 - Filings

The requests for due process hearing involved Students with legal representation in 581 cases and Districts with legal representation in 438 cases. The majority of cases originated from students in the primary grades (262 cases) followed by those in high school (193 cases), preschool (77 cases), and junior high school (61 cases). Data on the grade level of the student was not specified in 193 of the case filings.



Age Group

□ PreSchool (<5)
▣ Primary (5-12)
□ Junior High School (13-14)
□ High School (15-18)
■ Unidentified

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 4



   Most cases filed this quarter raised a variety of issues and requested remedies.  Every case raised an issue related to designated instruction and services (732 cases), followed by placement issues (628 cases), assessment issues (421 cases), goals and objectives issues (222 cases), extended school year services (150 cases), procedural issues (105 cases), mental health services (91 cases), and discipline issues (20 cases).   The requested remedies included compensatory education (306 cases), reimbursement (254 cases), extended school year services (150 cases), eligibility (134 cases), and private services (21 cases).



Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 5



All areas of disability were represented, except the eligibility category of deaf-blindness, in the requests for hearing received this quarter. The majority of cases involved students identified with autistic-like behaviors (263 cases) followed by students identified as speech and language impaired (96 cases), specific learning disabled (95 cases), other health impaired (87 cases), emotionally disturbed (54 cases), mental retardation (48 cases), orthopedically impaired (24 cases), hearing impaired (17 cases), visually impaired (12 cases), multiple disabilities (12 cases), and traumatic brain injury (7 cases). The student's area of disability was not identified in 8 cases.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 6



## CLOSED CASES

During this Quarter, 724 cases were closed.  Currently, 818 matters remain pending.
Overall, 97 percent of cases resolved in some manner without need for a due process hearing.
The majority of cases resolved outside the mediation or resolution session process (281
cases), followed by those resolved during mediation (216 cases), and those resolved during
the resolution session (35 cases).  A number of cases (109 cases) were withdrawn by the
filing party without explanation.  Additionally, 11 cases were dismissed via a motion to
dismiss, 17 cases were dismissed after failing to amend following a notice of insufficiency,
29 cases were dismissed due to inactivity, and 6 cases were dismissed for other reasons.
Lastly, 20 cases were closed following a full hearing and decision on the merits.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 7



**Mediations**

Overall, this quarter, 732 requests for mediation were received. Of those requests, 682 requests for mediation were also requests for due process hearing and 50 were requests for mediation-only. Currently there are 818 matters pending mediation. During this Quarter, OAH facilitated 351 mediation sessions. Of the 351 mediations held, 96 resulted in impasse. Mediation was successful in 73 percent of the cases.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 8



**Due Process Hearings**

During this Quarter, final decisions were issued in 20 cases. Of the 20 decisions issued, 2 decisions were issued within the 45 day timeline and 17 were issued within the 45 day timeline plus extension. Overall, 95 percent of decisions were issued within the requisite timeline. Student prevailed in 1 hearing and Districts prevailed in 12 hearings. In 7 cases, the decision was split between Student and District with students prevailing on 18 issues and districts prevailing on 39 issues. Copies of all decisions have been provided to CDE and were posted on the OAH website.



Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 9



Of the decisions issued, 3 cases involved preschool students, 11 cases involved elementary school students, 4 cases involved middle school students, and 2 cases involved high school students.



On average the due process hearings lasted 3.9 days with students using 51.6 percent of the hearing for presentation of their case and districts using 48.4 percent of hearing time for case presentation. During case presentation, Students called an average of 5.8 witnesses per case and districts called and average of 6.2 witnesses per case.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 10



Multiple areas of disability were represented at hearing. The greatest number of cases involved students identified with autistic-like behaviors (8 cases) followed by students identified with a specific learning disability (7 cases).



**Expedited Hearing Requests**

For this quarter, OAH received five requests for expedited hearings. All five cases were resolved without a hearing.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 11

## Motions

Prehearing motions and Notices of Insufficiency (NOI) comprise a substantial amount of the work completed by administrative law judges. For this quarter, 323 prehearing motions and 127 NOIs were considered and ruled upon by OAH.

District's filed 110 NOIs which were granted in 20 cases, granted in part in 22 cases and denied in 68 cases. Students filed 4 NOIs which were denied in each case.



The prehearing motions encompassed a variety of issues with the largest number involving motions to continue (81 motions), followed by stay put (57 motions), case dismissal (38 motions), amend complaint (34 motions), miscellaneous (31 motions), consolidate cases (20 motions), extend time (19 motions), dismiss issues (12 motions), dismiss parties (11 motions), add party (9 motions), reconsideration (8 motions), compel (2 motions), and resolution session disputes (1 motion).

Of the 323 prehearing motions filed this quarter, 160 were filed by districts and 163 were filed by students. Of those motions filed by districts, five were granted, two were granted in part and 153 were denied. Of those motions filed by students, 73 were granted, 4 were granted in part and 86 were denied.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 12





Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 13

## NON-ENGLISH SPEAKING STUDENTS AND INTERPRETERS

During this quarter, 66 non-English speaking students were identified through the due process hearing request forms. Additionally, the assistance of an interpreter was requested in 110 matters. Of those requests, 82 were from the greater Los Angeles area, 14 were from the San Diego/South Bay area and 14 were from the Northern California area. The largest number of requests was for Spanish interpretation with 96 requests, followed by 3 each for Korean and Farsi, 2 each for Hebrew and Vietnamese, and 1 each for Russian and Chinese.

## STUDENTS OF COLOR

CDE has requested OAH collect data on the number of "students of color accessing the system." To facilitate this request, effective January 1, 2007, OAH amended its due process hearing request form to include this request. However, not all hearing requests are made using the OAH form. This quarter, 29 students self reported as being a "student of color" and 15 students self reported as not being a "student of color." The remaining 688 students declined to state if they are a "student of color."

## TRANSCRIPT REQUESTS AND APPEALS

This quarter, OAH received 43 requests for transcripts. Data on the number of appeals and appellate outcomes is collected on an ongoing basis. It includes all those cases that OAH was notified were appealed since July 2005. Based on correspondence with the parties and filings that have been provided to OAH, 78 cases have been appealed since July 2005. Currently, 48 OAH decisions are on appeal. Since July 2005, three decisions were remanded, two decisions were reversed, and three decisions have been upheld. Due to the difficulty in identifying which cases are appealed and the appellate outcomes, parties are invited to notify OAH of any cases not included below or outcomes that are not identified below.

| District Name | Case Number | Appeal Outcome |
|---|---|---|
| Alhambra USD | 2006020312 | Dismissed |
| Alvord USD | 2005070955 | Dismissed |
| Bonita USD | 2006020528 | Pending |
| Byron Union SD | 2006030866 | Pending |
| CA School for the Deaf | 2005090646 | Pending |
| Capistrano USD | 2005090873 | Withdrawn |
| Capistrano USD | 2005070135 | Decision Remanded[2] |
| Capistrano USD | 2005070363 | Pending |

---

[2] Reversed in part OAH's decision and remanded to OAH to determine the remedy in the form of appropriate reimbursement for educational services.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 14

| | | |
|---|---|---|
| Capistrano USD | 2006100267 | Pending |
| Chula Vista USD | 2005060656, 2006010691 | Pending |
| Compton USD | 2005110837 | Pending |
| Compton USD | 2005070151 | Dismissed |
| Corona Norco USD | 2005070226 | Dismissed |
| Covina-Valley USD | 2005060599 | Dismissed |
| Downey USD | 2005070522 | Withdrawn |
| Downey USD | 2005070481 | Withdrawn |
| Dublin USD | 2006060896 | Pending |
| Escondido UHSD | 2006070791, 2006051042 | Pending |
| Fremont USD | 2006050433 | Pending |
| Garden Grove USD | 2005090691 | Withdrawn |
| Gateway USD | 2005080397 | Withdrawn |
| High Tech Middle Media | 2006090461 | Pending |
| Huntington Beach USD | 2005080264 | Pending |
| Kern HSD | 2005070832 | Dismissed |
| Long Beach USD | 2005070425 | Pending |
| Long Beach USD | 2005070442 | Pending |
| Long Beach USD | 2005070128 | Pending |
| Long Beach USD | 2005080935 | Pending |
| Los Altos SD | 2005070166 | Dismissed |
| Los Angeles USD | 2006050447 | Pending |
| Los Angeles USD | 2006010083 | Decision Remanded |
| Los Angeles USD | 2006010962 | Pending |
| Los Angeles USD | 2005090882 | Decision Reversed in Part[3] |
| Los Angeles USD | 2005110113 | Withdrawn |
| Los Angeles USD | 2005070253 | Dismissed |
| Monrovia USD | 2006030450 | Pending |
| Newport-Mesa USD | 2005100636 | Withdrawn |
| Oakley Union ESD | 2006100061 | Pending |
| Orange USD | 2005070130 | Pending |
| Pajaro Valley USD | 2005120162 | Pending |
| Pajaro Valley USD | 2005120162 | Pending |
| Palm Springs USD | 2006010564 | Dismissed |

[3] Reversed OAH's decision only as to prospective relief and awarded Student approximately three weeks'
reimbursement for behavior support services from a specific provider.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 15

| Placentia-Yorba Linda USD | 2005071105 | Upheld OAH's Decision |
|---|---|---|
| Placentia-Yorba Linda USD | 2006010306 | Pending |
| Pomona USD | 2006010049 | Pending |
| Pomona USD | 2005070523 | Reversed OAH's Decision |
| Poway Unified | 2005080077 | Pending |
| Poway USD | 2005120568, 2005120386 2005090003, 2005090004 | Pending |
| Reed Union SD | 2006020660 | Withdrawn |
| Riverside USD | 2005110775 | Pending |
| Rocklin USD | 2006110278 | Pending |
| Saddleback Valley USD | 2005070193 | Pending |
| San Diego USD | 2006020294 | Pending |
| San Diego USD | 2005100882 | Pending |
| San Luis Coastal USD | 2005070205 | Pending |
| San Luis Coastal USD | 2005080655 | Pending |
| San Luis Coastal USD | 2007010836 | Pending |
| San Mateo UHSD | 2006070550 | Pending |
| San Ramon Valley USD | 2005110307 | Dismissed |
| San Ramon Valley USD | 2005071028 | Pending |
| San Ramon Valley USD | 2006050839 | Withdrawn |
| San Ramon Valley USD | 2005071032 | Pending |
| San Ramon Valley USD | 2005071031 | Upheld OAH's Decision |
| San Ramon Valley USD | 2005070815 | Withdrawn |
| Santa Ana USD | 2005090037 | Upheld OAH's Decision |
| Santa Maria USD | 2006070104 | Pending |
| Sequoia Union HSD | 2006120087 | Pending |
| Simi Valley USD | 2006090233 | Pending |
| Snowline Joint USD | 2005100716 | Pending |
| Sylvan Union SD | 2006030058 | Pending |
| Temecula Valley | 2005070197 | Dismissed |
| Torrance USD | 2005110591 | Pending |
| Torrance USD | 2006030068 | Pending |
| Torrance USD | 2007010830 | Pending |
| Tustin USD | 2005090544 | Pending |
| Upland USD | 2005110360 | Pending |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 16

| Yucaipa-Calimesa USD | 2005070042 | Decision Remanded[4] |
| Yucaipa-Calimesa USD | 2005070683 | Dismissed |

## MEDIATION AND HEARING EVALUATIONS

Under its contract with CDE, OAH is required to send evaluations to all parties attending mediations and hearings. The evaluations contain a 1 through 5 rating scale with 1 being Poor/Very dissatisfied and 5 being Excellent/extremely satisfied. The evaluations ask the parties to evaluate the mediation, the administrative law judge and OAH in general.

This quarter, 299 mediation evaluations were returned to OAH. Evaluations were completed by Parents (47 cases), Legal Counsel for Parents (26 cases), Parent Advocates (8 cases), School District representatives (89 cases), and School District attorneys (25 cases). In 104 cases, the evaluator did not indicate their role in the mediation.

### AVERAGE MEDIATION RATING 4.28

|  | Quarterly Average |
|---|---|
| Started mediation on time | 4.25 |
| Explained Satisfactorily the mediation process | 4.33 |
| Was well prepared for mediation | 4.54 |
| Directed the mediation process effectively | 4.09 |
| Facilitated discussions between the parties | 4.04 |
| Remained neutral through the mediation | 4.20 |
| Maintained the confidentiality of the parties | 4.43 |
| Acted in a courteous and respectful manner | 4.42 |
| Exhibited knowledge of special education law | 4.23 |

This quarter, 48 hearing evaluations were returned to OAH. Evaluations were completed by Parents (3 cases), Legal Counsel for Parents (6 cases), School District representatives (18 cases), and School District attorneys (10 cases). In 11 cases, the evaluator did not indicate their role in the hearing.

### AVERAGE HEARING RATING  4.05

|  | Quarterly Average |
|---|---|
| Punctual in starting the hearing | 4.20 |
| Well-prepared for the hearing | 4.07 |
| Courteous to the participants | 4.04 |

---

[4] Stayed proceeding and remanded to OAH for ALJ to explain whether it considered District's evidence in determining that District denied Student a FAPE and did not conduct an assessment.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 17

| | |
|---|---|
| Attentive to testimony and arguments | 4.24 |
| Careful in making the record | 4.11 |
| Allowed the parties to explain their case | 4.20 |
| Efficient in the use of hearing time | 3.87 |
| Avoided apparent bias based upon gender, race, or ethnicity | 4.47 |
| Treated all participants professionally and fairly | 4.15 |
| Avoided over-familiarity with the school district | 4.22 |
| Avoided over-familiarity with the parents | 4.43 |
| Did not pre-judge the case | 3.93 |
| Did not allow personal beliefs to influence the outcome | 3.51 |
| Did not permit ex parte contacts | 4.32 |
| Exerted control during the hearing | 4.15 |
| Exhibited knowledge of special education law | 3.74 |
| Applied rules of procedure appropriately | 3.85 |
| Applied rules of evidence appropriately | 3.78 |
| Decided the case based upon the evidence | 3.86 |
| Prepared a Decisions that resolved each issue presented | 3.98 |
| Prepared a decision that was clear an concise | 3.87 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008  .
October 31, 2007
Page 18

## SUMMARY OF CASES FILED BY DISTRICT

**Name First**
ABC U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

Alameda City U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

Albany U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

Anaheim City S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 4 |
| TOTAL MATTER TYPES BY DISTRICT | 4 |

ANAHEIM U.H.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

Antelope Valley Union H.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 3 |
| TOTAL MATTER TYPES BY DISTRICT | 3 |

ANTIOCH USD

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

APPLE VALLEY U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

ARCADIA U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

BALDWIN PARK U.S.D.

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

BASSETT USD

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

Beaumont U.S.D.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 19

| Description | Matters |
|---|---|
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**Bellflower U.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**BERKELEY U.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 4 |
| TOTAL MATTER TYPES BY DISTRICT | 4 |

**BEVERLY HILLS U.S.D.**

| Description | Matters |
|---|---|
| Student Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**BONITA U.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**BONSALL UNION S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Brea-Olinda U.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Buckeye Union E.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**BUENA PARK S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**Cabrillo U.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**CALAVERAS U.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**CAMPBELL UNION E.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| Student Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |



Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 20

| Campbell Union HSD | | |
|---|---|---|
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

| Capistrano U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| District DPH with Mediation | | 6 |
| Student DPH with Mediation | | 8 |
| | TOTAL MATTER TYPES BY DISTRICT | 14 |

| Carlsbad U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

| CASTAIC UNION S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

| Castro Valley U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |

| CENTRALIA S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

| Chaffey Joint Union HSD | | |
|---|---|---|
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

| CHARTER OAK U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

| CHULA VISTA E.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| Student Mediation Only | | 4 |
| | TOTAL MATTER TYPES BY DISTRICT | 6 |

| COLTON JOINT U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

| COMPTON U.S.D. | | |
|---|---|---|
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 21

| CORONA-NORCO USD | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 5 |
| TOTAL MATTER TYPES BY DISTRICT | 5 |

| Covina-Valley U.S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| Culver City U.S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 7 |
| TOTAL MATTER TYPES BY DISTRICT | 7 |

| Cupertino Union S.D. | |
|---|---|
| **Description** | **Matters** |
| District DPH with Mediation | 2 |
| Student DPH with Mediation | 3 |
| Student Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 6 |

| CYPRESS S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| DESERT SANDS U.S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| DIXIE E.S.D. | |
|---|---|
| **Description** | **Matters** |
| District DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| DUARTE UNIFIED S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| Dublin U.S.D. | |
|---|---|
| **Description** | **Matters** |
| District DPH with Mediation | 1 |
| District Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

| EAST SIDE UNION H.S.D. | |
|---|---|
| **Description** | **Matters** |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

| East Whittier City E.S.D. | |
|---|---|
| **Description** | **Matters** |
| District DPH with Mediation | 2 |
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 4 |

EL DORADO U.H.S.D.

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 22

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **EL RANCHO UNIFIED S.D.** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| **ELK GROVE U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| Encinitas Union S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| **ESCONDIDO U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| ETIWANDA S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Evergreen E.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| EXETER U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Fairfield-Suisun USD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| FALLBROOK U.H.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| FALLBROOK UNION E.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| FOLSOM CORDOVA USD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 23

**Franklin-McKinley E.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Fremont U.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 6 |
| TOTAL MATTER TYPES BY DISTRICT | 6 |

**FULLERTON JOINT UNION H.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**GALT JOINT U.H.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Garden Grove U.S.D.**

| Description | Matters |
| --- | --- |
| District DPH with Mediation | 1 |
| District Mediation Only | 3 |
| Student DPH with Mediation | 9 |
| TOTAL MATTER TYPES BY DISTRICT | 13 |

**GARVEY S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**Glendale U.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 2 |
| Student Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 3 |

**GRANT JT. UNION H.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**GRAVENSTEIN UNION S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Grossmont Union H.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**Hayward U.S.D.**

| Description | Matters |
| --- | --- |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**HEALDSBURG U.S.D.**

| Description | Matters |
| --- | --- |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 24

| | | |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Hemet U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| HUENEME U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| HUNTINGTON BEACH U.H.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| INGLEWOOD U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| Irvine U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 4 |
| Student DPH with Mediation | | 6 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 11 |
| JEFFERSON E.S.D. | | |
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Laguna Beach U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| LAKE ELSINORE U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| LAKEPORT U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Lancaster E.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| LARKSPUR E.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 25

| | | |
|---|---|---|
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **LAS VIRGENES U.S.D.** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| **LINCOLN U.S.D.** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| **LITTLE LAKE CITY S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **Livermore Valley Joint USD** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 1 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| **Lodi U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **Long Beach U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 4 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| **Los Angeles U.S.D.** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 6 |
| Student DPH with Mediation | | 250 |
| Student Mediation Only | | 13 |
| | TOTAL MATTER TYPES BY DISTRICT | 269 |
| **Los Gatos-Saratoga Joint Union HSD** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **Lowell Joint S.D.** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **MANTECA U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| **MILPITAS USD** | | |
| **Description** | | **Matters** |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 26

| | | |
|---|---|---|
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

Mojave U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

MONROVIA U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

MONTECITO U.E.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

MORELAND S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

MORGAN HILL USD

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

MORONGO U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

MT. DIABLO USD

| Description | | Matters |
|---|---|---|
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 9 |
| | TOTAL MATTER TYPES BY DISTRICT | 10 |

MURRIETA VALLEY U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

Napa Valley U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

NEW HAVEN U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

NEWMAN-CROWS LANDING USD

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |




Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 27

**Newport-Mesa U.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 9 |
| District Mediation Only | 2 |
| Student DPH with Mediation | 4 |
| Student Mediation Only | 2 |
| TOTAL MATTER TYPES BY DISTRICT | 17 |

**NORTH MONTEREY CO. U.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Norwalk-La Mirada U.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 3 |
| TOTAL MATTER TYPES BY DISTRICT | 3 |

**NOVATO U.S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**OAK PARK USD**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 2 |

**Oakland USD**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 4 |
| TOTAL MATTER TYPES BY DISTRICT | 4 |

**Ocean View E.S.D.**

| Description | Matters |
|---|---|
| District DPH with Mediation | 1 |
| Student DPH with Mediation | 3 |
| Student Mediation Only | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 5 |

**ONTARIO-MONTCLAIR S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 1 |
| TOTAL MATTER TYPES BY DISTRICT | 1 |

**Orange U.S.D.**

| Description | Matters |
|---|---|
| District Mediation Only | 1 |
| Student DPH with Mediation | 5 |
| TOTAL MATTER TYPES BY DISTRICT | 6 |

**Orinda Union S.D.**

| Description | Matters |
|---|---|
| Student DPH with Mediation | 3 |
| TOTAL MATTER TYPES BY DISTRICT | 3 |

**OXNARD UNION H.S.D.**

| Description | Matters |
|---|---|

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 28

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| Pacifica S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| PALM SPRINGS U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| PALO ALTO U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| Palos Verdes Peninsula USD | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| PASADENA U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| PASO ROBLES JOINT UNIFED S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| PLACENTIA-YORBA LINDA U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| Student Mediation Only | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |
| PLEASANT VALLEY ESD(PENN VLY) | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| PLEASANTON U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| POMONA U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| PORTERVILLE U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| POWAY U.S.D. | | |



Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 29

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 3 |
| Student Expedited | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |

RAVENSWOOD CITY S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

REDONDO BEACH U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

Rialto U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

RIO LINDA UNION S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

Riverside U.S.D.

| Description | | Matters |
|---|---|---|
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |

ROSEDALE UNION E.S.D.

| Description | | Matters |
|---|---|---|
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

ROSS S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

Sacramento City U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |

SADDLEBACK VALLEY U.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 5 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |

SALINAS UNION H.S.D.

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |

SAN BERNARDINO CITY USD

| Description | | Matters |
|---|---|---|
| Student DPH with Mediation | | 3 |
| Student Expedited | | 1 |



Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 30

| | | |
|---|---|---|
| Student Mediation Only | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 6 |
| San Diego U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 3 |
| Student DPH with Mediation | | 18 |
| | TOTAL MATTER TYPES BY DISTRICT | 21 |
| SAN DIEGUITO UNION H.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| SAN FRANCISCO U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 4 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |
| SAN GABRIEL U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| SAN JACINTO U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| SAN JOSE USD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| San Juan U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 5 |
| | TOTAL MATTER TYPES BY DISTRICT | 5 |
| SAN LORENZO U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| SAN LUIS COASTAL U.S.D. | | |
| **Description** | | **Matters** |
| District Mediation Only | | 1 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| SAN MATEO UNION HSD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| SAN MATEO-FOSTER CITY S.D. | | |
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 31

| | | |
|---|---|---|
| San Miguel Joint Union E.S.D. | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| SAN RAMON VALLEY U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| Student Mediation Only | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| Santa Ana U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 3 |
| District Mediation Only | | 1 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 6 |
| SANTA BARBARA H.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| SANTA CLARA USD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| Santa Monica-Malibu U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 9 |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 10 |
| SHANDON JT. U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| SIERRA U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| SOLANA BEACH U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| SONOMA VALLEY U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| SOUTHERN KERN U.S.D. | | |
| **Description** | | **Matters** |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 32

| | | |
|---|---|---|
| District DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Stockton U.S.D. | | |
| **Description** | | **Matters** |
| District Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Sylvan Union E.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Temecula Valley U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 3 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| Torrance U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 10 |
| | TOTAL MATTER TYPES BY DISTRICT | 10 |
| TRACY JT. U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| TUSTIN U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 3 |
| UNION ESD | | |
| **Description** | | **Matters** |
| Student Mediation Only | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| VACAVILLE U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| VALLEJO CITY U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| Valley Center-Pauma U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| VENTURA U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| VICTOR VALLEY UNION H.S.D. | | |
| **Description** | | **Matters** |

Quarterly Report – 1st Quarter Fiscal Year 2007-2008
October 31, 2007
Page 33

| | | |
|---|---|---|
| Student DPH with Mediation | | 1 |
| Student Dual | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| **VISALIA U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **VISTA U.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **WALNUT CREEK S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **WASHINGTON UNIFIED SD (W SAC)** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| West Contra Costa U.S.D. | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| WEST COVINA USD | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **WESTMINSTER S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |
| **WHITTIER UNION H.S.D.** | | |
| **Description** | | **Matters** |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 1 |
| **WILLIAM S. HART UHSD** | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 2 |
| Student DPH with Mediation | | 2 |
| | TOTAL MATTER TYPES BY DISTRICT | 4 |
| YUCAIPA-CALIMESA JT. U.S.D. | | |
| **Description** | | **Matters** |
| District DPH with Mediation | | 1 |
| Student DPH with Mediation | | 1 |
| | TOTAL MATTER TYPES BY DISTRICT | 2 |

**EXHIBIT 11**

.February 2, 2007

Honorable Jack O'Connell
Superintendent of Public Instruction
California Department of Education
1430 N Street, Suite 5602
Sacramento, CA 95814

Dear Superintendent O'Connell:

The purpose of this letter is to inform you of the results of the recent verification visit to California conducted by the Office of Special Education Programs (OSEP). OSEP is conducting verification visits to a number of States as part of our Continuous Improvement and Focused Monitoring System (CIFMS) for ensuring compliance with, and improving performance under Parts B and C of the Individuals with Disabilities Education Act (IDEA). OSEP conducted a visit to California during the week of October 2, 2006.

The purpose of our verification reviews of States is to determine how they use their general supervision, State-reported data collection, and statewide assessment systems to assess and improve State performance and to protect child and family rights. The purposes of the verification visits are to: (1) understand how the systems work at the State level; (2) determine how the State collects and uses data to make monitoring decisions; and (3) determine the extent to which the State's systems are designed to identify and correct noncompliance. In addition, OSEP piloted some approaches to monitoring for fiscal accountability during this visit. Because we are still developing these procedures, this letter does not address information reviewed or obtained as a part of this pilot.

As part of the verification visit to the California Department of Education (CDE), OSEP staff met with Mary Hudler, State Director of Special Education, and members of CDE's staff who are responsible for: (1) the oversight of general supervision activities (including monitoring, mediation, complaint resolution, and impartial due process hearings); (2) the collection and analysis of State-reported data; and (3) ensuring participation in, and the reporting of student performance on statewide assessments. Prior to the visit, OSEP staff reviewed a number of documents[1], including the State's Part B Grant Award Application for Federal Fiscal Year (FFY) 2006; the Annual Performance Reports (APR) for FFY 2003 and FFY 2004; California's December 2, 2005 State Performance Plan (SPP); desk audits submitted by CDE; submissions of data under section 618 of the IDEA; and the CDE Special Education Division's (SED) website. OSEP also conducted a conference call on September 28, 2006, with a variety of the State's special education stakeholders to hear their perspectives on the strengths and weaknesses of the State's systems for general supervision, data collection, and statewide assessment.

---

[1] Documents reviewed as part of the verification process were not reviewed for legal sufficiency but rather to inform OSEP's understanding of your State's systems.

*1*

Page 2 – Honorable Jack O'Connell

The information that Ms. Hudler and other CDE staff provided during the OSEP visit, together with all of the information that OSEP staff reviewed in preparation for the visit, greatly enhanced our understanding of CDE's systems for general supervision, data collection and reporting, and statewide assessment.

## *General Supervision*

In looking at the State's general supervision system, OSEP collected information regarding a number of elements, including whether the State: (1) has identified any barriers (e.g., limitations on authority, insufficient staff or other resources, etc.) that impede the State's ability to identify and correct noncompliance; (2) has systemic, data-based, and reasonable approaches to identifying and correcting noncompliance; (3) utilizes guidance, technical assistance, follow-up, and—if necessary—sanctions, to ensure timely correction of noncompliance; (4) has dispute resolution systems that ensure the timely resolution of complaints and due process hearings; and (5) has mechanisms in place to compile and integrate data across systems (e.g., section 618 State-reported data, due process hearings, complaints, mediation, large-scale assessments, previous monitoring results, etc.) to identify systemic issues and problems.

Based on the information provided to OSEP during the verification visit, it appears that CDE's general supervision system is reasonably designed to ensure the identification and timely correction of noncompliance. However, OSEP cannot, without also collecting data at the local level, determine whether the system is fully effective in identifying and correcting noncompliance.

## Monitoring

California has implemented a comprehensive statewide system of monitoring which encompasses annual collection and analysis of district information, monitoring reviews, evaluation and planning processes, training and technical assistance, and dispute resolution systems. OSEP reviewed the State's organization and functions chart (units in the special education division), which illustrates how the administrative structure integrates the State's monitoring system with policy and planning functions, California Special Education Management Information System (CASEMIS) data collection, technical assistance, and support services.

The State reported that there are approximately 1,050 school districts, 122 special education local plan areas (SELPAs), 58 county offices, approximately 671 charter schools, and four State Operated Programs (SOPs). OSEP learned that the SED has divided the State among three focused monitoring and technical assistance (FMTA) teams, each of which is responsible for a specific region of the State. Consultants on these teams are assigned to specified SELPAs within their team's region, and they are responsible for coordinating all monitoring and technical assistance activities in those SELPAs.

The SED monitors local educational agencies (LEAs) using a focused monitoring approach. CDE's special education goals and key performance indicators (KPIs) play a central role in selecting districts for review and shaping the content of the review. The overall goal is to achieve appropriate educational outcomes for children with disabilities. The following discussion highlights the main components of the State's monitoring system.

*Annual collection and analysis of district information*
During the verification visit, CDE explained that it utilizes a multi-method review process to collect and analyze data on each school district every year. Each SELPA must submit a local plan consisting of an annual budget and service plan. Second, the CASEMIS data system generates indications of school district performance on State KPIs and Federal and State timeline compliance (e.g., annual review of individualized education programs (IEPs) and triennial reevaluations). Third, the State reported that it collects and analyzes ongoing school district complaint and due process histories to help ensure that State and Federal laws and regulations are implemented. Both CDE and districts utilize all the information gathered to identify concerns in order to focus the special education self-review (SESR) and verification review (VR) processes.

*Special education self-review*
Each year, approximately one-quarter of California's school districts complete an SESR and report their findings to the CDE via customized software developed by CDE. Both the SESR and VRs use the CDE software to customize the reviews, which track the applicable Federal and State regulatory requirements. The SESR is a collaborative process between the SELPA and the district.

OSEP learned that there are three major stages to the SESR process. During stage one, the district team (which includes a parent representative) develops its *monitoring plan*, that includes a complete analysis of a variety of data sources (parent input, compliance history, complaint status, due process status, adequate yearly progress (AYP), and overdue annual IEP review and triennial reevaluation status), and the district's KPI data measures that are summarized by the district to generate data reports. Once the data are collected and analyzed, the district submits its monitoring plan to CDE for approval. Based upon the district's data, the SESR software identifies the specific Part B and State requirements that the district must address as part of its SESR. CDE informed OSEP that very small districts (where fewer than 20 students receive special education and related services) are not required to submit a monitoring plan. These districts must complete the educational benefit review process (see below) for up to five special education students and report the findings to CDE.

After CDE approves the monitoring plan, the district, with support from its SELPA, begins its monitoring review activities – stage two. During stage two, the district must select and review a random sample of student records; the minimum number of files that a district must review depends on the number of special education students enrolled in that district. The *student record review* process identifies both student-specific and systemic (system-wide pattern) noncompliance. CDE's monitoring procedures provide criteria for distinguishing between student-specific and systemic issues. While the corrective actions that a district must take are different for the two types of findings, districts must correct all noncompliance within one year of identification. In addition, the record reviews are used as part of the educational benefit and IEP implementation review processes.

During the *educational benefit* review process, student assessment and subsequent IEPs are chronologically screened according to the student's present levels of performance, goals, placements, services, and progress. These elements are analyzed to determine whether the student's program is reasonably calculated to result in educational benefit.

CDE reported that the failure to implement the IEP is the most frequent finding of noncompliance identified through the SED complaint process. To address this concern, CDE conducts an IEP

Page 4 – Honorable Jack ●onnell

implementation component to enable the district to verify if students receive all services contained in the IEP. In reviewing IEP implementation, CDE reported that it reviews up to ten student files, randomly selects five IEPs, and must review up to five files of students who are emotionally disturbed or receiving mental health services. A combination of observations and interviews with parents, service providers, and students provide evidence to determine if students' IEPs are implemented as written.

CDE explained that the *policy and procedure review* is another component of the monitoring review activities. Policies and procedures are reviewed for procedural (process issues such as timelines) compliance and to follow up on issues and concerns identified in the Monitoring Plan. The format for reviewing district policies and procedures is generated by the customized software. OSEP learned that all findings of noncompliance in this review are considered systemic.

Finally, each district is required to complete the *Local Plan Governance Review* to determine if the SELPA implemented the required components of the special education local plan, including annual budget, service plan, and local interagency agreements with the county mental health agency.

Any findings of noncompliance, together with an explanation of the reason for the noncompliance, are entered into the database software system, which generates a list of corrective actions. Stage three consists of an analysis of the results of the monitoring activities, development of corrective action plans, tracking of correction, and follow-up reviews. As noted above, CDE reported that it distinguishes between two types of findings of noncompliance: student level and systemic. OSEP learned that areas of student level noncompliance are identified by a review of student records and through the IEP implementation process, and must be corrected within 45 days. Noncompliance regarding educational benefit is also addressed at the student level, and an IEP Team meeting is held promptly to review the educational benefit finding for the student and to consider the need for compensatory services. Systemic findings require a four-step process, and the first three must be completed within 90 days. The district must provide CDE with: (1) evidence that its policies and procedures are compliant with Federal law; (2) evidence that it has notified staff of policies and procedures; (3) evidence that it has conducted in-service training to staff and administrators; and (4) a list of all students who participated in the process after six months. In addition, a *six-month or one-year follow up review* is conducted to ensure that based on a random sample of student records, no new instances of noncompliance have been identified. CDE reported that items are cleared when there is evidence of correction and that in all cases, identified noncompliance must be corrected within one year of identification.

*Verification Reviews (VR)*
CDE reported that it conducts verification reviews for 20 districts annually. CDE selects districts for VRs in a variety of ways based on some of the following factors: (1) districts that demonstrate significantly sub-average performance or low KPI values in stakeholder-selected areas (e.g., least restrictive environment, overidentification of children with disabilities, and academic performance); (2) the results of complaint investigations that indicate recurrent noncompliance; (3) data from CDE staff that allege violations of applicable regulations; (4) data from "triage" of SESRs that indicate the need for further review; and (5) districts that are randomly selected for further review. OSEP learned that the VRs contain all of the components of the SESR noted above, with the addition of parent, staff and administrator interviews. VR teams conduct interviews with parents, staff and

Page 5 – Honorable Jack O'Connell

administrators based on questions derived from the software from items included in the monitoring plan. In addition, teams are encouraged to add more questions to address specific concerns. VR teams spend approximately four to five days on-site followed by a post review meeting to review the findings and develop corrective action plans. Three reports are generated: superintendent summary, student corrective action plan, and systemic corrective action plan. CDE reported that it conducts at least one follow-up on-site per VR. In all cases, identified noncompliance must be corrected within one year. The review is not closed until the district has demonstrated sustained correction in all identified areas.

OSEP learned during the verification visit, that CDE conducts a follow-up visit to validate every systemic finding identified during a VR to ensure that the noncompliance has been corrected in a timely manner. For SESRs, CDE selects a sample of 5% of the districts that have participated in the SESR and conducts an on-site visit to validate if the data are accurate and to determine whether any identified noncompliance has been corrected. CDE selects the districts based on random sampling and data that may appear questionable.

*Facilitated District Reviews*
CDE informed OSEP during the verification visit that facilitated district reviews (FDRs) are for school districts that have the lowest 15% of KPIs and that are identified as needing program improvement. OSEP learned that FDRs begin with the VR and proceed with site- and district-based intervention. Districts voluntarily agree to participate in a three-year process supported through a grant and support from the Riverside County Achievement Team (RCAT). CDE reported that eight districts have completed the first cohort of the FDRs and that there are an additional four districts participating in the second cohort.

*Monitoring of Nonpublic Schools*
CDE monitors nonpublic schools (NPS) that provide services to students with disabilities that are placed by public agencies through three activities: (1) self review; (2) on-site review; and (3) follow-up review. CDE reported that approximately one-third of the certified nonpublic schools are selected for a self-review each year. A standard review instrument with a parent survey is sent to the nonpublic school. The principal or designee and the LEA collaborate in completing the document. CDE informed OSEP that the NPS has 45 days to complete and return the report to CDE.

California State law requires on-site reviews of each NPS once every three years, or more frequently if necessary. CDE reported that an on-site review of an NPS begins with an entrance meeting, a review of documentation, and observations of teaching and learning. Upon completion of the review, the monitoring team holds an exit interview with school staff to make findings and develop plans to correct identified noncompliance. Within 60 days of the review, a written report is issued to the NPS and the contracting LEA. Areas of identified noncompliance are forwarded to the relevant FMTA unit for appropriate handling. CDE conducts follow-up reviews to ensure that any areas of noncompliance are corrected within one year. The follow-up review may include additional site visits to the NPS or technical assistance from CDE staff.



*Evaluation and Planning Processes*

CDE informed OSEP during the verification visit that it plans to use a unified planning process in which all State level planning in special education will be guided by the SPP. Currently, the State uses several diverse planning groups to address areas such as monitoring and accountability, personnel development, and fiscal management. Some of the primary activities associated with the new unitary planning process include: providing customized training and technical assistance to LEAs, parent groups, colleges and universities; updating the monitoring functions to address emergent issues/needs; the implementation of SPP improvement plans as part of the VR and SESR processes and as part of the request for training and technical assistance; and sponsoring statewide meetings, conferences, and web events.

*Training and Technical Assistance*

During the verification visit, OSEP learned that CDE offers training and technical assistance through a variety of methods that are based on Statewide and local needs, stakeholder input, and changes in statutes or regulations. CDE uses a number of contracted projects and SED consultants to provide varying levels of training, technical assistance, and resources to LEAs, parents and professionals to ensure compliance with Federal and State law and to improve student achievement and outcomes. Some of these projects include: California Services for Technical Assistance and Training (CAL Stat), Least Restrictive Environment (LRE) Resources Project, Special Education Early Childhood Administrators Project (SEECAP), and Special Education Early Delivery System Project (SEEDS). CDE reported that it provides training and technical assistance through on-site and follow-up visits, annual workshops, satellite conferences, web casts, and telephone contacts.

*Complaint Management*

The Part B regulations require that CDE issue a written decision on each Part B complaint within 60 days of the date that the complaint is filed, unless the timeline is extended due to exceptional circumstances with regard to a particular complaint (34 CFR §300.661(a) and (b)(1)) of the regulations that were in effect at the time of OSEP's verification visit[2]).

In its December 2005 SPP, CDE provided data that indicated 52% compliance with the 60-day requirement for resolving State complaints, and identified strategies to address this noncompliance. In its March 22, 2006 response to the SPP, OSEP informed the State that it must ensure that the noncompliance regarding the issuance of timely complaint decisions was corrected within one year, and include data in the APR, due February 1, 2007, that demonstrate compliance with 34 CFR §300.661(a) and (b)(1). During the verification visit, CDE provided OSEP with a log of 593 State complaints received between January 1 and June 20, 2006. Of those 593 complaints: (1) the 60-

---

[2] These regulatory provisions have been redesignated, with several changes, as 34 CFR §300.152(a) and (b)(1) in the final Part B regulations which became effective on October 13, 2006. The requirement for a State's complaint procedures to include a time limit of 60 days after a complaint is filed to conduct specified actions with regard to the complaint is unchanged from prior regulations. In addition to the requirement that the State's procedures permit an extension of the 60-day timeline only if exceptional circumstances exist with respect to a particular complaint, the State's procedures must permit an extension of the 60-day timeline if "The parent (or individual or organization, if mediation or other alternative means of dispute resolution is available to the individual or organization under State procedures) and the public agency involved agree to extend the time to engage in mediation pursuant to paragraph (a)(3)(ii) of this section, or to engage in other alternative means of dispute resolution, if available in the State." 34 CFR §300.152(b)(1)(i)-(ii).

Page 7 – Honorable Jack O'Connell

day timeline was extended due to exceptional circumstances for 42 complaints; (2) 105 complaints were withdrawn by the complainant; (3) 14 complaints were resolved through the local resolution process; (4) 23 were held in abeyance pending a due process hearing on the same issue(s); and (5) the decision was issued beyond the 60-day timeline, without extension for 61 complaints. Of those 61 complaints, CDE issued the decision: (1) one to five days beyond the 60-day timeline for 23 complaints; (2) five to ten days beyond the 60-day timeline for 14 complaints; (3) 11 to 20 days beyond the 60-day timeline for 10 complaints; (4) 20 to 40 days beyond the 60-day timeline for nine complaints; and (5) more than 41 days beyond the 60-day timeline for five complaints. The CDE log showed that CDE resolved the remaining 348 complaints within the 60-day timeline. As noted above, CDE must include data in the APR, due February 1, 2007, that demonstrate compliance with the 60-day timeline for issuing complaint decisions as required by 34 CFR §300.152(a) and (b)(1) of the final Part B regulations. Failure to include the required data in the APR, due February 1, 2007, may affect the State's status under section 616(d) of the IDEA.

*Due Process Hearing System*
Prior to the verification visit, OSEP learned that as of June 1, 2005, the Office of Administrative Hearings (OAH) entered into an interagency agreement with CDE to administer the mandated special education dispute resolution program. OAH took over the operation of the dispute resolution program from the University of Pacific, McGeorge School of Law, Special Education Hearing Office (SEHO).

The Part B regulations at 34 CFR §300.511(a) and (c) (in effect when the State submitted the SPP and at the time of OSEP's verification visit), require that: (1) a final decision is reached in the hearing and a copy of the decision is mailed to each of the parties within 45 days of the receipt of a request for a hearing; and (2) a hearing officer may grant specific extensions of time beyond 45 days at the request of either party. Regulations for due process hearing timelines have been redesignated as 34 CFR §300.515(a) and (c) of the final Part B regulations. Under the reauthorized IDEA, generally, a 30-day resolution process must precede the initiation of the 45-day due process hearing timeline, with certain exceptions described in 34 CFR §300.510 of the final Part B regulations.

During the verification visit, CDE and OAH provided the following data to OSEP regarding the timeliness of due process hearing decisions: first quarter (January-March 2006) – 29% compliance level; second quarter (April-June 2006) – 59% compliance level; and third quarter (July-September 2006) – 72% compliance level. While data reviewed during the verification visit show substantial improvement from the first to the third quarter, the third quarter data show continuing noncompliance with Part B requirements.

By the FFY 2006 APR, due February 1, 2008, CDE must submit data demonstrating compliance with the due process hearing requirements in 34 CFR §300.515(a) and (c) of the final Part B regulations. Failure to demonstrate compliance at that time may affect the State's status under section 616(d) of the IDEA.

Page 8 – Honorable Jack O●●nnell

*Timely Correction of Noncompliance*
In the December 2005 SPP, CDE reported a 93.21% level of compliance related to the timely correction of monitoring findings and an 88.35% level of compliance related to the timely correction of noncompliance identified through complaints or hearings.

As noted earlier, OSEP learned that CDE's monitoring processes, including both the SESR and CDE's monitoring of LEAs, result in findings of noncompliance at the student and district levels, and CDE requires correction of all findings within one year of identification. During the verification visit, CDE informed OSEP that it had ensured that all findings of noncompliance that it made during 2004-2005 were corrected within one year of identification. OSEP reviewed CDE's monitoring documentation for a number of districts, and found that CDE had clear documentation of: (1) the date on which it notified the district of noncompliance; (2) the follow-up procedures that CDE implemented to determine whether the noncompliance was corrected; (3) the date on which CDE notified the district that it had corrected the noncompliance; and (4) that the noncompliance was corrected within one year of identification. During the verification visit, CDE also informed OSEP that when it identifies noncompliance as a result of a complaint investigation, it records the findings in a complaints tracking database.

OSEP also learned that CDE staff members in each of the FMTA units are responsible for tracking the correction of individual findings of noncompliance for each complaint. CDE reported that it closes the complaint and sends out a closure letter to both the district and the complainant(s) only after sufficient evidence of correction is provided for all the corrective actions. In accordance with OSEP's March 22, 2006 response to the State's SPP, CDE must include data for Indicator 15 in the FFY 2005 APR demonstrating that CDE's general supervision system identifies and corrects noncompliance within one year of identification, including documentation demonstrating the timely correction of noncompliance identified through complaints and hearings, as required by 20 U.S.C. 1232d(b)(3)(E).

*Sanctions*
CDE has a variety of sanctions available to use in situations when LEAs are substantially out of compliance, fail to comply with corrective action orders, or fail to implement the decision of a due process hearing. CDE reported that the State Superintendent of Public Instruction may apply the following sanctions: corrective action plans or compliance agreements, special conditions, disapproval of local plans, withholding State and/or Federal funds, and seeking court enforcement of corrective actions. CDE provided OSEP with a sample notice of intent to withhold funds but reported that it has never had to apply sanctions.

### Data Collection Under Section 618 of the IDEA

In looking at the State's system for data collection and reporting, OSEP collected information regarding a number of elements, including whether the State: (1) provides clear guidance and ongoing training to local programs/public agencies regarding requirements and procedures for reporting data under section 618 of the IDEA; (2) implements procedures to determine whether the individuals who enter and report data at the local and/or regional level do so accurately and in a manner that is consistent with the State's procedures, OSEP guidance, and section 618; (3) implements procedures for identifying anomalies in data that are reported, and corrects any



inaccuracies; and (4) has identified any barriers (e.g., limitations on authority, sufficient staff or other resources, etc.) that impede the State's ability to accurately, reliably and validly collect and report data under section 618.

OSEP learned that the CASEMIS is used to: (1) extract student level data from SELPAs and State Operated Programs (SOPs) for various reporting cycles; (2) verify the accuracy of data files; (3) generate reports from various data tables; and (4) generate the data certification page. CDE reported that its CASEMIS has undergone substantial changes during the last two years. The system is moving toward coordinating special education data with general education data statewide. CDE reported that the State's ability to collect data from diverse systems would be facilitated by the assignment of unique student identifiers. Second, CDE informed OSEP that the CASEMIS has been expanded to include the additional SPP indicators required for APR submissions. The 2006-2007 student level database has four data tables: Table A: CASEMIS student data, Table B: Student Services Data, Table C: Discipline Data, and Table D: Post-secondary follow-up data.

OSEP learned during the verification visit that CDE utilizes a number of safeguards to ensure data accuracy. CDE explained that the CASEMIS software routinely verifies student data files for any logic inconsistency and produces a list of errors and warnings (if any). The errors must be corrected and the warnings must be verified. All errors must be corrected before the user can print a certification page. After the file is verified and determined error-free, reports are generated for the LEA. The LEA examines the reports for their accuracy and then submits a copy of the verified student data file to the State via the CASEMIS secured website submission process. LEAs can also submit data files on a diskette or CD-ROM. LEAs are also required to fax the certification page to the SED the same day the files are submitted.

CDE reported on its process to eliminate duplicate data for students reported from more than one SELPA. Following the December reporting cycle, CDE verifies the statewide student data file by comparing selected demographic data fields (e.g., Last Name, First Name, Birthdate, and Gender) for all students. SELPAs listing matching data on students are required to examine their file for possible duplication. The State's CASEMIS 2006-2007 technical assistance guide delineates a five-step streamlined process to address elimination of duplication for both reporting deadlines: (1) CDE verifies to ensure that a student data file does not contain duplicate reporting of students following the submission reporting deadlines; (2) each SELPA showing possible duplicate reporting of students receives a cover letter and report and must verify the reports against their data file or IEP or any other sources of necessary data; (3) within two weeks, SELPAs are required to make the necessary corrections or submit a revised file; (4) CDE verifies the student data file again after the two-week period; and (5) if verification still shows a duplicate reporting of students between two SELPAs, CDE can correct a file by removing that student from the SELPA that failed to submit a revision or failed to meet the initial timeline.

CDE reported that new versions of the CASEMIS software are provided to SELPAs and SOPs at the beginning of the year to account for changes in State and Federal reporting requirements and for new features added to the system from the previous year. CDE further reported that: (1) trainings and workshops are conducted annually; (2) a detailed CASEMIS user guide is available online; (3) CDE staff assigned to data collection and oversight are available to provide technical assistance to local staff; and (4) SELPAs conduct monthly meetings concerning CASEMIS.

OSEP's instructions for reporting of data under section 618 require that a State may include students in its 618 count of students with disabilities graduating with a regular high school diploma that meet the same requirements for graduation as those for students without disabilities. CDE informed OSEP that the State's requirements for receiving a regular diploma include passing the California High School Exit Exam (CAHSEE) (beginning with students graduating in 2006) and earning a credit in algebra 1. However: (1) pursuant to State statute, students with disabilities graduating in 2006 and 2007 are exempted by their local school board from the CAHSEE requirement, and receive a regular diploma although they did not pass the CAHSEE, and students with disabilities with such an exemption are included in the State's section 618 data regarding students with disabilities graduating with a regular diploma; and (2) students with disabilities that do not pass algebra 1 can appeal to the district to request a waiver from California's State Board of Education permitting them to receive a high school diploma, and the State also includes these students in its section 618 data for students with disabilities graduating with a regular diploma. Within 60 days from the date of this letter, the State must submit its plan for ensuring that the State's next submission of graduation data under section 618 meets the reporting requirements in OSEP's instructions (i.e., includes only students with disabilities who meet the same requirements that all students must meet in order to receive a regular diploma).

With the exception of the graduation data issue noted above, OSEP believes that CDE's system for collecting and reporting data for Part B of IDEA is a reasonable approach to ensuring the accuracy of the data that CDE reports to OSEP under section 618 of the IDEA.

### Statewide and Districtwide Assessments

In looking at the State's system for statewide assessment, OSEP collected information regarding a number of elements, including whether the State: (1) establishes procedures for statewide assessments that meet the participation, alternate assessment, and reporting requirements of Part B, including ensuring the participation of all students, including students with disabilities, and the provision of appropriate accommodations; (2) provides clear guidance and training to public agencies regarding those procedures and requirements; (3) monitors local implementation of those procedures and requirements; and (4) reports on the performance of children with disabilities on those assessments, in a manner consistent with those requirements.

CDE provided documentation to OSEP showing that its assessment system is comprised of four standardized testing and reporting (STAR) components and the CAHSEE. These four components include: California Standardized Test (CST), California Achievement Test (CAT), California Alternate Performance Assessment (CAPA), and the Aprenda 3. OSEP learned that the CST assesses all students in grades 2-11 and the CST is administered to most students with disabilities under standard conditions. Students in grades 3 and 7 also take the CAT under standard conditions.

Students in grades 2-11 with the most significant cognitive disabilities who are not able to participate in the CST and CAT even with accommodations and modifications participate in the CAPA. CDE reported that the IEP Team determines whether students participate in the CAPA and the IEP Team uses a Participation Criteria worksheet in making this determination. A licensed or certified school staff member works individually with the student in administering the CAPA. The

Page 11 – Honorable Jack O'Connell

CAPA is administered at five different levels (I – V). CDE reported that there is no out-of-level testing allowed in the State except for the CAPA Level I assessment.

The Aprenda 3 is for Spanish-speaking English language learners enrolled in a U.S. school less than 12 months or receiving instruction in Spanish. Subjects are tested in grades 2-11.

The CAHSEE is California's high-stakes assessment, and beginning with the graduating class of 2006, students must pass the CAHSEE in order to receive a high school diploma. Students with disabilities are allowed to use testing accommodations and modifications if documented in their IEPs. If they earn the equivalent of a passing score, they may receive a diploma pursuant to a local waiver.[3] Students with disabilities were granted a one-year exemption if they met certain criteria and had an IEP or 504 Plan. Students are required to take this exam beginning in the tenth grade and can retake it in grades 11 and 12 and in adult education programs. CDE reported that the grade 10 census administration of the CAHSEE is used for AYP calculation purposes. Grade 10 CAPA scores are used for students with the most significant cognitive disabilities who do not take the CAHSEE. The CAHSEE is the only assessment that does not permit parent waivers for students with and without disabilities.

The State reported that there are three assistance levels for students with disabilities who require assistance when taking all statewide assessments. The three assistance levels are: test variation, accommodations, and modifications. The accommodations and modifications must be specified in the IEP or 504 Plan and must be used during classroom assignments during the year. The Matrix of test variations, accommodations, and modifications for administration of California statewide assessments is available on the CDE website at http://www.cde.ca.gov/ta/tg/sa/.

OSEP learned that assessment results for system accountability for children with disabilities are used in the same manner as for children without disabilities. The scores are fully integrated into the accountability system. Participation and performance data for students with disabilities are sent to parents and guardians (by mail) to each student's home within 20 working days after the school district receives the reports. In addition, results are publicly reported via the Internet only when the group contains 11 or more students.

The scores for all students who take the assessment with modifications are counted as far below basic on the CST summary reports. Accommodations have no effect on scores; scores are reported in the same way as for non-accommodated tests. The student Master List and Student Record Labels indicate if a student used accommodations. For the CAPA, examiners build any required accommodations or modifications students need into the tasks of the assessment.

The individual student reports for students with disabilities who use modifications when taking the CSTs or CAT/6 note that the student was tested with modifications. Results of students with

---

[3] Further, as explained in the data collection section of this letter, for the graduating classes of 2006 and 2007, students with disabilities are exempted by their local board of education from the CAHSEE requirement.

disabilities who use modifications on the CSTs do not count in the AYP calculation under the No Child Left Behind Act (NCLB).[4]

OSEP learned during the verification visit that training on assessments is provided through workshops and the dissemination of various documents to school personnel. In addition, training information available on the CDE website includes STAR regulations, CAHSEE regulations, coordinator manuals, and pretest slides. The State also provides a matrix showing accommodations/modifications for State testing and this matrix reflects the State regulations.

*Public Reporting*
Part B requires, at 20 U.S.C. 1412(a)(16)(D)(i), that CDE must make available to the public, and report to the public with the same frequency and in the same detail as it reports on the assessment of nondisabled children, the number of children with disabilities participating in regular assessments, the number of those children who were provided accommodations in order to participate in those assessments, and the number of children with disabilities participating in alternate assessments, as well as data on the performance of children with disabilities on regular and alternate assessments, consistent with 20 U.S.C. 1412(a)(16)(D)(iv).

OSEP learned that while the State reports to the public the number of children with and without disabilities participating in regular assessments at the local level through LEA report cards, it does not, as required by 20 U.S.C. 1412(a)(16)(D)(i), report to the public, at the LEA level, the number of those children who were provided accommodations in order to participate in those assessments. By June 1, 2007, CDE must submit documentation that the State is meeting the requirement at 20 U.S.C. 1412(a)(16)(D)(i), and is reporting to the public the number of children with disabilities who were provided accommodations in order to participate in regular assessments with the same frequency and in the same detail as it reports assessment results for children without disabilities. Failure to submit the required documentation by that time may affect the State's status under section 616(d) of the IDEA.

*Relationship of Title I Assessment System to Part B Requirements*

During the verification visit, CDE reiterated that the CAPA is not based on alternate achievement level standards but that there is an effort underway to develop tasks to link the CAPA to the California academic content standards at each grade level. Through discussion and review of the CAPA blueprint provided by CDE, OSEP learned that this assessment is anticipated for field-testing in each of the content areas at each level in the spring of 2007 and slated for operational administration in the spring of 2008. The Department's Title I Office also reported to OSEP that the Department's peer review of the standards and assessment system indicated that California still needed to submit evidence of an alignment study of the CAPA to the content standards. There are, however, alternate achievement standards in place, according to the evidence submitted for peer review.

---

[4] The regulations under the NCLB provide, at 34 CFR §200.20(c), that in order to make adequate yearly progress (AYP), a school or LEA must ensure that not less than 95 percent of its children with disabilities in the grades tested participate in the State assessments under 34 CFR §200.2.

Under 20 U.S.C. 1412(a)(16)(A), CDE must ensure that "[a]ll children with disabilities are included in all general State and districtwide assessment programs, including assessments described under section 1111 of the Elementary and Secondary Education Act of 1965 (ESEA), with appropriate accommodations and alternate assessments where necessary and as indicated in their respective individualized education programs." Further, under 20 U.S.C. 1412(a)(16)(C)(ii)(I)-(II), guidelines for the participation of children with disabilities in alternate assessments must provide for alternate assessments that are aligned with the State's challenging academic content standards and challenging student academic achievement standards, and if the State has adopted alternate achievement standards permitted under section 1111(b)(1) of the ESEA, it must measure the achievement of children with disabilities against those standards. In a June 28, 2006 letter, the Department informed CDE that California's standards and assessment system was assigned approval pending status because of outstanding concerns with the alignment of the CSTs and the CAPA to grade level academic content and achievement standards and the lack of performance level descriptors that differentiate between three levels of proficiency for mathematics, English language arts and science. The June 28, 2006 letter also informed CDE that California was placed under Mandatory Oversight, pursuant to 34 C.F.R. §80.12. CDE must provide documentation to OSEP by June 1, 2007 that the CAPA meets IDEA requirements in 20 U.S.C. 1412(a)(16)(C)(ii), which cross references the Title I requirements that apply to States that have adopted alternate academic achievement standards. Failure to provide the required documentation at that time may affect the State's status under section 616(d) of the IDEA or the State's FFY 2007 grant award under Part B of IDEA.

*Districtwide Assessments*

CDE informed OSEP that while there are school districts that conduct districtwide assessments, CDE does not know which specific districts conduct such assessments. CDE further informed OSEP that the record review protocol for SESRs and VRs included an item regarding compliance with Part B requirements for "statewide and districtwide assessments," but that CDE did not know whether that item was sufficiently specific to ensure that districts conducting SESRs and CDE monitors conducting verification reviews, determined—in districts that do conduct districtwide assessments—whether the district did so in a manner consistent with the requirements of 20 U.S.C. 1412(a)(16) and 34 CFR §300.320(a)(6). CDE indicated during OSEP's verification visit that it would review and revise its monitoring procedures to more specifically address the requirements of 20 U.S.C. 1412(a)(16) and 34 CFR §300.320(a)(6) as they apply to districtwide assessments.

CDE reported that some of the challenges to implementing and ensuring an effective statewide and districtwide assessment system include: operationalizing the CAPA full-scale in 2008, developing the California Modified Assessment (CMA), providing local support in clarifying the difference between a waiver and an exemption, local control of the waiver process, and staff turnover at the local levels.

**Conclusion**

As discussed in the general supervision section of this letter, OSEP's March 22, 2006 response to the State's SPP required CDE to include in the FFY 2005 APR, due February 1, 2007: (1) data demonstrating compliance with the 60-day timeline for issuing complaint decisions, as required by 34 CFR §300.152(a) and (b) of the final Part B regulations; and (2) data for Indicator 15,

demonstrating that CDE's general supervision system identifies and corrects noncompliance within one year of identification, including documentation demonstrating the timely correction of noncompliance identified through complaints and hearings, as required by 20 U.S.C. 1232d(b)(3)(E). Failure to provide the required documentation in the FFY 2005 APR may affect the State's status under section 616(d) of the IDEA.

By the FFY 2006 APR, due February 1, 2008, the State must submit data demonstrating compliance with the due process hearing requirements in 34 CFR §300.515(a) and (c) of the final Part B regulations. Failure to demonstrate compliance at that time may affect the State's status under section 616(d) of the IDEA.

Within 60 days from the date of this letter, CDE must submit its plan for ensuring that the State's next submission of graduation data under section 618 of the IDEA for students with disabilities graduating with a regular high school diploma meets the reporting requirements in OSEP's instructions and includes only students with disabilities who meet the same requirements for graduation as those for students without disabilities.

By June 1, 2007, CDE must submit to OSEP: (1) documentation that the State is meeting the requirement, at 20 U.S.C. 1412(a)(16)(D)(i), to report to the public the number of children with disabilities who were provided accommodations in order to participate in regular assessments, with the same frequency and in the same detail as it reports assessment results for children without disabilities, as required by 20 U.S.C. 1412(a)(16)(D)(i); and (2) documentation that the CAPA meets IDEA requirements in 20 U.S.C. 1412(a)(16)(C)(ii), which cross references the Title I requirements that apply to States that have adopted alternate academic achievement standards. Failure to provide the required documentation by that time may affect the State's status under section 616(d) of the IDEA or the State's FFY 2007 grant award under Part B of IDEA.

We appreciate the cooperation and assistance provided by your staff during our visit. If you have any questions about this letter, please contact Perry Williams, OSEP's State Contact for the California Part B program at 202-245-7575. We look forward to our continued collaboration with California to support your work to improve results for children with disabilities and their families.

Sincerely,

/s/Alexa Posny

Alexa Posny, Ph.D.
Director
Office of Special Education Programs

cc: Mary Hudler



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

JUL - 2 2007

Honorable Jack T. O'Connell
Superintendent of Public Instruction
California Department of Education
1430 N Street, Suite 5602
Sacramento, CA 95814

Honorable James E. Tilton
Secretary
California Department of Corrections and Rehabilitation
1515 S Street, Suite 502 S
Sacramento, CA 95814

Dear Superintendent O'Connell and Secretary Tilton:

This is to inform you that we have conditionally approved California's application for Federal
Fiscal Year (FFY) 2007 under Part B of the Individuals with Disabilities Education Act (IDEA).
Our conditional approval is based on review of your application submitted by the California
Department of Education to the U.S. Department of Education, Office of Special Education
Programs (OSEP), on May 4, 2007, including assurances provided in Section II, and
incorporated by reference to this letter as noted in Enclosure A. In addition, the State provided
specific assurances that it will:

1. Operate consistent with the applicable Part B regulations; and

2. Make such changes to existing policies and procedures as are necessary to bring those
   policies and procedures into compliance with the requirements of Part B of the IDEA, as
   amended, as soon as possible, and not later than June 30, 2008. Section II of the State's
   application identifies the IDEA statutory sections for which the State needs to amend
   policies and procedures and the timelines by which the State will amend its policies and
   procedures in order to comply with Part B of the IDEA. Within Section II, the State has
   included the date by which it expects to complete necessary changes associated with any
   policies and procedures that are not yet in compliance with the requirements of Part B of
   the IDEA, as amended.

OSEP also notes that on Page 1-1 of its application the State reported that legislation to address
outstanding issues related to consent and the Family Educational Rights and Privacy Act
(FERPA), including language related to Education Code Sections 49076, 49076.5, and 56515, is
currently pending in the State legislature.

Enclosed are grant awards for funds currently available under the Department of Education FFY
2007 Appropriations Act for the Part B Section 611 (Grants to States) and Section 619
(Preschool Grants) programs. These funds are for use primarily in school year 2007-2008 and
are available for obligation by States from July 1, 2007 through September 30, 2009.





Page 2 - Honorable Jack T. O'Connell and James E. Tilton

As detailed in Enclosure D of this letter, the Department has determined that the State remains a high-risk grantee in regard to the provision of special education and related services to eligible individuals with disabilities who are convicted as adults and incarcerated in adult prisons. The basis for the Department's continuing imposition of Special Conditions related to the provision of special education and related services in adult prisons and the nature of the Special Conditions are set out in Enclosure D.

Please note that as part of your application for FFY 2007, your State has made an assurance, in 34 CFR §80.11(c), that it will comply with all applicable Federal statutes and regulations in effect with respect to the periods for which it receives grant funding. Any changes made by the State, after OSEP approval, to information that is a part of a State's application, must meet the public participation requirements in 34 CFR §300.165.

The amount in your award for Section 619 represents the full amount of funds to which you are entitled. However, the amount shown in your award for the Section 611 program is only part of the total funds that will be awarded to you for FFY 2007. Of the $10,782,961,000 appropriated for Section 611 in FFY 2007, $5,358,761,000 is available for awards on July 1, 2007, and $5,424,200,000 will be available on October 1, 2007.

Under the Section 611 formula, subject to certain maximum and minimum funding requirements, State allocations are based on the amount that each State received from FFY 1999 funds, the general population in the age range for which each State ensures a free appropriate public education (FAPE) to all children with disabilities, and the number of children living in poverty in the age range for which each State ensures FAPE to all children with disabilities. At the level of the decrease in the appropriation for the Preschool Grant program compared to that for prior years, each State is first allocated the amount it received for FFY 1997. The remaining funds are allocated based on the relative amount of the increase in funding that the State received between FFYs 1997 and 2006, as compared to the total of such increases for all States.

Enclosure B provides a short description of how Section 611 funds were allocated and how those funds can be used. In addition, Table 1 in Enclosure B shows funding levels for distribution of Section 611 funds and the parameters for within-State allocations. Table II in Enclosure B shows your State-specific information for within-State distribution of 611 funds based on your State's application. If you disagree with the information in Enclosure B Table II, notify your State contact immediately.

Enclosure C provides a short description of how Section 619 funds were allocated and how those funds can be used. In addition, Table III in Enclosure C shows State-by-State funding levels for distribution of Section 619 funds.

Section 611(e)(1)(C) of the IDEA provides that "[p]rior to expenditure of funds under this paragraph [section 611(e)(1) concerning funds for State administration], the State shall certify to the Secretary that the arrangements to establish responsibility for services pursuant to section 612(a)(12)(A) are current." We read this provision to mean that if a State does not have interagency agreements or other arrangements in place to establish responsibility for the provision of services, the State may not expend funds available to the State under section 611(e)(1) [State administration funds] until the State has these agreements or arrangements in place.

/6

Page 3 - Honorable Jack T. O'Connell and James E. Tilton

Under section 608(a)(2) of the IDEA, each State that receives funds under Part B is required to inform in writing local educational agencies located in the State of any State-imposed rule, regulation, or policy that is not required by IDEA or Federal regulations. A State may use the same list of State-imposed rules, regulations and policies that it was required to submit to the Department in Section IV of its Part B application for this purpose.

The enclosed grant award for FFY 2007 is made with the continued understanding that this Office may, from time to time, require clarification of information within your application, if necessary. These inquiries are needed to allow us to appropriately carry out our administrative responsibilities related to Part B.

Section 606 provides that each recipient of assistance under IDEA make positive efforts to employ and advance in employment qualified individuals with disabilities in programs assisted under the IDEA. Therefore, by accepting this grant a State is expressly agreeing as a condition of IDEA funding to ensuring that positive efforts are made to employ and advance employment of qualified individuals with disabilities in programs assisted under the IDEA.

We appreciate your ongoing commitment to the provision of quality educational services to children with disabilities.

Sincerely,

Patricia J. Guard
Acting Director
Office of Special Education Programs

Enclosures

    Enclosure A
    Enclosure B
    Enclosure C
    Enclosure D

cc: State Director



Enclosure A

Section II

## A.  Assurances Related to Policies and Procedures

The State makes the following assurances that it has policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act.  (20 U.S.C. 1411-1419; 34 CFR §§300.100-300.174)

| Check and enter date(s) as applicable | | Assurances Related to Policies and Procedures |
|---|---|---|
| **Yes** (Assurance is given.) | **No** (Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) | |
| X | | 1.  A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled, in accordance with 20 U.S.C. 1412(a)(1); 34 CFR §§300.101-300.108. |
| X | | 2.  The State has established a goal of providing a full educational opportunity to all children with disabilities and a detailed timetable for accomplishing that goal. (20 U.S.C. 1412(a)(2); 34 CFR §§300.109-300.110) |
| X | | 3.  All children with disabilities residing in the State, including children with disabilities who are homeless or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services in accordance with 20 U.S.C. 1412(a)(3); 34 CFR §300.111. |
| X | | 4.  An individualized education program, or an individualized family service plan that meets the requirements of section 636(d), is developed, reviewed, and revised for each child with a disability in accordance with 34 CFR §§300.320 through 300.325.  (20 U.S.C. 1412(a)(4); 34 CFR §300.112) |
| X | | 5.  To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily in accordance with 20 U.S.C. 1412(a)(5)(A)-(B); 34 CFR |

*18*

| Check and enter date(s) as applicable | | Assurances Related to Policies and Procedures |
|---|---|---|
| **Yes** (Assurance is given.) | **No** (Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) | |
| | | §§300.114-300.120. |
| X | | 6. Children with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§300.500 through 300.536 and in accordance with 20 U.S.C. 1412(a)(6); 34 CFR §300.121. |
| X | | 7. Children with disabilities are evaluated in accordance with 34 CFR §§300.300 through 300.311. (20 U.S.C. 1412(a)(7); 34 CFR §300.122) |
| | 6/30/08 | 8. Agencies in the State comply with 34 CFR §§ 300.610 through 300.626 (relating to the confidentiality of records and information). (20 U.S.C. 1412(a)(8); 34 CFR §300.123) |
| X | | 9. Children participating in early intervention programs assisted under Part C, and who will participate in preschool programs assisted under this part, experience a smooth and effective transition to those preschool programs in a manner consistent with section 637(a)(9). By the third birthday of such a child, an individualized education program or, if consistent with 34 CFR §300.323(b) and section 636(d), an individualized family service plan, has been developed and is being implemented for the child. The local educational agency will participate in transition planning conferences arranged by the designated lead agency under section 635(a)(10). (20 U.S.C. 1412(a)(9); 34 CFR §300.124) |
| X | | 10. To the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary schools and secondary schools in the school district served by a local educational agency, provision is made for the participation of those children in the program assisted or carried out under this part by providing for such children special education and related services in accordance with the requirements found in 34 CFR §§300.130 through 300.148 unless the Secretary has arranged for services to those children under subsection (f) [By pass]. (20 U.S.C. 1412(a)(10); 34 CFR §§300.129-300.148) |
| X | | 11. The State educational agency is responsible for ensuring that the requirements of Part B are met according to 34 CFR §300.149 and that the State monitors and enforces the requirements of Part B in accordance with 34 CFR §§300.600-300.602 and 300.606-300.608. |

/9

| Check and enter date(s) as applicable | | Assurances Related to Policies and Procedures |
|---|---|---|
| **Yes** (Assurance is given.) | **No** (Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) | |
| | | (20 U.S.C. 1412(a)(11); 34 CFR §300.149) |
| X | | 12.  The Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 CFR §300.154 and the State educational agency, in order to ensure that all services described in paragraph (b)(i) that are needed to ensure a free appropriate public education are provided, including the provision of such services during the pendency of any dispute under clause (iii). Such agreement or mechanism shall meet the requirements found in 20 U.S.C. 1412(a)(12)(A)-(C); 34 CFR §300.154. |
| X | | 13.  The State educational agency will not make a final determination that a local educational agency is not eligible for assistance under this part without first affording that agency reasonable notice and an opportunity for a hearing.  (20 U.S.C. 1412(a)(13); 34 CFR §300.155) |
| X | | 14.  The State educational agency has established and maintains qualifications to ensure that personnel necessary to carry out this part are appropriately and adequately prepared and trained, including that those personnel have the content knowledge and skills to serve children with disabilities as noted in 20 U.S.C. 1412(a)(14)(A)-(E); 34 CFR §300.156. |
| X | | 15.  The State has established goals for the performance of children with disabilities in the State that meet the requirements found in 20 U.S.C. 1412(a)(15)(A)-(C); 34 CFR §300.157. |
| X | | 16.  All children with disabilities are included in all general State and districtwide assessment programs, including assessments described under section 1111 of the Elementary and Secondary Education Act of 1965, with appropriate accommodations and alternate assessments where necessary and as indicated in their respective individualized education programs as noted in 20 U.S.C. 1412(a)(16)(A)-(E); 34 CFR §300.160. |
| X | | 17.  Funds paid to a State under this part will be expended in accordance with all the provisions of Part B including 20 U.S.C. 1412(a)(17)(A)-(C); 34 CFR §300.162. |

20



| Check and enter date(s) as applicable | | Assurances Related to Policies and Procedures |
|---|---|---|
| Yes (Assurance is given.) | No (Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) | |
| X | | 18. The State will not reduce the amount of State financial support for special education and related services for children with disabilities, or otherwise made available because of the excess costs of educating those children, below the amount of that support for the preceding fiscal year in accordance with 20 U.S.C. 1412(a)(18)(A)-(D); 34 CFR §300.163. |
| X | | 19. Prior to the adoption of any policies and procedures needed to comply with this section (including any amendments to such policies and procedures), the State ensures that there are public hearings, adequate notice of the hearings, and an opportunity for comment available to the general public, including individuals with disabilities and parents of children with disabilities. (20 U.S.C. 1412(a)(19); 34 CFR §300.165) |
| X | | 20. In complying with 34 CFR §§300.162 and 300.163, a State may not use funds paid to it under this part to satisfy State-law mandated funding obligations to local educational agencies, including funding based on student attendance or enrollment, or inflation. (20 U.S.C. 1412(a)(20); 34 CFR §300.166) |
| X | | 21. The State has established and maintains an advisory panel for the purpose of providing policy guidance with respect to special education and related services for children with disabilities in the State as found in 20 U.S.C. 1412(a)(21)(A)-(D); 34 CFR §§300.167-300.169. |
| X | | 22. The State educational agency examines data, including data disaggregated by race and ethnicity, to determine if significant discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities in accordance with 20 U.S.C. 1412(a)(22)(A)-(B); 34 CFR §300.170. |
| X | | 23a. The State adopts the National Instructional Materials Accessibility Standard for the purposes of providing instructional materials to blind persons or other persons with print disabilities, in a timely manner after the publication of the National Instructional Materials Accessibility Standard in the Federal Register in accordance with 20 U.S.C. 1412(a)(23)(A) and (D); 34 CFR §300.172. |
| | | 23b. *(Note: Check either "23b.1" or "23b.2" whichever applies.* |
| | | 23b.1 The State educational agency coordinates with the National Instructional |

| Check and enter date(s) as applicable | | Assurances Related to Policies and Procedures |
|---|---|---|
| Yes (Assurance is given.) | No (Assurance cannot be given. Provide date on which State will complete changes in order to provide assurance.) | |
| X | | Materials Access Center and not later than 12/03/06 the SEA as part of any print instructional materials adoption process, procurement contract, or other practice or instrument used for purchase of print instructional materials enters into a written contract with the publisher of the print instructional materials to: <br> • require the publisher to prepare and, on or before delivery of the print instructional materials, provide to the National Instructional Materials Access Center, electronic files containing the contents of the print instructional materials using the National Instructional Materials Accessibility Standard; or <br> • purchase instructional materials from the publisher that are produced in, or may be rendered in, specialized formats. (20 U.S.C. 1412(a)(23)(C); 34 CFR §300.172) |
| | | 23b.2 The State Educational Agency has chosen not to coordinate with the National Instructional Materials Access Center but assures that it will provide instructional materials to blind persons or other persons with print disabilities in a timely manner. (20 U.S.C. 1412(a)(23)(B); 34 CFR §300.172) |
| X | | 24. The State has in effect, consistent with the purposes of the IDEA and with section 618(d) of the Act, policies and procedures designed to prevent the inappropriate over identification or disproportionate representation by race and ethnicity of children as children with disabilities, including children with disabilities with a particular impairment described in 34 CFR §300.8. (20 U.S.C 1412(a)(24); 34 CFR §300.173) |
| X | | 25. The State educational agency shall prohibit State and local educational agency personnel from requiring a child to obtain a prescription for a substance covered by the Controlled Substances Act (21 U.S.C. 812(c)) as a condition of attending school, receiving an evaluation under 34 CFR §§300.300 through 300.311, or receiving services under the IDEA as described in 20 U.S.C. 1412(a)(25)(A)-(B); 34 CFR §300.174. |

22

## B. Other Assurances

The State also makes the following assurances:

| Yes | | Other Assurances |
|-----|---|------------------|
| X | 1. | The State shall distribute any funds the State does not reserve under 20 U.S.C. 1411(e) to local educational agencies (including public charter schools that operate as local educational agencies) in the State that have established their eligibility under section 613 for use in accordance with this part as provided for in 20 U.S.C. 1411(f)(1)-(3); 34 CFR §300.705. |
| X | 2. | The State shall provide data to the Secretary on any information that may be required by the Secretary. (20 U.S.C. 1418(a)(3); 34 CFR §§300.640-300.645.) |
| X | 3. | The State, local educational agencies, and educational service agencies shall use fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds. (34 CFR §76.702) |
| X | 4. | As applicable, the assurance in OMB Standard Form 424B (Assurances for Non-Construction Programs), relating to legal authority to apply for assistance; access to records; conflict of interest; merit systems; nondiscrimination; Hatch Act provisions; labor standards; flood insurance; environmental standards; wild and scenic river systems; historic preservation; protection of human subjects; animal welfare; lead-based paint; Single Audit Act; and general agreement to comply with all Federal laws, executive orders and regulations. |

## C. Certifications

The State Educational Agency is providing the following certifications:

| Yes | | |
|-----|---|---|
| X | 1. | The State certifies that ED Form 80-0013, *Certification Regarding Lobbying*, is on file with the Secretary of Education. |
| | | With respect to the *Certification Regarding Lobbying*, the State recertifies that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making or renewal of Federal grants under this program; that the State shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," when required (34 CFR Part 82, Appendix B); and that the State Agency shall require the full certification, as set forth in 34 CFR Part 82, Appendix A, in the award documents for all sub awards at all tiers. |
| X | 2. | The State certifies that certifications in the Education Department General Administrative Regulations (EDGAR) at 34 CFR §80.11 relating to State eligibility, authority and approval to submit and carry out the provisions of its State application, and consistency of that application with State law are in place within the State. |
| X | 3. | The State certifies that the arrangements to establish responsibility for services pursuant to 20 U.S.C. 1412(a)(12)(A); 34 CFR §300.154 are current. This certification must be received prior to the expenditure of any funds reserved by the State under 20 U.S.C. 1411(e)(1); 34 CFR §300.171. |

2.3

**California's Part B FFY 2005 SPP/APR Response Table**

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| **Monitoring Priority: FAPE in the LRE** | | |
| 1. Percent of youth with IEPs graduating from high school with a regular diploma compared to percent of all youth in the State graduating with a regular diploma.<br><br>[Results Indicator] | The State's FFY 2005 reported data for this indicator are 91% of districts. The State met its FFY 2005 target of 90% of districts. | The State met its target that 90% of districts meet or exceed established annual benchmarks for graduation and OSEP appreciates the State's efforts to improve performance. |
| 2. Percent of youth with IEPs dropping out of high school compared to the percent of all youth in the State dropping out of high school.<br><br>[Results Indicator] | The State's FFY 2005 reported data for this indicator are 88% of districts. The State met its FFY 2005 target of 85% of districts. | The State met its target that 85% of districts meet or exceed established annual benchmarks for drop out and OSEP appreciates the State's efforts to improve performance. |
| 3. Participation and performance of children with disabilities on statewide assessments:<br><br>A. Percent of districts that have a disability subgroup that meets the State's minimum "n" size meeting the State's AYP objectives for progress for disability subgroup.<br><br>[Results Indicator] | The State's FFY 2005 reported data for this indicator are 53.9%. The State met its FFY 2005 target of 52%. | The State revised its baseline for this indicator in its SPP and OSEP accepts those revisions.<br><br>The State did not submit raw data and the minimum "n" size data or the number of districts that met the "n" size. The State must provide the required data in the FFY 2006 APR due February 1, 2008.<br><br>The State met its target and OSEP appreciates the State's efforts to improve performance. |
| 3. Participation and performance of children with disabilities on statewide assessments:<br><br>B. Participation rate for children with IEPs in a regular assessment with no accommodations; regular assessment with accommodations; alternate assessment against grade level standards; alternate assessment against alternate achievement standards.<br><br>[Results Indicator] | The State's FFY 2005 reported data for English language arts (ELA) for this indicator are 96.5%. The State met its FFY 2005 target of 95%.<br><br>The State's FFY 2005 reported data for mathematics for this indicator are 96.4%. The State met its FFY 2005 | The State met its targets and OSEP appreciates the State's efforts to improve performance.<br><br>In its February 2, 2007 letter reporting on its October 2006 verification visit, OSEP found that while the State reports to the public the number of children with and without disabilities participating in regular assessments at the local level through LEA report cards, it does not, as required by 20 U.S.C. 1412(a)(16)(D)(i), report to the public, at the LEA level, the number of those children who were provided accommodations in order to participate in those assessments. OSEP's letter required the State to submit, by June 1, 2007, documentation that it is meeting the requirement at 20 U.S.C. |

2.4

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | target of 95%. | 1412(a)(16)(D)(i) (and 34 CFR §300.160), and is reporting to the public the number of children with disabilities who were provided accommodations in order to participate in regular assessments with the same frequency and in the same detail as it reports assessment results for children without disabilities. |
| 3.  Participation and performance of children with disabilities on statewide assessments:<br><br>C.  Proficiency rate for children with IEPs against grade level standards and alternate achievement standards.<br><br>[Results Indicator] | The State's FFY 2005 reported data are included in the next column, along with FFY 2005 targets for ELA and for mathematics by the three types of districts.  The State did not meet any of its six proficiency targets for FFY 2005. | See table below. |
| 4.  Rates of suspension and expulsion:<br><br>A.  Percent of districts identified by the State as having a significant discrepancy in the rates of suspensions and expulsions of children with disabilities for greater than 10 days in a school year; and<br><br>[Results Indicator] | The State's reported data for this indicator are 17.9%.  This represents slippage from the FFY 2004 data of 10.6%.  The State did not meet its FFY 2005 target of 10.5%. | The State revised its baseline and targets for this indicator in the SPP and OSEP accepts those revisions.<br><br>OSEP's March 22, 2006 SPP response letter required the State to include in the February 1, 2007 APR documentation of the results of its review of policies, procedures and practices related to the development and implementation of IEPs, the use of positive behavioral supports, and procedural safeguards to ensure full compliance with this indicator.<br><br>The State did not provide this information, instead the State indicated that when undergoing a "[Quality Assurance Process (QAP)]" review, if the district has a significant discrepancy in the rates of long-term suspensions and expulsions, then the district will be required to review its own policies, procedures and practices.  This is inconsistent with the requirements of 34 CFR §300.170(b), because it does not provide for the review of policies, procedures and practices for districts with significant discrepancies each year, and, therefore, represents noncompliance with those requirements.  In |

For Indicator 3 (OSEP Analysis/Next Steps column):

| | ELA | | Math | |
|---|---|---|---|---|
| | Target | Actual Data | Target | Actual Data |
| Unified, HS 7-12, COE | 23% | 19.6% | 23.7% | 22.4% |
| Elementary | 24.4% | 20.8% | 26.5% | 24.8% |
| HS 9-12 | 22.3% | 16.7% | 23.7% | 14.8% |

OSEP looks forward to the State's data demonstrating improvement in performance in the FFY 2006 APR, due February 1, 2008.

2·5

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | its FFY 2006 APR, the State must describe the review, and if appropriate revision, of policies, procedures, and practices relating to the development and implementation of IEPs, the use of positive behavioral interventions and supports, and procedural safeguards to ensure compliance with the IDEA for: (1) the LEAs identified as having significant discrepancies in the FFY 2005 APR; and (2) the LEAs identified as having significant discrepancies in the FFY 2006 APR.<br><br>OSEP looks forward to the State's data demonstrating improvement in performance in the FFY 2006 APR, due February 1, 2008. |
| 4. Rates of suspension and expulsion:<br><br>B. Percent of districts identified by the State as having a significant discrepancy in the rates of suspensions and expulsions of greater than 10 days in a school year of children with disabilities by race and ethnicity.<br><br>[Results Indicator; New] | | Based upon our preliminary review of all State submissions for Indicator 4B, it appears that the instructions for this indicator were not sufficiently clear and, as a result, confusion remains regarding the establishment of measurements and targets that are race-based and for which there is no finding that the significant discrepancy is based on inappropriate policies, procedures, or practices relating to the development and implementation of IEPs, the use of positive behavioral interventions and supports, and procedural safeguards. As a result, use of these targets could raise Constitutional concerns. Therefore, OSEP has decided not to review this year's submissions for Indicator 4B for purposes of approval and will revise instructions for this indicator to clarify how this indicator will be used in the future. Based upon this, OSEP did not consider the submissions for Indicator 4B in making determinations under section 616(d). It is also important that States immediately cease using Indicator 4B measurements and targets, unless they are based on a finding of inappropriate policies, procedures, or practices relating to the development and implementation of IEPs, the use of positive behavioral interventions and supports, and procedural safeguards. |
| 5. Percent of children with IEPs aged 6 through 21:<br><br>A. Removed from regular class less than 21% of the day;<br><br>B. Removed from regular class greater than | A. The State's FFY 2005 reported data for this indicator are 50.4%. This represents progress from FFY 2004 data of 49.2%. The State did not meet its FFY 2005 target of | The State met its target for Indicator 5C and OSEP appreciates the State's efforts to improve performance.<br><br>For Indicators 5A and 5B, OSEP looks forward to the State's data demonstrating improvement in performance in the FFY 2006 APR, due February 1, 2008. |

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| 60% of the day; or<br><br>C. Served in public or private separate schools, residential placements, or homebound or hospital placements.<br><br>[Results Indicator] | 51.1%.<br><br>B. The State's FFY 2005 reported data for this indicator are 24.2%. This represents progress from FFY 2004 data of 24.6%. The State did not meet its FFY 2005 target of 24%.<br><br>C. The State's FFY 2005 reported data for this indicator are 4.3%. The State met its FFY 2005 target of 4.3%. | |
| 6. Percent of preschool children with IEPs who received special education and related services in settings with typically developing peers (i.e., early childhood settings, home, and part-time early childhood/part-time early childhood special education settings).<br><br>[Results Indicator] | The State's FFY 2005 reported data for this indicator are 46.3%. This represents slippage from FFY 2004 data of 47.79%. The State did not meet its FFY 2005 target of 51%. | Please note that, due to changes in the 618 State-reported data collection, this indicator will change for the FFY 2006 APR, due February 1, 2008. States will be required to describe how they will collect valid and reliable data to provide baseline and targets in the FFY 2007 APR, due February 1, 2009. |
| 7. Percent of preschool children with IEPs who demonstrate improved:<br><br>A. Positive social-emotional skills (including social relationships);<br><br>B. Acquisition and use of knowledge and skills (including early language/ communication and early literacy); and<br><br>C. Use of appropriate behaviors to meet their needs.<br><br>[Results Indicator; New] | Entry data provided. | The State reported the required entry data and activities. The State must provide progress data and improvement activities with the FFY 2006 APR, due February 1, 2008.<br><br>OSEP's March 22, 2006 SPP response letter required the State to ensure that any activities or strategies regarding this indicator result in the collection and reporting of the required: entry data, for the appropriate time period, in the APR, due February 1, 2007; and baseline data, for the required time period, in the APR due February 1, 2008. OSEP's response letter also required the State, if it is proposing to use sampling, to include a revised sampling methodology that describes how data were collected for the State's FFY 2005 APR and that addresses the deficiencies in the data collection noted in the attachment to the February 14, 2006 OSEP memorandum. The State submitted a revised sampling plan. However, the sampling plan for this indicator is not technically sound. Please call your State Contact as |

27

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | soon as possible. |
| 8. Percent of parents with a child receiving special education services who report that schools facilitated parent involvement as a means of improving services and results for children with disabilities.<br><br>[Results Indicator; New] | The State's FFY 2005 reported baseline data for this indicator are 69%. | The State provided baseline data, targets and improvement activities and OSEP accepts the SPP for this indicator.<br><br>OSEP's March 22, 2006 SPP response letter required the State to submit a revised sampling methodology that describes how data were collected with the State's FFY 2005 APR, due February 1, 2007. The State submitted a revised sampling plan. The sampling plan for this indicator is not technically sound. Please call your State Contact as soon as possible. |
| **Monitoring Priority: Disproportionality** | | |
| 9. Percent of districts with disproportionate representation of racial and ethnic groups in special education and related services that is the result of inappropriate identification.<br><br>[Compliance Indicator; New] | The State's FFY 2005 reported baseline data for this indicator are 1.95%. | The State provided baseline data, targets and improvement activities and OSEP accepts the SPP for this indicator.<br><br>OSEP's March 22, 2006 SPP response letter required the State to include in the February 1, 2007 APR a description of the results of its review of those districts identified as disproportionate. The State indicated that for 2005-2006, of the 797 districts "with large enough student populations," 121 districts were identified as potentially disproportionate due to inappropriate identification, and 15 were found to have noncompliant policies and procedures related to identification. The process described indicated that "[s]ome of these districts were already slated for [Verification Reviews (VRs)] and [Special Education Self Reviews (SESRs)], which included a review of policies and procedures related to identification [while] [o]ther potentially disproportionate districts were required to complete a self assessment of identical items related to identification." Therefore, the State described a review of policies and procedures, but did not discuss a review of noncompliant <u>practices</u>. The State reported that of the 15 districts, two have corrected the noncompliance and 13 have corrective action plans that will become due later in the 2006-2007 school year. In the FFY 2006 APR, due February 1, 2008, the State must clarify the determination of "with large enough student populations." If the State is using a numerical threshold at the district level, it must clarify this process, since the State appears to be excluding a large number of districts from its review. The State also must clarify how practices are reviewed when determining whether disproportionate representation of racial and ethnic groups in special |

28

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | education and related services is the result of inappropriate identification. |
| | | The State identified 1.95% of districts with disproportionate representation that was the result of inappropriate identification, but did not identify the racial or ethnic groups with disproportionate representation. OSEP looks forward to reviewing data and information in the FFY 2006 APR, due February 1, 2008, that demonstrate that the State has in effect policies and procedures that prevent the inappropriate overidentification or disproportionate representation by race or ethnicity of children as children with disabilities, as required by 34 CFR §300.173. Additionally, the State must include data and information that demonstrate that the LEAs identified in the FFY 2005 APR as having disproportionate representation that was the result of inappropriate identification are in compliance with the child find, evaluation, and eligibility requirements in 34 CFR §§300.111, 300.201 and 300.301 through 300.311. |
| 10. Percent of districts with disproportionate representation of racial and ethnic groups in specific disability categories that is the result of inappropriate identification.<br><br>[Compliance Indicator; New] | Baseline not provided. | The State provided targets and improvement activities and OSEP accepts the SPP for this indicator.<br><br>The State did not provide baseline data for this indicator. The State indicated that its baseline data were incomplete without the review of policies and procedures that might lead to inappropriate identification and reported that these data would be available for the February 2008 APR submission.<br><br>The State did not provide data on the percent of districts with disproportionate representation of racial and ethnic groups in specific disability categories that is the result of inappropriate identification as required by 34 CFR §300.600(d)(3). The State must provide, in its FFY 2006 APR, baseline data from FFY 2005 on the percent of districts identified with disproportionate representation of racial and ethnic groups in specific disability categories that was the result of inappropriate identification, and describe how the State made that determination (e.g., monitoring data, review of policies, practices and procedures, etc.). The State must provide data, in its FFY 2006 APR, on the percent of districts identified in FFY 2006 with disproportionate representation of racial and ethnic groups in specific disability categories that is the result of inappropriate identification, and describe how the State made that determination, even if the determination occurs in the fall of 2007. |


29

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | In reporting on disproportionate representation by disability category that is the result of inappropriate identification under this indicator, the State reported that it used a definition of disproportionality for one racial group (African-American) that was different from that used for all other racial and ethnic groups. Specifically, the State reported that it "set a threshold for disproportionality based on 10 of 30 cells or three or more of the African American disability categories in which the percentage of students is more than 20 percent above what would be expected based on the percent of that ethnic group among the population of students receiving special education and related services." The State did not provide a rationale for this difference. Under 34 CFR §300.600(d)(3) a State may, in reviewing data for each race ethnicity category, do so in a statistically appropriate manner, and may set an "n" size that applies to all racial and ethnic groups, but it must review data for all race ethnicity categories in the State consistently and must do the analysis at the LEA level for all race and ethnic groups meeting that "n" size that are present in any of its LEAs. Therefore, it appears that the State is not complying with 34 CFR §300.600(d)(3). To the extent that the State's review for disproportionality does not look at disproportionality for all race and ethnic groups applying the same criteria, the State must revise its method of reviewing disproportionality and, in its FFY 2006 APR, describe and report on the revisions it has made and the results of its review of data and information for all race ethnicity categories in the State to determine if there is disproportionate representation that is the result of inappropriate identification for both FFY 2005 and FFY 2006. |
| **Monitoring Priority: Effective General Supervision** | | |
| 11. Percent of children with parental consent to evaluate, who were evaluated within 60 days (or State-established timeline). [Compliance Indicator; New] | The State's FFY 2005 reported baseline data for this indicator are 81.47%. | The State provided baseline data, targets and improvement activities and OSEP accepts the SPP for this indicator. The State reported data based on a State-established timeline within which the evaluation must be completed. The State did not indicate the range of days beyond the timeline when the evaluation was completed and any reasons for the delays. The State must provide the required data in the FFY 2006 APR, due February 1, 2008. The State must review its improvement activities and revise them, if appropriate, to ensure they will enable the State to include data in the FFY 2006 APR, due February 1, 2008, that demonstrate full compliance with the requirements of 34 CFR §300.301(c) including correction of the |

30

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | noncompliance identified in FFY 2005. |
| 12.   Percent of children referred by Part C prior to age 3, who are found eligible for Part B, and who have an IEP developed and implemented by their third birthdays.<br><br>[Compliance Indicator] | The State's FFY 2005 reported data for this indicator are 69.19%. This represents progress from the 2003-2004 data of 66.9%. The State did not meet its FFY 2005 target of 100%. | OSEP's March 22, 2006, FFY 2004 SPP response letter required the State to include in the February 1, 2007 APR data regarding the number of children referred from Part C to Part B who were determined to be NOT eligible and whose eligibility determinations were made prior to their third birthdays. In its February 2007 APR, the State reported that the referral date information to determine the extent to which three year olds entering Part B were referred in a timely fashion was unavailable.  The State further reported that data regarding referrals and evaluations covering this indicator would be collected under its statewide data system (CASEMIS) for the first time in December 2006.  The State did not indicate the range of days beyond the third birthday when eligibility was determined and the IEP developed and the reasons for the delays.  The State did not provide raw data for this indicator consistent with the measurement. The State reported that it was able to generate percentage figures for only 82 of 121 Special Education Local Planning Areas (SELPAs) because of the very small numbers involved.  The State must provide the required data in the FFY 2006 APR, due February 1, 2008.<br><br>OSEP's March 22, 2006, FFY 2004 SPP response letter also required the State to include in the February 1, 2007 APR data demonstrating compliance with the requirement at 34 CFR §300.132(b) (now 34 CFR §300.124(b)). The State also reported that of 214 districts monitored through Verification Reviews or Special Education Self Reviews, 25 were found systemically noncompliant with transition from Part C to Part B and that these districts have corrective actions due in 2006-2007. The State did not demonstrate compliance and did not report on the correction of the noncompliance identified in the FFY 2004 SPP.<br><br>The State must review its improvement activities and revise them, if appropriate, to ensure they will enable the State to include data in the FFY 2006 APR, due February 1, 2008, that demonstrate full compliance with the requirements in 34 CFR §300.124, including correction of noncompliance identified in FFY 2005 and any remaining noncompliance identified in the FFY 2004 SPP (2003-2004 data). |
| 13.   Percent of youth aged 16 and above with an IEP that includes coordinated, measurable, | The State's FFY 2005 reported baseline data for this | The State provided baseline data, targets and improvement activities for this |

31



| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| annual IEP goals and transition services that will reasonably enable the student to meet the post-secondary goals.<br><br>[Compliance Indicator; New] | indicator are 98%.<br><br>It appears that the State did not use the required measurement for this indicator. | indicator.<br><br>The baseline data that the State provided for this indicator are the percent of students whose IEPs include "transition services language." The measurement for this indicator requires that the State report the percent of students whose IEPs include coordinated, measurable, annual IEP goals and transition services that will reasonably enable the student to meet the post-secondary goals. Therefore, it appears that the State did not use the correct measurement for this indicator. The State reported that it is revising its data system (CASEMIS) to collect additional secondary transition data. In the FFY 2006 APR, due February 1, 2008, the State must either clarify why the reported FFY 2005 data are consistent with the required measurement for this indicator, or provide data that are consistent with the measurement.<br><br>OSEP looks forward to reviewing data in the FFY 2006 APR, due February 1, 2008, that demonstrate compliance with 34 CFR §300.320(b), including data demonstrating correction of noncompliance identified in FFY 2005. |
| 14. Percent of youth who had IEPs, are no longer in secondary school and who have been competitively employed, enrolled in some type of post-secondary school, or both, within one year of leaving high school.<br><br>[Results Indicator; New] | The State provided a plan that describes how data will be collected. | The State provided a plan that describes how data will be collected. The State must provide baseline data, targets, and improvement activities with the FFY 2006 APR, due February 1, 2008.<br><br>The State did not submit a definition for post-secondary education or competitive employment as required by the instructions for this indicator. Instead, the State identified certain data fields from its data system without providing the relevant definitions for those data fields and repeated OSEP's language in the instructions requiring these definitions. The State must submit the definitions in the FFY 2006 APR, due February 1, 2008. |
| 15. General supervision system (including monitoring, complaints, hearings, etc.) identifies and corrects noncompliance as soon as possible but in no case later than one year from identification.<br><br>[Compliance Indicator] | The State's FFY 2005 reported data for this indicator are 97.18%. This represents progress from the FFY 2004 revised baseline of 90.66%. The State did not meet its FFY 2005 target of 100%.<br><br>The State reported on both progress and sanctions. | OSEP's March 22, 2006, FFY 2004 SPP response letter required the State to include in the February 1, 2007 APR documentation that the State ensured the correction of identified noncompliance, as soon as possible, but in no case later than one year from identification. In the revised SPP, the State reported on the completion of corrective actions due in 2004-2005 and on the imposition of Special Conditions on two districts that did not complete their corrective actions. The State also reported that 209 of the overdue corrective actions were completed and that for the 55 overdue corrective actions still outstanding, the State provided technical assistance and sent sanction letters. |

32

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | The State provided data for this indicator indicating 97.18%, and OSEP appreciates the State's efforts. In the APR, the State provided data showing the percentage of FFY 2004 findings that related to State-specified subtopics, but did not disaggregate its data by indicator. OSEP looks forward to reviewing data in the FFY 2006 APR, due February 1, 2008, that demonstrate compliance with the requirements in 20 U.S.C. 1232d(b)(3)(E), and 34 CFR §§300.149 and 300.600. In its response to Indicator 15 in the FFY 2006 APR due February 1, 2008, the State must disaggregate by APR indicator the status of timely correction of the noncompliance findings identified by the State during FFY 2005. In addition, the State must, in responding to Indicators 9, 10, 11, 12, 16, and 17, specifically identify and address the noncompliance identified in this table under those indicators. |
| 16. Percent of signed written complaints with reports issued that were resolved within 60-day timeline or a timeline extended for exceptional circumstances with respect to a particular complaint.<br><br>[Compliance Indicator] | The State's FFY 2005 reported data for this indicator are 84%. This represents progress from the FFY 2004 data of 52%. The State did not meet its FFY 2005 target of 100%. | OSEP's March 22, 2006 SPP response letter required the State to include in the February 1, 2007 APR data that demonstrated compliance with the requirements at 34 CFR §300.152(a) and (b)(1). The State's data indicate continuing noncompliance with the requirements of 34 CFR §300.152.<br><br>The State must review its improvement strategies and revise them, if appropriate, to ensure that they will enable the State to include data in the FFY 2006 APR, due February 1, 2008, that demonstrate compliance with the requirements of 34 CFR §300.152. |
| 17. Percent of fully adjudicated due process hearing requests that were fully adjudicated within the 45-day timeline or a timeline that is properly extended by the hearing officer at the request of either party.<br><br>[Compliance Indicator] | The State's FFY 2005 reported data for this indicator are 33%. This represents slippage from the FFY 2004 reported data of 100%. The State did not meet its FFY 2005 target of 100%.<br><br>During OSEP's verification visit, the State reported subsequent improvement. | During OSEP's October 2006 verification visit, the State provided data showing a 72% compliance level for the period of July 1- September 30, 2006. This period was after the FFY 2005 reporting period for which the State reported 33% compliance in the APR. Therefore the State appears to have made progress on compliance in the first part of FFY 2006. Consistent with OSEP's February 2, 2007 verification visit letter, the State must review its improvement activities and revise them, if appropriate, to ensure they will enable the State to include data in the FFY 2006 APR, due February 1, 2008, that demonstrate full compliance with the requirements of 34 CFR §300.515(a). |
| 18. Percent of hearing requests that went to resolution sessions that were resolved through resolution session settlement agreements. | The State reported baseline data of 100%. The data are not valid and reliable because they do not cover the full | The State provided baseline data, targets and improvement activities. The State reported that the baseline data are incomplete and only reflect the second half of 2005-2006. |

33

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| [Results Indicator; New] | reporting period. | The State must provide the required data in the FFY 2006 APR, due February 1, 2008. |
| 19.  Percent of mediations held that resulted in mediation agreements.<br><br>[Results Indicator] | Valid and reliable data not provided. | The State did not provide the percent of mediations held in FFY 2005 that resulted in mediation agreements.  The State reported that it did not have the necessary data to provide the calculation, because it could not determine the number of mediations requested and held during the reporting period.  The number of mediations held during the reporting period is also omitted from Table 7.  The State indicated that the Office of Administrative Hearings will be adjusting its data collection to provide the required measurement and data.<br><br>The State must provide the required data in the FFY 2006 APR, due February 1, 2008. |
| 20.  State reported data (618 and State Performance Plan and Annual Performance Report) are timely and accurate.<br><br>[Compliance Indicator] | The State reported FFY 2005 data of 100%.  However, OSEP identified numerous errors and omissions in the data for the FFY 2005 APR submission. | The State reported that 100% of State-reported data, including 618 and SPP/APR data were timely and accurate.  However, as noted above, OSEP's analysis for Indicators 12, 13, and 19 indicate that the data for those indicators were incomplete and/or used the wrong measurement.  The State must provide data in the FFY 2006 APR, due February 1, 2008, that demonstrate compliance with the requirements in IDEA section 618 and 34 CFR §§76.720 and 300.601(b).<br><br>Further, as OSEP found in its February 2, 2007 verification visit letter, the State's FFY 2005 graduation data were not consistent with OSEP's instructions, because the State included in those data some students with disabilities who did not meet the same requirements that all students must meet.  OSEP's letter required the State to submit, within 60 days, its plan for ensuring that the State's next submission of graduation data under section 618 of the IDEA for students with disabilities graduating with a regular high school diploma meets the reporting requirements in OSEP's instructions, i.e., includes only students with disabilities who met the same requirements for graduation that apply to students without disabilities.  In a letter dated March 21, 2007, the State indicated that:  (1) beginning with the June 30, 2007 data collection, the State will collect information about students graduating with diplomas granted through exemptions and waivers so these students can be excluded from graduation data; (2) the State will gather information for the 2006-2007 school year in the June 30, 2007 data collection; and (3) these adjusted data will appear in Student Exit reports due |

34

| Monitoring Priorities and Indicators | Status | OSEP Analysis/Next Steps |
|---|---|---|
| | | to OSEP in November 1, 2007.  OSEP accepts this plan. |

35

Enclosure D

Special Conditions

1. **Basis for Requiring Special Conditions**

Due to the State's long-standing failure to comply with the requirements of Part B of the Individuals with Disabilities Education Act (IDEA), the Office of Special Education Programs (OSEP) designated California as a high-risk grantee, and imposed Special Conditions on California's Federal Fiscal Year (FFY) 2006 Part B grant award pursuant to 34 C.F.R. §80.12. OSEP's prior actions were based, in part, upon the California Department of Corrections and Rehabilitation's (CDCR's) failure to ensure that a free appropriate public education is available to eligible inmates with disabilities in adult correctional facilities consistent with the requirements of Part B. 34 C.F.R. §§300.101-300.102. Because this noncompliance has not been corrected, OSEP is imposing Special Conditions on California's FFY 2007 Part B grant award pursuant to 34 C.F.R. §80.12.

These Special Conditions are a continuation of the prior conditions that applied to CDCR (formerly, the California Department of Corrections[1] (CDC)). In its 1996 Monitoring Report, OSEP found that California was not making special education and related services available to eligible youth with disabilities in any of California's adult correctional facilities. The 1996 Monitoring Report required that the State take corrective action. Last year's Special Conditions contained a provision regarding this requirement. To date, OSEP does not have any data indicating that CDCR has ensured that a free appropriate public education is made available to all eligible youth with disabilities in adult correctional facilities. Therefore, these Special Conditions remain appropriate under 20 U.S.C. §1412(a)(11) and 34 C.F.R. §300.149 (formerly 34 C.F.R. §300.600).

2. **Nature of the Special Conditions**

At the request of the Department, the State will provide reports detailing the steps it has taken to comply with the requirements of Part B of the IDEA, including steps taken by CDCR, the California Department of Education (CDE), or both, as appropriate, to locate, identify, evaluate, and provide special education and related services to eligible youth with disabilities in adult correctional facilities, consistent with the requirements of Part B. Full compliance with these Special Conditions, must be achieved within thirty days of any such request.

3. **Evidence Necessary for Conditions To Be Removed**

The Department will remove these Special Conditions if, at any time prior to the expiration of the grant year, California provides documentation, satisfactory to the Department, that it has fully met the requirements and conditions set forth above, including the submission of data demonstrating compliance with the Part B requirements referenced in these Special Conditions.

---

[1] On June 5, 1997, in his Executive Order W-155-97, former Governor Wilson transferred from CDE to CDC the responsibility for ensuring that the requirements of the IDEA are met with respect to eligible youth who are convicted as adults under State law and are incarcerated in adult prisons.

36



4. **Method of Requesting Reconsideration**

The State can write to the Office of Special Education Programs Acting Director, Patricia J. Guard, at the address below, if it wishes the Department to reconsider any aspect of these Special Conditions. The request must describe in detail the changes to the Special Conditions sought by the State and the reasons for those requested changes.

5. **Submission of Reports and Documentation**

All reports and documentation that are required to be submitted by California to the Department under the Special Conditions should be submitted to:

U.S. Department of Education
Office of Special Education and Rehabilitative Services
Attn: Perry Williams
400 Maryland Ave, SW
Washington, DC 20202-2550

37

Presiding Administrative Law Judge

### General Jurisdiction Divisions

| Office | Sacramento | Los Angeles | Oakland | San Diego |
|---|---|---|---|---|
| Presiding Judge | Jonathan Lew | Janis Rovner | Michael Cohn (Acting) | Alan R. Alvord |
| Administrative Law Judges | Karen Brandt<br>Catherine B. Frink<br>Gary A. Geren<br>Ann E. Sarli<br>C. Trevor Skarda<br>Stephen J. Smith<br>Ralph J. Venturino<br>Robert Walker<br>Marilyn Woollard | Julie Cabos-Owen<br>Ralph B. Dash<br>Robert Eisman<br>Humberto Flores<br>Mark Harman<br>Sandra Hitt<br>Daniel Juarez<br>Carolyn Magnuson<br>Christine McCall<br>Joseph Montoya<br>Deborah Myers<br>Vincent H. Nafarrete<br>Samuel D. Reyes<br>David B. Rosenman<br>Christopher Ruiz<br>Eric Sawyer<br>Erlinda Shrenger<br>Timothy Thomas<br>H. Stuart Waxman | Mary-Margaret Anderson<br>Ruth S. Astle<br>M. Amanda Behe<br>David L. Benjamin<br>Melissa Crowell<br>Perry O. Johnson<br>Steven Owyang<br>Nancy Rasmussen<br>Cheryl Tompkin | H. James Ahler<br>Gary Brozio<br>Donald P. Cole<br>Roy W. Hewitt<br>Stephen E. Hjelt<br>Vallera Johnson<br>Greer D. Knopf |

### Special Education Divisions

| Office | Sacramento | Laguna Hills | Van Nuys |
|---|---|---|---|
| Presiding Judge(s) | Karl Engeman<br>Sherianne Laba | Timothy Newlove | Michael Scarlett |
| Administrative Law Judges | Suzanne B. Brown<br>Peter P. Castillo<br>Richard M. Clark<br>William O. Hoover<br>Debra Huston<br>Deidre L. Johnson<br>Judith Kopec<br>Charles Marson<br>John Thawley | Elizabeth Feyzbakhsh<br>James Goff<br>Robert Helfand<br>Robert Iafe<br>Jacqueline Jones<br>Darrell Lepkowsky<br>Judith Pasewark<br>Susan Ruff | Richard Breen<br>Eileen Cohn<br>Glynda Gomez<br>Elsa Jones<br>Ann MacMurray<br>Stella Owens-Murrell<br>Clara Slifkin<br>Wendy Weber |

Ron Diedrich, Director and Chief Administrative Law Judge
Vacant, Assistant Chief Administrative Law Judge
Jan Soto, Chief of Administration
Kay Lynch, Assoc. Gov. Program Analyst
Margaret Farrow, Staff Counsel
Kay Stubbings, Executive Assistant

Back to Top of Page

© 2007 State of California.

Conditions of Use  Privacy Policy  Accessibility/Nondiscrimination Policy
Download Free Readers

## Office of Administrative Hearings

search

○ My CA    ● This Site

### Hearing Calendar

**Sacramento**

**July 2007**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

**Welcome to the Office of Administrative Hearings**

**Office:** Sacramento
**Hearing Date:** July 19th, 2007

**Search for Hearings by:**

► **Case Name**
► **Case Number**
► **Agency Name**
► **Hearing Date**

► **Rulings on Continuances/Motions**

Note: Special Education calendar information is not available online at this time.

**Case Number:** 2007020687   **Hearing Type:** Settlement Conference
**Agency Number:** VMRC   **Agency Name:** DDS - Client
**Case Name:** R, J
**Hearing Location:** Valley Mountain Regional Ctr
1620 Cummins, , Modesto map
**Time:** 1:30:00 PM
**Judge Assigned to Hearing:** Robert Walker   **Court Reporter:**

**Case Number:** 2007040806   **Hearing Type:** Regular Hearing
**Agency Number:** 79/07-44   **Agency Name:** Smog Check
**Case Name:** Smog Masters; Grubbs, Tae
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** Marilyn Woollard   **Court Reporter:**

**Case Number:** 2007050159   **Hearing Type:** Regular Hearing
**Agency Number:** 77/06-115   **Agency Name:** BAR
**Case Name:** F. Radich Motors
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** Ann Sarli   **Court Reporter:**

**Case Number:** 2007050561   **Hearing Type:** Regular Hearing
**Agency Number:** H-4759 SAC   **Agency Name:** Real Estate
**Case Name:** Veltri, Joseph Anthony
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** SHERIANNE Z-laba   **Court Reporter:**

**Case Number:** 2007050559   **Hearing Type:** Regular Hearing
**Agency Number:** H-4731 SAC   **Agency Name:** Real Estate
**Case Name:** Lewis, Travis James
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** SHERIANNE Z-laba   **Court Reporter:**

**Case Number:** 2007050560   **Hearing Type:** Regular Hearing
**Agency Number:** H-4760 SAC   **Agency Name:** Real Estate
**Case Name:** Law, Garrett Sanders
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** SHERIANNE Z-laba   **Court Reporter:**

**Case Number:** 2007060509   **Hearing Type:** Regular Hearing
**Agency Number:** 795-A   **Agency Name:** Engineers
**Case Name:** Heinzen, Ronald Terry

Case 3:08-cv-00226-W-AJB   Document 1-4    Filed 02/05/2008   Page 75 of 86

Hearing Location: Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
Time: 9:00:00 AM
Judge Assigned to Hearing: Alan Meth   Court Reporter:

Case Number: 2007040352   Hearing Type: Regular Hearing
Agency Number: H-4696 SAC   Agency Name: Real Estate
Case Name: Valencia, Daniel
Hearing Location: Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
Time: 1:30:00 PM
Judge Assigned to Hearing: SHERIANNE Z-laba   Court Reporter:

Back to Top of Page

© 2007 State of California.

Conditions of Use  Privacy Policy  Accessibility/Nondiscrimination Policy
Download Free Readers

# OFFICE OF ADMINISTRATIVE HEARINGS

## THE FOLLOWING MATTERS ARE SCHEDULED
## TO BE HEARD ON THIS DATE:

### THURSDAY, JULY 19, 2007

| CASE | TIME | ROOM | JUDGE | REPORTER |
|------|------|------|-------|----------|

**BOARD OF ENGINEERS**

| HEINZEN, RONALD | 9:00 A.M. | A | AL METH | HUNTINGTON |
|---|---|---|---|---|

**BUREAU OF AUTO REPAIR**

| SMOG MASTERS | 9:00 A.M. | B | KAREN BRANDT | HUNTINGTON |
|---|---|---|---|---|

**B EAU OF AUTO REPAIR**

| F. RADICH MOTORS | 9:00 A.M. | 203-C | ANN SARLI | HUNTINGTON |
|---|---|---|---|---|

**DEPT. OF REAL ESTATE**

| LEWIS, TRAVIS JAMES | 9:00 A.M. | 203-D | SHERIANNE LABA | HUNTINGTON |
|---|---|---|---|---|
| LAW, GARRETT | 9:00 A.M. | | RALPH VENTURINO | |
| VELTRI, JOSEPH | 9:00 A.M. | | | |
| VALENCIA, DANIEL | 1:30 P.M. | | | |

HEARING ROOMS A AND B    -    ← ← ← ← ← ← ← ← ←

HEARING ROOMS 203-C and 203-D    → → → → → → → → → →

**ellendowd@sbcglobal.net**

| | |
|---|---|
| **From:** | "Southwest Airlines" <SouthwestAirlines@mail.southwest.com> |
| **To:** | <ELLENDOWD@sbcglobal.net> |
| **Sent:** | Saturday, July 14, 2007 4:23 PM |
| **Subject:** | Ticketless Confirmation - DOWD/ELLEN - C44D6M |





Receipt and Itinerary as of 07/14/07 6:23 PM

## Confirmation Number
## C44D6M

Confirmation Date: 07/14/07
Received: ELLEN DO

Check In Online

### Passenger Information

| Passenger Name | Ticket# | Account Number |
|---|---|---|
| DOWD/ELLEN | 526-2323028838-1 | 00000320674196 |

### Itinerary:

| Date | Flight | Routing Details |
|---|---|---|
| Thu Jul 19 | 1020 | Depart SAN DIEGO CA (SAN) at 7:20 AM |
| | | Arrive in SACRAMENTO CA (SMF) at 8:50 AM |
| Thu Jul 19 | 1054 | Depart SACRAMENTO CA (SMF) at 3:30 PM |
| | | Arrive in SAN DIEGO CA (SAN) at 4:55 PM |

### Cost and Payment Summary

| | |
|---|---|
| Air | $ 245.58 |
| Tax | $ 25.22 |
| PFC Fee | $ 9.00 |
| Security Fee | $ 5.00 |

**Total Payment: $284.80**

Current payment(s)
07/14/07 MASTERCARD xxxxxxxxxxxx7934 Ref 526-2323028838-1 $284.80

### Fare Rule(s)
Valid only on Southwest Airlines. All travel involving funds from this Confirm no. must be completed by 07/14/08. Any change to this itinerary may result in a fare increase.

Fare Calculation:

ADT- 1 SANWNSMF YL 132.00 SMFWNSAN YL 132.00 $264.00 ZP6.80 XFSAN4.50 SMF4.50 AYSAN2.50 SMF2.50 $284.80

### Important Checkin Requirement

7/14/2007

**PASSENGER'S RECEIPT, TAXICAB FARE**

(916) 768-7118

Date 7, 19, 07

Amount of Fare $ 25. 20

Other Charges $ _____

Total . . . . $ _____

Driver's Name SIMON

Cab number 59

David
Seals —
CA Dept
of R. E.

**PASSENGER'S RECEIPT, TAXICAB FARE**

(916) 768-7118

Date 7, 19, 07

Amount of Fare $ 35 00

Other Charges $ _____

Total . . . . $ _____

Driver's Name SIMON

Cab number 59

---

**Louise Hatzenbehler**
Certified Shorthand Reporter No. 12312



Peters Shorthand
Reporting Corporation

3336 Bradshaw Road, Suite 240, Sacramento, CA 95827
**phone:** 916-362-2345  **fax:** 916-362-2393
**web:** www. psr-depo.com

**EXHIBIT 13**

California Home



Tuesda

**Office of Administrative Hearings**

○ My CA  ● This Site    [ search ]

**Flex your POWER** SM

## Hearing Calendar - Search by Hearing date

**Office:** Sacramento
**Hearing Date:** July 31st, 2007

**Case Number:** 2007040051   **Hearing Type:** Regular Hearing
**Agency Number:**    **Agency Name:** Other (sac)
**Case Name:** Harvey, Cheryl
**Hearing Location:** San Joaquin Co Emply Ret Assoc
6 S. El Dorado, Suite 700, Stockton map
**Time:** 9:30:00 AM
**Judge Assigned to Hearing:** Ann Sarli   **Court Reporter:**

**Case Number:** 2007070164   **Hearing Type:** Regular Hearing
**Agency Number:** CVRC   **Agency Name:** DDS - Client
**Case Name:** C, T
**Hearing Location:** Central Valley Regional Ctr
5441 W. Cypress, , Visalia map
**Time:** 10:00:00 AM
**Judge Assigned to Hearing:** Gary Geren   **Court Reporter:**

**Case Number:** 2007070551   **Hearing Type:** Regular Hearing
**Agency Number:** H-2140 FR   **Agency Name:** Real Estate
**Case Name:** Williams, Michael
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 1:30:00 PM
**Judge Assigned to Hearing:** Judith Z-kopec   **Court Reporter:**

**Case Number:** 2007060446   **Hearing Type:** Regular Hearing
**Agency Number:** H-2121 FR   **Agency Name:** Real Estate
**Case Name:** Moncayo, Arthur
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** Judith Z-kopec   **Court Reporter:**

**Case Number:** 2007060447   **Hearing Type:** Regular Hearing
**Agency Number:** H-4781 SAC   **Agency Name:** Real Estate
**Case Name:** Brooks, Tamara Jane
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** Richard Z-clark   **Court Reporter:**

**Case Number:** 2007070193   **Hearing Type:** Regular Hearing
**Agency Number:** H-4800 SAC   **Agency Name:** Real Estate
**Case Name:** Nash Iii, Isaiah
**Hearing Location:** Administrative Hearings
2349 Gateway Oaks Drive, Suite 200, Sacramento map
**Time:** 9:00:00 AM
**Judge Assigned to Hearing:** Richard Z-clark   **Court Reporter:**

**Ellen Dowd**
**Attorney At Law**
**State Bar # 141206**
**2658 Del Mar Heights Road #228**
**Del Mar, California 92014**
**(Tel) 858-342-8360  (Fax) 858-755-6348**

July 3, 2007

Honorable Sherrianne Laba
Presiding Administrative law Judge
Office of Administrative Hearings
Special Education Division
2349 Gateway Oaks Drive
Suite 200
Sacramento, California 95833                    <u>VIA FAX# 916-263-0980</u>

Re:  Capistrano Unified School District v. ▮▮▮▮▮▮▮▮
     OAH Case Number: N2007060627

Honorable Madam:

This is in response to the District reiterated refusal to provide me with my client, ▮▮▮▮▮▮▮▮'s
school records.

I became involved in this case in late March, 2007.  At that time David's parents were facing Due
Process Hearing dates of April 2-4, 2007.  I did not have adequate time to request David's records fro
the District.

Thereafter, on March 28, 2007 Judge Robert continued the Due Process Hearing dates to May 21-24,
2007.

At this time I was reviewing records provided to my by David's parents.  There were nowhere near
4,000 pages of records.

Settlement discussions ensued throughout April and May.  While the case was close to settlement at
the last minute on May 16, 2007 at 4:30 p.m. it was apparent that the case would not be settled.

However, there again wasn't enough time for me to request ▮▮▮▮'s records from the District and
review them before hearing.  I used my clients' copies of records to prepare my cross-examination
questions for District witnesses.  It was established at Hearing that the records provided to me by my
clients had personal comments written on them by David's parents, and were not useable at Hearing.



On May 9, 2007, the District scheduled a IEP for May 30, 2007. The pendency of this IEP did not prevent the District from proceeding to Hearing which took place May 21-23, 2007.

At the May 30, 2007 IEP I requested that the District provide me with a copy of ▒▒▒s records. The IEP Team agreed to provide them to me within 5 school days.

On June 6, 2007, I received a call from the District indicating that ▒▒▒'s records were ready to be picked up. I was notified for the first time during this telephone conversation that there were 4,400 pages of paper that the District had photocopied, and that the records would only be released upon payment of $861.20.

Prior to photocopying these records, no one at the District contacted me to advise me that the records were voluminous. Had this happened, I would have examined the documents at the District Office and selected the ones that I wanted to be copied.

I notified Steven Lake that I was shocked that there were so many pages of records, considering that ▒▒▒ had only attended public school in the District for 5th grade and 8th grade. Mr. Lake responded that he would investigate the charges for the records.

In the next contact by Mr. Lake he advised me that the actual cost of photocopying the records was $661.20. I responded that my clients do not have the means to pay this amount.

My most recent suggestion to Mr. Lake was that I go to the District Office and cull through the voluminous records and indicate which copies I wanted, and pay only for those copies.
Mr. Lake and the District have thus far refused my request, and have prevented me from obtaining any of ▒▒▒'s records.

Paying for these records, while having to take time off from work and engage an attorney for not one but two Due Process hearings is a financial hardship for my clients. The tug-of-war over provision of student records which, by law, my clients have an absolute right to, is not only contrary and obstructive to the spirit and letter of special education laws it is stressful and costly to engage in these unrelenting arguments with no oversight by OAH.

I was unaware before June 6, 2007 that there were 4,400 pages of records. I assumed that the records shown to me by my clients (under 500 pages) constituted the bulk of the records. As an attorney, I am ethically bound to undertake a reasonable investigation of my clients' defense before agreeing to participate in a case. The District is preventing me from discharging my professional responsibility, and is denying my clients the right to be represented by counsel (20 U.S.C. § 1415(b) (1), 34 C.F.R. § 300.501(a)(1), California Education Code § 56501(b)(3); 20 U.S.C. § 1415(h)(1), 34 C.F.R. § 300.509 (a)(1), California Education Code § 56505 (e)(1)).

ALJ Peter Paul Castillo issued an Order on June 26, 2007 which stated "Additionally, the issue whether the District provided Parents with copy of the disputed IEP and BSP is an issue for hearing..." While the parents attended IEP Meetings and left the IEP Meetings with copies of the IEP, they are entitled to the "official" copy from their son's permanent school records. There is no guarantee that the copy the Parents left with was not changed, amended or appended to.

There is simply no justification for withholding the 4,400 pages of records. There is also no justification for going forward with yet another due process hearing on another IEP, after the 10/17/06 and 12/5/06 IEPs were determined to be an offer of FAPE. What is the purpose of going to another hearing on whether the 5/30/07 IEP is an offer of FAPE? Is it a better offer of FAPE? Where is the legal theory to support the fact that the District wanted to have the 10/17/06 and 12/5/06 declared a FAPE for purposes of implementing the IEPs to deliver a FAPE to ███, when, on the heels of the May 21-23, 2007 hearing, there was already another IEP scheduled which the District also intended to file Due Process on, and has filed for Due Process. Is this an admission by the District that it cannot implement the 10/17/06 and 12/5/06 IEPs because they are not a FAPE?

Who gets to decide which of the FAPE offers in the various IEPs will actually be implemented? Does it matter that ████ is not in school for the summer, so no IEP needs to be implemented until September, when the District and parents have agreed in writing to convene another IEP Team Meeting the in the first few weeks of school? If the 5/30/07 IEP is an Addendum to the 3/26/07 IEP, and thereafter a September, 2007 IEP is written, are we looking at a scenario where there are potentially 5 different IEPs that offer FAPE. What about the fact that the District is required to make one, formal offer of FAPE (*Union School Dist. v. Smith*, 15 F. 3d 1519 (9th Cir. 1994))? Or the fact that an IEP is intended to be a management tool ( Department of Education: IEP Purpose Requirements, 46 Fed. Reg. 5460 (1987), 1 EHLR 103:43)?

I believe that the District is thwarting the purpose of IDEA, which is intended to benefit students and their parents, and not the Districts. I would appreciate a response by OAH regarding the provision of records prior to any Due Process Hearing, as reserving this issue for hearing would be prejudicial to my clients.

Respectfully yours,

Ellen Dowd

CC:  Steven Lake, Esq.          619-233-6118
     Jack Clarke, Esq.          951-686-3083

SE 15 (8-03)



# Capistrano Unified School District

## Individualized Education Program

### MEETING NOTES

Date of IEP Meeting: 05/30/2007

Page 14 of 15

**Student:** ▮▮▮

**ADDITIONAL NOTES:**

Team introduced themselves. Program Specialist offered parents a copy of rights, and the parents waived a reading of the rights. Program Specialist reviewed the purpose of the meeting, and stated that the CUSD team members would like ▮▮▮ to attend at least a part of this meeting to discuss his transition to high school. Parent attorney stated that she felt it would be agreeable to ▮▮▮ attending the last 10 minutes of the meeting. Resolution Specialist asked the Assistant Principal of the high school if students typically attend IEP meetings. She stated that usually students attended for at least 20 minutes. Team agreed to bring ▮▮▮ into the meeting at the end to discuss transitional issues in high school.

Team offered Spanish Interpretation for ▮▮▮'s mother by the Assistant Principal if needed. Assistant Principal reviewed the differences between Resource collaborative and direct/small group classes. Program Specialist asked about a resource study skills class. Assistant Principal explained that the Resource study skills class is a directed, small group class in which ▮▮▮ would be able to work on organizational skills and study habits. Parent asked if this is the same as tutoring or homework club. Assistant Principal responded that it is not the same, that the Resource class is taught by a credentialed special education teacher. Resolution Specialist and Assistant Principal explained the block schedule system with advisement and tutorial at the high school level. CUSD IEP team members recommend that ▮▮▮ receive RSP services in a collaborative math class and a RSP directed study skills class. Resolution specialist stated that depending on his schedule, he may end up with a collaborative English class, and the parent can request it like any other parent can, however, the CUSD IEP team members do not feel that he needs the services in English/Language Arts. Parent asked if students who attend Resource classes stand out, or if others know they are students who receive special ed services. Assistant Principal explained that it is different at the high school level and that the classes are integrated on the campus, and the other students don't really pay attention to where they go to school. Psychologist and general education teacher, CUSD team members shared that the people identified on each goal are responsible. Assistant Principal explained that students are going. School Psychologist and general education teacher, CUSD team members shared that the people identified on each goal are responsible. Assistant Principal explained that ▮▮▮ was interested in football. Program specialist asked who is responsible to implementing the goals. Assistant principal explained that ▮▮▮ want to be in crumline because he thought you had to be in band first and he was concerned about conflict in football. David stated that he does not want to be in crumline because requested that ▮▮▮ be sent to the meeting at this time to discuss his elective choices. ▮▮▮ arrived at the meeting at 2:12 PM. David stated that he does not want to be in crumline because he thought you had to be in band first and he was concerned about conflict in football. Assistant principal explained foreign language available science courses and health. Assistant Principal stated that a lot of general education students would like to attend the resource class because they desire the options. Resolution specialist explained the academic requirements to maintain football. Parent attorney purpose of the resource class. Assistant Principal asked about what the resource class is. Assistant Principal explained the requested that ▮▮▮ leave the meeting at 2:35 PM. Program Specialist asked David if he would like to stay. Parent attorney insisted David leave the meeting.

Team discussed ESY. Program specialist asked team members for their input. Case carrier reported that the nature and severity of ▮▮▮'s disability did not require that he have ESY services to maintain progress on goals and objectives. He has demonstrated over previous summers and over school breaks that he is able to recoup in an amount of time typical to his general education peers. He has not demonstrated regression on skills over any previous summers or school break. General education teacher asked for clarification about ESY vs. regular summer school. CUSD IEP team members stated that they do not feel ▮▮▮ needs ESY. Assistant principal explained general education summer school program, which is optional. Program specialist stated that SJHHS students who elect to attend summer school will do so at Capistrano Valley High School, since the school site is not yet open. Case carrier will provide a summer school application to the parents. Program Specialist stated that the CUSD IEP team members continue to recommend a Behavior Support Plan as was discussed at the last meeting. Parent attorney requested the current GPA. Program Specialist stated that according to a grade report printed on 5/21/07, David's GPA was 3.0. Parent attorney stated that she felt this was suspect since that was the first date of the due process hearing. Parent attorney requested a complete copy of records. Team will provide them within 5 school days. Parent attorney stated that the parents will be unilaterally placing him in a summer program and requesting reimbursement from the District. The District will respond to this in writing.

| FOLLOW-UP ACTIVITY | PERSON RESPONSIBLE | DATE DUE |
|---|---|---|
| Case carrier will schedule an IEP meeting within the first few weeks of the school year. | SJHHS Case Carrier | 09/18/2007 |

Current

1  Ellen Dowd, Esq.
   State Bar Number 141206
2  2658 Del Mar Heights Road #228
   Del Mar, California  92014
3  (858) 342-8360

4

5  **Attorney for Respondent, ▮▮▮▮▮▮▮▮**

6

7

8              **BEFORE THE STATE OF CALIFORNIA**

9           **OFFICE OF ADMINISTRATIVE HEARINGS**

10               **SPECIAL EDUCATION DIVISION**

11

12  In The Matter Of                         )  Case No.: N 2007060627
                                             )
13  CAPISTRANO UNIFIED SCHOOL                )  RESPONDENT, ▮▮▮▮▮▮▮▮S
    DSTRICT,                                 )  MOTION TO DISMISS COMPLAINT
14                                           )  WITHOUT PREJUDICE PENDING
                                             )  RECEIPT OF RECORDS;
15              Petitioner,                   )  ALTERNATIVELY, MOTION TO
                                             )  CONTINUE HEARING
16  v.                                       )
                                             )  Hearing Date: July 19, 2007
17  ▮▮▮▮▮▮▮▮                                  )  Time:  9:30 a.m.
                                             )
18              Respondent.                   )
                                             )
19  ─────────────────────────────           )

20

21  **To Petitioner, CAPISTRANO UNIFIED SCHOOL DISTRICT and its attorney of record:**

22       **Respondent, ▮▮▮▮▮▮▮▮** moves for an Order dismissing the above-referenced

23  action without prejudice due to the fact that Respondent cannot properly prepare for Hearing

24  without receipt of Respondent's school records, which were timely requested by Respondent,

25  and agreed to be produced by Petitioner at the IEP on 5/30/07, but have yet to be produced.

26       This motion is based upon the correspondence between the parties, which is outlined in

    the accompanying Chronology Re: Educational Records, Exhibit "A".
27
         This motion is also based upon the reasoning in the Determination of Respondent's
28
    Motion to Dismiss Petitioner's complaint in Case No. N2005070427 (Exhibit "B"), which states,