1  Ellen Dowd, Esq.
2  State Bar Number 141206
   2658 Del Mar Heights Road #228
3  Del Mar, California  92014
   (858) 342-8360
4  Fax (858) 755-6348
5  ellendowd@sbcglobal.net

6
   **Attorney for Plaintiff, C.S**
7

8

9
                 **UNITED STATES DISTRICT COURT**
10
               **SOUTHERN DISTRICT OF CALIFORNIA**
11
                                      )
12 C.S., by and through his Conservator, ) CASE NO.:  08 CV 0226 W (AJB)
13 MARY STRUBLE, on behalf of himself ) PLAINTIFF'S MEMORANDUM OF
   and all others similarly situated,    ) POINTS AND AUTHORITIES IN
14                                        ) SUPPORT OF TEMPORARY
                                          ) RESTRAINING ORDER
15              Plaintiff,                )
16 v.                                     ) Date:  To Be Set
                                          ) Time:  To Be Set
17                                        ) Judge: Hon. Thomas J. Whelan
   CALIFORNIA DEPARTMENT OF             )
18 EDUCATION, a State Agency,           )
19            Defendant.                  )

20

21

22

23

24

25

26

27

28

                              08 CV 0226 W (AJB)
                        Plaintiff's Memorandum of Points
                        and Authorities in Support of
                        Temporary Restraining Order

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION...................................................................................1

II.     FACTS.....................................................................................................2

III.    ARGUMENT............................................................................................8

        1.      Legal Standard for TRO.............................................................8

        2.      Irreparable Harm.........................................................................9

        3.      Public Purpose/Balance of Hardships.....................................12

        4.      Violations of U.S. Constitution................................................13

        5.      Time Is of the Essence In Issuing TRO...................................15

        6.      Bond Requirement.....................................................................15

IV.     CONCLUSION......................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES                                    Page(s)

*Board of Education of Fayette County, Kentucky v. L.M.,__ F.3d__(6th Cir. 2007)...........10*

*Brown v. Board of Education*...................................................................................14

*Caribbean Marine Serv. Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988).................8, 9

*Cassem v. Bowen,* 824 F.2d 791, 795 (9th Cir. 1987)....................................................8

*Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir. 1992)..................................8

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,*

    415 U.S. 423, 439 (1974).........................................................................8

*Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS,*

    306 F.3d 842, 873 (9th Cir. 2002)...............................................................9

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,*

    887 F. Supp. 1320, 1323 (N.D. Cal. 1995).....................................................8

*Los Angeles Memorial Coliseum Commission v. National Football League,*

    634 F.2d 1197, 1201 (9th Cir. 1980)............................................................9

*Midget v. Tri-County Met. Transp. Dist.,* 254 F.3d 846, 851 (9th Cir. 2001)...........................9

*Mills v. Board of Education,* (DC, 1972)....................................................................14

*Nat'l Ctr. For Immigrants Rights v. INS,* 743 F.2d 1365, 1369 (9th Cir. 1984).................10, 13

*Pennsylvania Association for Retarded Children (PARC) v. Pennsylvania* (PA, 1971)........14

*Plyer v. Doe,* 457 U.S. 202, 221-222 (1982)................................................................10

*Reid ex rel. Reid v. District of Columbia,* 401 F. 3d 516, 526 (D.C. Cir. 2005).....................10

*Roe v. Anderson,* 134 F.3d 1400, 1402 (9th Cir. 1998)...................................................9

*Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005)..........................8, 11

*Schaffer v. Weast,* 546 U.S. 49, 126 S. Ct. 528, 163 L. Ed. 2d 387(2005).............................12

*School Committee of Burlington v. Department of Education,* 471 U.S. 359, 369 (1985).....10

*Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1119 (9th Cir. 1999).................9, 13

*United States v. Nutri-cology, Inc.* 982 F.2d 394, 397 (9th Cir. 1992)....................................9

## STATE CASES

Page(s)

*Professional Engineers in California Government v. Department of Transportation,*
15 Cal. 4th 543, 547 (1997)................................................................2

*Professional Engineers in California Government v. Kempton,* 40 Cal. 4th 1016 (2007)........2

## FEDERAL STATUTES

Page(s)

34 C.F.R § 300.7(c) ............................................................................1

34 C.F.R § 300.342...........................................................................12

United States Code, Title 20, § 1415(f)(3)(A)(ii) and (iii)
    Individuals With Disabilities Education Act...................................................3

United States Constitution
    Art. VI § 2............................................................................13
    Amendment XIV...................................................................13, 14

## FEDERAL RULES OF CIVIL PROCEDURE

FRCP 65 (c)..................................................................................15

## STATE STATUTES

Title 5 CCR § 3082..........................................................................3

Calif. Ed. Code §56502(h)....................................................................11

Calif. Ed. Code §56505(c)(1)..................................................................3

Calif. Govt. Code §6250......................................................................3

Calif, Welfare & Inst. Code § 827...........................................................5

## OTHER

*San Rafael City School District v. Student,* SEHO, 2003-411 (consolidated with 400).......12

# I.

## **INTRODUCTION**

As a prerequisite to the State of California receiving federal funding for the education of children with disabilities affecting their education, as defined by IDEA regulations, 34 C.F.R § 300.7(c) as:

    (1)    Autism;

    (2)    Deaf-blindness;

    (3)    Deafness;

    (4)    Emotional disturbance;

    (5)    Hearing impairment;

    (6)    Mental retardation;

    (7)    Multiple disabilities;

    (8)    Orthopedic impairment;

    (9)    Other health impairment;

    (10)   Specific learning disability;

    (11)   Speech or language impairment;

    (12)   Traumatic brain injury,

CDE is obligated to contract with an agency within the state to conduct special education mediations and due process hearings. In California, between 1989 and June 30, 2005, this was done through an Interagency Agreement between CDE and Special Education Hearing Office (SEHO) of the McGeorge School of Law. During the approximately 16 years in which SEHO maintained the Interagency Agreement, the hearing officers who conducted the due process hearings[1], decided due process cases completely in favor of students about 50% of the time.

---

[1] SEHO appropriately sub-contracted out the mediation aspect of the Interagency Agreement to qualified mediators throughout the state, including retired teachers and principals, as well as attorneys. Not only did this provide a wealth of knowledge of special education from many perspectives, it avoided conflicts and prevented depletion of hearing officers available to hear cases.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

The Interagency Agreement with SEHO ended on June 30, 2005. During March, 2004 through March, 2005, CDE was forced to recognize an "implied civil service mandate" pursuant to *Professional Engineers in California Government v. Department of Transportation,* 15 Cal. 4th 543, 547 (1997) (See, Ex. 24 to Complaint), and was required to award the current Interagency Agreement No. 4427 to OAH.

CDE awarded the Interagency Agreement to OAH with grave misgivings, which were expressed in Board Decisions (Ex. 23 to Complaint) as: lack of expertise (Ex. 23, p. 9), not being able to perform the contracted work in a timely and effective manner (Ex. 23, p. 12), lack of sufficient professional and support staff (Ex. 23, p. 13), requiring at least two years to hire and train necessary professional and support staff (Ex. 23, p. 13), and "the necessary expert knowledge, experience and ability is not available in the civil service" (Ex. 23, p. 14).

On November 5, 2007, the civil servant mandate of *Professional Engineers in California Government v. Department of Transportation,* 15 Cal. 4th 543, 547 (1997) was ruled unconstitutional. *Professional Engineers in California Government v. Kempton,* 40 Cal. 4th 1016 (2007). Plaintiff, on behalf of himself and other special education students and parents in the State of California who have obtained less than complete relief from OAH since July 1, 2005, respectfully submits this Memorandum of Points and Authorities, which will refer to, as well as supplement some of the Exhibits filed with Plaintiff's Complaint.

## II.

## FACTS

On May 25, 2005, CDE awarded Interagency Agreement No. 4427 (Ex. 1 to Complaint) to OAH effective July 1, 2005-June 30, 2008. There is significance to the awarding of this contract approximately five weeks before OAH's services would start. Specifically, the Interagency Agreement required that every

2

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

Administrative Law Judge (ALJ) hired by OAH to hear special education due process hearings, have 80 hours of training prior to presiding over special education due process hearings. (Ex. A to Ex. 1, "Scope of Work" C(2). Also, Exhibit "A" attached hereto, CDE's 10/12/06 proposed additions to regulations, Title 5 California Code of Regulations §3082, states, "The proposed regulations contemplate a training component to be provided to each hearing officer prior to his or her assumption of duties. Training for each hearing officer should be such that every hearing officer possesses familiarity with precepts central to special education, including services and supports available to pupil's with exceptional needs and a demonstrated ability to write clear and concise decisions." (Ex. "A" hereto, p. 5).

This is in conformity with the IDEA mandate provided in Pursuant to 20 U.S.C. § 1415(f)(3)(A)(ii) and (iii), that a due process hearing must be:

> [H]eard by a hearing officer who possesses knowledge of, and the ability to understand, the provisions of the IDEA, federal and state regulations pertaining to the IDEA, the legal interpretations of the IDEA by federal and state courts, ... possesses the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice...and possesses the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice. (See, also California Education Code § 56505(c)(1)).

However, while documents obtained under the California Public Records Act, Calif. Govt. Code §6250, showed in October 17-21, and 24-28, 2005 there were trainings in "Conducting An Administrative Hearing" and "Mediation For Administrative Law Judges" (Ex. B, hereto), the actual special education training took place over only 2 days, November 8-9, 2005. The sign-in sheets for these trainings reveal woefully deficient topics concerning precepts central to special education (Ex. B, hereto). Most of the topics on November 8, 2005 were taught by Regional Center, a distinctly separate agency, which deals with children and adults

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

with developmental disabilities, regardless of whether they are receiving special education services.[2] Additionally, the only special education category addressed on this date was a one- hour lecture on "Autism and 5th Category" presented by Alta Regional Center. 5th Category is not a classification for special education. It is a classification for Regional Center developmental and respite services for individuals who approximate Autism (including Asperger's syndrome), but are not completely within this diagnosis. None of the other eleven special education qualification categories was addressed in November, 2005.

According to the reauthorization of IDEA, coincidentally, on July 1, 2005, Autism Spectrum Disorder was recognized as the fastest growing special education qualification in the country. Obviously, no training in Autism was done between May 25, 2005 and November 8, 2005, and, one hour of training is completely inadequate.

The Quarterly report dated 1/1/06-3/31/06, published by CDE and OAH (Ex. 4 to Complaint) states that the ALJs were "trained in mediation" (Ex. 4, p. 3). There is no statement about training in special education.

On November 7, 2006 to November 9, 2006, OAH again underwent training. These training sessions, according to the sign-in sheets (Exhibit "C" hereto), took place far fewer than the required 80 hours. Due to the frustration noted at hearings by students' attorneys, concerning the conduct and Decisions of the OAH ALJs, CDE condoned a 2 ¼-hour training on "Handling Difficult Attorneys/Contempt (Ex. C, hereto). This seminar may have been precipitated by Plaintiff's counsel's own objection to an OAH ALJ in a July, 2006 hearing in a different matter, in which the District subpoenaed the Juvenile Court Probation Officer to testify. The Probation Officer appeared at the hearing, but did not have an Order signed by the

---

[2] It should be noted that OAH conducts "fair hearings" for clients of Regional Centers throughout the state who have a complaint against Regional Center.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

Presiding Juvenile Court Judge, as required by California Welfare & Institutions Code § 827. Despite this, the ALJ ordered the Juvenile Probation Officer to testify, to which Plaintiff's counsel objected, stating, "this violates my client's rights to privacy under Welfare and Institutions Code § 827, and constitutes judicial misconduct." The ALJ ordered the testimony of Juvenile Probation, at the District's urging. In that case, the student prevailed, and there was no mention of Juvenile Probation in the Decision.

Several concerns about the conduct of due process hearings were raised in April, 2007 in connection with an OAH Special Education Advisory Committee Meeting held in Santa Ana, California on April 26, 2007. CDE attended this meeting. Attached as Exhibit "D" hereto, are memoranda prepared by Plaintiff's counsel to OAH Presiding ALJ, Hon. Ronald Diedrich expressing concerns about OAH's handling of special education due process hearings. These concerns were not addressed by either OAH or CDE at the Advisory Committee meeting or thereafter.[3]

On July 11, 2007, Plaintiff's counsel wrote to Perry Williams of the United States Department of Education (Exhibit "E", hereto, without attachments), outlining concerns about CDE and OAH. Mr. Williams called Plaintiff's attorney and stated that The U.S. Department of Education did not have the funds to conduct an audit of CDE or OAH, and referred Plaintiff's counsel to Messrs. James Belloti and Shane Berli at CDE.

On August 17, 2007, Plaintiff's counsel wrote to James Belloti and Shane Berli at CDE about the various violations by OAH, and lack of oversight by CDE (Exhibit "F", hereto). In response to this letter, CDE initiated a meeting which

---

[3] Except, that sometime after September 1, 2007, OAH did establish a telephone message line to receive information about cases that were settled or withdrawn over the weekend. Many special education attorneys work over the weekend. OAH ALJs do not.

5                    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

occurred on September 11, 2007. Participants in this meeting were Ellen Dowd, Esq., Tania Whiteleather, Esq. and John Nolte, Esq. (attorneys representing students), Dayon Higgins (parent advocate), James Belloti and Shane Berli of CDE, and Gregory Roussev, Esq., attorney for CDE. Prior to this September 11, 2007 meeting, Plaintiff's counsel prepared a notebook for each participant which contained numerous documents in support of the concerns parents had about OAH's handling of the due process hearings. The notebook contained 23 tabs, representing different categories of documents, most of which were publicly available thorough CDE.

A copy of the table of Contents of this notebook is attached hereto as Exhibit "G".

Among the documents in this notebook is a pre 5/25/05 endorsement of OAH by Capistrano Unified School District, one of the most aggressive and difficult school districts in the state (Exhibit "H", hereto). In an undated letter to California Performance Review ("CPR"), the Capistrano District argued that utilizing OAH would result in a "significant direct savings to the citizens of California" (Ex. H, p. 2), and urged CPR to replace SEHO with OAH.

This endorsement to CPR was published on a California government website (Exhibit "I", hereto), which stated that in comparison to SEHO, which had the Interagency Agreement between 1989-2005, by using OAH, "CDE could save about $550,000 annually." (Ex. I, p. 3).

Ironically, according to excerpts of the May 1, 2007 Subcommittee No. 2 on Educational Finance (Exhibit "J", hereto), in February, 2007 CDE requested an additional $378,000 to fund the contract [Interagency Agreement] for the 7/1/06-6/30/07 term, which included pay increases for the OAH ALJs. In this document, CDE also estimated a "$1.7 million shortfall for the Agreement 2007-8" (Ex. J, p. 26, "CDE deficiency request").

Another document contained in the 9/11/07 notebook described new rules enacted by OAH as of 9/1/07 (Exhibit "K", hereto). According to the Interagency Agreement, any rule changes initiated by OAH need to be publicly noticed for a period in which to receive public comment, as well as be allowed by CDE. OAH made these changes without these safeguards.

At the September 11, 2007 meeting, parent representatives asked that CDE immediately put the Interagency Agreement commencing July 1, 2008 out for bid. Additionally, parent representatives pledged to volunteer to train the incoming hearing officers. Nothing happened. In January, 2008 Ellen Dowd, Esq., Tania Whitleather, Esq. and Dayon Higgins contacted Shane Berli about issues ranging from last-minute reassignment of ALJ preventing right of peremptory challenge, failure to publish a comprehensive list of no-cost or low-cost attorneys to represent parents, and districts' failure to provide placement and services for homeless and low income students (Exhibit "L", hereto). In response to a telephone conversation with Ms. Whitleather, Mr. Berli indicated that CDE was talking to OAH about the Interagency Agreement, and that something "would be happening in March."

In addition to U.S. Department of Education, on behalf of Plaintiff, and Members of the Class, parent representatives have contacted and met with members of the United States Congress, Susan Davis and Duncan Hunter about the problems with due process hearings in California. Plaintiff, has, therefore exhausted all reasonable, available public remedies, to no avail. Time is of the essence in enjoining CDE from renewing the Interagency Agreement with OAH, thereby entrusting tens of millions of dollars of federal funds to ALJs who are unjustly enriched by the salaries and benefits bestowed upon them, when they are unqualified to hear and decide special education due process cases, and are also biased towards school districts who helped OAH get the Interagency Agreement in the first place. A Temporary Restraining Order is necessary to maintain the *status*

7    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

*quo* that the Interagency Agreement between CDE and OAH will expire on June 30, 2008.

III.

**ARGUMENT**

### 1.   <u>Legal Standard For TRO</u>

The purpose of the temporary restraining order ("TRO") is to preserve the *status quo* before the preliminary injunction hearing may be held. It is a provisional remedy designed merely to prevent irreparable loss of rights prior to judgment. *See, Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting that a TRO is restricted to its "underlying purpose of preserving the status quo and prevent irreparable harm, just so long as is necessary to hold hearing and no longer"). As such, an applicant for a TRO is required to demonstrate, "immediate and irreparable injury, loss or damage." Fed. R. Civ. Proc. 65(b); *see also, Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test, or an alternative sliding scale test. *Cassem v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional test a party must show: "1) a strong likelihood of success on the merits, 2) possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases). *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Where a party demonstrates that a public interest is involved, a "district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

8

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

Alternatively a party seeking injunctive relief under Fed. R. Civ. Proc. 65 must show either (1) combination of likelihood of success on the merits and the possibility of reparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party. *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Roe*, 134 F.3d at 1402 (quoting *United States v. Nutri-cology, Inc.* 982 F.2d 394, 397 (9th Cir. 1992)); accord *Sun Mircosystems*, 188 F.3d at 1119. "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown.'" *Sun Mircosystems*, 188 F.3d at 1119 (quoting *Nat'l Ctr. For Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)).

The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing on a TRO. See, *Caribbean Maine*, 844 F.2d at 674. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* Moreover, " a plaintiff seeking an injunction against a local or state government must present facts showing a threat of immediate irreparable harm before a federal court will intervene." *Midget v. Tri-County Met. Transp. Dist.*, 254 F.3d 846, 851 (9th Cir. 2001). Thus, a plaintiff must show the presence of an "immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.*, citing *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

## 2. **Irreparable Harm.**

CDE's own records (Ex. 3-10 to Complaint) show that irreparable harm has already occurred to students, who are prevailing in due process hearings only 10%

9

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

of the time. Plaintiff, himself, has suffered irreparable harm due to the Fallbrook Union High School District never advising him or his parents that he was not working toward a high school diploma, which is a procedural violation of IDEA, which denied Plaintiff a FAPE, coupled with the collusive Decision in which the OAH ALJ delegated the provision of compensatory education to the school district's IEP Team. As a result of this Decision (Ex. 2 to Complaint), Plaintiff is at home, without any compensatory education. Additionally, while the harm to Plaintiff may be redressed in Federal Court (which is the subject of Plaintiff's appeal USDC, SDCA Case No. 07 CV 2328 LAB (CAB)), this District Court appeal will take months, if not a year, to resolve, and, then may be the subject of a 9th Circuit appeal, which will place Plaintiff, who is almost 19 years old, out of school until adulthood, which may dampen his desire to attain his high school diploma as soon as possible.

Plaintiff is continuing to lose educational opportunities due to the faulty Decision (Ex. 2 to Complaint). In *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 369 (1985), the Court noted that under 20 U.S.C. §1415(e)(2), a court may "grant such relief as the court determines is appropriate". However, this remedy may not be delegated to "an employee of the State educational agency or the local educational agency involved in the education or care of the child." (20 U.S.C. §1415(f)(3); *see Board of Education of Fayette County, Kentucky v. L.M.,* ___ F. 3d. ___(6th Cir. 2007), which cited *Reid ex rel. Reid v. District of Columbia,* 401 F. 3d 516, 526 (D.C. Cir. 2005).

Many other students have been sitting at home, deprived of any education based upon the unlawful conduct of the school district, and the inability to obtain appropriate relief from OAH. *See, Plyer v. Doe,* 457 U.S. 202, 221-222 (1982) (illegal immigrant children irreparably harmed when deprived of access to education). Alternatively, children are in inappropriate school placements which,

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

not only prevent them from learning, but create frustration, low self-esteem and school phobia.

Additional potential class members have also suffered, and will continue to suffer irreparable injury if CDE is not enjoined from contracting with OAH for the upcoming term of the Interagency Agreement. For example, California Education Code § 56502(h) requires that CDE and OAH provide parents with a list of free or reduced-cost representation. However, due to the fact that CDE and OAH have not published a complete list of attorneys/representatives throughout the state who are willing to represent students at no-cost or low-cost, there is a recent trend among school districts. This trend is that Districts file for due process against the Student, and, based upon lack of representation for students, parents do not appear for the hearing, and the district always prevails. As seen in more detail in the accompanying Declaration of Ellen Dowd, Esq. in Support of the TRO, of the 76 cases decided and posted on CDE/OAH website, www.documents.dgs.ca.gov/oah/seho_decisions between July 30, 2007 and February 15, 2008, in 17 cases in which the District filed against the Student, the Student was unrepresented and parent did not appear at hearing, and the District prevailed. In 3 of these Decisions there was a minimal explanation as to what, if any, notice to or contact with parent was made in advance of the hearing.

There is no basis to believe that the OAH ALJs can be rehabilitated or trusted to comply with IDEA and the Interagency Agreement going forward. Their bias against and disregard of students and their parents, particularly, *pro per* families, have had an obvious chilling effect, and parents are no longer comfortable enforcing their children's rights. The court must find that the harm, *per se,* is immediate, irreparable and an ongoing threat to Plaintiff (who, pursuant to the Decision, Ex, 2 to Complaint, is invited to file for another Due Process Hearing in order to obtain his remedy), and to other potential Class Members.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

### 3.  **Public Purpose/Balance of Hardships.**

The right to equal protection under the law for the provision of free appropriate public education (FAPE) for disabled students is the cornerstone of IDEA. For students with exceptional needs, the IDEA emphasizes preparation for employment, independent living and integration into the community. *San Rafael City School District v. Student,* SEHO, 2003-411 (consolidated with 400).

Under IDEA, school districts must have an appropriate IEP in effect at the beginning of the school year. 34 C.F.R § 300.342. This means that for every year a special education student attends school, there is a potential that the student may have to file for a Due Process hearing in order to obtain a FAPE from the school district. Currently, the burden of proof is placed upon the party requesting the Due Process Hearing.[4] *Schaffer v. Weast,* 546 U.S. 49, 126 S. Ct. 528, 163 L. Ed. 2d 387(2005). Moreover, parents cannot have access to federal courts to redress the wrongs of the school districts unless and until they have exhausted administrative remedies, to wit: a Due Process Hearing and Decision.

Without properly trained, experienced and fair Hearing Officers, parents and students can be forced, year after year, to exhaust remedies, knowing that this will only lead to an appeal, at great time and expense, not to mention deprivation of educational opportunities for student during this process.

In balancing the interest in providing a FAPE to special education students in the State of California, clearly there is ongoing and potential harm being caused by OAH through CDE. In contrast, what, if any, compelling public interest does CDE have in rewarding OAH for its self-serving and unlawful conduct? What harm could possibly be caused to CDE if enjoined from awarding the upcoming

---

[4] New York and New Jersey have recently enacted laws to shift the burden of proof to the school districts.

12                    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

Interagency Agreement to OAH?  None!  Under the Interagency Agreement, CDE is contracting for services in the state using federal funding, not its own funds.

Upon balancing the hardships, the factors weigh in favor of granting Plaintiff's TRO application.

## 4.   Violations of U.S. Constitution.

Serious violations of the Constitution are raised in the Complaint, which add to the likelihood of Plaintiff succeeding on the merits in this case.  Although the "greater the relative hardship to the moving party, the less probability of success must be shown," (*Sun Mircosystems,* 188 F.3d at 1119 (quoting *Nat'l Ctr. For Immigrants Rights v. INS,* 743 F.2d 1365, 1369 (9th Cir. 1984)),  CDE has condoned OAH's violation of the Supremacy Clause, as well as the Equal Protection Clause of the 14th Amendment.

Article VI, Section 2, of the United States Constitution provides:

> This Constitution, and the laws of the United States
> which shall be made in Pursuance thereof; and all
> Treaties made, or which shall be made under the
> Authority of the United States, shall be the supreme
> Law of the Land; and the Judges in every State shall
> be bound thereby, and any Thing in the Constitution
> of Laws of any state to the Contrary notwithstanding.

The Supremacy Clause mandates that federal law preempts any state regulation of any matter over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved for federal government.

The authority to allocate federal funds for the provision of mediations and due process hearings for disabled students under IDEA is a matter over which the federal government has exclusive authority. CDE, in authorizing and endorsing a lesser standard of qualifications of OAH's ALJs than is provided under IDEA, is in violation of the Supremacy Clause.  In authorizing and endorsing the use of OAH's ALJs who have not met the minimum training requirements, are not

13                    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

knowledgeable and experienced in special education law, and who do not write decisions in accordance with the letter and spirit of IDEA, CDE has caused, and continues to cause irreparable harm to disabled students, some of whom have been sitting home without any educational services for over a year, in violation of the Supremacy Clause.

The mandate for the IDEA arose after the landmark decision of *Brown v. Board of Education*. Parents of disabled children started to seek redress in court. Two District Court cases, *Pennsylvania Association for Retarded Children (PARC) v. Pennsylvania* (PA, 1971), and *Mills v. Board of Education,* (DC, 1972) provided the foundation for establishing the right of children with disabilities to a free, appropriate public education in the least restrictive environment by interpreting the equal protection guarantee of the 14th Amendment.

The goals of IDEA were (1) to assure that all children with disabilities receive a free appropriate public education that emphasizes special education and related services designed to meet their unique needs, (2) to protect the rights of children with disabilities and their parents and guardians, and (3) to assist the states in providing for the effective education of all children with disabilities. Federal funds are used to enable the states to comply with the mandate of IDEA.

While disabled students are not a suspect class, or quasi-suspect class, subject to strict scrutiny under the Equal Protection Clause, disabled students are a protected class entitled to a balancing of consideration of the need of disabled students' for enforcement of laws specifically designed to protect them, as opposed to the "alleged" rights of districts to whittle away at these very protections.

By CDE's failure to properly oversee OAH's special education ALJs, and in allowing these ALJs to selectively enforce rights of disabled students, districts have been emboldened to eschew the settlement process of mediation, and to go to hearing in an attempt to mislead the ALJ into thinking that IDEA affords district's more rights than students, which has been endorsed by OAH and CDE, to the

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

extreme detriment of disabled students, who, at most, are prevailing in due process hearings only 10% of the time. In interpreting the IDEA is a manner that favors school districts, rather than disabled students, OAH and CDE have violated the Equal Protection Clause.

### 5.    Time Is of the Essence in Issuing the TRO.

The accompanying Declaration of Tania Whiteleather, Esq. states that in a recent telephone conversation with Shane Berli of CDE, she was told with regard to the Interagency Agreement, that CDE was talking to OAH, and that something "would be happening in March." Since it is not possible to have a decision in this case by March, 2008, the TRO is necessary immediately.

### 6.    Bond Requirement.

Fed. R. Civ. Proc. 65(c) requires the posting of security by Plaintiff "in such sum as the court deems proper, for the payment of costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained." The Ninth Circuit gives wide discretion to the issuance of preliminary injunction bonds, holding that, "[s]o long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran v. Flowers,* 408 F.3d 1113, 1126 (9th Cir. 2005).

As stated previously, no potential harm to CDE would come as a result of the issuance of the TRO, a minimal bond, if any, no greater that $100.00 would be sufficient to meet the intent of Fed. R. Civ. Proc. 65(c). It would be burdensome, if not impossible, for Plaintiff to proceed if a costly bond is required.

### IV.

### CONCLUSION

Based upon the foregoing, Plaintiff has met the legal standard for the issuance of a TRO enjoining CDE from renewing, awarding or otherwise contracting the Interagency Agreement for the provision of special education mediations and due process hearings for the term July 1, 2008-June 30, 2011 with

15                    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

1  California Office of Administrative Hearings, Special Education Division

2  ("OAH").  The TRO should issue immediately.

3  Dated:  February 19, 2008

Respectfully submitted,

_____
Ellen Dowd, Attorney for
Plaintiff, C.S.

16

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Support of
Temporary Restraining Order

# EXHIBIT A

## Initial Statement of Reasons
Special Education Hearing Officer Regulations

## SPECIFIC PURPOSE OF THE REGULATIONS

Section 56504.5(a) of the Education Code[1] requires the California Department of Education (the department) to "enter into an interagency agreement with another state agency or contract with a nonprofit organization or entity to conduct mediation conferences and due process hearings in accordance with Sections 300.506 and 300.508 of Title 34 of the Code of Federal Regulations." Section 56504.5(c) requires that the Superintendent of Public Instruction "adopt regulations that establish standards for all of the following <u>components</u> of an interagency agreement or contract entered into pursuant to subdivision (a)." (emphasis provided)

The subject regulations are intended to satisfy the requirements of section 56504.5(c). The regulations proposed here should be distinguished from regulations established pursuant to the authority granted to the State Board of Education (SBE) in section 56505. Nevertheless, to promote clarity and ensure that the interagency agreement components are properly observed, the proposed regulations have been blended into existing regulations that currently govern due process hearings.

## NECESSITY/RATIONALE

Between 1989 and July 1, 2005, the department contracted with the Special Education Hearing Office (SEHO) from the University of the Pacific's Mc George School of Law to conduct and administer due process hearings and mediations in California.[2] That contract, however, expired by its own terms on June 30, 2005. As of July 1, 2005, the contract was replaced with a three-year interagency agreement between the department and the California Office of Administrative Hearings (OAH). OAH has provided due process hearings since that date and began providing mediation services on January 1, 2006.

In July 2005, the California Legislature amended section 56504.5(c). As amended, subdivision (c) requires nine separate provisions that will govern the components of the interagency agreement. The proposed regulations address each of the nine areas identified in subdivision (c) by means of amendments to existing regulations or by adding new regulations. Taken together, the proposed regulations form part of a regulatory and statutory scheme intended to satisfy federal and state statutory requirements for the provision of special education services for pupils in California as more fully explained below.

The Individuals with Disabilities Education Act ["IDEA"] guarantees all children with special needs a "free appropriate public education" ["FAPE"] that emphasizes special education and related services designed to meet each child's unique needs. (20 U.S.C. §1400 (d)(1)(A).) Though not specifically stated in the IDEA, state procedures that

---

[1] All further statutory references are to the California Education Code unless otherwise specified.
[2] The initial contract was for three years but was renewed every three years until it expired in 2005.

1

more stringently protect the rights of the students with special needs and their parents are consistent with the IDEA and are thus enforceable. *Antkowiak v. Ambach* (1988) 838 F.2d 635, 641; cert. denied, 488 U.S. 850.)

California maintains a policy of complying with IDEA requirements. (See, e.g., §§ 56000, 56100(i), 56128; 5 CCR § 3082, *et. seq.*; *Miller v. San Mateo-Foster City Unified Sch. Dist.* (2004) 318 F. Supp. 2d 851, 854.) In some matters, California exceeds the requirements of IDEA. (e.g., §§ 56026, 56361, 56441.11(b).)

IDEA guarantees every student a FAPE, which is defined as special education and related services that: (1) are available to the student at public expense, under public supervision and direction, and without charge; (2) meet the state educational standards; (3) include an appropriate education; and, (4) conform to the student's Individualized Educational Program ["IEP"]. (20 U.S.C. § 1401(9).)

An IEP is a written statement for an individual child with special needs crafted by a team that includes the child's parents and teacher, a representative of the local education agency, and, whenever appropriate, the child. (20 U.S.C. §§ 1401(14)) An IEP must contain: (1) information regarding the child's present levels of performance; (2) a statement of annual goals and short-term instructional objectives; (3) a statement of the special educational and related services to be provided to the child; (4) an explanation of the extent to which the child will not participate with non-disabled children in the class; and (5) objective criteria for measuring the child's progress. (20 U.S.C. § 1414(d).) Where parents disagree with measures or services proposed by the school district, they have the right to file for a due process hearing. (20 U.S.C. § 1415(b)(6).)

## Due Process Hearings

In addition to these substantive provisions, IDEA contains numerous procedural safeguards. Most relevant for purposes of these proposed regulations, the Local Educational Agency (LEA) must give parents an opportunity to present complaints regarding any matter related to the education or placement of the child, or the provision of a FAPE to the child. (20 U.S.C. § 1415(b)(6).) California has implemented the mandated procedural safeguards in sections 56500 through 56507 and in sections 3082, *et.seq.* of Title 5 of California's Code of Regulations. (*Miller ex rel. Miller v. San Mateo-Foster City Unified School, supra,* 318 F.Supp.2d at p. 854.) Upon occurrence of certain conditions, as specified in section 56501 and upon the presentation of a complaint, the parent or guardian is entitled to a due process hearing before an impartial hearing officer. (20 U.S.C. § 1415(f)(1).)

## Hearing Officers & Mediators –Training & Minimum Qualifications

Of the nine components of an interagency agreement or contract for which these regulations must set forth standards, the first is contained in subdivision (1) of subdivision (c) wherein standards are required for training and minimum qualifications of hearing officers.

2

Section 56505(b) requires agency or contractor shall provide hearings and mediations "in a manner that is consistent with all applicable federal and state laws and regulations, and any other applicable legal authorities." Before being amended in 2005, subdivision (c) required due process hearings to be conducted by "a person knowledgeable in the laws governing special education and administrative hearings."

Ordinarily, the word "minimal" precedes the word "standards" where the legislative intent is for the regulation to define minimal threshold requirements. (*Hamilton v. Board of Education* (1981) 117 Cal.App.3d 132, 141) Here, however, though the words "minimal" or "minimum" were not included, but the context suggests such meaning was intended and thus should be inferred. To define standards otherwise would produce an absurd result.

The department consulted stakeholders asking whether hearing officers should be required to be California attorneys. In most cases, respondents agreed that experience in the practice of law was an important requirement. The department also looked to sister states to determine if there was a prevalent practice. There is not.  Rather, each state's system seems to be the product of local history, needs, resources and past practices.

For example, West Virginia due process hearing officers are attorneys trained annually by the Office of Special Education in current statutes, regulations, case law and procedural requirements. (*Policy 2419: Regulations for the Education of Exceptional Students.*) In addition to being attorneys, hearing officers must have "demonstrated competencies in due process, special education law, effective writing and speaking, decision-making, and related areas, as evidence through application, interview and competency-based training." (*Ibid.*)  There are six hearing officers for the entire state and all are attorneys who are in private practice.

New York hearing officers must have been licensed to practice law for at least two years or, alternatively, possess experience in "education, special education, disability rights or civil rights; or be an individual certified by the State of New York as an impartial hearing officer on September 1, 2001." (Section 200.1(x)(1) of the New York State Regulations of the Commissioner of Education Additionally.) Additionally, hearing officers must be "be certified by the commissioner as an impartial hearing officer eligible to conduct hearings pursuant to Education Law, section 4404(1) and subject to suspension or revocation of such certification by the commissioner for good cause...".(*Id. at* Subd. (4).) Finally, New York hearing officers must complete a training program provided by the state's Special Education department and participate in periodic training as well. (*Ibid.*) Texas likewise requires hearing officers to be attorneys, but establishes five years of practicing law as the minimum standard. (http://www.tea.state.tx.us/special.ed.hearings/officers.html)

In contrast, Illinois law does not require hearing officers to be attorneys.  Candidates are required to have "a Master's degree, a Juris Doctor degree, or a Bachelor's degree in combination with relevant experience. Relevant experience can include being an adult with disabilities, the parent of a child(ren) with disabilities, or providing related services

on a paid or volunteer basis for at least three years. Such experience could include special education, advocacy or acting as an independent hearing officer in contested hearings wherein rules, regulations, statutes, contracts, and case law were applied to a given fact situation."(http://www.isbe.net/spec-ed/PDF/hearing_officer_qualification.pdf) Over time, the department has noted repeated references to instances of conflict and complicated litigation.  Many anecdotes have suggested a picture where parties are involved in ongoing battles, often bitter and rancorous, that contrast sharply with the image of parents and school districts working cooperatively to identify and implement a program of instruction that is best suited to provide FAPE for the child, as surely envisioned by the drafters of the IDEA. All sides involved in due process hearings agreed there is an increasing participation of attorneys in due process hearings which has effected a more litigious and legally technical process.  As attorneys increasingly continue to make their participation felt, the issues are becoming correspondingly more complex. To best address the situation, department staff concluded it would be in the best interests of all parties to require hearing officers not only to be licensed attorneys, but that each bring with him or her sufficient experience to increase the likelihood proceedings will be conducted within the parameters and in a manner contemplated by the law.

A hearing officer with substantial courtroom experience will be better able to control a hearing and limit evidentiary issues to those needed to resolve the issues.  As an attorney with substantial litigation[3] experience, the hearing officer will be better suited to determine what evidence should be admitted, less likely to be swayed by emotional appeals and thus able to produce properly reasoned decisions supported by appropriate evidence.  In addition, a seasoned practitioner may be less likely to be intimidated by aggressive litigation styles.

Another reason to require hearing officers to be attorneys stems from the treatment by federal courts of cases involving due process disputes. Generally, if a party appeals an administrative decision with a district court, to uphold that decision, the court must find that the administrative judge's findings of fact are supported by substantial evidence. (*Steadman v. Securities & Exch. Comm'n.* (1981) 450 U.S. 91, 99-100.)  In reviewing an administrative decision under IDEA, however, the court's decision must be supported by "preponderance of the evidence."  (20 U.S.C. § 1415(i)(2).)

Indeed, it is well established that a court should give substantial weight to the hearing officer's decision if the court finds that the decision was careful, impartial, and sensitive to the complexities of the issues presented.  Thus, although the district court independently reviews the evidence and thereafter issues a decision supported by a preponderance of the evidence, the trial court must give "due weight" to a hearing officer's prior decision.  (*Ojai Unified Sch. Dist. v. Jackson* (1993) 4 F.3d 1467, 1476) For California hearing officers to continue to live up to the confidence and deference granted by the law, our state should require hearing officers to meet standards that are commensurate with such a high level of responsibility.  The requirement that all hearing officers be licensed California attorneys with a minimum of five years experience

---

[3]  As used here, the term "litigation" includes experience in administrative hearings.

4

increases the likelihood decisions will measure up to the standards expected by the federal bench, contemplated by federal statutes, and, most importantly, the parties. Lastly, in other administrative settings where serious and complex disputes are resolved, hearing officers are more often than not required to be attorneys. The California Student Aid Commission requires hearing officers be attorneys with five years of experience practicing law before they may be qualified to hear matters involving civil penalties, suspension or termination of eligibility for student loans. (5 CCR § 30301)  In prevailing wage hearings conducted by the Department of Industrial Relations, hearing officers are required to meet the same criteria as ALJ's. (8 CCR § 17204)

ALJ's in the OAH are required to have a minimum of five years of legal experience before they are considered minimally qualified. (Govt. C. § 11502(b)) The minimum qualifications of ALJ's obviously satisfy the concerns of the department and many stakeholders for purposes of due process hearings. While there are many who have not endorsed ALJ's acting as mediatiors, few have voiced an objection to ALJ's acting as due process hearing officers.

One relatively obscure set of provisions brought into play by contracting with OAH for due process hearings is the Code of Judicial Ethics. All Judicial Canons, except those exempted by Government Code section 11475.40, govern the hearing and nonhearing conduct of an administrative law judge. (Gov Code § 11475.20; See also, "Administrative Adjudication Code of Ethics" Govt C §§11475-11475.70.) The proposed regulations were drafted with these rules in mind to avoid conflicts in the law.

## Hearing Officers - Minimum Training Required

Subdivision (1) of subdivision (c) further requires these regulations establish standards for minimum training. The proposed regulations contemplate a training component to be provided to each hearing officer <u>prior</u> to his or her assumption of duties.   Training for each hearing officer should be such that every hearing officer possesses familiarity with precepts central to special education, including services and supports available to pupils with exceptional needs and a demonstrated ability to write clear and concise decisions.

Minimum training will be supplemented by requiring all hearing officers be provided ongoing training through the course of their tenure. Special education experts agree that the field's ongoing changes, substantive and legal, require ongoing training.  The section places responsibility upon the contactor to provide ongoing training.

## Provision of Interpreters and Translated Materials

Section 56504.4(c)(2) requires regulations be enacted governing the component of an agreement with respect to provision of interpreters and language assistance. California Code of Regulations, title 5, section 3082(d) requires that "when the primary language of a party to a hearing is other than English…an interpreter shall be provided who is competent as determined by the hearing officer."  As proposed, section 3082 of Title 5 has been amended and expanded to specify that its provisions apply to mediations; expanded to require translation of important documents without which participation would be meaningless to non-English-speaking or limited-English-speaking parents or

5

guardians. Consistent with the Administrative Procedures Act, it also requires that interpreters be properly certified by the State of California and makes allowances for situations where that may not be possible.

The provisions of proposed amendments to section 3082 are consistent with a number of provisions that exist in applicable federal law that require availability of interpreters or translated materials, or both, for parents whose native language is other than English. For example, the IDEA requires that notices to parents be sent in their native language and that bulletins detailing available procedural safeguards be provided to parents in their native language. (20 USC § 1415(b)(2)(B)(4); §1415(d)(2).) Federal regulations likewise require notice in a parent's native language. (34 CFR §300.503(c)(ii); that consent is not valid unless a parent has been fully informed in his or her native language (34 CFR §300.9(a)); Procedural safeguards must be provided in a parents' native language (34 CFR 300.504(d)); and other provisions. California requires that notice of a due process hearing's statutory provisions governing the due process rights of pupils and parents. (Section 56506).

## Prevention of conflicts of interest for mediators and hearing officers.

Because the IDEA contemplates parents will represent themselves, it is of vital importance that the applicable regulations guard against prejudice and the appearance of prejudice. Moreover, in almost every instance, parents will be involved in an ongoing relationship with the school district. It is fundamentally important that parents feel that the treatment provided to them by the legal system in place to resolve difference of opinions over their child's education provided a fair and impartial resolution. Parents should be protected not only against actual conflicts of interest, but also of apparent conflicts of interest.

Proposed section 3082.2 is designed to explicitly guard against conflicts of interest that may interfere with even a well-intentioned hearing officer who may be convinced there is no conflict. "[T]he requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it on without danger of injustice. Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." (*Tumey v. State of Ohio* (1927) 273 U.S. 510, 532.) While written in the context of a criminal matter, the Supreme Court's cautionary words are a useful standard where lay people are participating in the process.

The intent of this new regulation is not only to specify the rules governing conflicts of interest, but also to enhance the confidence level of parents, particularly those not represented by counsel, in the hearing officer. With the rules spelled out specifically, parents will have better reason to believe that the hearing officer is indeed "impartial" as required by both federal and state law.

Provision has been made for situations where a party remains uncomfortable with a particular hearing officer. By providing one preemptory challenge, the regulation parallels civil practice and encourages parents to seek a hearing officer in whom they may have greater confidence.

Some individual members of stakeholder groups have argued that impartiality requires exclusion as hearing officers those who have been immediate or current employees of a school district, college or university system, including attorneys who have primarily represented school districts in private practice. The weight of authority, however, is to the contrary. (See, e.g., *Mayson v. Teague (1984) 749 F.2d 652, 655*.)

Impartiality does not mean the hearing officer is required not to have a predisposition. Indeed, "even if it were possible to select judges who did not have preconceived views on legal issues, it would hardly be desirable to do so. 'Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.'" (*Republican Party of Minnesota v. White* (2002) 536 U.S. 765, 777)

**Supervision of Hearing Officers and Mediators**

As required by section 56504.5(c)(4), section 3082.3 is being added to Title 5 to set out the minimum qualifications required of a supervising hearing officer and supervising mediator. It also sets forth the duties of supervising hearing officers and mediators.

**Monitoring, tracking, and management of cases**

Section 3092 is being proposed as an addition to Title 5 in order to satisfy the requirement of a provision for monitoring, tracking and management of cases. Section 3092 provides for access to department employees and requires the contractor to maintain records available for five years following the contract. It also requires the contractor submit quarterly reports, maintain the data and make it available through the internet. Finally, it requires the contractor provide data necessary for the department to comply with state and federal reporting requirements.

**The Process for Conducting Mediations and Due Process Hearings**

Providing the components to be included in an agreement that would govern the processes for conducting mediations and due process hearings required setting forth general provisions, without necessarily imposing details. For example, the first significant amendment to existing section 3082 of Title 5 is the provision in subdivision (b) allowing a hearing officer to conduct a pre-hearing conference, a settlement conference, grant continuances, and bifurcate issues. Disputes in due process often may be settled or the issues narrowed, but there is no provision in law other than through mediation. Providing for "pre-trial" conferences allows for joining the parties in an environment and before a hearing officer who can assist the parties in reaching agreements, at least on process. Moreover, bifurcation will allow for educational portions of a case to proceed while fiscal issues can be litigated at a different pace

7

where appropriate. The addition of language referencing the authority to issue subpoenas is intended to clarify and follow established procedures.

## Communications with Parties to Mediations and Due Process Hearings

Existing section 3084 of Title 5 is proposed to be amended to reflect the current contractor and, most significantly, to provide for ex parte communications during mediations. At present, there are no rules prohibiting ex parte communications during mediation. The addition of subdivision (g) makes it clear that communications are to occur in the context of the mediation process. Where parties wish to communicate outside of that process, the communications will be subject to the rules governing ex parte communications. These rules are intended to ensure both parties to a mediation are aware of communications being exchanged.

Concern has been raised that this rule would prohibit "caucusing." This is a misconception. Caucusing is part of the mediation process and parties are aware that the mediator is communicating with the other party or parties.

## The Establishment of a Committee to Advise the Agency or Contractor with Regard to Conducting Mediations and Due Process Hearings

Section 3091 is proposed to be added to Title 5 to provide for the formation and meeting of an advisory committee to the contractor. This provision requires a minimum of four meetings annually, with two in Southern California and two in Northern California. The advisory committee is meant to be composed of a cross-section of those affected or involved in due process hearings and will sit in an advisory capacity.

## Manual for Due Process Hearings and Mediations

Section 3090 is proposed to be added to Title 5 to require a manual which will serve as a resource for parents and interested parties. The manual's contents are described in general terms, leaving exact contents to the contractor to select.

## TECHNICAL, THEORETICAL, AND/OR EMPIRICAL STUDY, REPORTS, OR DOCUMENTS

The State Superintendent of Public Instruction (SSPI) did not rely upon any technical, theoretical or empirical studies, reports or documents in proposing the adoption of this regulation.

## REASONABLE ALTERNATIVES TO THE REGULATIONS AND THE AGENCY'S REASONS FOR REJECTING THOSE ALTERNATIVES

No other alternatives were presented to or considered by the SSPI.

## REASONABLE ALTERNATIVES TO THE PROPOSED REGULATORY ACTION THAT WOULD LESSEN ANY ADVERSE IMPACT ON SMALL BUSINESS

The SSPI has not identified any alternatives that would lessen any adverse impact on small business.

## EVIDENCE SUPPORTING FINDING OF NO SIGNFICIANT ADVERSE ECONOMIC IMPACT ON ANY BUSINESS

The proposed regulations would not have a significant adverse economic impact on any business because they relate only to local school districts and not to small business practices.

10-12-06 [California Department of Education]

9

**EXHIBIT B**



# CONDUCTING AN
# ADMINISTRATIVE
# HEARING:
# ADVANCED

## OCTOBER 17-21, 2005
## SACRAMENTO, CA

THE NATIONAL
JUDICIAL COLLEGE

# THE NATIONAL JUDICIAL COLLEGE COPYRIGHT STATEMENT



©2005 by The National Judicial College. All materials contained in this publication are copyrighted by The National Judicial College unless otherwise noted. All rights are reserved, including the right of reproduction in whole or in part in any form.



# MEDIATION FOR ADMINISTRATIVE LAW JUDGES

## OCTOBER 24-28, 2005
## SACRAMENTO, CA

### THE NATIONAL JUDICIAL COLLEGE

NJC  Est. 1963

# THE NATIONAL JUDICIAL COLLEGE
# COPYRIGHT STATEMENT



©2005 by The National Judicial College. All materials contained in this publication are copyrighted by The National Judicial College unless otherwise noted. All rights are reserved, including the right of reproduction in whole or in part in any form.

# The Mediator's Handbook



## Jennifer E. Beer with Eileen Stief

Developed by

### Friends Conflict Resolution Programs



# THE MEDIATOR'S HANDBOOK

**Jennifer E. Beer**

with **Eileen Stief**

Developed by
**Friends Conflict Resolution Programs**



NEW SOCIETY PUBLISHERS

# THE MEDIATOR'S HANDBOOK

Copyright © 1997 Friends Conflict Resolution Programs of the Philadelphia Yearly Meeting of the Religious Society of Friends

All rights reserved. Published 1997

First printing and copyright, January 1982

Revised January, 1984; April, 1987; Second edition May, 1990; Third edition August, 1994; revised February, 1996; February 1997

ISBN: 0-86571-359-6 (Paperback)

Cover art by Karen Kerney.

Book design and layout by Jennifer Beer.

Printed on partially recycled paper using soy-based inks by Capital City Press, Montpelier, Vermont.

**Reprint permissions:** Inquiries regarding requests to reprint all or part of *The Mediator's Handbook* should be addressed to New Society Publishers at the address below.

You may reproduce material from this handbook ***only*** with the express written permission of New Society Publishers or Friends Conflict Resolution Programs. All reproductions must show the Friends Conflict Resolution Programs copyright on ***each*** page. This includes transmission through the Web, computer disks, and any other electronic means.

**Teachers and trainers:** You are welcome to use the *Handbook* as a training manual long as each participant purchases a copy. For use of selected pages, you **must** email or call in advance for permission. If you are making money from our work, we will ask you to contribute a reasonable amount to FCRP.

FCRP encourages readers to spread these mediation ideas and skills widely; however, we also need fair reimbursement and credit for our years of work. Thank you.

**To order directly from the publisher,** add shipping costs of $4.50 to the price of the first copy, and $1.00 for each additional copy (plus GST in Canada). Send check or money order to the address below, or call our 800 number for VISA / MasterCard orders.

New Society Publishers          (800) 567-6772
P.O. Box 189                    Fax: (250) 247-7471
Gabriola Island, BC             E-mail: info@newsociety.com
Canada V0R 1X0                  www.newsociety.com

 ®  GCIU  196

## MCLE CREDIT ATTENDANCE VERIFICATION

**Presenting Organization:** THE OFFICE OF ADMINISTRATIVE HEARINGS

**Subject Matter:** **Department of Developmental Services**
**REGIONAL CENTER 101**

**Date:** Tuesday, November 8, 2005

**Time From:** 8:00 a.m.      **Time To:** 9:00 a.m.

**Location:** Crowne Plaza San Francisco International
Airport, 1177 Airport Blvd., Burlingame, CA 94010

**Speaker:** Brian Winfield, Chief
Regional Center Operations Section
Department of Developmental Services

| Total MCLE Hrs. ____ |
| Ethics ____ |
| Abuse/Distress ____ |
| Bias ____ |
| Law Practice MCMT ____ |
| Substantive Law ____ |

| State Bar # | Printed Name | Signature |
|---|---|---|
| 089071 | Catherine Frnk | Catherine B. Fik |
| 073157 | Jaiee R Rohein | |
| 142042 | Marla Roseti | Marla Rosert |
| 90030 | David Rosenman | David Rosenman |
| 37938 | James L Goff | James L Goff |
| 155904 | Erlinda Shrenger | Erlinda Shrenger |
| 90957 | Stephan J Smith | Stephen J Smith |
| 131605 | Ala Alvor | |
| 109301 | JoAnn I Eshelman | JoAnn I. Eshelma |
| 190223 | Tamara Colson | Tamra M Co |
| 95738 | Melissa Crawell | Melissa Crawell |
| 172452 | John A Thawley | |
| 96779 | Marilyn A Woollard | |
| 119038 | Judith A Kopec | Judith A Kopec |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: **AUTISM AND 5TH CATEGORY**

Date: **Tuesday, November 8, 2005**

Time From: **9:00 a.m.**      Time To: **10:00 a.m.**

Location: **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010**

Speaker: **Ron Huff, Ph.D.**
**Alta California Regional Center**

```
Total MCLE Hrs. ____
Ethics ____
Abuse/Distress ____
Bias ____
Law Practice MCMT ____
Substantive Law ____
```

| State Bar # | Printed Name | Signature |
|---|---|---|
| 89899 | Vincent Nafarrete | |
| 155197 | Raylene Filley | |
| 119873 | Sandra Hitt | Sandra Hitt |
| 172452 | JOHN A. THAWLEY | |
| 190223 | Tamara Colson | Tamara |
| 37936 | James R Goss | |
| 96779 | MARILYN WOOLLAND | |
| 142072 | Martha Rosett | Martha |
| 115869 | Susan Ruff | Susan Ruff |
| 53054 | | |
| 148824 | RICHARD CLARK | Richard Clark |
| 119038 | Judith Kopec | |
| 84799 | HUMBERTO FLORES | Humberto Flores |
| 108960 | | CHERYL TOMPKIN |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: **EARLY START**

Date: **Tuesday, November 8, 2005**

Time From: **10:10 a.m.**    Time To: **11:30 a.m.**

Location: **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010**

Speaker: **Rick Ingraham, Manager
Children and Family Services Branch
Department of Developmental Services**

| Total MCLE Hrs. ____ |
| Ethics ____ |
| Abuse/Distress ____ |
| Bias ____ |
| Law Practice MCMT ____ |
| Substantive Law ____ |

| State Bar # | Printed Name | Signature |
|---|---|---|
| 109411 | Ann Sarli | |
| 152694 | Wendy Nelson | Wendy Nelson |
| 89849 | Vincent Infante | |
| 175336 | Robert S. Eisman | |
| 72171 | STEVEN OWYANG | |
| 55392 | Steven Adler | |
| 95146 | Ronald Diedrich | |
| 119038 | Judith A. Kopec | |
| 122985 | Karen Brandt | |
| 13764 | Gary A. (Deuel) | |
| 053054 | Jim Attix | |
| 108960 | Cheryl Tomplkin | |
| 149873 | Sandra Hitt | Sandra B. Hitt |
| 173105 | Michael Scarlett | |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: **AUDITS AND AUDIT APPEALS**

Date: **Tuesday, November 8, 2005**

Time From: **11:30 a.m.**    Time To: **12:00 p.m.**

Location: **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010**

Speaker: **Art Lee, Manager**
**Audits Branch**
**Department of Developmental Services**

| Total MCLE Hrs. ____ |
| Ethics ____ |
| Abuse/Distress ____ |
| Bias ____ |
| Law Practice MCMT ____ |
| Substantive Law _____ |

| State Bar # | Printed Name | Signature |
|---|---|---|
| 89899 | Vincent Nafarrete | |
| 50307 | Michael Cohn | |
| 71260 | William Hoover | |
| 104810 | | |
| 73257 | | |
| 9605 | | |
| 110654 | Roy Hewitt | |
| 196679 | Arachid Hoonam | |
| 129855 | Karen Brandl | |
| 69756 | Muriel Evens | |
| 53054 | Viay Athur | |
| 186032 | Trevor Skarda | |
| 119038 | Judith A Yogue | |
| 173105 | Michael Scarlett | |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

<u>Presenting Organization</u>:  **THE OFFICE OF ADMINISTRATIVE HEARINGS**

<u>Subject Matter</u>:  **HEARING ROOM CONTROL AND DEMEANOR**

| | |
|---|---|
| Total MCLE Hrs. ____ | |
| Ethics ____ | |
| Abuse/Distress ____ | |
| Bias ____ | |
| Law Practice MCMT ____ | |
| Substantive Law _____ | |

<u>Date</u>:  **Tuesday, November 8, 2005**

<u>Time From</u>:  **1:00 p.m.**      <u>Time To</u>:  **2:00 p.m.**

<u>Location</u>:  **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010**

<u>Speaker</u>:  **Timothy Hallihan, Staff Attorney**
**California Center Judicial Education**
**Michael Cohn, Administrative Law Judge, OAH Oakland**

| State Bar # | Printed Name | Signature |
|---|---|---|
| 89899 | Vincent Nafarrete | |
| 155197 | Raylene Filley | |
| 181392 | Suzanne Brown | |
| 75157 | Ko Two Kent Romer | |
| 95687 | Jun Lau | |
| 184108 | MA Pohe | |
| 196679 | Anahid Hooroa | |
| 122985 | Karen Brand | |
| 142072 | Martha Routt | |
| 190223 | Tamara Colson | |
| 137614 | Cathy A. Geren | |
| 119873 | Sandra Hitt | |
| 11905 | Mapac | |
| 155904 | Elinda Shrenger | |

### Please Print Your State Bar Number and Name Clearly

Page Number ____

# MCLE CREDIT ATTENDANCE VERIFICATION

**Presenting Organization:** THE OFFICE OF ADMINISTRATIVE HEARINGS

**Subject Matter:** STUDENT DISCIPLINE (SPECIAL EDUCATION)

**Date:** Wednesday, November 9, 2005

**Time From:** 8:00 a.m.        **Time To:** 10:00 a.m.

**Location:** Crowne Plaza San Francisco International
Airport, 1177 Airport Blvd., Burlingame, CA 94010

**Speaker:** Sherianne Laba, Attorney, Sacramento

| Total MCLE Hrs. ____ |
| Ethics ____ |
| Abuse/Distress ____ |
| Bias ____ |
| Law Practice MCMT ____ |
| Substantive Law ____ |

| State Bar # | Printed Name | Signature |
|---|---|---|
| 173105 | Michael Scarlett | *(signature)* |
| 89899 | Vincent Nafarrete | *(signature)* |
| 96605 | Jerry Montana | *(signature)* |
| 115869 | Susan Ruff | *(signature)* |
| 37936 | James R Goff | *(signature)* |
| 172452 | John A. Thawley | *(signature)* |
| 110654 | Roy Hewitt | *(signature)* |
| 181392 | Suzanne B. Brown | *(signature)* |
| 73157 | Jaime Roman | *(signature)* |
| 95657 | Jonathan (Paul) | *(signature)* |
| 196179 | Shahid Hoai | *(signature)* |
| 152694 | Wendy Weber | *(signature)* |
| 119038 | Judith Kopec | *(signature)* |
| 71260 | Whit Hooven | *(signature)* |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

| | |
|---|---|
| Subject Matter: | **PANEL PRESENTATION FOR SPECIAL EDUCATION ALJs** |
| Date: | **Tuesday, November 8, 2005** |
| Time From: | **2:10 p.m.**          Time To:  **5:00 p.m.** |
| Location: | **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010** |
| Speaker: | **Suzanne Brown, ALJ; Trevor Skarda, ALJ; Roy Hewitt, ALJ; Amanda Behe, ALJ; Sherianne Laba, Attorney; Robert Varma, Attorney.** |

Total MCLE Hrs. ____
Ethics ____
Abuse/Distress ____
Bias ____
Law Practice MCMT ____
Substantive Law _____

| State Bar # | Printed Name | Signature |
|---|---|---|
| 119038 | Judith Kopec | *(signature)* |
| 143024 | Peter Paik<sup>[illegible]</sup> | *(signature)* |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

**Presenting Organization:** THE OFFICE OF ADMINISTRATIVE HEARINGS

**Subject Matter:** STRATEGIES FOR HANDLING PRO PER LITIGANTS

**Date:** Wednesday, November 9, 2005

**Time From:** 3:30 p.m.    **Time To:** 4:30 p.m.

**Location:** Crowne Plaza San Francisco International
Airport, 1177 Airport Blvd., Burlingame, CA 94010

**Speaker:** Ann Sarli, ALJ, OAH Sacramento

| Total MCLE Hrs. ____ |
| Ethics ____ |
| Abuse/Distress ____ |
| Bias ____ |
| Law Practice MCMT ____ |
| Substantive Law ____ |

| State Bar # | Printed Name | Signature |
|---|---|---|
| 104808 | MA Behe | MA Behe |
| 109411 | Ann Sarli | |
| 89057 | Catherine Frink | Catherine Frink |
| 119873 | Sandra Hitt | Sandra R. Hitt |
| 55392 | Steve Adler | |
| 89899 | Vincent Naforrete | |
| 58471 | T. Munns | |
| 119038 | Judith Kypec | |
| 57932 | Thomas L Gox | |
| 142072 | Martha Rosett | |
| 190223 | Tamara Olsen | |
| 96779 | Marilyn A Woollard | |
| 098125 | Perry d Johnson | |
| 17336 | Robert S. Eisner | |

### Please Print Your State Bar Number and Name Clearly

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: **MEDIATION UPDATE**

Date: **Wednesday, November 9, 2005**

Time From: **8:00 a.m.**     Time To: **4:00 p.m.**

Location: **Crowne Plaza San Francisco International
Airport, 1177 Airport Blvd., Burlingame, CA 94010**

Speaker: **Nancy Yeend
The John Paul Jones Group**

Total MCLE Hrs. ____
Ethics ____
Abuse/Distress ____
Bias ____
Law Practice MCMT ____
Substantive Law ____

| State Bar # | Printed Name | Signature |
|---|---|---|
| 109301 | JoAnn Eshelman | JoAnn Eshelman |
| 115869 | Susan Ruff | Susan Ruff |
| 190223 | Tamara Colson | Tamara Colson |
| 175336 | Robert S. Eisman | |
| 50307 | Michael Cohn | M C |
| 55392 | Steven Adler | Steven Adler |
| 89057 | Catherine Frink | Catherine Frink |
| | Robert Walker | Robert Walker |
| 173105 | Michael Scarlett | Michael Scarlett |
| 89899 | Vincent Nafarrete | V N |
| 96779 | Marilyn Woollard | M Woollard |
| 71260 | William Hoover | Wm. Hoover |
| 172452 | JOHN A THAWLEY | John A Thawley |
| 190038 | Jacelin Kopec | J Kopec |

**Please Print Your State Bar Number and Name Clearly**

Page Number ____

## MCLE CREDIT ATTENDANCE VERIFICATION

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: **LEAST RESTRICTIVE ENVIRONMENT (SPECIAL EDUCATION)**

Date: **Wednesday, November 9, 2005**

Time From: **8:00 a.m.**    Time To: **10:00 a.m.**

Location: **Crowne Plaza San Francisco International Airport, 1177 Airport Blvd., Burlingame, CA 94010**

Speaker: **Trevor Skarda, ALJ, Special Ed. Division, Sacramento**

Total MCLE Hrs. ____
Ethics ____
Abuse/Distress ____
Bias ____
Law Practice MCMT ____
Substantive Law ____

| State Bar # | Printed Name | Signature |
|---|---|---|
| 173105 | Michael Scarlett | |
| 110654 | Roy Hewitt | |
| 115869 | Susan Ruff | |
| 37936 | Thomas R Cox | |
| 172452 | John A Thawley | |
| 53084 | Jim Actrop | |
| 143029 | Peter PaJ Cost HD | |
| 181392 | Suzanne B. Brown | |
| 95687 | Jonathan Ibn | |
| 73187 | Jamie Rotman | |
| 196679 | Anahid Hoorani | |
| 152694 | Wendy Weber | |
| 119038 | Judith Kopec | |
| 71260 | William Hooper | |

### Please Print Your State Bar Number and Name Clearly

Page Number ____

**EXHIBIT C**

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: Basics of Psychometric Testing

Date: November 7, 2006

Time From: 8:00 a.m.          Time To: 11:45 a.m.

Location:     **Administrative Law Judge Training, Holiday Inn, Bayside, San Diego**

Speaker:     Cathy Christo, Ph.D.

| State Bar # | Printed Name | Signature |
|---|---|---|
| 119038 | Judith Kopec | |
| 181392 | Suzanne Brown | |
| 103272 | Darrell Lepkowski | |
| 75144 | Paul J Dewald | |
| 173415 | Ralph Venturino | |
| 112558 | Vallera Johnson | |
| 172452 | John A Thawley | |
| 165017 | Chris Ruiz | |
| 71260 | Bill Hoover | |
| 141149 | Dennis Brue | |
| 1941 | Janis Rainer | |
| 84799 | Humberto Flores | |
| 123761 | Stuart Waxman | |
| 115869 | Susan Ruff | |
| 153560 | Jacqueline Vargo | |
| 9573B | Melissa Cravell | |
| 164502 | Elizabeth Kerzbalegh | |
| 9573B | Melissa Cravell | |

**Please Print Your State Bar Number and Name Clearly**

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: Basics of Psychoeducational Testing

Date: November 7, 2006

Time From: 1:15 p.m.                    Time To: 4:30 p.m.

Location:        Administrative Law Judge Training, Holiday Inn, Bayside, San Diego

Speaker:        Prof. Rona Leitner.

| State Bar # | Printed Name | Signature |
|---|---|---|
| 119038 | Judith Kaye | |
| 82348 | Judith Pазework | |
| 148824 | Richard Clark | |
| 186032 | Christopher T. Skarda | |
| 15269V | Wendy Weber | |
| 82021 | Elsa Jones | |
| 69419 | | |
| 120052 | Deborah Myers | |
| 173105 | Michael Scarlett | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Please Print Your State Bar Number and Name Clearly**

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: Special Education Discussion Panel

Date: November 8, 2006

Time From: 8:00 a.m.                    Time To: 11:45 a.m.

Location:        **Administrative Law Judge Training, Holiday Inn, Bayside, San Diego**

Speakers:        Christopher Fernandez, Gary Geren, Kathleen Loyer, Susan Ruff, Van Vu &
Steven Wyner, Moderator: Darrell Lepkowsky

| State Bar # | Printed Name | Signature |
|---|---|---|
| 4128187 | Ed Glenn McColm | E. P. McC |
| 191038 | Judith Kopec | J. Kopec |
| 40937 | Charles Marson | |
| 95687 | Jonathan Fry | |
| 108411 | Robert Taff | Robert Taff |
| 173105 | Michael Scarlett | Michael Scarlett |
| 82358 | Judith Pasewark | Judith Pasewark |
| 153560 | Jacqueline Jones | Jacqueline Jones |
| 83379 | Margaret Farrow | Margaret Farrow |
| 143448 | Glynda B Gomez | Glynda K Gomez (10:1) |
| 172452 | John A Thawley | |
| 107772 | Stella Ova Murrell | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Please Print Your State Bar Number and Name Clearly**

Presenting Organization: THE OFFICE OF ADMINISTRATIVE HEARINGS

Subject Matter: Mediation Refresher

Date: November 8, 2006

Time From: 1:15 p.m.          Time To: 4:30 p.m.

Location:    Administrative Law Judge Training, Holiday Inn, Bayside, San Diego

Speaker:    Nancy Yeend

| State Bar # | Printed Name | Signature |
|---|---|---|
| 119038 | Judith Kopec | |
| 82358 | Judith Pasewark | |
| 115869 | Susan Ruff | |
| 155904 | Erlinda Shrenger | Erlinda Shrenger |
| 128187 | Eileen M. Cohn | |
| 102772 | Stella Owens Murrell | |
| 121639 | Robert Helfand | |
| 204947 | Shenanne Caba | |
| 113024 | Peter Paul Castillo | |
| 172452 | JOHN A THAWLEY | |
| 71260 | William Hoover | |
| 181392 | Suzanne Brown | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Please Print Your State Bar Number and Name Clearly**

Presenting Organization: **THE OFFICE OF ADMINISTRATIVE HEARINGS**

Subject Matter: Strategies for Handling Difficult Attorneys/Contempt

Date: November 9, 2006

Time From: 9:30 a.m.                    Time To: 11:45 a.m.

Location: **Administrative Law Judge Training, Holiday Inn, Bayside, San Diego**

Speakers:    Catherin Frink, James Ahler, Judith Kopec, David Rosenman

| State Bar # | Printed Name | Signature |
|---|---|---|
| 186032 | C. Trevor Sterd | |
| 172452 | JOHN A THAWLEY | |
| 119038 | Judith Kopec | |
| 40937 | Charles Marson | |
| 89057 | Cathenne Fnnk | |
| 168936 | DANIEL JUAREZ | |
| 185877 | RICHARD T. GREEN | |
| 204247 | Sherranne Caba | |
| 78724 | David Benjamin | |
| 131695 | Alan Alvord | |
| 84799 | Humberto Flores | |
| 96608 | Joseph Montoya | |
| 181639 | Robert Helfand | |
| 108960 | Cheryl Tompkins | |
| 82365 | Christine C McCall | |
| 112558 | Vallera Johnson | |
| 152694 | Wendy Weber | |
| 128187 | Eileen McCann | |

**Please Print Your State Bar Number and Name Clearly**

**Presenting Organization:** THE OFFICE OF ADMINISTRATIVE HEARINGS

**Subject Matter:** Privacy Protection Training for Judges

**Date:** November 9, 2006

**Time From:** 8:00 a.m.          **Time To:** 9:15 a.m.

**Location:**   Administrative Law Judge Training, Holiday Inn, Bayside, San Diego

**Speaker:**   Honorable James Brandlin

| State Bar # | Printed Name | Signature |
|---|---|---|
| | Robert Walker | Robert Walker |
| 90030 | D Rosenman | David Rosenman |
| 107777 | Stella O. Murrell | Stella Orens-Murell |
| 108411 | Robert D. IAFE | Robert D. |
| 164502 | ? | |
| 95146 | Ron Diedrich | Ron Diedrich |
| 82021 | ELSA JONES | Elsa Jones |
| 190300 | Judith Foote | Judith Foote |
| 40937 | Charles Marson | |
| 96620 | SAMUEL REYES | |
| 74981 | JAMES ROVNER | |
| 112558 | Vallera Johnson | Vallera Johnson |
| 53054 | JAMES AHLER | |
| | | |
| | | |
| | | |
| | | |

**Please Print Your State Bar Number and Name Clearly**