# EXHIBIT D

Date: April 23, 2007

To:    Hon. Ronald L. Diedrich
        Director and Chief Administrative Law Judge
        Office of Administrative Hearings- State of California

From: Ellen Dowd, Attorney at Law

Subject: Comments About the "Schools Legal Service" March 30, 2007 letter to OAH
           Regarding the upcoming Special Education Advisory Committee Meetings


As a concerned parent and as a Special Education Attorney representing Students for the past 6
years, pursuant to a Public Records Act Request (Gov. Code § 6250 et seq.), I received the
above-referenced letter prepared by a group of attorneys representing school districts. These are
my comments to some of the issues raised in that letter.

Response to paragraph 4: <u>Thoroughness of OAH Decisions for Appeals and Attorneys' Fees
Determination:</u>

Attorney fees determination is not a matter for OAH. Statutes and case law well-known to
Federal District Court Judges determine the award of reasonable attorney fees to the prevailing
party. Prior to September 28, 2006, an interpretation of *Aguirre v. Los Angeles Unified School
District* (Ninth Circuit August 29, 2006), as well as a line of cases preceding it, attempted to
proportionately "split" attorney fees based upon the extent to which each party prevailed. This
caused districts to start cross-filing for the right to assess on the basis that if they prevail on this
issue, the parents will not be able to be reimbursed full attorney fees. In a case I had that was
decided last fall, the District did precisely this—student prevailed on the FAPE issues, the
District prevailed on the right to assess. The first words heard from the attorney representing the
District was that it was a "50/50" win—so don't even think about filing for full fees." I did file
for full fees and got them.

Luckily, the *Park v. Anaheim Union High School District* decision was issued by the Ninth
Circuit on September 28, 2006. In this decision, parents prevailed only upon a narrow issue of
whether the lack of provision of extended school year (ESY) was a denial of FAPE. The district
prevailed on all other issues. Here, the Circuit Court reversed the district court's denial of fees,
and held:

> Given the narrow discretion a district court has to deny fees in claims
> brought under the Individuals with Disabilities Education Act, the district
> court's decision ignored not only the letter of the law, but also the spirit
> and purpose of allowing attorney's fees in cases where parents have been
> forced to litigate for years against school districts to obtain all or even part
> of what Individuals with Disabilities Education Act requires in the first place.

Which brings us to the real issue. The purpose of the decision is not merely to declare which
party is entitled to fees. Parents do not go to due process hearings to collect fees. They go to get
their child's substantive and procedural rights enforced. This is why, it is shocking that some

decisions do not even make mention of the parent testifying. The decision merely mentions that the parent was present. This omission is quite significant on appeal. Also, parents don't file for due process as a stepping stone to expend more time, effort and expense on appeals. However, every case I tried in 2006, whether the district or the parent prevailed was appealed to federal court, where the cases settled.

Rather than write decisions more clearly to help determine the appropriate allocation of attorney fees, the decisions should be judiciously reasoned in conformity with the letter and spirit of IDEA.

IDEA is not intended to enforce the rights of districts. To the contrary, the sole purpose of this legislation is to enable parents to enforce rights of their disabled students. While two parties participate in hearings, this is not civil litigation. The parties are not in *pari delicto* (in equal fault) for a denial of FAPE. There is one party, and one party only, who bears the burden of providing a FAPE to a handicapped child: the school district a/k/a the local educational agency, (LEA). No person, no parent, and no other agency bears that duty.

Specifically, the parent has one legal obligation-to register and send the child to school from first grade through majority or graduation. In contrast, the District has a myriad of legal obligations under both state and federal law, including, ironically, the obligation to advise parents of their legal rights if the school district fails in one or more of its statutory obligations.

It is a given that in Due Process most documents, most of which have legal meaning, are generated by the District. That is because the District has the responsibility of providing written notice and information to the parent. The parent has no obligation to provide the District with any documentation, except proof that their child is registered for and is attending school. When comparing the legal obligations imposed on the District, as a prerequisite to federal funding, the scales of justice are equal as long as the parent enrolls the child in school.

In Due Process hearings, the burden of proof has now been placed on the individual challenging the status quo. *Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed. 2d 387( 2005). What this means is that a parent who is challenging the status quo, must prove the case using a three-step inquiry:

The first part of the inquiry addresses procedural violations. If the administrative law judge finds that violations of IDEA procedural requirements have been committed by the school district, a second step is required to determine whether that procedural violation is one which has resulted in such substantial harm that the violation itself constitutes a denial of FAPE. *Deal v. Hamilton Cty, Bd. of Educ.*, 392 F. 3d 840, 854 (6th Cir. 2005).

Examples of such violations include the pre-determination of an IEP, the failure of the district to convene a properly constituted IEP Team, and the failure of the district to allow the parents to participate meaningfully in the IEP discussions and determinations, and, most recently the failure of a district to allow an outside expert to observe a student in the classroom for more than 20 minutes (Order reversing OAH, Appeal of Administrative Decision dated March 28, 2006, *L.M. v. Capistrano Unified School District*, USDC, WDCA, CV 06-3049 ABC (JCx) entered March 14, 2007§.

In each of these situations, the courts have found that the procedural violations constituted a denial of FAPE to the student.

2

If the procedural violation is not one that results in substantial harm, the third step is taken. With the third step, the trier of fact must determine whether any violations resulted in a denial of substantive FAPE for the child.

Unfortunately, ALJs have been lead by districts to believe that parents somehow can be responsible for the denial of FAPE. Decisions have been written citing that the parent "prevented the district from holding an IEP team meeting to review initial evaluations" and, therefore "the district cannot be accountable for non-provision of services." This is incorrect. The District has a duty to send certified letters, document this, and hold the IEP without parents (which, wasn't done in this case). Any undue delay in either holding the IEP, or seeking administrative review through OAH is a denial of FAPE. See, *Pajaro Valley Unified School District v. J.S., et al.* USDC, NDCA C 06-0380 PVT, December 15, 2006.

The concerns about OAHs decisions should focus on whether the ALJs have sufficient experience and expertise to know when they are being misled, or when the district is raising a red herring. Recently, in a case where the district filed to enforce an IEP at which the district had neither completed its assessments, nor invited the students general education private school teacher, nor invited any general education teacher, despite the district's offer of general education with RSP and DIS services, parent made a motion for directed decision on the basis of failure to constitute a legally-formed IEP Team. Alternatively, parent requested that under *Shapiro*, the first part of the hearing be dedicated to the issue of whether the lack of a legal IEP Team was a procedural violation that resulted in a denial of FAPE, and, if it is determined that it was not, then proceed with the substantive FAPE issues. At hearing, the ALJ decided that the first determination would be whether the district's offer was a FAPE. Then, if it was a FAPE, decide whether the procedural violation negates it.

After a 4 ½ day hearing, the decision rendered, on page 20 stated, "Because the District failed to meet the procedural requirements of the IDEA, it is unnecessary for the ALJ to address whether the District's proposed IEP substantively met the requirements for a FAPE" OAH Case No. N2006100142.

It would have taken less than one day's hearing to arrive at this conclusion. The reason that the hearing went forward as it did was the district's red-herring of the dissenting opinion in *M.L, et al, v. Federal Way School District*, 394 F. 3d 634 (9th Cir. 2004), namely, the "harmless error" doctrine. IDEA was not enacted to immunize districts from their violations. The letter and spirit is for protection of the disabled student. The ALJs must be decisive enough not to place undue weight on obstructive issues waged by districts. This is extremely prejudicial to parents, and a drain on judicial resources.

A dissenting opinion in one case does not equal or outweigh the well-reasoned majority opinions in that case, as well as *Shapiro* and *Target Range*, or the prevailing policy of "leveling the playing filed" to allow parents to have the same knowledge as districts (*L.M. v. Capistrano, supra*).

A couple of years ago, in a very protracted and publicized case, a certain state-wide law firm was ordered to go to "ethics school" for employing tactics described by the Court as: (1) bad faith, frivolous objections, (2) misstatement and mischaracterization of facts contained in the administrative record (3) misstatements of applicable law and (4) intentional obstruction of the speedy and just resolution of the dispute. See, *Moser v. Bret Harte Union High School District*, UADC, EDCA CIV-F-99-6273 OWW SMS (January 12, 2005). Apparently, this level of

3

misstatement is being revived because the attorneys for districts have a new hearing body that they can mislead with impunity, until another Federal Court Judge sanctions them.

The most flagrant abuse by schools districts in current due process matters is taking upon themselves to tell OAH what it does and does not have jurisdiction over. This has been waged by more than one law firm, and has resulted in instantaneous appeals.

In one instance, the attorney for the district subpoenaed Juvenile Court Probation Officers to testify in a case. Juvenile Court records are not public record, and no information about a juvenile can be imparted or testified to without a order signed by the Presiding Juvenile Court Judge. California Welfare and Institutions Code §827(b)(2). There is no discretion involved. In this case the Juvenile Probation Officers did not have an order signed by the presiding judge. At the district's counsels urging (after all, they were served with subpoenas issued by OAH), the ALJ, over objection, ordered the Juvenile Probation Officers to testify. OAH Case No. N2006020294, USDC, SDCA Case No. 06 CV 2357 BEN (RBB).

In that same case, after Student prevailed, the district's counsel ignored the order for reimbursement within 45 days, on the grounds that "the district didn't believe that Student had met its burden of proof—and don't bother applying to OAH for relief, because OAH cannot enforce its own orders." The district paid as soon as the federal complaint was filed.

In another case, while the IDEIA prohibits any party other than the Petitioner from framing issues to be heard at hearing, the district's counsel states in its Prehearing Conference Statement, "The District presents the following issues and proposed resolutions for adjudication by OAH. The statement shall serve as the District's list of issues pursuant to Education Code Section 56501(e)(6)." This is modified by a footnote that reads, "The District's issues and proposed resolutions are based on its review and understanding of Student's due process hearing request."

It then goes on to refute Student's issues by stating, "To the extent OAH assumes jurisdiction over this issue..." This undermined the right of Student to have the issue heard, and was then accompanied by a Motion to Limit Issues which misrepresented that OAH did not have jurisdiction over FAPE issues. OAH Case No. N20070203409, USDC, SDCA Case No. 07-CV-675 BTM (RBB).

In the meantime, it is apparently acceptable to have dozens, if not hundreds, of students out of school because the districts would rather fight the parents than offer a FAPE. The ALJs wouldn't accept this for their own children, yet condone it by believing what the districts are promulgating at hearing.

Paragraph 5: <u>OAH Facility Requirements for Hearing</u>.:

This is a non-issue, as parents have the right to have due process hearings heard in OAHs courtrooms.

SEHO employed Hearing Officers. These were not judges, were not referred to as judges, did not preside over courtrooms and did not wear judicial robes.

OAH employs ALJs. Judges wear robes. Judges are referred to as "your honor" and judges preside over matters in courtrooms. Courtrooms have conventions designed to allow every participant to know their respective roles. For instance, there is the bar, which defines the

4

sanctity of the inner court. There is the well, where counsel each have tables, there is the bench, where the judge resides, and no one but the bailiff has access to, and there is the witness stand, which is an appropriate distance from the bench so the witness and judge do not appear to be sharing the same space. The reason for these conventions is for the parties comfort, and the judges' protection.

In each case I have tried in a "mock" courtroom at a district office, at some point in the hearing, when the district representative is on the witness stand, the door opens and a school employee breezes in, walks through the "bar" into the "well" past the attorneys and goes right up to the witness stand and hands a piece of paper to the district representative. This is disrespectful, interruptive, and definitely makes the parent feel that they are on the district's turf, playing by district rules.

However, California Education Code § 56505(b) states, that the due process hearing "shall be held at a time and place reasonably convenient the parent and student." There is no statute that mandates the due process hearing be held at the district office for the convenience of district witnesses. "Convenient" is defined as "serving one's comfort or interests." The comfort and interest of parents is to have due process hearings held in a neutral, decorous tribunal suitable for the purpose of dispensing even-handed justice. This is <u>not</u> the district office.

Furthermore, there is no discretion involved. Whether the Petitioner is the Student or the district, when the parents request that the hearing be held in the local OAH courtroom for their convenience, this must be granted. As far as it being "problematic when the proposed hearing location is not in proximity to the district," this is something districts might want to consider before violating the IDEA and denying a FAPE. Again, the statutes are written to protect students, not districts. There is no problem with scheduling the mediations at school districts. However, the automatic scheduling of the due process hearing at the district office, as is the current practice in Due Process Hearing Notices should stop immediately. This is a parents' right to choose, not the districts', and not OAHs'.

This will mean that case coordination will have to include availability of courtrooms on the successive days of hearings. It should be noted that in Federal and State Court, courtrooms are busy at all times. Not so at OAH. It is incumbent for OAH to have available a courtroom in the county where the parent resides, and, at parents' request, order the hearing take place there. This does not require any conversation about parking, whether the entire hearing should move to another county where one of the experts resides for one of the hearing days, and certainly should not consider "undue hardship" for district personnel, because the statute is very clear and mandatory, and was not enacted to protect the district.

Paragraph 6: Scheduling Hearings/Mediation:

The same statute applies: The due process hearing "<u>shall</u> be held at a <u>time</u> and place reasonably convenient the parent and student." California Education Code §56505(b).

This means that if parents are represented by an attorney and the attorney is otherwise engaged on the date proposed for the hearing, the hearing must be postponed to accommodate the parents right to be represented by an attorney. 20 U.S.C. § 1415(h)(1);34 C.F.R. §300.509(a)(1); California Education Code §5605(e)(1).

5

Furthermore, districts are manipulating the timing for hearings so as not to interfere with the districts' winter and spring breaks. No one takes into account that parents must use their paid vacation time to prepare for and attend the hearing. Why should district personnel have the luxury of taking their paid vacation time off, and then get paid for days attending the hearing? The parent has to sacrifice much more to go to hearing than the districts' employees do.

Paragraph 7:  Mediators.

"Often times school district representatives find the mediators are not neutral, express their evaluations on the merits of the case in front of all the parties, and fail to facilitate the parties reaching agreement."

First, you can call OAH and find out who the mediator assigned to the case is. Since mediation is voluntary, there is an opportunity to request a different mediator, or forego mediation. However, once you know the mediator assigned to the case, you can prepare accordingly. Sometimes, after introductions, it is appropriate to request a caucus and make the mediator aware of your concerns. Often, the mediation is an opportunity to allow each side to realize that there is a possibility of not prevailing. It is always the case that when something is put into writing, such as a due process complaint, the words ring true and take on a life of their own. Parties become overly confident because of this. Having the opportunity to bring clients into reality is one of the purposes of mediation. Mediators don't render decisions, so there is very little prejudice that can arise from attending mediations.

On the other hand, mediators are human. Some have children, some are married to teachers or school administrators, and some have children with disabilities. The law was fashioned to protect children, and not school districts. Therefore, any ALJ, acting in the capacity of mediator or hearing judge, should be aware of the law that the child's right to a FAPE is paramount. If this doesn't appear neutral to district personnel, they should take it up with the legislature, not OAH.

Conclusion

This is intended only to address some of the issues raised by the attorneys representing districts. Accompanying memoranda, concerning the OAH Quarterly Report, and Issues and Suggested Resolutions address further issues of concern to attorneys representing parents.

Ellen Dowd, Esq.
State Bar Number 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014
(858) 342-8360

Tania L. Whiteleather, Esq.
State Bar Number 141227
5445 E. Del Amo Blvd., Ste. 207
Lakewood, California 90712
(562) 866-8755

Date: April 23, 2007

To:    Hon. Ronald L. Diedrich
       Director and Chief Administrative Law Judge
       Office of Administrative Hearings- State of California

From: Ellen Dowd, Esq. and Tania Whiteleather, Esq.

Subject: The following pages are Statements of Issues and Proposed Resolutions for OAH's
consideration, by attorneys who represent Students in Due Process Hearings.

Encl. (11 pages).

ISSUE NUMBER 1:   OAH SHOULD HAVE AN E-MAIL, OR WEEKEND DUTY OFFICER, OR BOTH.

PROPOSED RESOLUTION:  SET UP AN E-MAIL ADDRESS TO RECEIVE INFORMATION

DISCUSSION:

Most OAH Hearings start on a Monday.  Many attorneys representing parents and districts work over the weekend if a settlement is in progress.  If the case settles, we have no way of getting in touch with OAH to spare the ALJ from traveling to the hearing the next morning.

Federal Courts have a magistrate judge acting as a "duty officer" on weekends.   We believe they they take turns.

In addition to cases settling, there may be a family emergency or death in the family, and for sole practitioners, there may not be an attorney appearing for a party due to this.

The easiest way to remedy this is to set up a neutral e-mail address, and take turns monitoring it over the weekend.  If ALJ Jones monitors the e-mail, and learns on Sunday morning that the case ALJ Smith is assigned to on Monday has settled, this can be imparted to ALJ Smith, who, instead of traveling early Monday morning, can call the parties and confirm the settlement.

ISSUE NUMBER 2:

ALJS WHO ARE PRESIDING OVER CASES STARTING ON MONDAY SHOULD NOT BE ON VACATION THE ENTIRE WEEK BEFORE THE HEARING.


PROPOSED RESOLUTION:

IF THE ALJ KNOWS OF A SCHEDULED VACATION, IT SHOULD BE DISCLOSED AT OR BEFORE THE PREHEARING CONFERENCE, AND THE PARTIES HAVE THE OPPORTUNITY TO DISCUSS CONTINUING THE HEARING FOR THE SAKE OF JUDICIAL ECONOMY AND FAIRNESS.

DISCUSSION:

In the recent cases that went to hearing, each of the ALJs was on vacation the entire week before the hearing.

In the first case, a significant Motion in Limine was filed timely, concerning a directed "decision" based upon an IEP that procedurally could not be enforced (the only issue in the case), or, alternatively, under *Target Range* and *Shapiro*, hear the procedural violation first, and then, if necessary, hear the FAPE issues.

The ALJ arrived at the hearing and stated that she knew there was some motion in limine filed, but she was on vacation, and while OAH attempted to overnight it to her, she didn't have it. She asked for a copy and stated that she would be happy to rule on it at the end of the day. As is substantially affected the order of the hearing, Student's attorney requested that it be considered, researched and ruled on prior to the commencement of the hearing, even if this meant that the hearing would have to be suspended for that day.

The ALJ asked for a copy of the Motion and ruled on it right then and there, obviously, not with the ideal research available (because we were at the District office, due to lack of an available courtroom).

Despite *Shapiro,* the ALJ decided that the first determination would be whether the district's offer was a FAPE. Then, if it was a FAPE, decide whether the procedural violation negates it. After a 4 ½ day hearing, the decision rendered, on page 20 stated, "Because the District failed to meet the procedural requirements of the IDEA, it is unnecessary for the ALJ to address whether the District's proposed IEP substantively met the requirements for a FAPE" OAH Case No. N2006100142.


Although the outcome was in favor of the Student, the parent was very distressed by the lack of regard for the importance of the motion.

In the other recent case, the ALJ was on vacation the entire week before the hearing. Three motions in limine were filed prior to the Prehearing Conference. One was filed by the district to limit issues that had existed since the filing of the Due Process Complaint. Student had the burden of proof on these issues, and had prepared evidence and testimony for the hearing to accomplish this.

Student brought two motions in limine, which have never been decided.

The district claimed that OAH didn't have jurisdiction over two FAPE issues. OAH agreed, and at 5:30 p.m. on the Friday before the Monday, 9:00 a.m. hearing date, the Presiding Judge issued an Order dismissing these issues—no oral argument, no ability to present evidence, or to bring it up on the first day of hearing with the hearing ALJ.

The parties had been invited to file Opening Briefs. Student did, the district did not. This case involved denials of FAPE for an autistic child, and was very carefully prepared to describe the individualized educational programs and services that would support this child's access to education.

The opening brief apparently had not been read. It cited documents in the evidence notebook, which absolutely was never opened by the Presiding Judge, as we had been instructed in the Prehearing Conference to "just bring the evidence notebook the first day of the hearing because the ALJ preferred to look at the documents as the hearing takes place." Student, naturally, had timely sent the evidence notebook to OAH's office.

Motions in limine are usually about evidence. How can motions in limine concerning evidence be decided without looking at the evidence.

Here, despite the fact that OAH had received Student's evidence notebook, indexed and Bate-stamped, the district's misleading motion was decided without any consideration of the evidence.

Student had no choice but to dismiss the remaining issues without prejudice and appeal OAH's Order of Dismissal to Federal Court. OAH Case No. N20070203409, USDC, SDCA Case No. 07-CV-675 BTM (RBB).

The Student has a right to present evidence, as well as written and oral argument. 20 U.S.C. § 1415(h)(2);34 C.F.R. §300.509(a)(3).

The ALJ assigned to the case should have allowed argument, or an offer of proof, based on the evidence in both parties' notebooks (which turned out to be the same evidence), but was precluded from doing so by the Order of Dismissal. If the same documents are being presented by the Student and the district, an offer of proof based upon these documents is certainly a necessary step before dismissing the issues outright, without ever looking at the evidence, or hearing argument.

4

ISSUE NUMBER 3:

INDEXED, NUMBERED OR LETTERED AND BATE STAMPED EVIDENCE
NOTEBOOKS MUST BE EXCHANGED IN A TIMELY MANNER, AND MUST BE
RECEIVED AT OAH'S OFFICES WITHIN THE SAME TIMEFRAME.

PROPOSED RESOLUTION:

DISTRICTS NEVER BATE-STAMP THEIR DOCUMENTS. WHICH MAKES IT
UNWIELDY TO ELICIT TESTIMONY AT TRIAL.

ALJS NEED TO CONSIDER AND REFER TO EVIDENCE SUBJECT TO MOTIONS IN
LIMINE BEFORE DECIDING THE MOTION.

DISCUSSION:

First, OAH should decide whether it want the Respondent to organize its evidence notebook by
letters (A-Z), or numbers (101-200). This should be made into a standing order.

Second, it is implausible, if not impossible for the Student and district to present one evidence
notebook for hearing. While this is required in Superior Court, the attorneys typically are within
close proximity to each other. Additionally, there usually isn't multiple generations of the same
document.

Special education law is unique because the IEP document is considered a "living" document.
As ALJs have certainly noticed, IEPs appear in "Draft" form—some Drafts are signed, some
unsigned. They expand with "IEP Team Meeting Notes" which may, or may not be attached as
an Addendum. Some IEPs continue for multiple dates; some are re-written on to show progress
on goals; some refer to every IEP as "annual," despite its true purpose.

Even sitting in the same room, it would take considerable time for the parties to "meet and
confer" on which document is the actual IEP. Most notebooks contain different generations of
the same IEP.

It would be impossible for counsel over the phone to identify whether one IEP was a duplicate of
another, because saying, "I have a 15-page document dated 4/23/07, bearing 7 signatures" may
or may not be the exact same document the other side thinks is being referred to.

This is just one of the features of this legal specialty.

On the other hand, it can easily be agreed at the hearing that the 4/23/07 IEP is identical, and the
one in Petitioner's Notebook will be the exhibit.

After hearing, there is time to go over which documents were admitted, and, oftentimes, there
will be two similar IEPs admitted, because testimony may affect the weight given to one
document over the other. Just because evidence is presented, or even admitted, doesn't mean
that it will be dispositive, or even relevant to an issue in the decision.

The parents right to present evidence, 20 U.S.C. § 1415(h)(2);34 C.F.R. §300.509(a)(3).
should not be impeded by requiring that a joint notebook be presented prior to the hearing.

ISSUE NUMBER 4:

A DISPARATE AMOUNT OF ALJ "TRAINING" APPEARS TO BE COMING FROM DISTRICTS, OR ENTITIES AFFILIATED WITH DISTRICTS.

PROPOSED RESOLUTION:

OAH SHOULD ROUTINELY INVITE PARENTS AND PARENT REPRESENTATIVES TO PRESENT PRACTICAL TRAINING FOR ALJ'S.

DISCUSSION:

In the recent Notice of Proposed Rulemaking, published on January 29, 2007, Section 3082.1(f)(9), concerning training of OAH ALJs states, "A hearing officers initial training shall include at least 20 hours of approved training in the adjudication of special education disputes, which may include practical, clinical, or simulated training, and which <u>shall</u> include, but not be limited to the following subjects:

(9) Participation of parents, guardians, and representatives of children with exceptional needs in special education disputes."

There was an overture made in December, 2006 to have volunteer attorneys representing Students participate in ALJ training. This never happened, despite willingness on the part of some Student attorneys.

Additionally, parents representing themselves in due process hearings are at a distinct disadvantage, because the ALJ's expect them to understand legal terms and procedures. In fact, one parent's due process complaint was held to be insufficient (based on the Motion made by the attorney for the district) solely because it wasn't on a form similar to the one on OAH's website. Unfortunately, the Order of Insufficiency didn't even direct the parent to the form on the website.

SEHO used to send parents a list of attorneys and advocates representing Students. It is unclear whether this is still being done.

From parent interviews, I have gleaned that while many of them are desperate to have advice or representation from counsel, even upon calling OAH and CDE, they are not given any resources. If there were no special education parents, there would be no special education attorneys, and no special education ALJs. The parents represent the class of disabled students protected by the laws that attorneys and ALJs routinely deal with. However, if parents, and parent representatives are not able to participate in training, and are not given an adequate opportunity to be advised by counsel, then they are unable to avail their disabled children of the benefits afforded them under the law.

The participation of parent, parent attorneys and representatives should be embraced as an opportunity for fair treatment under the law.

6

ISSUE NUMBER 5:

A DISTRICT FILES TO HAVE AN IEP DECLARED A FAPE, BUT OMITS TO ATTACH THE IEP, WHICH ISN'T PRODUCED UNTIL THE EVIDENCE NOTEBOOK IS SUBMITTED.

PROPOSED RESOULTION:

THE DISTRICT MUST ATTACH THE IEP AND INCORPORATE IT BY REFERENCE SO THE PARENT AND ALJ KNOW BEFORE RECEIPT OF THE EVIDENCE NOTEBOOK.

DISCUSSION:

At a recent Due Process Hearing where the district filed to have an IEP declared a FAPE, after receipt of the district's evidence notebook, student made a Motion for Decision on the Pleadings, as a required member of the IEP team (general education teacher) wasn't in attendance at the IEP.

The ALJ ruled that because the district's Due Process Complaint did not attach the IEP, this was not part of a pleading.

As IEP documents often go through changes, with, or without the parents' knowledge, the district's Due Process Complaint seeking declaration that a specific IEP is a FAPE should be deemed insufficient unless the IEP document is attached.

7

ISSUE NUMBER 6:

FAILING TO ALLOW TESTIMONY/DOCUMENTS OCCURRING BEFORE THE
PERCEIVED STATUTE OF LIMITATIONS FROM BEING PRESENTED.

PROPOSED RESOLUTION:

RELEVANT EVIDENCE OF DISABILITY, EDUCATIONAL HISTORY, PROGRESS,
PROGRAMS AND SERVICES SHOULD BE HEARD REGARDLESS OF WHETHER THEY
OCCURRED WITHIN THE PAST TWO YEARS, OR PRIOR TO THIS.

DISCUSSION:

Children are not educated in a vacuum, and the individualized needs of the child are a result of
years of assessment, services, progress and developmental and educational history.

The issues to be adjudicated are limited to those, in most instances, which occurred within two
years of the date of filing the Due Process Complaint.  However, the body of knowledge known
by the district about the child's educational needs, and how long ago it was known, is not limited
by any statute of limitations.

In most instances, documents, including assessments, IEPs, progress reports, and report cards
were reviewed, considered and relied upon by Student's experts in forming their opinions.  These
documents contain facts upon which Student's experts have based their opinions.  See, *Behr v.
County of Santa Cruz,* 172 Cal. App. 2d, 697, 342 (1959). California Evidence Code Section
801(b) provides that an expert may base his opinion upon reliable matter, whether or not
admissible (such as if the matter is hearsay).

The ALJ may assign lesser weight to older documents, or to documents that have not been
heavily relied upon by experts, however, the ALJ should not be allowed to exclude testimony
regarding these documents during the presentation of the case.

8

ISSUE NUMBER 7:

STAY-PUT IS A LEGAL RIGHT THAT ARISES IN FAVOR OF A STUDENT WHEN PARENTS AND THE DISTRICT DISAGREE, AND SEEK JUDICIAL RESOLUTION.

STAY PUT OCCURS BY OPERATION OF LAW, 20 U.S.C. §1415(j); 34 C.F.R. § 300.514; CALIFORNIA EDUCATION CODE § 56505(d).

STUDENTS HAVE A RIGHT TO HEARING OF THE ISSUE OF STAY PUT, WITH THE PRESENTATION OF EVIDENCE, DESPITE ANY INTERIM ORDER REGARDING STAY PUT.

PROPOSED RESOLUTION:

PARENTS SHOULD BE AFFORDED A FULL AND FAIR OPPORTUNITY TO HAVE ANY DISPUTE OVER STAY-PUT HEARD AND RESOVED AT HEARING

DISCUSSION:

At one recent hearing, following a Prehearing Order denying stay-put (but not issuing an order determining what constituted stay-put), the ALJ refused to hear issues regarding stay-put at the hearing.  The student was not allowed to bring documentary evidence or testimony at hearing nor to address stay-put in any way, as the ALJ ordered there had been a decision issued which would not be addressed at hearing.  Said ruling denied the rights of the Student to have his issue of stay-put heard at hearing and has guaranteed another appeal of an OAH decision.

Educational placement, including stay-put- the last placement and services agreed upon by the LEA and parent- is clearly an issue for hearing,(California Education Code § 56501) and any preliminary determination regarding stay-put is not a full determination of the issue at hearing. Parents are entitled to a full and fair hearing of their issues by an administrative hearing officer. (California Education Code § 56501)

ALJs appear to believe that no issue other than immediate placement and services arise from issues of stay-put; however, there are also related issues of compensatory education.

9

ISSUE NUMBER 8:

JUST BECAUSE THE DISTRICT ISSUES A SUBPOENA TO APPEAR AT HEARING, DOES NOT ENSURE THAT TESTIMONY ELICITED AS A RESULT OF THE SUBPOENA IS ALLOWABLE.

PROPOSED RESOLUTION:

IF THE DISTRICT ISSUES A SUBPOENA FOR PROTECTED INFORMATION, AND IT IS OPPOSED BY COUNSEL REPRESENTING STUDENT BASED UPON MANDATORY STAUTORY AUTHORITY, IN THIS CASE PROHIBITING ANY JUVENILE COURT INFORMATION TO BE DISCLOSED BY JUVENILE PROBATION WITHOUT AN ORDER SIGNED BY THE PRESIDING JUVENILE COURT JUDGE, THE ALJ SHOULD AVOID ABROGATING THE AUTHORITY OF THE PRESIDING JUVENILE COURT JUDGE, AND, IF THERE IS ANY AMBIGUITY, THE ALJ SHOULD CALL THE PRESIDING JUVENILE COURT JUDGE FOR GUIDANCE.

DISCUSSION:

A minor's right to privacy regarding Juvenile Court matters is protected by California Welfare and Institutions Code. Juvenile Court records are not public record, and no information about a juvenile can be imparted or testified to without a order signed by the Presiding Juvenile Court Judge. California Welfare and Institutions Code §827(b)(2). There is no discretion involved. There is a compelling policy surrounding this provision—it is intended not to "brand" the minor offender as a criminal while the minor is serving the term of his or her probation. After the probation is satisfied, the records are sealed.

In one case the Juvenile Probation Officers who were subpoenaed did not have an order signed by the presiding juvenile court judge. At the district's counsels urging, the ALJ, over objection, ordered the Juvenile Probation Officers to testify. OAH Case No. N2006020294, USDC, SDCA Case No. 06 CV 2357 BEN (RBB).

This was an abuse of discretion, and could have resulted in disciplinary complaints against the Juvenile Probation Officers.

Special education cases go beyond the letter and spirit of IDEA and California Education Code. In all instances where there is doubt as to the applicability of other laws, the ALJs should err on the side of the Student, who is the party intended to be protected by IDEA.

ISSUE NUMBER 9:

THERE ARE EXCEPTIONS TO THE STATUTE OF LIMITATIONS IMPOSED UNDER IDEIA (TWO YEARS), HOWEVER THE ALJS REFUSE TO HEAR EVIDENCE ON THE MERITS CONCERNING THESE EXCEPTIONS, AND IMPOSE THE 2-YEAR STATUTE OF LIMITATIONS WITHOUT EXCEPTION.

PROPOSED RESOLUTION:

OAH HAS JURISDICTION OVER BOTH PROCEDURAL AND SUBSTANTIVE VIOLATIONS OF IDEA.  OAH MUST HAVE AN EVIDENTIARY HEARING ON THE MERITS, EITHER BEFORE OR DURING THE DUE PROCESS, AND DETERMINE IF THE FACTS AND EVIDENCE CONSTITUTE AN EXCEPTION TO THE 2-YEAR STAUTE.

DISCUSSION:

The statute of limitations are substantive matters of law.  The current statute of limitations specifies that a Due Process Hearing must be initiated within two years of the complaining party either knowing or should have known about the complained-of action.

The exceptions to this statute arise if the district either failed to inform the parents, or misinformed the parents about their rights.

When a misrepresentation is made by the district affecting parents' right to file for Due Process, an evidentiary hearing concerning the nature of the misrepresentation, and whether it was reasonably relied upon, is necessary.

Limiting the time period claimed in a Due Process Complaint when the statute of limitations was missed due to acts or omissions of the district, impedes the parents ability to obtain adequate compensatory education for their student.

11

ISSUE NUMBER 10:

WHAT IS THE ACTUAL TURN-AROUND TIME FOR TRANSCRIPTS?

WHILE OAH'S TRANSCRIPT REQUEST INDICATES THAT "REGULAR PROCESSING"
IS 30-45 DAYS, MANY TRANSCRIPTS HAVE NOT BEEN RECEIVED AND ARE STILL
OUTSTANDING AFTER 5 ½ MONTHS.

PROPOSED RESOLUTION:

OAH SHOULD IMPLEMENT A PROCEDURE FOR DELIVERING TRANSCRIPTS
TIMELY WHERE IT KNOWS THE APPEAL HAS ALREADY BEEN FILED.

DISCUSSION:

Parties have 90 days in which to file an appeal of an OAH Decision in Court.

Many appeals filed by Students are done very quickly after the Decision. I have never had to
have the transcript to review it before filing an appeal. I use notes taken at the hearing as the
basis for determining whether to take the appeal.

However, in Federal Court, the Early Neutral Evaluation Conference (ENE) is held
approximately 90 days after filing (this is in Southern District). I usually request the transcript
while I am preparing the complaint on Appeal. The Court typically inquires about the status of
the transcript when setting dates at the ENE.

It might be helpful if the Transcript Request Form contained a line for the Federal Court Case
Number, and the date the appeal was filed, and then have OAH prioritize the issuance of
transcripts based upon this information.

Date: April 23, 2007

To:    Hon. Ronald L. Diedrich
       Director and Chief Administrative Law Judge
       Office of Administrative Hearings- State of California

From: Ellen Dowd, Attorney at Law

Subject: Comments About the Office of Administrative Hearings
         Special Education Division Quarterly Reports
         July 1, 2005 to December 31, 2006


As a concerned parent and as a Special Education Attorney representing Students for the past 6 years, I welcome the opportunity to participate in the Special Education Advisory Committee meeting.

One of my concerns is the language used and depictions published by OAH, Special Education Division in its Quarterly Reports.

The Quarterly reports are required under the terms of the Interagency Agreement between CDE and OAH, Number 4427, dated May 25, 2005. While OAH is responsible for compiling and reporting data, there does not appear to be any oversight concerning the way the data is reported, or over its accuracy.

These comments are offered to attempt to make the quarterly reports more objective, and less confusing and defensive. The purpose of the Quarterly reports is to share data, not to applaud or aggrandize OAH. Therefore, the data should be presented as a means of tracking trends, and investigating concerns.

QUARTERLY REPORT JULY-DECEMBER 2005:

"Careful tracking case management activities is critical to assess performance and identify important trends."

"Of 32 hearings, 50 percent were rendered in favor of local educational agencies (LEAs) and 19 percent were rendered in favor of parents. The remaining 31 percent were split decisions."

**These statements are accurate.**

"This compares to the previous quarter (April-June 2005) when no decisions were rendered in favor of parents, and 62 percent were in favor of the LEAS."

**This is facially true. No decisions were rendered in favor of parents while SEHO was attempting to keep the CDE contract. During SEHO's tenure parents prevailed more than 50% of the time, the very beginning of the contractual period, and the very end of the**

contractual period being the exceptions.[1] 19% is very low in comparison with the trend under SEHO.

QUARTERLY REPORT JANUARY 1, 2006-MARCH 31, 2006:

"Administrative Law Judges at OAH are trained and experienced in resolving cases through these informal means [mediation]."

**This statement is accurate, however, it has never been reported as to what specific training in special education the ALJs have had, sufficient to understand what it means when attorneys say, 'that's the _____ case':**

| | |
|---|---|
| **Union:** | **One formal offer of FAPE** |
| **Adams:** | **Snapshot in time** |
| **Shapiro:** | **Procedural compliance with IDEA determined first, and if so, the FAPE issues determined.** |
| **Target Range:** | **Procedural flaws can result in a denial of FAPE if they seriously infringe parents' opportunity to participate in the IEP process.** |
| **Carter:** | **Reimbursement can be made for placement at a non-certified private school.** |

**Just to name a few. This is how lawyers evaluate their cases before accepting them. Knowing this terminology is critical to understanding cases that are being heard.**

"31 cases went to hearing—Student had positive outcomes in more than a quarter of the cases heard."

**"Positive outcomes" implies that the Student received a substantial benefit in the outcome. This isn't true. In this quarter the Student completely prevailed 10% of the time. There was a split decision in 16% of the cases, however, in most of these cases the Student didn't receive more services, the parents obtained a minimal reimbursement ($1,000-$2,000) for assessments. There is nothing positive about having an outside assessor determine that a student needs different or more services, and ruling that the district doesn't have to provide them.**

"9 decisions were rendered in the 45-day timeline, or extended timelines."

**This deduces that 22 of the 31 cases were not timely decided. However, the above statement is misleading because 0 decisions were actually rendered within the 45-day timeline; all 9 were on extended timelines.**

**In each case I have tried, at the end of an exhaustive 5-day hearing, the ALJ will request additional time to render the decision. Under duress, this request is granted, because to do otherwise may imperil my client's case.**

---

[1] Source of information: SEHO Quarterly Reports.

2

<u>QUARTERLY REPORT APRIL 1, 2006 -JUNE 30, 2006</u>:

"OAH recognized the need to improve decision timelines."

"29% were timely in the 3rd quarter (1/06-3/06) and 57% were timely in the 4th quarter."

**Again, there were only 2 decisions within the 45-day timeline in the 4th quarter, which corresponds to the number of expedited cases heard (2). There were no regular case decisions within the 45-day timeline. These were all on extended timelines.**

"As new administrative law judges are added and experience levels increased, decision timeliness is expected to improve still more."

**There hadn't been any improvement on any regular cases, yet as there were still 0 rendered within the 45-day timeline.**

"All ALJs assigned to mediations attended a civil mediation course."

"In addition, a day-long mediation course was presented by a very capable National Judicial College instructor at the OAH annual training that 'focused on special education matters.'"

**"Focused on special education matters."—what does this mean? Apparently it was still only presented in the context of mediation. No decisions are rendered at mediation, they are rendered after hearings, which begs the question, what do the ALJs know about special education law sufficient to render correct decisions at hearing?**

"56 cases went to hearing— the decisions rendered were: 4% were completely resolved in favor or the Student, 67% were completely resolved in favor of the district, and 29% were split decisions."

**Only 2 out of 56 decisions were completely resolved in favor of the Student. Partial relief doesn't count, because Students don't file to get partial relief. At this point, districts are prevailing 96% of the time, and parents can only prevail if they go up on appeal, which many cases have.**

**Last month I received three inquiry forms concerning the cases that I had taken to appeal in 2006, which were based upon requests for transcripts. Since then, I have appealed one other case. It is important that OAH keep data about how many OAH decisions are currently being appealed. I'm sure the Federal Courts are.**

<u>QUARTERLY REPORT JULY 1, 2006- SEPTEMBER 30, 2006</u>:

"39 cases went to hearing. Decisions rendered were: 3 where the Student completely prevailed, 24 where the district completely prevailed and 12 split decisions."

**7.6% of decisions were completely in favor of Student.**

"72% of decisions were issued in the requisite timeframe."

3

**This is misleading, as only 3 decisions (7.6%) were rendered within 45 days. 24 decisions were on extended timelines.**

QUARTERLY REPORT OCTOBER 1, 2006-DECEMBER 31, 2006:

"26 cases went to hearing."

"Parents prevailed or received split decisions in 38% of cases."

**This is misleading. Parents completely prevailed in 4 cases (15%). Again, parents don't file for partial relief. And, the need to file to get any relief at all can still render the parent as the "prevailing party." This was the holding in the September 28, 2006 Ninth Circuit Decision in *Park v. Anaheim Union High School District.***

"96% of decisions were issued within the requisite timeframe."

**2 decisions were within 45 days (7%)**
**23 decisions were on extended timelines.**

4

**EXHIBIT E**

**Ellen Dowd**
**Attorney At Law**
**State Bar # 141206**
**Special Education Legal Center**
**2658 Del Mar Heights Road #228**
**Del Mar, California 92014**
**(Tel) 858-342-8360  (Fax) 858-755-6348**

July 11, 2007

Mr. Perry Williams
U.S. Department of Education
400 Maryland Avenue SW
Washington, D.C. 20202                VIA FAX # 202-245-7614

Re:   Capistrano Unified School District v. ▇▇▇▇▇▇▇▇
      OAH Case Number N 2007060627

Dear Mr. Williams:

Dayon Higgins suggested that I contact you about an urgent matter. I represent special education students in need of a FAPE from school districts, and need your help.

I have been an attorney for 25 years and am admitted to and in good standing in the State Bars of New York, New Jersey and California. I have practiced in Federal and States courts in these jurisdictions. In 1999 I received my Master's degree in Marriage, Family and Child Counseling. I have been involved in special education since 1994 when my daughter was identified with a specific learning disability. Since my daughter's graduation from high school and enrollment in college, I have devoted my practice to assisting special education students and their parents.

As you are aware, since 7/1/05 the Office of Administrative Hearings, Special Education Division became the adjudicative body charged with conducting mediations and due process hearings in California. The Interagency Agreement between California Department of Education (CDE) and Office of Administrative Hearings (OAH), Number 4427 dated May 25, 2005 mandated that OAH will abide by and enforce the IDEA. IDEA requires:

> A due process hearing must be [H]eard by a hearing officer who
> possesses knowledge of, and the ability to understand, the provisions of the IDEA,
> federal and state regulations pertaining to the IDEA, the legal interpretations
> of the IDEA by federal and state courts...possesses the knowledge and
> ability to conduct hearings in accordance with appropriate, standard legal
> practice...and possesses the knowledge and ability to render and write
> decisions in accordance with appropriate, standard legal practice.
> 20 U.S.C. § 1415(f)(3)(A)(ii) and (iii).

Additionally, the Interagency Agreement provides, as consideration for receipt of 29 million dollars over three years, OAH promised, in pertinent part:

C.    TRAINING

1.    OAH agrees to provide special education unit ALJs specialized training regarding IDEA (including amendments made by Public Law 108–466), Education Code section 56000 et seq. and related regulations, as well as global skills training, as specified below. Trainings will be designed to ensure that all ALJs meet the minimum training standard specified in section 3082.2 of Title 5, California Code of Regulations.

2.    Presiding ALJs will determine when ALJs have a working knowledge of the laws and regulations governing services to students who qualify for services under the IDEA and related California laws and regulations, and the programmatic aspects of special education, services and supports. Only ALJs who have the level of expertise specified in proposed regulation section 3082.2 will be assigned mediation and hearing duties.

D. MEDIATION/ DUE PROCESS HEARINGS

1.    OAH agrees to maintain a separate specialized unit of Administrative Law Judges (ALJ) these ALJs meet the minimum qualifications specified in section 3082.1 of Title 5 California Code of Regulations are to function as officers and mediators...

The Interagency Agreement also adopts the language of California Education Code §56505(b) which states, that the due process hearing "shall be held at a time and place reasonably convenient to the parent and student." (Emphasis supplied).

Despite this, OAH sets each and every Due Process Hearing at the District Offices, which is intimidating to parents and implies bias. OAH's timing of Due Process Hearings also favors Districts, as the Districts routinely get much earlier hearing dates (Example: Student filed for Due Process on 6/13/07 and got a Hearing date of 8/8/07 [N2207060498]; in the instant case, The District filed for Due Process on 6/19/07 and got a Hearing date of 7/19/07).

The fact that parents and students are completely prevailing in fewer than 10% of cases (4% in one quarter) attests to the fact that OAH is enjoying the advantages of the Interagency Agreement (salaries, benefits, judicial robes, offices, courtrooms, staff) without dispensing justice to students, which is the purpose of IDEA.

On October 24, 2006, I filed a federal Court Complaint against OAH and CDE based upon the Interagency Agreement. I filed causes of action including Fraud, Constructive Trust and for an Accounting. This case, USDC,SDCA Case Number 06 CV 2357 BEN (RBB) is still pending. A copy of the first page of this Complaint is attached as Exhibit "A."

In April, 2007 OAH conducted an advisory committee meeting in Santa Ana, California, which I attended. Prior to this meeting, I provided OAH's Director with comments concerning the veracity of OAH's Quarterly Reports, in which OAH aggrandizes itself, and fails to see the harm being inflicted on students due to its Decisions which are heavily biased toward School Districts. A copy of my Memo is attached as Exhibit "B."

In March, 2007, OAH asked me if they could refer a Capistrano Unified School District's parents to me. These parents were desperate for legal representation because the Capistrano District's counsel filed for due process against the parents, barred them from observing their child in school and attended the student's IEP meetings, even though the parents were

2

unrepresented.  That is how I got involved in OAH Case No. N2006120443, entitled Capistrano Unified School District v. ███████████ ( "OAH-1").

As detailed in my letter to OAH dated July 3, 2007 (Exhibit "C") I did not have an adequate opportunity to obtain records from the District prior the Hearing in OAH-1 (which, I now know would have been futile, anyway), and the records I reviewed from David's parents prior to the Hearing in OAH-1 (as established at Hearing by testimony and exemplar) had parents' personal notes written in pencil and ink, an in English and Spanish, and were not useable at Hearing (an exemplar is attached as Exhibit "D").

The Hearing in OAH-1 was held on May 21-23, 2007.  On May 30, 2007 an IEP team Meeting was held, which I attended, and I requested a copy of all of David's school records.  The District agreed in writing to provide me with a complete copy of these records within 5 school days. (Exhibit "E").

On June 6, 2007, I received a telephone call from Capistrano District indicating that ███████ 4,400 pages of records were copied and ready to be picked up, but I would have to pay $861.20. I was outraged, as this was not the agreement at the IEP, and after taking days off from work for a Due Process Hearing, IEP, and engaging an attorney, my clients did not have the means to pay for these records.  The District's counsel responded, through a course of letters and e-mails that the actual cost of the District's photocopying at 15 cents per page was $661.20, and that the District was "firm" on its position that all of the pages needed to be paid for, sight unseen, or the records would not be provided.

Historically, I have never received more than 2,000 pages of records for a student, and that was a shock.  How the District could compile this volume of records on an 8th grade student who only attended 5th and 8th grade in public schools is very specious.  Additionally, 15 cents doesn't divide into $661.20 evenly—am I requested to pay for 1/3 of a page?

On June 11, 2007 counsel were ordered to exchange Closing Briefs in OAH-1.  I faxed Respondent's Closing Brief to OAH and the District's counsel the afternoon of June 11, 2007. The District's counsel did not provide their Closing Brief to me on June 11, 2007, as ordered, but, rather, Fed-xed it to me for delivery on June 12, 2007, claiming that counsel didn't have my fax number.  I protested to OAH enumerating the various fax transmissions that have been sent between counsel on this and other cases, however, OAH sided with the District.

On June 19, 2007, before receipt of the Decision in OAH-1, the District's counsel filed yet another Due Process Complaint, entitled Capistrano Unified School District v. ███████████. OAH Case No. N 2007060627 ("OAH-2")") to have two additional IEPs declared a FAPE.  The Hearing is set for Thursday, July 19, 2007.  Being aware at this time that there are several thousand pages of documents that I cannot access (without paying for them, which is a hardship for my clients), in order to discharge my professional responsibility to my clients and knowledgeably represent them, I need to obtain and review these 4,400 pages of records.

Since June, 13, 2007 I have requested that OAH issue an Order for the District to provide me with records, or issue a subpoena duces tecum to enable me to obtain the records, or to continue the Hearing so I can seek enforcement of my request for records judicially, to no avail.  A chronology of the communications from 6/13/07-7/3/07 is attached as Exhibit "F".

On June 29, 2007 OAH issued a Decision in OAH-1 erroneously in favor of the District.

3

Subsequent to preparing my chronology on July 4, 2007, I came upon an Order by OAH in another case which stated that provision of student records is a discovery matter to be decided by motion, and not an issue for hearing. On July 9, 2007, I made a formal Motion to Dismiss the Due Process Complaint Without Prejudice pending my receipt and review of the records, or, alternatively to Continue the Hearing until I can obtain and review the records. (Exhibit "G").

As of yesterday, July 10, 2007, I had not heard from OAH concerning the continuance of the Hearing scheduled for July 19, 2007, and, as witness lists and documents were due the next day, I called OAH in Sacramento and Laguna Hills between 9:30 a.m. and 11:30 a.m., and was told that all special education staff were unavailable because they were in a meeting. I left a message with OAH Sacramento inquiring about the continuance. I did not receive a timely return phone call from OAH.

At 3:30 p.m. yesterday (July 10, 2007) I began receiving a fax from the District's counsel consisting of 85 pages, and purporting to be "Petitioner's Prehearing Conference Statement." (The fax cover is attached as Exhibit "H").

I immediately turned off my fax machine and called OAH in Sacramento to find out why I was receiving a Prehearing Conference Statement when there was no Prehearing Conference scheduled. I also asked when my Motion to Continue would be decided.

At 3:35 p.m. OAH advised me that an Order Denying Continuance had been issued on 7/5/07, but was apparently never served on me. The Prehearing Conference, which was scheduled as part of the Order Denying Continuance was set for Friday, July 13, 2007. This is the first notice I received about this. After 7/5/07, when I filed my formal motion on 7/9/07, neither counsel nor OAH called to ask me why I was filing a Motion to Continue after it had been denied.

An OAH ALJ called me to "negotiate" a new Prehearing Conference date of Monday, July 16, 2007, which I declined. I sent a letter (Exhibit "I") to OAH explaining my outrage, and my firm belief that OAH is biased in favor of the District.

In response to this letter, OAH sent me the Order Denying Continuance, with an "amended" proof of service under penalty of perjury (which had already been committed on July 5, 2007, when OAH signed that the Order had been faxed to me, and a transmission report was obtained, which by OAH's own admission is untrue). (Attached as Exhibit "J"). Presiding Administrative Law Judge Sherrianne Laba (who, for some undisclosed reason is assigned to hear this case), also issued an Order changing the Prehearing Conference to a telephonic Trial Setting Conference, scheduled for July 13, 2007 at 2:00 p.m. (Exhibit "K").

I am still unable to prepare for Hearing due to lack of records. The District's position, and OAH's complicity are unlawful under California Education Code § 56504, which states, "a public agency may charge no more than the actual cost of reproducing the records, but if this cost effectively prevents the parents from exercising the right to receive the copy or copies the copy or copies shall be reproduced at no cost." My client's are not required to provide declarations of private financial matters. I have signed as their attorney attesting that this would be a hardship. Perhaps the reason the District is so enterprising in the photocopying business, is the indictment of the former Superintendent and Assistant Superintendent for embezzlement (Exhibit "L").

The District has spent much more than $660.00 promoting its unlawful position, and has caused David's parents to incur equivalent fees. This is a very dangerous precedent to set, and is completely prejudicial to my clients, and in violation of their due process rights.

My last suggestion, that, given the fact that the District never notified me of the voluminous records, could I go to the District Office and cull through the records and pay for only those that I wanted, was flatly denied. (See, Exhibit "I", page two, circled). My clients and I have been reasonable. The District and OAH have not been.

While I have many more grievances against OAH (including other Federal and State Court filings), my primary concern is that the Presiding Administrative Law Judge intends to go forward with a Hearing that the District has prevented me from adequately preparing for. I would issue my own subpoena, however, I am aware of instances where attorneys representing students appear in person to request something from the District Office and have been confronted by police.

I would appreciate it if the U.S. Department of Education or OSEP could immediately intervene in this matter. Calling the Presiding ALJ in Sacramento, or issuing a subpoena from your agency, would be most appreciated.

Please feel free to contact me at 858-342-8360. Thank you.

Very truly yours,

Ellen Dowd

Encls.
CC:  Alexa Posny, OSEP                              202-245-7614
     John H. Hagar, Assistant Secretary            202-245-7615
     Rebecca A. Parker, CDE                        916-319-0175
     Hon. Duncan Hunter, U.S. Representative       619-449-2251
     (Attention:  Evelyn Browning)

5

**EXHIBIT F**

**Ellen Dowd**
**Attorney At Law**
**State Bar # 141206**
**Special Education Legal Center**
**2658 Del Mar Heights Road #228**
**Del Mar, California 92014**
**(Tel) 858-342-8360  (Fax) 858-755-6348**

August 17, 2007

Messrs. James Bellotti and Shane Berli
Special Education Division
California Department of Education
1430 N Street, Suite 2401
Sacramento, California 95814

Re:    Capistrano Unified School District v. ███████████
       OAH Case Number N 2007060627

Dear Sirs:

I represent ███████████ a 15-year old student who is entering 9th grade. This student
qualifies for special education and is currently the Respondent in a Due Process Hearing
scheduled on August 27, 2007.

This is a continuing complaint which I first outlined in a letter to Perry Williams dated July 11,
2007. At the time I wrote that letter, my main concern was that OAH was refusing to issue a
subpoena duces tecum for 4,400 pages of my client's educational records, which the District will
not provide unless the parents pay $661.20. My clients do not have the means to pay, yet OAH
refuses to issue a subpoena or order for these records.

The letter also concerned a Due Process Hearing that District filed against my client that took
place on May 21-23, 2007, the purpose of which was to allow the District to implement a
December 5, 2006 IEP.

 On May 31, 2007, the District held another IEP Team Meeting and agreed to provide a complete
copy of the student's records to me. While awaiting the Decision from OAH on the May, 2007
Hearing, on June 19, 2007, the District filed another Due Process Complaint against my client
for the purpose of implementing the May 31, 2007 IEP. I protested that the District was
imposing make-work on OAH by repeatedly filing to implement IEPs that OAH deemed to be an
offer a FAPE—was the May 31, 2007 offer a "better" FAPE?

The second Due Process Hearing was supposed to have started on July 19, 2007, however, OAH
failed to fax me the Notice of Prehearing Conference, so I wasn't able to prepare appropriately
for this crucial conference. OAH admitted its mistake, and was obliged to postpone the hearing.
(Please see Exhibit 1, correspondence and OAH's Order concerning this mistake).

OAH then scheduled an 8-day Due Process Hearing commencing on August 27, 2007. Presumably, I an expected to defend my client without all of the records. (Please see Exhibit 2, my requests for and OAH's denial of my request for records).

On June 29, 2007 I received OAH's Decision in the May, 2007 Due Process Hearing, which was completely in favor of the District, and against my client. On July 5, 2007, OAH issued an Amended Decision (I still haven't found anything that was amended). I immediately requested the transcript of the Hearing, but also requested and paid for copies of the CD Roms, because OAH never provides the transcripts within the 45-day period. This transcript was due on August 13, 2007, and I have not received it yet.

I listened to the CD's and transcribed the portions that refuted the findings of the ALJ, and prepared an appeal of the Decision which was lodged in Federal Court in Santa Ana on August 13, 2007. In this particular jurisdiction (unlike San Diego), a federal judge must approve the Petition Appointing a Guardian Ad Litem for a minor before issuing a Federal Court Case Number.

On August 13, 2007, I served a Notice of Automatic Stay on OAH and the District indicating that during the pendency of the appeal, automatically, only the stay-put IEP dated 3/22/04 can be implemented, by operation of law. (Please see the Notice of Automatic Stay attached as Exhibit 3).

Despite my Notice of Automatic Stay, on August 15, 2007 the District faxed its Prehearing Conference Statement for the telephonic Prehearing Conference that is to take place on Friday, August 17th at 1:30 p.m. I immediately sent a letter to OAH and the Distirct reiterating that there can be no Hearing as there is a judicial stay-put pending. (Exhibit 4).

I had not had any response from OAH to my Notice of Automatic Stay or my August 15, 2007 letter, however, on August 16, 2007 I received a Motion for Determination of Stay Put filed by the District. District's cannot file motions for stay-put. I indicated this in a letter to OAH and the District (Exhibit 5), in which I intimated, for the first time, that in violation of the Interagency Agreement between OAH and CDE #4427 dated May 25, 2005, which states that the special education ALJs shall be "exclusive and full-time" to special education cases, some ALJs, including the Presiding Special Education ALJ, Sherianne Laba are hearing real estate cases.

In a telephone conference on July 13, 2007, Judge Laba stated that she would issue a ruling in response to my motion for reconsideration of obtaining educational records late in the day on July 19, 2007, because she had some "hearings" on that day. Special Education ALJs do not have multiple hearings in one day. They have a Hearing that may last for one or more days. I checked the OAH website and looked at the general jurisdiction calendar for July 19, 2007, and Presiding Special Education ALJ Sherianne Laba was indeed scheduled to hear 2 real estate cases on July 19, 2007.

I flew to Sacramento on July 19th, obtained a copy of the hearing scheduled (Exhibit 6) and sat outside Courtroom 203-D that morning and watched Sherianne Laba hear a real estate case, with ALJ Ralph Venturino observing. I took cell phone pictures of Judge Laba on the bench with her name plaque displayed.

2

At the lunch break I spoke to the attorney for the Department of Real Estate, David Seals, who informed me that Judge Laba was training. Mr. Seals was kind enough to get me the court reporter's business card so I can obtain a transcript.

That afternoon, ALJ Ralph Venturino took the bench, and Judge Laba walked right past me outside the courtroom three times before she entered the courtroom and sat in the back taking notes. Obviously, she was training.

Since that time one other special education ALJ, Judith Kopec has appeared on the general education calendar for real estate cases.

OAH needs to be audited immediately. Not only are students not getting justice, but these corrupt, brazen, biased and untrained ALJs are flaunting their violations of law with impunity. Thus far, they're getting away with it.

The bias and ineptitude of these ALJs are causing much more work for student attorneys, as we must seek recourse through other agencies. Additionally, this is emboldened attorneys representing Districts to go to any and all lengths to overwhelm and harass students and their parents with frivolous filings and unlawful violations of IDEA. The Districts are getting away with this with the assistance of OAH.

I would suggest placing an overseer, akin to a receiver, in each and every OAH office that conducts special education hearings. What about a 20-question "pop quiz" to confirm the extent of their lack of knowledge of IDEA?

If I receive a phone conference at 1:30 today on this case that is now in judicial stay-put, I hope I can call you and patch you in.

Additionally, if OAH insists on proceeding with this stayed Hearing on August 27, 2007, I would like you to attend to hear the list of grievances I will be putting on the record.

Thank you for your attention to this matter.

Very truly yours,

Ellen Dowd

Encls.
CC: Dayon Higgins

3

**EXHIBIT G**

## Meeting Between CDE and Special Education Student Advocates
## Sacramento, September 11, 2007

Tab    Document

1.    SPB Decision dated 3/9/04.

2.    Pre-Contract endorsement of OAH by Capistrano Unified School District and Superintendent James Fleming.

3.    Post-Contract indictment of Capistrano former Superintendent, James Fleming.

4.    ETV13-Improve Special Education Hearing and Medication Process.

5.    Interagency Agreement #4427 between CDE and OAH dated 5/25/05.

6.    Sample Duty Statement and designation of ALJ levels.

7.    Title 5 CCR, Chapter 3, Procedural Safeguards-Minimum Requirements.

8.    Various ALJ Resumes and documentation of ALJ training

9.    CDE Initial Statement of Reasons-Special Education Hearing Officer Regulations dated 10/12/06.

10.    Invitation, Agenda for Special Education Advisory Committee Meetings, April, 2007.

11.    "Schools Legal Service" (District Counsel) written concerns for Advisory Committee Meetings dated 3/30/07.

12.    Ellen's Dowd and Tania Whiteleather's written concerns on behalf of parent representatives.

        (1)    Comments regarding School's Legal Service letter.
        (2)    Issues/Resolution.
        (3)    Comments in OAH Quarterly Reports.

13.    5/1/07 Subcommittee on Education-Issue 10:  OAH funding.

14.    Presiding ALJ Sherianne Laba evidence of observation of conducting real estate cases.

15.    Correspondence/Motions to Judge Laba re: obtaining educational records.

16.    Tentative Ruling, USDC,CDCA (final due 9/19/07) holding that failure of a District to provide records is a denial of FAPE.

17.    Appeal filed 8/14/05 on OAH Decision in Student Case #1.

18.    Documentation of ALJ Judith Kopec hearing real estate cases.

19.    Notice of Automatic Stay, Opposition, Judge Kopec's Ruling with citation to real estate case, and the real estate case.

20.   Mediation and Due Process Complaint filed 9/4/07-District's Cross-Complaint, Objection to Cross Complaint-preferential scheduling by OAH of District's case.

21.   New Rules enacted by OAH on 9/1/07.

22.   OAH solicitation of business.

23.   OAH scheduling problems.

# EXHIBIT H

*Statement to the*
*California Performance Review*

Presented by: Barbara F. Smith

**Capistrano Unified School District**
**32972 Calle Perfecto**
**San Juan Capistrano, CA 92675**
**OFFICE: (949) 489-7432**
**FAX: (949) 487-5486**

**Madam Co-Chair Kozberg, Co Chair Hauck, CPR Commissioners, Distinguished Guests, and my fellow citizens of California:**

Good morning.

My name is Barbara Smith, and I am a retired superintendent serving as a consultant for special education alternative dispute resolutions for the Capistrano Unified School District (CUSD). This school district serves 50,338 children from 12 cities and unincorporated communities in southern Orange County. Five thousand eight hundred fifty-seven CUSD children are enrolled in special education and we offer a full continuum of special education programs and services.

On behalf of our Superintendent Dr. James A. Fleming and our Board of Trustees, I am pleased to voice support of CPR's three recommendations to *Improve the Special Education Hearing and Mediation Process.*

**First, we encourage the Commission and Governor to move forward with the California Performance Review (CPR) recommendation that the California Department of Education enter into a Memorandum of Understanding with the State of California's Office of Administrative Hearings (OAH) to conduct special education hearings and mediations.**

The OAH currently has a core of administrative law judges who have a depth of experience in presiding over a variety of administrative hearings throughout California, including hearings for disputes arising over programs and services for disabled children and adults who are served by the Department of Developmental Services' Regional Centers throughout the State. In this capacity, the OAH has demonstrated a high degree of professionalism, consistency and effectiveness.

As you may be aware, school districts work in partnership with Regional Centers to provide a continuum of services for disabled children and their families. The experience of OAH administrative law judges with the mediations and hearings for the Department of Developmental Services forms a strong base from which to expand their expertise for similar mediations and hearings related to the educational needs of children with

1

disabilities. We believe that the transfer of responsibility for special education mediations and hearings to OAH would not only represent a significant direct savings to the citizens of California (CPR staff estimate of an annual $500,000), but it will also result in additional savings for both California and local school districts. The manner in which the University of the Pacific, McGeorge School of Law, currently conducts special education mediations and due process hearings has resulted in spiraling costs to local school districts, increased litigation, protracted hearings, and expensive appeals.

Over the last several years, there has been growing and widespread concern that special education due process hearings conducted by McGeorge School of Law have not been carried out in a manner consistent with federal and state law. The litany of concerns over McGeorge conduct of special education due process hearings have included, for example, introduction of new issues and evidence in violation of the statutory time lines; curtailing the ability, timing and presentation of evidence and witnesses by school parties; refusal to dismiss school entities as parties despite their lack of legal responsibility for the student; McGeorge hearing officers assuming the role of the student's "advocate" rather than conducting the hearing in a fair and impartial manner, etc. Further, there is a perception shared by many public school officials and their attorneys that McGeorge hearing officers utilize written and unwritten hearing procedures and rules which arguably constitute "underground" regulations which are not known to all parties and which have not been adopted under California's public notice and comment procedures for new regulations.

Our school district has also grown increasingly concerned over the considerable turnover in administrative hearing officers and the lack of training and experience on the part of new hearing officers.   Prior to 1988, when due process hearings were conducted by administrative law judges from OAH, it was our experience that the judges exhibited a high degree of legal competence and that the hearings were conducted through the application of fair and consistent regulations and standards which were clearly understood in advance by all parties. This judicial competence reduced the amount of time necessary to conduct costly hearings; had the effect of minimizing the filing of frivolous claims and the need for expensive appeals; and reduced the amount of ill will and controversy arising out of such hearings.

If OAH were to administer due process hearings in a manner consistent with the California Administrative Procedure Act, as it did prior to 1988 when the responsibility for hearings was transferred to McGeorge, we believe the result would be that over time less public funds will be devoted to special education litigation and more funds will be available for actual services to benefit disabled children.

2

**Second, we urge the Commission and Governor to move forward with the CPR recommendation to request that the California Department of Education increase the number of cases resolved by mediation, thereby realizing further and substantial cost savings.**

Currently a large portion of the cases filed for due process in our school district are resolved through mediation, prior to a due process hearing. However, even these mediations, as currently conducted through McGeorge, usually involve attorneys and are costly in their own right. We would like to suggest two methods of decreasing the costs of mediations while increasing their potential to resolve disputes early. We recommend that:

1. The Commission and Governor request that grant funding be earmarked for school districts to establish Alternative Dispute Resolution (ADR) programs.

   Special Education ADR programs involve trained, impartial local mediators, or solutions panels, in using techniques of communication, collaboration, negotiation, and mediation to assist the parties of a dispute in finding solutions which focus on the needs of the child, are mutually agreeable, and produce sensible and lasting agreements. In school districts when ADR programs are in effect, many cases are resolved relatively quickly, before they become as adversarial as to require the more formal and legalistic due process mechanisms. Further, when disputes can be resolved at a non-adversarial level, there is greater opportunity to preserve positive home-school relationships which are so vital to supporting the child's progress.

2. The Commission and Governor request that the California Department of Education require that mandatory "mediation only" meetings take place between parents and no more than two school district representatives prior to proceeding to the more formal mediation or due process hearing.

   The current system allows for "mediation only" meetings as an option in obtaining resolution to special education disputes. Attorneys are not allowed to attend these "mediation only" meetings. It is our experience that "mediation only" meetings are cost effective, can lead to quicker, better resolutions for the child, foster better understanding among the parties, and can preserve and mend relationships between the parents, the teachers and the school.

**Third, encourage the Commission and Governor to move forward with the CPR recommendation that the California Department of Education permit mediators to function as non-binding arbitrators.**

Following the model of arbitrations in civil litigation, both parties should be allowed to provide the mediator/arbitrator with written summaries of the facts of the dispute and a requested resolution. During the informal mediation/arbitration preceding, each party would present their viewpoints and provide any further written documentation or evidence they wish considered. The proceeding could go forward as mediation, until and

3

if, the parties conclude they cannot reach an agreement. Currently, when there is no agreement in mediation, the case proceeds to a due process hearing. However, if the mediator was also able to function as a non-binding arbitrator, he or she could make a strong, informed recommendation for settlement of the case. This recommendation could provide valuable feedback to the parties as to how a hearing officer might view the case and thus motivate the parties to move toward agreement.

This approach also argues for OAH to take over the mediation and due process hearings for special education disputes. Prior to 1988, when OAH conducted special education mediations and hearings, an administrative law judge (ALJ) often conducted <u>both</u> the mediation and the hearing. This gave him/her great creditability at the time of the mediation. The parties understood that if the case went forward, the result would likely be similar to the resolutions suggested by the mediator. This follows the experience of civil mediations where research shows that 75% of all eventual settlements are very much the same as what was recommended in non-binding arbitration.

Many of the mediators currently employed by McGeorge do creditable and effective jobs in mediation. However, if they were to take on the role of arbitrators, a number of them would need to have more specialized training in the legal requirements of IDEA. If the program were administered by OAH, the ALJ might do the mediation/arbitration, or the mediator might work under the guidance and counsel of an ALJ.

We appreciated the opportunity to share our thoughts with you today. We commend the Governor and Commission for their thoughtful and measured approach to modernizing California's government and eliminating waste and inefficiency.

**<u>We strongly encourage this CPR Panel to include in its recommendations to the Governor that all three recommendations to *Improve the Special Education Hearing and Mediation Process* are adopted.</u>**

Thank you very much.

4

# EXHIBIT I

# ETV13 Improve the Special Education Hearing and Mediation Process

## Summary

The California Department of Education (CDE) is responsible for providing special education mediation and due process hearings for families with disabled children who appeal their child's educational needs assessments. CDE currently contracts with the University of the Pacific, McGeorge School of Law to perform these special education hearings and mediations. Prior to 1988, this work was performed by California's Office of Administrative Hearings (OAH). As a cost saving measure and to improve efficiency and effectiveness, these functions could be transferred back to OAH.

## Background

Federal law guarantees "free appropriate public education" to all students with disabilities. To comply with federal law and obtain federal funding, states must provide certain procedural safeguards, including special education mediation conferences and due process hearings, for parents and students who wish to challenge decisions public schools make with respect to the identification, evaluation, placement and delivery of free appropriate public education to students with disabilities.[1]

Education Code Section 56505 requires that a due process hearing be conducted by a person who has satisfactorily completed training. The Superintendent of Public Instruction is required to "establish standards for the training of hearing officers, the degree of specialization of the hearing officers, and the quality control mechanisms to be used to ensure that the hearings are fair and decisions are accurate."[2]

Federal law prohibits the California Department of Education (CDE) from conducting the special education mediation conferences and due process hearings itself. The Office of Administrative Hearings conducted the due process hearings for CDE from 1981 through 1988. Since 1989, CDE has contracted with McGeorge School of Law to conduct both the special education mediation conferences and due process hearings.[3]

Mediation is a voluntary, confidential, and informal meeting at which the parties and an experienced, impartial mediator attempt to resolve the dispute in a non-adversarial atmosphere. The mediator does not provide advocacy or legal advice to either side but facilitates communication between the parties. A due process hearing is a more formal, trial-like legal proceeding where all parties are given a chance to present evidence and argument before an impartial hearing officer. The hearing officer then issues a written decision, which is the final administrative decision resolving the matter.[4]

Mediators should be permitted to function more as arbitrators. Arbitrators could review the facts and law and make strong recommendations as to the likely outcome if the matter went to a hearing. This would not bind the parties but could resolve disagreements at the local level reducing the need to hold more expensive hearings. [5]

Each year approximately 3,000 special education assessment appeals are filed with the Special Education Hearing Office. Ninety percent of the cases are resolved through mediation. The remaining 10 percent require a due process hearing.[6]

In 2000, CDE awarded a contract to McGeorge School of Law (McGeorge) for hearing officer and mediation services, to be performed from June 1, 2000, through May 21, 2003, in the amount of $23 million. The contract was extended an additional year through May 31, 2004, for an additional $11 million.[7]

According to California law, "When there are no existing civil service job classifications through which the state agency could appoint or retain employees with the knowledge, skills, expertise, experience or ability needed to perform the required work, the work may be contracted out."[8] During June 2003, when the outsourced contract was extended with McGeorge, OAH did not have enough administrative law judges, space, support and other resources to either mediate or adjudicate special education appeals.[9]

OAH was created in 1945 to serve as the state's "central panel" of generalist Administrative Law Judges (ALJs) who hear and decide impartially any dispute between a government agency and a citizen.[10] OAH has four hearing offices dispersed throughout California in Oakland, Sacramento, Los Angeles and San Diego. OAH currently conducts mediation conferences and due process hearings for the Department of Developmental Services (DDS) that are similar to, and many times associated with, the mediations and hearings that are conducted for special education cases. OAH conducts "fair hearings" for DDS under the Lanterman Developmental Disabilities Services Act.[11] Disabled clients served under this Act are the same clients that are served under the special education program.

Although OAH is not currently budgeted with an adequate number of ALJs and support staff to immediately perform special education due process hearings at this time, if new positions are budgeted next fiscal year, OAH estimated it would take approximately one year to fully staff and acquire the expertise to conduct both the special education mediation conferences and due process hearings that are required by the California Department of Education.[12] Because OAH currently performs hearings for disabled children for DDS, there is some expertise already within OAH to handle issues related to California's disabled population. With their existing expertise in disabled hearings and their four existing hearing offices in California, OAH estimates that it could perform the special education appeal mediations and hearings at a substantial cost savings.

In addition to the cost savings, the state would be in a position to provide three additional locations to serve the families of disabled children. These additional locations would substantially mitigate the difficulties for families traveling to Sacramento to argue their appeals.

### Recommendations

A. **The Governor should request that the California Department of Education (CDE) enter into a Memorandum of Understanding with the State of California's Office of Administrative Hearings to conduct special education hearings and mediations.**

**B. The Governor should request that CDE increase the number of cases resolved by mediation, thereby realizing a substantial cost savings.**

**C. The Governor should request that CDE permit mediators to function more as arbitrators. The arbitrators could examine the facts and law and make stronger recommendations as to the likely outcome if the matter goes to hearing. While federal law prohibits binding arbitration, there is no prohibition against strengthening the role of the mediator.[13]**

**Fiscal Impact**
Currently, the CDE contracts with McGeorge School of Law to perform special education mediation and hearing services. The most recent one year contract is for $11 million. Staff discussion with the state Office of Administrative Hearings (OAH) concluded that OAH could perform the same mediation and hearing functions for a savings of between 5 percent and 30 percent. Assuming a 5 percent savings, if CDE signed an Interagency Agreement with OAH, CDE could save about $550,000 annually. Further, OAH has regional offices. This could allow OAH to resolve more cases by mediation. To the extent this is possible, CDE could achieve unknown additional savings.

**General and Other Funds\***
(dollars in thousands)

| Fiscal Year | Savings | Costs | Net Savings (Costs) | Change in PYs |
|---|---|---|---|---|
| 2004-05 | $0 | $0 | $0 | 0 |
| 2005-06 | $11,000 | $10,450 | $550 | 0 |
| 2006-07 | $11,000 | $10,450 | $550 | 0 |
| 2007-08 | $11,000 | $10,450 | $550 | 0 |
| 2008-09 | $11,000 | $10,450 | $550 | 0 |

Note: The dollars and PYs for each year in the above chart reflect the total change for that year from 2003-04 expenditures, revenues and PYs.
\* Fund splits are not available at this time.

**Endnotes**
[1]California State Personnel Board Decision PSC No. 03-04, p. 2.
[2]California Department of Education, "Summary of Special Education Law Changes in 2003," "26th Edition of the California Special Education Programs: A Composite of Laws," p. 2 of Introduction.
[3]California State Personnel Board Decision PSC No. 03-04, March 9, 2004, p. 2.
[4]University of the Pacific, McGeorge School of Law, Institute for Administrative Justice, California Special Education Hearings Office, "Notice of Procedural Safeguards," p. 1.
[5]Memorandum from Catherine Blakemore, Protection & Advocacy Inc., to Rosemary Wilke, California Performance Review, Sacramento, California, May 14, 2004.
[6]Memorandum from Catherine Blakemore, Protection & Advocacy Inc., to Rosemary Wilke, Governor's California Performance Review, Sacramento, California (May 14, 2004).
[7]California State Personnel Board Decision PSC No. 03-04, March 9, 2004, p. 2.
[8]Government Code Section19130(b)(3).
[9]Memorandum from Melissa Meith, director, Office of Administrative Hearings, California Department of

Case 2:08-cv-03229-VAP   Document 3   Filed 02/19/2008   Page 46 of 58

General Services, to Jeff Marschner, California Department of General Services, Office of Administrative Hearings, Sacramento, California (June 17, 2003).

[10]Memorandum from Melissa Meith, director, Office of Administrative Hearings, California Department of General Services, to Robert Van Der Volgen, general counsel and deputy secretary, California Department of General Services, Office of Administrative Hearings, Sacramento, California (June 18, 2003).

[11]California State Personnel Board Decision PSC No. 03-04, dissenting opinion, p. 15.

[12]California State Personnel Board Decision PSC No. 03-04, p. 13.

[13]Memorandum from Catherine Blakemore, Protection & Advocacy Inc., to Rosemary Wilke, California Performance Review, Sacramento, California (May 14, 2004).

**EXHIBIT J**

# AGENDA

## ASSEMBLY BUDGET SUBCOMMITTEE NO. 2 ON EDUCATION FINANCE

### Assembly Member Julia Brownley, Chair

TUESDAY, MAY 1, 2007
STATE CAPITOL, ROOM 444
10:00 AM

## ITEMS TO BE HEARD

| ITEM | DESCRIPTION | PAGE |
|------|-------------|------|
| **0558** | **OFFICE OF THE SECRETARY FOR EDUCATION** | |
| ISSUE 1 | APRIL DOF LETTER – GOVERNOR'S OFFICE EDUCATION TRANSPARENCY WEBSITE | 3 |
| **0954** | **SCHOLARSHARE INVESTMENT BOARD** | |
| ISSUE 1 | APRIL DOF LETTERS REGARDING ADDITIONAL POSITIONS | 5 |
| **6110** | **DEPARTMENT OF EDUCATION** | |
| ISSUE 1 | WILLIAMS SETTLEMENT FUNDING FOR EMERGENCY REPAIRS IN LOW-DECILE SCHOOLS | 7 |
| ISSUE 2 | APRIL DOF LETTER REGARDING PTA TRANSPORTATION SHIFT | 10 |
| ISSUE 3 | CDE STATE OPERATIONS – JANUARY 10 PROPOSALS | 12 |
| ISSUE 4 | CDE STATE OPERATIONS –APRIL DOF PROPOSAL REGARDING CDE'S ADMINISTRATION OF THE FEDERAL MATHEMATICS AND SCIENCE PARTNERSHIP PROGRAM | 15 |
| ISSUE 5 | CDE STATE OPERATIONS – APRIL DOF PROPOSAL REGARDING LOSS OF FEDERAL TITLE V MONEY. | 17 |
| ISSUE 6 | CDE STATE OPERATIONS – APRIL DOF PROPOSALS REGARDING THE ADMINISTRATION OF EDUCATION TECHNOLOGY PROPOSALS | 18 |
| ISSUE 7 | CDE STATE OPERATIONS – APRIL DOF PROPOSAL REGARDING MIGRANT EDUCATION OVERSIGHT | 20 |
| ISSUE 8 | CDE STATE OPERATIONS – APRIL DOF PROPOSAL REGARDING CHILD NUTRITION AND HEALTH | 22 |
| ISSUE 9 | CDE STATE OPERATIONS – APRIL DOF PROPOSAL TO CORRECT TECHNICAL ERROR PERTAINING TO CDE'S ADMINISTRATION OF SPECIAL EDUCATION PROGRAMS | 24 |
| ISSUE 10 | CDE STATE OPERATIONS – CONTRACT WITH THE OFFICE OF ADMINISTRATIVE HEARINGS TO PROVIDE DUE PROCESS SERVICES | 25 |

TO PARENTS OF SPECIAL EDUCATION STUDENTS

ISSUE 11    APRIL DOF PROPOSAL REGARDING THE ADMINISTRATION OF THE    **28**
            MENTAL HEALTH SERVICES ACT

> ## ISSUE 10: CDE STATE OPERATIONS – CONTRACT WITH THE OFFICE OF ADMINISTRATIVE HEARINGS TO PROVIDE DUE PROCESS SERVICES TO PARENTS OF SPECIAL EDUCATION STUDENTS

The issues for the subcommittee to consider are:

- A deficiency request by CDE to pay for uncovered costs of its contract with the Office of Administrative Hearings to provide due process services to parents of special education students.

- An update by CDE on the administration of the agreement, and the status of information that OAH is required to provide regarding the services it provides and the outcomes.

> ## BACKGROUND:

**Governor's budget.**  The Governor's budget proposes a total funding level of $10.7 million for CDE's interagency agreement with the Office of Administrative Hearings to provide dispute resolution services for parents of special education students.  Of this amount, $9.2 million is federal funds and $1.5 million is General Fund. This is the same level of funding provided in last year's budget for the interagency agreement.

**Background on the program.**  Federal special education law requires that states receiving federal special education funding have a process for resolving disputes between parents and school officials over the learning plans and services offered to special education students.  If a dispute arises as to a pupil's individualized education program, the state must offer the parents due process, which provides for mediations and hearings before an independent impartial hearing officer to resolve the dispute. Federal law prohibits CDE from acting as the administrative hearing agency for such disputes.  For many years, CDE contracted with the McGeorge School of Law to serve as the administrative hearings agency for these disputes.  In 2002 and 2004, California Attorneys, Administrative Law Judges, and Hearing Officers in State Employment (CASE) asked the State Personnel Board to review CDE's contract with McGeorge for compliance with *Government Code* Section 19130(b).   At issue was whether civil service employees should perform the contracted work pursuant to Article VII of the California Constitution. In the end, CDE's contracts with McGeorge were authorized but with the caveat that further approvals would not be forthcoming.

On December 13, 2004, CDE issued a Request for Proposals establishing a competitive process for awarding the contract to provide these services during the 2005-06 through 2007-08 fiscal years. Both OAH and McGeorge submitted responsive, qualified proposals in response to this request. According to CDE, OAH's bid was 30 percent lower than the bid submitted by McGeorge. Since the appropriate contracting vehicle between two state agencies is an interagency agreement, which does not require the

same competitive procurement process, the competitive Request for Proposals was cancelled.

As of June 1, 2005, CDE and OAH entered into a three-year interagency agreement for the provision of due process hearings starting June 1, 2005, and mediations starting January 1, 2006. CDE also entered into a six-month transition contract with McGeorge for the provision of mediation services. According to CDE, as of January 1 of last year, OAH assumed responsibility for providing mediations in addition to due process hearings.

**CDE deficiency request.** In February, CDE sent a request for retroactive funding to DOF, notifying DOF that the full cost of the agreement is $11,091,000, and CDE needs an additional $378,000 in General Fund to fully fund the contract in the current year. (This amount assumes that $513,000 for employee compensation increases will be forthcoming as part of legislation to be sponsored by the DOF; if the $513,000 is not approved, the shortfall will be higher.) For the budget year, CDE estimates that the cost of the agreement will go up by $1.3 million. The CDE submitted a BCP requesting the necessary funding in fall 2006, which was not included in the January 10 budget. Given that the administration did not increase funding for the agreement in the January 10 budget, CDE is estimating a $1.7 million shortfall for the agreement in 2007-08. CDE states that, with the exception of the amounts related to employee compensation increases, the amounts they are requesting in the current and budget years are substantially consistent with the amounts in the original bid by OAH.

**Information on outcomes.** Last year, the subcommittee heard testimony from advocates citing concerns about the quality of the services provided by OAH and the lack of outcome data regarding the services. Accordingly, in last year's budget, the subcommittee adopted budget control language requiring OAH to provide information on the following topics:

(a) The total number of cases won by each side.
(b) The number of issues decided in favor of each side in split decisions.
(c) How often schools and parents were represented by attorneys.
(d) How many prehearing motions were filed by each side.
(e) Which side won most of the prehearing motions.
(f) How many parent requests for due process were dismissed for insufficiency.
(g) How often pupils of color accessed the system.
(h) How often non-English-speaking people used the system.
(i) How long the hearings took.
(j) How much of each hearing, on average, was consumed by the parent's presentation of his or her case.
(k) How much of each hearing, on average, was consumed by the district's presentation of its case.
(l) How many of the hearing requests were from parents.
(m) How many of the hearing requests were from school districts.
(n) How many witnesses school districts called on average.

(o) How many witnesses parents called on average.
(p) From which districts parent requests for due process came.
(q) What issues, within special education, generated due process hearing requests during the quarter.
(r) What disabilities generated due process hearing requests during the quarter.
(s) What age groups (preschool, primary, junior high, high school) generated hearing requests during the quarter.
(t) How many hearing decisions were appealed to court during the quarter.
(u) How many cases were totally resolved in mediation by agreement.
(v) How many cases were totally resolved in the mandatory resolution session.

The data must reflect year-to-date data and final year-end data.

OAH did not provide outcome data for the first quarter of the interagency agreement with CDE, citing workload issues. CDE reports that OAH is providing all but 3 of the data elements, and intends to provide all 22 data elements in its next report to CDE.

**COMMENTS:**

**2007-08 is the third year of a three-year interagency agreement.** The 2007-08 fiscal year is the last year of CDE's three-year agreement with OAH. Advocates of parents of special education students have cited numerous concerns with the services that OAH provides. Of note, they contend that OAH's use of administrative law judges as mediators runs contrary to standards mediation principles and that this practice jeopardizes confidentiality and impartiality. In addition, they contend that OAH requires parents to meet a new burden of demonstrating when services were not provided -- a burden that advocates argue is impossible for parents to meet. These same advocates are sponsoring a bill (AB 1659 (Lieber)) requiring OAH to address these concerns, and authorizing CDE to enter into two separate agreements with different state agencies – one for mediation services and one for due process hearing services.

**EXHIBIT K**



**OFFICE OF ADMINISTRATIVE HEARINGS**                                    State of California

SPECIAL EDUCATION DIVISION                                    Department of General Services
2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833-4231
(916) 263-0880 phone / (916) 263-0890 fax
www.oah.dgs.ca.gov

## NOTICE TO ALL INTERESTED PARTIES

Based upon requests and comments raised by the Advisory Committee and other business practice needs, **effective September 1, 2007, the Office of Administrative Hearings (OAH) will make the following business practice changes:**

I.     NOTICE OF DUE PROCESS HEARING AND MEDIATION

A     ASSIGNED DATES:  Upon receipt of a request for mediation and due process hearing, OAH will set a mediation date, prehearing conference date, and five hearing days.

B.     CONTINUANCE MOTIONS:  **All motions to continue** prehearing conference and due process hearing dates **must be submitted to the Sacramento office of OAH in writing with proof of service upon all parties, and demonstrate good cause for a continuance.** (California Code of Regulations, title 1, § 1020).  The party requesting the continuance shall also include affidavits or declarations to support the motion.  If the motion does not contain proof of service, it will not be ruled upon by OAH.  Agreement of the parties does not, in and of itself, constitute good cause for a continuance.

C.     NOTICE OF CONTINUANCE MOTION:  Rather than OAH noticing motions, each party is responsible for responding if they choose.  OAH will wait three business days before issuing an order.  **If a motion does not contain proof of service upon all parties, it will not be ruled upon by OAH.  OAH WILL NO LONGER PROVIDE SEPARATE NOTICE OF MOTION.**

II.     MEDIATION

If the MEDIATION is scheduled at a time that you are not available, it is your responsibility to telephone the Special Education Division at (916) 263-0880 to reschedule the MEDIATION.  You may also reschedule the mediation by obtaining the consent of the other party(ies).  **OAH will no longer call to confirm mediation dates.  The parties are responsible for contacting OAH to reschedule dates.**

---

**Regional Offices**

| **Los Angeles** | **Oakland** | **San Diego** | **Laguna Hills** | **Van Nuys** |
|---|---|---|---|---|
| 320 West Fourth Street | 1515 Clay Street | 1350 Front Street | 23046 Avenida De La Carlota | 15350 Sherman Way |
| Suite 630 | Suite 206 | Suite 6022 | Suite 750 | Suite 300 |
| Los Angeles, CA 90013 | Oakland, CA 94612 | San Diego, CA 92101 | Laguna Hills, CA 92653 | Van Nuys, CA 91406 |
| (213) 576-7200 | (510) 622-2722 | (619) 525-4475 | (949) 598-5850 | (818) 904-2383 |
| (213) 576-7244 fax | (510) 622-2743 fax | (619) 525-4419 fax | (949) 598-5860 fax | (818) 904-2360 fax |

III.    PREHEARING CONFERENCE

California Code of Regulations, title 1, section 1026, provides that each party is required to submit a PREHEARING CONFERENCE STATEMENT which shall be filed at least three business days prior to the PREHEARING CONFERENCE with the Office of Administrative Hearings, Special Education Division, 2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833. The Prehearing Conference Statement may be filed and served by facsimile transmission. The parties need not mail a hard copy of any document sent by facsimile transmission. Unless otherwise directed by the administrative law judge (ALJ), the parties shall not send by mail or facsimile transmission copies of documentary evidence intended for the due process hearing to OAH. The Prehearing Conference Statement shall include the following:

A.    Each party's estimate of the time necessary to complete the Due Process Hearing;

B.    A concise statement of the issues that remain to be decided at the Due Process Hearing and the proposed resolution of such issues, based upon those issues raised in the due process hearing request (Ed. Code, § 56043, subd. (u).);

C.    The name of each witness or expert the party intends to call at the Due Process Hearing, a brief summary of the subject matter of the expected testimony of the witness or expert, and a description of the issue to which the testimony of the witness relates;

D.    A list of documentary evidence that the party intends to present, and a description of any physical or demonstrative evidence; and

E.    The need for an interpreter or special accommodation at the due process hearing.

IV.    PREHEARING MOTIONS

All PREHEARING MOTIONS shall be served upon the opposing party and filed with the Office of Administrative Hearings, Special Education Division at the Sacramento location. PREHEARING MOTIONS include motions for continuance, dismissal, stay put, or any other request for a ruling by an ALJ, which affects the rights of the parties. Rather than OAH noticing motions, each party is responsible for responding if they choose. OAH will wait three business days after receiving the motion before issuing an order. **If the motion does not include proof of service upon the other parties, OAH will not issue an order. OAH WILL NO LONGER ISSUE NOTICES OF MOTION.**

Notice to Interested Parties
August 22, 2007
Page 3 of 3

## VI.  PEREMPTORY CHALLENGES

California Code of Regulations, title 1, section 1034, subdivisions (a) and (b), provide in pertinent part that, pursuant to Government Code section 11425.40, subdivision (d), a party is entitled to one peremptory challenge (disqualification without cause) of an ALJ assigned to an OAH hearing. However, in no event will a peremptory challenge be allowed if it is made after the hearing has commenced.

A peremptory challenge must be directed to the Presiding Judge, served on all parties if made in writing, and filed in compliance with the time requirements in section 1034. **If, at the time of a scheduled prehearing conference, an ALJ has been assigned to the Hearing, any challenge of the assigned ALJ shall be made no later than commencement of that Prehearing Conference.** A party may either contact OAH or view the online calendar to determine the name of the ALJ assigned to the Prehearing Conference and hearing.

## VII.  ONLINE CALENDAR

OAH will maintain an online calendar which will identify the ALJ assigned to mediate the matter as well as the ALJ assigned to preside at the Prehearing Conference and Due Process Hearing. This online calendar can be accessed through the OAH webpage. Students will not be identified by name but rather cases will be identified by OAH case number.

## VIII.  FAXINATION

The State of California is committed to conserving resources and is moving toward paperless file maintenance. To further its conservation efforts, OAH has switched to a faxination line which reduces paper consumption. The new fax line number will be (916) 376-6319. All documents filed with OAH via facsimile should be filed using this number.

## IX.  AFTER HOURS SETTLEMENT LINE

If the parties reach settlement and finalize an agreement after hours (Monday through Friday between 5:00 p.m. and 8:00 a.m. or on Saturday or Sunday) they may contact OAH at [number will be posted prior to September 1, 2007] and leave a message that settlement has been reached and that an ALJ will not need to attend the hearing. Proof of settlement via a copy of the signed signature page, stipulation of the parties, or notice of withdrawal from the Petitioner should be simultaneously faxed to OAH at (916) 376-6319.

.

# EXHIBIT L

Sacramento, CA 95814
Phone: 916-327-0844
Fax:   916-327-5233
E-mail: sberli@cde.ca.gov


>>> "Dayon Higgins" <dayon@sdhiggins.com> 1/25/2008 2:45 PM >>>
Dear Mr. Berli,

I am writing to you with a heavy heart. I wanted to touch base with you on the difficulties parents are facing in their efforts try to help their children receive FAPE. Districts no longer even attempt to provide the student with the benefit of education. I recently was referred to a parent who cannot enroll her special education child in a District. Why? Because she has no place of residency. They live on the streets and have no bills to provide to the District for proof of residency. This parent cannot afford an attorney for due process! This child will be denied his right to education until I can find an attorney who is not over burdened by having to refile a case that would have easily settled under SEHO.

I have another child that I placed in a NPS setting recently. He now has friends and is able to write more than 3 sentences. But do you think the district is willing to help this child be successful? No! They would rather pay for 2 attorneys and 1 intern to participate in keeping this child in a public placement where he was not able to sit close to anyone due to his behaviors. The districts placement would not even give this child assistive technology or occupational therapy until we filed for due process. I have a statement from the educator that said" It is difficult to get assistive technology in middle school." I am only a parent and now a parent advocate and I do fight to give these children the tools that they need to be successful.

I have another horror story. This one involves the ombudsman person from the district who recommend that this Hispanic family file for due process on their own. She told them that they could do this on their own. Maybe, when we had SEHO! But I can assure you that this family would have lost their ability to file for FAPE for their child if they had tried to represent their child alone in due process. I have it from a parent that was told by an OAH judge that he would not even hear a case if it was represented by a parent.

I had hope that CDE would do what is right to help our children receive a fair due process. Instead I have to drive to all over to get copies of IEPs that were withheld from the parents. Due to the lack of fair due process, District now are more aggressive on the stance of not supporting a child with special needs.

I am now writing to ask, Is CDE going to help restore a Fair Due Process in California? Or do I need to approach congress on behalf of the children in California and to ask for accountability of IDEA in California? I hope to hear from you, with some strategies on how CDE is going to help these children. I can put you in touch with a lot of families that have tales that would break your heart. Parents like myself only want our children to have a future.

Best regards,

Dayon Higgins-(858) 538-9743

_____

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.516 / Virus Database: 269.19.14/1247 - Release Date: 1/28/2008 10:59 AM

1/29/2008