Ellen Dowd, Esq.
State Bar Number 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014
(858) 342-8360
Fax (858) 755-6348
ellendowd@sbcglobal.net

**Attorney for Plaintiff, C.S**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF EDUCATION, a State Agency, <br> Defendant. | CASE NO.: 08 CV 0226 W (AJB) <br><br> DECLARATION OF TANIA WHITELEATHER, ESQ. IN SUPPORT OF TEMPORARY RESTRAINING ORDER <br><br> Date: To Be Set <br> Time: To Be Set <br> Judge: Hon. Thomas J. Whelan |

08 CV 0226 W (AJB)
Declaration of Tania Whiteleather, Esq.
In Support of Temporary
Restraining Order

DECLARATION OF TANIA L. WHITELEATHER

I, Tania L. Whiteleather, have personal knowledge of the following and can, if called, testify to the same in a court of law. I am the attorney licensed to practice law in the State of California. For the past twelve years, my primary area of practice has been in special education and related areas.

This declaration is provided in support of the application for temporary restraining order and preliminary/permanent injunction in United States District Court Case SCCA 08 CV 226 W (AJB).

Prior to July 1, 2005, I appeared in cases in front of the California Special Education Hearing Office, or "SEHO." When the Office of Administrative Hearings, "OAH," entered into an agreement with the California Department of Education ("CDE") to hear administrative due process hearings, I continued to represent students and their parents in IDEA hearings before that tribunal.

Since July 1, 2005, I have filed approximately thirty due process complaints. With the filing of each complaint, I have specifically requested that OAH provide my office with the qualifications and training of each of mediator (an administrative judge) assigned to that case. Not once has OAH provided me with the requested information.

On September 11, 2007, along with three other student representatives, I met with Jim Belotti, Shane Berli, and Greg Rousseve, all from CDE. We explained to the CDE

1

representatives that OAH's administrative judges were required, pursuant to the OAH-CDE contract, to have eighty hours per annum of training. Mr. Belotti argued with us, contending that eighty hours was only required for the first year that an administrative judge was with OAH; we pointed out the clear language of the agreement to the contrary. Despite the claims of OAH and its employees that the OAH administrative judges have had the required eighty-hours per year of training required under the OAH-CDE contract, the records of OAH training CDEs not indicate that amount of training for most of the administrative judges.

During the past two and a half years with OAH, as I represented students at hearing, I heard OAH administrative judges discuss their training. Five such judges told all present at hearing that they did not have training in special education, asking for explanations during the hearing for terminology used. Many of the mediators, who were also administrative judges, made similar statements: they were unfamiliar with terms, concepts, and laws in special education but were open to learning.

Each case that I have brought to hearing with OAH has been appealed. The administrative judges in those cases have indicated their lack of training as follows:

1. One judge did not understand the meaning of "compensatory education." On the record, I provided a basic explanation of that remedy to the judge.

    His decision was partially reversed on appeal.

2

2.  One judge held that a County Mental Health agency was entitled to receive all records, of every kind, of the student's, contrary to HIPPA and confidentiality requirements.

    On appeal, the parties settled the matter regarding records, as requested (but denied) by the Student at hearing.

3.  One judge ruled that IDEA 2004 had changed the requirement that a teacher attend a child's IEP. His decision failed to even mention the experts or their testimony at hearing about Student's cochlear implant. In fact, the attendance of the child's teacher continued to be required.

    On appeal, the federal court reversed the judge.

4.  One judge held that the parents were at fault for the school district's failure to make a written offer of FAPE because the parents had not cooperated in the scheduling of a continued IEP. In fact, it was the district's duty to hold an IEP, even if the parents did not cooperate.

    That matter is on appeal.

5.  One judge, when a severely developmentally delayed child suffered seizures as he was being watched by a school nurse in a room near the hearing room, and when the mother asked to have accommodations for her child's seizures, told the mother that her presence was not required at the hearing, and that no accommodations would be given to the parent or child. The mother settled, on terms that would "shock the conscience" to protect her son and to stop his seizures.

6.  One judge denied the student the right to hearing on the issue of stay-put, holding that a pre-hearing order precluded the student's right to hearing on the issue.

    That matter is on appeal.

7.  One judge, handling a case that involved the CDE case-management system for special education, "CASEMIS," told the parties' representatives that she did not know what CASEMIS was. Knowledge

3

of that special education system is vital to the Student's case.

That matter is pending.

8. One judge held that an elementary student's hospitalization for suicidal ideation during the school year did not interfere with his education.

That matter is on appeal.

9. One judge argued with my client's issue regarding "meaningful progress," and insisted that IDEA required only "some" educational progress. She attempted to change Student's issues at hearing.

The parties settled, in spite of the administrative judge's statements.

10. One judge, hearing my client's issues regarding the District's failure to allow the parent to participate in the IEP process, told all parties that she didn't want to dwell on procedural problems (which were the most important portion of the complaint). She did not understand the importance of the parent's participation under IDEA.

That matter is pending.

11. One judge, in mediation, where she had not seen the evidence, told the Student to settle because she would lose. The biased position of the mediator denied Student an important part of due process.

12. One judge held that the Student was entitled to reimbursement for tuition at a non-public school when his school district had denied a FAPE (Free and Appropriate Public Education). However, because the parent had drive the child to and from school, the judge held that the parents were not entitled to reimbursement for transportation, contrary to state and federal law.

The decision was appealed, and the parents obtained transportation reimbursement through settlement of their federal court case.

For many of my due process hearings, OAH has not

4

1  provided a decision in a timely manner. In fact, several
2  hearing decision were rendered long after the 45-day
3  timeline: a decision in Case N 2005070425 was issued six
4  months after the last day of hearing; in N 2005070523,
5  eighty days after the last day of hearing; in Case N
6  2005110360, six months after the last day; in Case N
7  2005070130, seventy days after the last day; in Case N
8  2005070442, six months after the last day. The delays in
9  OAH's decision have meant further delay in appealing the
10 decisions for the students to the courts and a further
11 denial of FAPE for my disabled clients.
12     Finally, of greatest concern is OAH's complete and
13 utter failure to comply with state law and its contract
14 with CDE to provide a list of free- or reduced-costs
15 representatives to parties. Since July 1, 2005, OAH
16 failed, until very recently, to provide any list
17 whatsoever to parents unless the parents knew to ask for
18 such list. Even then, the list provided was outdated,
19 containing names of deceased student representatives, as
20 well as many individuals who no longer practiced special
21 education. I attended the OAH Advisory Committee
22 Meeting on October, 2007. At that meeting, I asked the
23 presiding judge, Sherianne Laba, why parents were not
24 being given a list of no- or low-cost representatives.
25 She stated that OAH was waiting for CDE to define who
26 could be on the list. The representatives from CDE, who
27 were present, simply told the crowd that CDE was "working
28 on it." To date, there is no no- or low-cost list of

representatives that is current and is being provided to parents who file or who are filed against by school districts, for due process hearings, although I have been told by OAH that one will be prepared soon.

As of today's date, CDE and OAH have yet to provide parties with a list of free- or reduced-cost representation, as required by C.E.C. § 56502. CDE has made no attempt, to date, to contact many of us in the state who regularly practice in special education, and who are known to OAH as special education attorneys or advocates, to determine whether we provide free or reduced-cost representation to disabled students. I have never been contacted by OAH regarding my inclusion on such a list, although I offer a low-cost representation for parents in due process hearings. And, although I spoke with Shane Berli, a CDE representative overseeing OAH, at the end of January, about the list, and although I sent a letter to Mr. Berli during the first week of February, 2008, to ask that I be added to the list, I still have neither been added to the OAH list nor been contacted about my charges or rates to parents. Mr. Berli told me that, although he couldn't disclose information, that something would be happening in March, 2008.

The direct result of the failure of CDE to provide a list of representatives to parents of disabled students has been the inability of parents to participate in the due process hearings. Without knowledge or training in the law, and appearing opposite trained school district

attorneys or advocates, those parents stood no chance to win at hearing. I have been contacted by at least six parents who have been "sued" by their school district in due process hearing and have not been given a list of advocates or attorneys and have never been offered any assistance, by the OAH mediators, with their part in the due process case.

Despite CDE's knowledge that it has failed to provide parents with the representative list, since July, 2005, CDE has not updated the list properly to comply with state law. Parents are being denied the vital information they require to access representation in the very specialized field of special education and, as a result, are being denied due process at IDEA hearings, all because CDE has failed to update, prepare, and provide the representative lists to them.

As of the time of this declaration, I have now learned of a request by Senator Correa for an audit of OAH by the Joint Legislative Audit Committee. A copy of that letter, dated February 15, 2008, is attached hereto and incorporated by reference.

Executed under penalty of perjury under the laws of the State of California on February 18, 2008.

*/s/ Tania L. Whiteleather*
TANIA L. WHITELEATHER

CAPITOL OFFICE
STATE CAPITOL
ROOM 4082
SACRAMENTO, CA 95814
TEL 916-651-4034

DISTRICT OFFICE
2323 NORTH BROADWAY
SUITE 212
SANTA ANA, CA 92706
TEL 714-558-4400
FAX 714-558-4111

SENATOR.CORREA@SEN.CA.GOV

# California State Senate

**COPY**

### SENATOR
### LOU CORREA
THIRTY-FOURTH SENATE DISTRICT



COMMITTEES:
APPROPRIATIONS
BANKING, FINANCE
& INSURANCE
VETERANS AFFAIRS

CHAIR
SELECT COMMITTEE ON
MANUFACTURED HOMES
& COMMUNITIES

CHAIR
SELECT COMMITTEE ON
OC INFRASTRUCTURE
& TECHNOLOGY

February 15, 2008

Honorable Nell Soto, Chairwoman,
Joint Legislative Audit Committee
1020 N Street, Room 107
Sacramento, CA 95814

RE: **Audit Request for the Special Education Division of the CA Office of Administrative Hearings**

Dear Chairwoman Soto,

It has come to my attention through parents and other concerned individuals that there may be serious problems with how the California Office of Administrative Hearings (OAH) has conducted its operations since taking over the special education administrative hearing process. OAH started conducting special education administrative hearings July 1, 2005 and special education mediations starting January 1, 2006. Previously, both processes were operated by the Special Education Hearing Office (SEHO) at McGeorge School of Law.

I am urging you to please review the following list of concerns that have been brought to my attention I believe that an independent investigation of the OAH special education division is urgently needed to inquire about and subsequently address the following:

**Concerns:**

1. **Oversight and Fairness**

    a. Parents have been increasingly frustrated that the California Department of Education (CDE) is not adequately providing necessary oversight over OAH and believe that the system should be more closely scrutinized.

    b. There are questions as to OAH's ability to conduct fair and unbiased hearings. In particular, many parents of children with disabilities believe that OAH's decisions in special education issues have been disproportionately skewed in favor of the school districts. There has been a dramatic shift in hearing outcomes since OAH was granted its contract.

*Audit Request for the Special Education Division of the CA Office of Administrative Hearings continued.*

    d. There are concerns that OAH hearing officers are not being properly trained. This is reportedly resulting in problematic hearing decisions and a dramatically increased number of appeals from administrative decisions to federal and state courts.

    e. OAH appears to have had significant difficulties filling positions and retaining staff, and indeed to have decided to use temporary appointees for many of its special education responsibilities, all of which are problematic for a system that is entrusted with conducting fair and timely hearings.

    f. Problems with special education adjudications are reportedly adversely affecting the timeliness and quality of the agency's decision making in other areas, including regional center hearings which affect many of the same individuals and families as special education cases.

## Objectives of Audit

1. Determine whether adequate oversight is being provided to OAH by CDE.

2. Determine whether the funds allocated to OAH are being properly used and allocated and whether restoring the pre-2006 system of independent mediation would save money and improve outcomes.

3. Determine the efficacy of the OAH in special education due process and mediation cases and make recommendations with respect to future provisions of special education mediation and adjudication functions.

## Scope of Audit

The scope of the audit should only encompass the Special Education Division of the Office of Administrative Hearings and CDE's monitoring thereof; there may be some peripheral attention to the impact of the special education workload on OAH's handling of other cases.

Families and advocates have been requesting since spring 2005 that the legislature consider their concerns regarding the proposal to transfer special education mediations and hearings to the Office of Administrative Hearings. We are now almost three years into the transition, and OAH's agreement with CDE is up for renewal. It is critical that the legislature investigate the functioning of a system which shapes the quality of educational services for approximately 1/10 of students, and which indirectly affects the educational programs of many other students and the well-being of millions of Californians.

*Audit Request for the Special Education Division of the CA Office of Administrative Hearings continued.*

      c. Participants in special education hearings from both sides have asserted that OAH's rules are inconsistently applied among its administrative law judges and throughout the state. OAH has not managed to conduct hearings in a fair and timely manner.

      d. Legislative oversight as well as transparency to the public has been hampered by gaps in OAH's reports regarding their activities.

2. **Problematic Use of Funds**

      a. Although OAH obtained the special education contract based on claims it would be more cost-effective, it has repeatedly sought and received supplemental appropriations. It is not clear whether the funds allocated have been appropriately or effectively utilized.

      b. OAH switched to a more expensive mediation system whereby mediators must be attorneys (some are regular administrative law judges and others are pro tem judges solely providing mediation services). Previously, under SEHO, mediators were trained professionals, in many cases educators who were committed to the special education mediation process, but many of them were not attorneys. This switch to a more costly system has been accompanied by a declining success rate for mediations, throwing more cases into costly hearings.

      c. OAH has introduced prehearing conferences and other additional costly, legalistic processes. These hurdles not only cost more for the state to administer, but for both parents and districts to navigate.

3. **Efficacy**

      a. Settlements have dropped dramatically under OAH's authority.

      b. Costly appeals to federal and state courts appear to have become far more common, as decisions are rendered which not only leave one or both sides very dissatisfied but which are also written in ways which parties believe create strong prospects for reversal.

      c. The overly legalistic processes that OAH has implemented have not proven to be more effective at resolving disputes and quickly ensuring that special needs students get appropriate services. Whereas school districts often used to use their own staff for mediations and hearings, they now almost invariably hire outside counsel or refer cases to their growing legal staffs. Parents find that fewer lawyers are handling special education matters, and they are charging more because of the increased cost of the process.

- *Audit Request for the Special Education Division of the CA Office of Administrative Hearings continued.*

    In particular, the outcome of many of these hearings may affect the future of many special needs children whose education and future is dependent upon the results of those hearings. An examination of the practices of OAH and their system as a whole is critical in securing the due process rights of the citizens of California.

    Thank you for your consideration of this request. If you have questions, I will be happy to speak with you and to put you in touch with people and organizations which can provide additional information.

    Sincerely,

*Lou Correa*

LOU CORREA
Senator, 34th District