Ellen Dowd, Esq.
State Bar Number 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014
(858) 342-8360
Fax (858) 755-6348
ellendowd@sbcglobal.net

**Attorney for Plaintiff, C.S**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, on behalf of himself and all others similarly situated, | ) CASE NO.: 08 CV 0226 W (AJB) |
| Plaintiff, | ) PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION MOTION TO INTERVENE |
| v. | ) Date: April 7, 2008 |
| | ) Time: To Be Set |
| CALIFORNIA DEPARTMENT OF EDUCATION, a State Agency, | ) Judge: Hon. Thomas J. Whelan |
| Defendant. | ) |

0

# I.

## INTRODUCTION

February 5, 2008 Plaintiff filed the instant action against Defendant, California Department of Education ("CDE") seeking a Permanent Injunction enjoining CDE from dispensing tens of millions of dollars of federal funds to the award of an Interagency Agreement with California Office of Administrative Hearings ("OAH") for the provision of Special Education Mediations and Due Process Hearings for disabled students under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et seq. At issue was the training and expertise of OAH's Administrative Law Judges ('ALJs"), when the Decisions they rendered on issues of school districts' provision of a free appropriate public education to disabled students, as mandated under IDEA, dwindled from approximately 50% with Special Education Hearing Office ("SEHO") OAH's predecessor, to approximately 10% in the past two years.[1]

With the recent California State budget crisis forcing downsizing of teachers and programs, the use of federal funds earmarked for the education of disabled students is even more critical.

On February 8, 2008, Plaintiff attempted service on Defendant in San Diego County, which was held ineffective. On February 25, 2008, service was effected on Defendant in Sacramento, as evidenced by the Affidavit of Service filed herein on March 21, 2008, and declaration of Gabriel Vivas, attorney for CDE. On February 20, 2008, Plaintiff filed an Application for a TRO, for which a Briefing Schedule was set by Court Order on that date.

On February 28, 2008, Mr. Vivas contacted counsel for Plaintiff, requesting an extension on the Briefing Schedule set by the Court for the TRO. On that occasion, counsel for Plaintiff briefly discussed stipulating to allowing OAH to

---

[1] According to the most recent Quarterly Report produced by OAH and offered on CDE's official website, in the Quarter November 1, 2007-January 31, 2008, students prevailed only 8% of the time.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

intervene, which, apparently Mr. Vivas had done, and discussed the likelihood of CDE not awarding the Interagency Agreement to OAH on July 1, 2008. To this, Mr. Vivas responded, "As things stand right now there's no way on God's green earth that we are not going to contract with them on July 1, 2008."[2] A no time did Mr. Vivas request any extension on the date upon which CDE was to answer or otherwise respond to the Compliant, as he stated that CDE was only served on February 25, 2008, and he had not had an adequate opportunity to review the Complaint and Exhibits.

On March 5, 2008, CDE file an Ex Parte Application For an Extension Of Time To File Defendant's Response To Plaintiff's Application For Temporary Restraining Order. No extension of time to answer or otherwise respond to the Complaint was sought. Rather, Defendant was seeking "A 30 Day Extension Of The Dates Set In This Court's Order" of February 20, 2008 (concerning the Briefing Schedule for the TRO).

On March 7, 2008, while CDE was seeking an extension of time on the briefing Schedule for the TRO, OAH filed a Motion for Intervention, and an Ex Parte Application To Shorten Time on The Intervention Motion. OAH's moving papers were replete with quotes from Mr. Vivas concerning CDE's request for an extension for the Briefing Schedule for the TRO.

On March 7, 2008, the Court granted CDE's Motion For Extension of the Briefing Schedule. However, the four corners of this document, while confirming the actual date of service as February 25, 2008, and admonishing Plaintiff's counsel, did not address any extension of time for CDE to respond to the Complaint. If fact, CDE did not request an extension of time in which to respond to the Complaint.

_____

[2] What Plaintiff's counsel heard was only, "there's no way on God's green earth that we are not going to contract with them on July 1, 2008." On March 11, 2008, Mr. Vivas notified Plaintiff's counsel that she had omitted the first part of the February 28, 2008 quote "As things stand right now." Plaintiff's counsel immediately inquired whether anything has changed since February 28, 2008? CDE did not respond. Please see e-mails 1-3 of Exhibit "A" attached hereto.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

On March 11, 2008 the Court Partially granted the Ex Parte Application of OAH shortening time on its Motion for Intervention. This Order specified that Plaintiff's Opposition shall be filed and served by March 24, 2008.

20 days after February 25, 2008 was March 16, 2008, a Sunday. Plaintiff anticipated CDE's Answer on March 17, 2008. Plaintiff was well aware that CDE intended to award the Interagency Agreement to OAH, and needed CDE's response to its Complaint in order to know upon what grounds, if any, to oppose OAH's Motion for Intervention. However, no responsive pleading was filed by CDE on March 17, 2008.

On March 18, 2008, Plaintiff's counsel, mindful of the Court's previous admonishment, gingerly inquired via e-mail to Mr. Vivas what his understanding was as to the Court's Order Extending Time For Briefing On the TRO, and sought clarification of CDE's position about its response to the Complaint. (The e-mails back and forth concerning this are attached hereto as Exhibit "B" and consecutively numbered 1-9).

The discourse that transpired between counsel is detailed in Plaintiff's Ex Parte Application for Order To Show Cause Why CDE Should Not Be Ordered To Answer the Complaint, filed concurrently herewith. As seen below, Plaintiff's Opposition to and the Court's Ruling on the Motion For Intervention is impeded by not knowing the status of Defendant' defense.

## II.

## ARGUMENT

### 1. <u>Without CDE's Answer or Response to The Complaint, the Motion For Intervention Is Not Ripe.</u>

Ironically, most cases dealing with timeliness of intervention deal with the length of time that has passed before the non party brings a motion for

3

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

intervention. Here, the opposite has occurred. CDE and OAH are undoubtedly engaged in negotiations for the Interagency Agreement effective on July 1, 2008. According to the non-refuted statement of CDE as of February 28, 2008, that "As things stand right now there's no way on God's green earth that we are not going to contract with them on July 1, 2008," if this is the current situation, then Plaintiff's opposition would be on the grounds that an original party, i.e., CDE can adequately represent OAH's interests. FRCP Rule 24(a)(2).

If, on the other hand, the relationship between CDE and OAH has changed since February 28, 2008[3] Plaintiff is unaware of it. In order for the Court to decide whether intervention is necessary, it must review the status of the case as it then stands, and the Court must look at all relevant circumstances in the particular case. *United States v. Yonkers Board of Education,* 801 F. 2d 593, 595 (2d Cir. 1986).

The circumstances of this case necessarily hinge on CDE's response to the Complaint. For instance, at this time, while technically in default, CDE claims it will file a 12(b)(6) motion, without specifying the grounds for such (Ex. B, e-mail 2), and that CDE somehow believes that the Court is anticipating this, and the Court is in favor of hearing the Motion For Intervention and TRO before entertaining CDE's 12(b)(6) motion. If this motion is ever brought, and granted, this would moot both the intervention and the TRO. CDE hasn't filed any response yet. If CDE were to file a 12(b)(7) motion for failure to join an indispensable party, this could vitiate the need for the Court to rule on a non-party's motion for intervention. And, if the technical default of CDE ripens into an actual default, OAH has no independent federal jurisdiction, which defeats the

---

[3] Which, it may have, as evidenced by CDE's Rulemaking file changing the training requirement from 80 hours annually to 20 hours annually, in support of OAH's minimal training, which was withdrawn by CDE on February 29, 2008 See, Exhibits D, E and F to Declaration of Ellen Dowd, Esq. In Opposition to Defendant's Ex Parte Application For Extension of Time File Defendant's Response to Plaintiff's Application for Temporary Restraining Order, filed herein on March 6, 2008).

4

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

intervention. Therefore, CDE's manner of response, and timeliness thereof is crucial to any determination of intervention by OAH at this time.

## 2.    Legal Standard Intervention of Right

Intervention shall be permitted when: (1) a federal statute confers the unconditional right to intervene in the action; or (2) the applicant claims an interest which, as a practical matter, may be impaired or impeded by disposition of the pending action and that interest is not adequately represented by existing parties. FRCP 24(a).

OAH does not cite any statute, and none exists giving it the unconditional right to intervene. If such statute exists, then, as the case stands now, OAH's only allegation that CDE may not adequately represent its interests is "plaintiff has alleged that CDE, in fact, did not want to contract with OAH in 2005." However, CDE's own admission indicates that as of right now, CDE intends to give OAH the contract on July 1, 2008.

This admission is bolstered by CDE's actions in attempting to change the 80-hour annual training requirement for ALJs to a 20-hour annual training requirement (See, Exhibits D, E and F to Declaration of Ellen Dowd, Esq. In Opposition to Defendant's Ex Parte Application For Extension of Time File Defendant's Response to Plaintiff's Application for Temporary Restraining Order, filed herein on March 6, 2008). Aside from the OAH ALJ's unauthorized requests for extension of the 45-day rule, the issue of adequacy of training is a major factor in seeking the TRO. CDE is obviously acting in concert with OAH to benefit OAH as much as possible. OAH's interested are adequately represented by CDE at this time.

Moreover, CDE is paying for its defense of this action with public funds. There is no need for OAH to spend public funds on a duplicative defense at this

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

time.

### 3.    **Permissive Intervention.**

Under FRCP 24(b) a non-party may be permitted to intervene in an action where the applicant's claim or defense and the main action involve a common question of law or fact, and allowing the intervention would not unduly delay or prejudice the adjudication of the rights of the original parties. However, in order to intervene under FRCP 24(b) the applicant must establish independent grounds for federal subject matter jurisdiction. *Blake v. Pallan*, 554 F. 2d 947, 955 (9th Cir. 1977).

Here, the Interagency Agreement is contemplated to be entered into between two state agencies, both residing in the State of California. This is not a federal governmental contract. There are no constitutional issues between these parties, and any claim by OAH would amount to a contract action against CDE under state law. OAH has not demonstrated any independent federal jurisdiction, and, therefore, show not be permitted to intervene.

### 4.    **Conditional Intervention.**

While it appears that intervention at this stage would only unduly burden the Court with motions and burden Plaintiff with discovery against two Defendants, as long as the equities are balanced, so that other students seeking relief under IDEA would not be prejudiced, Plaintiff would not be as opposed to the intervention. Therefore, as conditions to intervention by OAH, the Court deems exhaustion of administrative remedies by students' represented by Plaintiff's counsel waived, as futile, due to the pendency of this action, so that Plaintiff's counsel could bring any IDEA actions during the pendency of this action in Federal Court, without exhausting through OAH, and, the Court appoint the Magistrate Judge as Special Master to oversee the scope of discovery, Plaintiff would agree to the intervention.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

## IV.

## __CONCLUSION__

Based upon the foregoing, OAH should not be allowed to intervene at this time. However, if OAH is permitted to intervene, it should be under the conditions that IDEA claims may be brought by Plaintiff's counsel in federal court without exhaustion of administrative remedies, and that discovery be manageable, so as not to prejudice Plaintiff.

Dated: March 24, 2008

Respectfully submitted,

Ellen Dowd, Attorney for
Plaintiff, C.S.

7

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities in Opposition to
Motion to Intervene

# EXHIBIT "A"

**ellendowd@sbcglobal.net**

**From:** <ellendowd@sbcglobal.net>
**To:** "Gabriel Vivas" <GVivas@cde.ca.gov>
**Sent:** Tuesday, March 11, 2008 3:14 PM
**Subject:** Re: CS v CDE

Gabriel,



I did not intentionally misquote you. I quoted it exactly as I remembered it. I'm glad you spoke up now, because after 2/29/08 when I first quoted your statement, you didn't mention the qualification.
I apologize, and assure you that I will not quote it that way again. If I have occasion to reiterate the statement in the future, I will certainly preface it with "As things stand right now" meaning, 2/28/08.

That being said, has anything changed? And, will we ever be able to communicate without OAH' s attorney being copied?



> ----- Original Message -----
> **From:** Gabriel Vivas
> **To:** Ellen Dowd
> **Cc:** Greg Rousseve ; Susan Leach
> **Sent:** Tuesday, March 11, 2008 2:25 PM
> **Subject:** CS v CDE

Ellen,

I was hoping not to have to write this e-mail, but it seems that you will continue to attribute language to me. On each of three occasions you have omitted a significant qualifier. You are correct in attributing to me "No way on God's green earth we are not going to contract with them on July 1, 2008."

You seem to have forgotten, however, that I preceded that remark with another phrase: "As things stand right now, there's no way on this God's green earth..." I specifically recall qualifying my remark precisely because I expected you might do exactly what you've been doing, trying to use my words as ammunition for your arguments.

If you're going to continue to quote me, please be sure to do so accurately.


Gabriel C. Vivas
Deputy General Counsel
California Department of Education
1430 N Street, Suite 5319
Sacramento, CA. 95814
Office: (916) 319-0860
FAX:    (916) 319-0155

3/11/2008

**ellendowd@sbcglobal.net**

| | |
|---|---|
| **From:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **To:** | <ellendowd@sbcglobal.net> |
| **Sent:** | Thursday, March 13, 2008 9:24 AM |
| **Attach:** | Gabriel Vivas.vcf |
| **Subject:** | Re: CS v CDE |



Thanks Ellen, I appreciate the fact that we all often focus on one part of a statement and don't always recall the entirety.

As to my "cc" to the Atty Gral, that was mostly to insure we're all informed on the issue of my quote. However, that doesn't mean I can't communicate with you and not include them.

Again, thanks for the clarification.

Gabriel

Gabriel C. Vivas
Deputy General Counsel
California Department of Education
1430 N Street, Suite 5319
Sacramento, CA.  95814
Office:  (916) 319-0860
FAX:     (916) 319-0155

>>> <ellendowd@sbcglobal.net> 3/11/2008 3:14 PM >>>
Gabriel,

I did not intentionally misquote you. I quoted it exactly as I remembered it. I'm glad you spoke up now, because after 2/29/08 when I first quoted your statement, you didn't mention the qualification.
I apologize, and assure you that I will not quote it that way again. If I have occasion to reiterate the statement in the future, I will certainly preface it with "As things stand right now" meaning, 2/28/08.

That being said, has anything changed? And, will we ever be able to communicate without OAH's attorney being copied?

> ---- Original Message ----
> **From:** Gabriel Vivas
> **To:** Ellen Dowd
> **Cc:** Greg Rousseve ; Susan Leach
> **Sent:** Tuesday, March 11, 2008 2:25 PM
> **Subject:** CS v CDE

3/13/2008

**EXHIBIT "B"**

## ellendowd@sbcglobal.net

| | |
|---|---|
| **From:** | <ellendowd@sbcglobal.net> |
| **To:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **Sent:** | Tuesday, March 18, 2008 6:42 PM |
| **Subject:** | Response to Complaint |

Dear Gabriel,

I don't believe that Judge Whelan's Order Extending Briefing Schedule extended the time for CDE to respond to the Complaint, which, by CDE's own declarations was served at your offices on February 25, 2008.

CDE's response was due on March 17, 2008, and I have noted that it was neither filed nor served upon me. Please advise me of CDE's understanding of its time to respond to the Complaint. As counsel for Plaintiff, I do have some affirmative duties in this matter, and am seeking clarification. Thank you.

Sincerely,


Ellen Dowd

**ellendowd@sbcglobal.net**

| | |
|---|---|
| From: | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| To: | <ellendowd@sbcglobal.net> |
| Cc: | <grousseve@cde.ca.gov> |
| Sent: | Wednesday, March 19, 2008 9:13 AM |
| Subject: | RE: Response to Complaint |

Dear Ellen,

Thanks for your inquiry. I agree with you that the court's order did not explicitly extend the time. My interpretation, however, was that the extension of time was implicit.

I'm certain the court anticipated we'd be filing a 12(b)(6) motion. I think the court's order was his way of avoiding potential procedural issues that would arise in the context of a 12(b)(6) and which would interfere with the resolution of the main issues raised in your complaint. In other words, I think he anticipated we might get snarled in procedural questions regarding the sufficiency of the pleadings, without necessarily addressing the gist of your case. I took his order to mean that, given the time restrictions, he wanted to address the substantive issues through the TRO, rather than give the defense an opportunity to file a 12(b)(6) or something and spend time deciding procedural matters. I see this as an advantage he gave plaintiffs. Otherwise, we could be arguing some procedural question that might not get resolved for some time. My sense is that he wanted to give plaintiffs a day in court on the merits before it was too late.

That's why I thought an extension of time was implicit in his order. Of course, I may be wrong and perhaps the court would prefer a response to the complaint which, in this case, would mean we might well get snarled in questions surrounding the sufficiency of the complaint.

To resolve the situation and ensure you're protecting your client's interests, I would propose that we agree to extend the time by 30 days for the defense to file a response to the complaint. In the meantime, we can discuss this issue further, if necessary. If we get a ruling before our response is filed, either side may wish to hold the case in abeyance while we take the court's ruling on the TRO up to the 9th Circuit.

Does that make sense?

Gabriel

--------------------------------------------------------------------------------

From: ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]
Sent: Tuesday, March 18, 2008 6:42 PM
To: Gabriel Vivas
Subject: Response to Complaint

Dear Gabriel,

I don't believe that Judge Whelan's Order Extending Briefing Schedule extended the time for CDE to respond to the Complaint, which, by CDE's own declarations was served at your offices on February 25, 2008.

CDE's response was due on March 17, 2008, and I have noted that it was neither filed nor served upon me. Please advise me of CDE's understanding of its time to respond to the Complaint. As counsel for Plaintiff, I do have some affirmative duties in this matter, and am seeking clarification. Thank you.

Sincerely,

Ellen Dowd

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM



## ellendowd@sbcglobal.net

| | |
|---|---|
| **From:** | <ellendowd@sbcglobal.net> |
| **To:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **Sent:** | Wednesday, March 19, 2008 9:49 AM |
| **Subject:** | Re: Response to Complaint |

Upon what do you base an implicit extension of time to respond to the Complaint? You never asked for that in your ex parte application, and, you made it very clear that the Complaint was served on February 25, 2008, and not February 8, 2008. The Court's Order confirms this.

Also, upon what do you base your statement that "I'm certain the court anticipated we'd be filing a 12(b)(6) motion?

I do not have authority to grant an extension after you ae technically in default. Perhaps we can get a conference call with Judger Whelan right away to clarify this.

> ------ Original Message -----
> **From:** Gabriel Vivas
> **To:** ellendowd@sbcglobal.net
> **Cc:** grousseve@cde.ca.gov
> **Sent:** Wednesday, March 19, 2008 9:13 AM
> **Subject:** RE: Response to Complaint
>
> Dear Ellen,
>
> Thanks for your inquiry. I agree with you that the court's order did not explicitly extend the time. My interpretation, however, was that the extension of time was implicit.
>
> I'm certain the court anticipated we'd be filing a 12(b)(6) motion. I think the court's order was his way of avoiding potential procedural issues that would arise in the context of a 12(b)(6) and which would interfere with the resolution of the main issues raised in your complaint. In other words, I think he anticipated we might get snarled in procedural questions regarding the sufficiency of the pleadings, without necessarily addressing the gist of your case. I took his order to mean that, given the time restrictions, he wanted to address the substantive issues through the TRO, rather than give the defense an opportunity to file a 12(b)(6) or something and spend time deciding procedural matters. I see this as an advantage he gave plaintiffs. Otherwise, we could be arguing some procedural question that might not get resolved for some time. My sense is that he wanted to give plaintiffs a day in court on the merits before it was too late.
>
> That's why I thought an extension of time was implicit in his order. Of course, I may be wrong and perhaps the court would prefer a response to the complaint which, in this case, would mean we might well get snarled in questions surrounding the sufficiency of the complaint.
>
> To resolve the situation and ensure you're protecting your client's interests, I would propose that we agree to extend the time by 30 days for the defense to file a response to the complaint. In the meantime, we can discuss this issue further, if necessary. If we get a ruling before our response is filed, either side may wish to hold the case in abeyance while we take the court's ruling on the TRO up to the 9th Circuit.
>
> Does that make sense?
>
> Gabriel
>
> ---
>
> **From:** ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]

3/19/2008

## ellendowd@sbcglobal.net

**From:**    <ellendowd@sbcglobal.net>
**To:**    "Gabriel Vivas" <GVivas@cde.ca.gov>
**Sent:**    Wednesday, March 19, 2008 11:04 AM
**Subject:**    Re: Response to Complaint



I have to speak with my clients. The lack of an Answer makes it all the more difficult for me to do the Opposition to Motion For Intervention, because i am not exactly clear on CDE's position.

Since there is neither any implicit or explicit extension for CDE's response, I think you have waived the right to make any motions concerning the Complaint.

Show me one document, pleading, motion ,order in which you even mentioned an exrtension of time to Answer, or, alternatively, any mention of a 12(b)(6) motion? How can you say that you are sure the Court anticipated CDE would be filing a 12(b)(6) motion, when CDE didn;t noitice one.

I have a Federal Court Hearing this afternoon in San Diego, and an all-day Federal Court Settement Conference in Santa Ana tomorrow.

Please e-mail me what CDE's intentions are.

Thank you,

Ellen Dowd

> ----- Original Message -----
> **From:** Gabriel Vivas
> **To:** ellendowd@sbcglobal.net
> **Cc:** Greg Rousseve
> **Sent:** Wednesday, March 19, 2008 10:36 AM
> **Subject:** RE: Response to Complaint



Just so that I'm clear. You're refusing to grant us an extension?

If that's the case, perhaps a conference call would be valuable.

**From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
**Sent:** Wednesday, March 19, 2008 9:49 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

Upon what do you base an implicit extension of time to respond to the Complaint? You never asked for that in your ex parte application, and, you made it very clear that the Complaint was served on February 25, 2008, and not February 8, 2008. The Court's Order confirms this.

Also, upon what do you base your statement that "I'm certain the court anticipated we'd be filing a 12(b)(6) motion?

I do not have authority to grant an extension after you ae technically in default. Perhaps we can get a conference call with Judger Whelan right away to clarify this.

> ----- Original Message -----
> **From:** Gabriel Vivas
> **To:** ellendowd@sbcglobal.net
> **Cc:** grousseve@cde.ca.gov

3/19/2008

**Sent:** Wednesday, March 19, 2008 9:13 AM
**Subject:** RE: Response to Complaint

Dear Ellen,

Thanks for your inquiry. I agree with you that the court's order did not explicitly extend the time. My interpretation, however, was that the extension of time was implicit.

I'm certain the court anticipated we'd be filing a 12(b)(6) motion. I think the court's order was his way of avoiding potential procedural issues that would arise in the context of a 12(b)(6) and which would interfere with the resolution of the main issues raised in your complaint. In other words, I think he anticipated we might get snarled in procedural questions regarding the sufficiency of the pleadings, without necessarily addressing the gist of your case. I took his order to mean that, given the time restrictions, he wanted to address the substantive issues through the TRO, rather than give the defense an opportunity to file a 12(b)(6) or something and spend time deciding procedural matters. I see this as an advantage he gave plaintiffs. Otherwise, we could be arguing some procedural question that might not get resolved for some time. My sense is that he wanted to give plaintiffs a day in court on the merits before it was too late.

That's why I thought an extension of time was implicit in his order. Of course, I may be wrong and perhaps the court would prefer a response to the complaint which, in this case, would mean we might well get snarled in questions surrounding the sufficiency of the complaint.

To resolve the situation and ensure you're protecting your client's interests, I would propose that we agree to extend the time by 30 days for the defense to file a response to the complaint. In the meantime, we can discuss this issue further, if necessary. If we get a ruling before our response is filed, either side may wish to hold the case in abeyance while we take the court's ruling on the TRO up to the 9th Circuit.

Does that make sense?

Gabriel

---

**From:** ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]
**Sent:** Tuesday, March 18, 2008 6:42 PM
**To:** Gabriel Vivas
**Subject:** Response to Complaint

Dear Gabriel,

I don't believe that Judge Whelan's Order Extending Briefing Schedule extended the time for CDE to respond to the Complaint, which, by CDE's own declarations was served at your offices on February 25, 2008.

CDE's response was due on March 17, 2008, and I have noted that it was neither filed nor served upon me. Please advise me of CDE's understanding of its time to respond to the Complaint. As counsel for Plaintiff, I do have some affirmative duties in this matter, and am seeking clarification. Thank you.

Sincerely,

Ellen Dowd

---

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

3/19/2008

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

**ellendowd@sbcglobal.net**

| | |
|---|---|
| **From:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **To:** | <ellendowd@sbcglobal.net> |
| **Cc:** | "Greg Rousseve" <GRoussev@cde.ca.gov> |
| **Sent:** | Wednesday, March 19, 2008 11:34 AM |
| **Subject:** | RE: Response to Complaint |

Ellen,

You will recall that the court based its order for briefing on the TRO in advance of the date an answer would be due. The court did so based upon your representation that the CDE had already been served.

Ordinarily, a TRO would have been heard and resolved in advance of an answer. Therefore, there was no reason for the court to explicitly order an extension. I believe that anyone who were to look at the complaint would have to consider a 12(b)(6) and I would have filed one had I believed otherwise.

This situation is similar to when I asked you for an extension of time to respond to the TRO. You refused and left me no recourse but to obtain relief from the court. When you and I first spoke, we discussed the benefit to both parties to make every effort to resolve the substantive matters in your case as quickly as possible. We agreed to try to keep matters in a civil tone while making an effort to present both sides fairly.

While you may be technically correct in the sense that there is no language, the more reasonable approach here is to extend the time for the CDE to respond. If you prevail on the TRO then CDE must decide whether or not to go to the 9th. If CDE prevails, then your client decides. Either way, the most important question now is whether the court will or will not issue a TRO. If not and you want to proceed with the lawsuit without going to the 9th, then it makes sense to move forward procedurally. An answer or a motion in response to your complaint at this point doesn't make much difference with regard to the TRO.

You are familiar enough with the facts and probably know them better than I do. Frankly, the notion that you need our answer to properly respond to the A.G.'s motion appears disingenuous, but I'll take it at face value.

The same can be said for your apparent surprise to learn of a 12(b)(6) motion. Surely anyone presenting a claim such as the one you filed would expect a motion to dismiss from a defendant.

Courts often speak about the need for lawyers to work cooperatively in the course of litigation. This is one of those situations. Your client has nothing to loose by granting more time for the CDE to respond. Whether or not the matter proceeds is not going to be affected by an answer or a motion at this time. Had we filed a motion to dismiss and obtained a favorable ruling, your client would no longer even have the opportunity to be heard on its TRO request. That's the logic behind my belief that the court's order implicitly ordered an extension of time to respond to the complaint. The only party that could be hurt by proceeding with the case before hearing the TRO was plaintiff.

In any event, I was hoping you would be more reasonable in your approach to this case. Given your position, however, I will consider whether to seek relief from the court.

**From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
**Sent:** Wednesday, March 19, 2008 11:04 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

3/19/2008

I have to speak with my clients. The lack of an Answer makes it all the more difficult for me to do the Opposition to Motion For Intervention, because i am not exactly clear on CDE's position.

Since there is neither any implicit or explicit extension for CDE's response, I think you have waived the right to make any motions concerning the Complaint.

Show me one document, pleading, motion ,order in which you even mentioned an exrtension of time to Answer, or, alternatively, any mention of a 12(b)(6) motion? How can you say that you are sure the Court anticipated CDE would be filing a 12(b)(6) motion, when CDE didn;t noitice one.

I have a Federal Court Hearing this afternoon in San Diego, and an all-day Federal Court Settement Conference in Santa Ana tomorrow.

Please e-mail me what CDE's intentions are.

Thank you,

Ellen Dowd

> ----- Original Message -----
> **From:** Gabriel Vivas
> **To:** ellendowd@sbcglobal.net
> **Cc:** Greg Rousseve
> **Sent:** Wednesday, March 19, 2008 10:36 AM
> **Subject:** RE: Response to Complaint
>
> Just so that I'm clear.  You're refusing to grant us an extension?
>
> If that's the case, perhaps a conference call would be valuable.
>
> **From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
> **Sent:** Wednesday, March 19, 2008 9:49 AM
> **To:** Gabriel Vivas
> **Subject:** Re: Response to Complaint
>
> Upon what do you base an implicit extension of time to respond to the Complaint?  You never asked for that in your ex parte application, and, you made it very clear that the Complaint was served on February 25, 2008, and not February 8, 2008.  The Court's Order confirms this.
>
> Also, upon what do you base your statement that "I'm certain the court anticipated we'd be filing a 12(b)(6) motion?
>
> I do not have authority to grant an extension after you ae technically in default.  Perhaps we can get a conference call with Judger Whelan right away to clarify this.
>
>> ----- Original Message -----
>> **From:** Gabriel Vivas
>> **To:** ellendowd@sbcglobal.net
>> **Cc:** grousseve@cde.ca.gov
>> **Sent:** Wednesday, March 19, 2008 9:13 AM
>> **Subject:** RE: Response to Complaint
>>
>> Dear Ellen,
>>
>> Thanks for your inquiry.  I agree with you that the court's order did not explicitly extend the time.  My interpretation, however, was that the extension of time was implicit.
>>
>> I'm certain the court anticipated we'd be filing a 12(b)(6) motion. I think the court's order was his way of

3/19/2008

avoiding potential procedural issues that would arise in the context of a 12(b)(6) and which would interfere with the resolution of the main issues raised in your complaint. In other words, I think he anticipated we might get snarled in procedural questions regarding the sufficiency of the pleadings, without necessarily addressing the gist of your case. I took his order to mean that, given the time restrictions, he wanted to address the substantive issues through the TRO, rather than give the defense an opportunity to file a 12(b)(6) or something and spend time deciding procedural matters. I see this as an advantage he gave plaintiffs. Otherwise, we could be arguing some procedural question that might not get resolved for some time. My sense is that he wanted to give plaintiffs a day in court on the merits before it was too late.

That's why I thought an extension of time was implicit in his order. Of course, I may be wrong and perhaps the court would prefer a response to the complaint which, in this case, would mean we might well get snarled in questions surrounding the sufficiency of the complaint.

To resolve the situation and ensure you're protecting your client's interests, I would propose that we agree to extend the time by 30 days for the defense to file a response to the complaint. In the meantime, we can discuss this issue further, if necessary. If we get a ruling before our response is filed, either side may wish to hold the case in abeyance while we take the court's ruling on the TRO up to the 9th Circuit.

Does that make sense?

Gabriel

---

**From:** ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]
**Sent:** Tuesday, March 18, 2008 6:42 PM
**To:** Gabriel Vivas
**Subject:** Response to Complaint

Dear Gabriel,

I don't believe that Judge Whelan's Order Extending Briefing Schedule extended the time for CDE to respond to the Complaint, which, by CDE's own declarations was served at your offices on February 25, 2008.

CDE's response was due on March 17, 2008, and I have noted that it was neither filed nor served upon me. Please advise me of CDE's understanding of its time to respond to the Complaint. As counsel for Plaintiff, I do have some affirmative duties in this matter, and am seeking clarification. Thank you.

Sincerely,

Ellen Dowd

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

3/19/2008

## ellendowd@sbcglobal.net

| | |
|---|---|
| **From:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **To:** | <ellendowd@sbcglobal.net> |
| **Cc:** | "Greg Rousseve" <GRoussev@cde.ca.gov> |
| **Sent:** | Wednesday, March 19, 2008 3:49 PM |
| **Subject:** | RE: Response to Complaint |



Ellen,
I haven't heard back from you. do you still want to engage in a conference with the court? I'd be happy to do that if we can arrange it.

**From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
**Sent:** Wednesday, March 19, 2008 11:04 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

I have to speak with my clients. The lack of an Answer makes it all themore difficult for me to do the Opposition to Motion For Intervention, because i am not exactly clear on CDE's position.

Since there is neither any implicit or explicit extension for CDE's response, I think you have waived the right to make any motions concerning the Complaint.

Show me one document, pleading, motion ,order in which you even mentioned an exrtension of time to Answer, or, alternatively, any mention of a 12(b)(6) motion? How can you say that you are sure the Court anticipated CDE would be filing a 12(b)(6) motion, when CDE didn;t noitice one.

I have a Federal Court Hearing this afternoon in San Diego, and an all-day Federal Court Settement Conference in Santa Ana tomorrow.

Please e-mail me what CDE's intentions are.

Thank you,

Ellen Dowd

----- Original Message -----
**From:** Gabriel Vivas
**To:** ellendowd@sbcglobal.net
**Cc:** Greg Rousseve
**Sent:** Wednesday, March 19, 2008 10:36 AM
**Subject:** RE: Response to Complaint

Just so that I'm clear. You're refusing to grant us an extension?

If that's the case, perhaps a conference call would be valuable.

**From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
**Sent:** Wednesday, March 19, 2008 9:49 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

Upon what do you base an implicit extension of time to respond to the Complaint? You never asked for that in your ex parte application, and, you made it very clear that the Complaint was served on February 25, 2008, and not February 8, 2008. The Court's Order confirms this.

3/19/2008

Also, upon what do you base your statement that "I'm certain the court anticipated we'd be filing a 12(b)(6) motion?

I do not have authority to grant an extension after you ae technically in default. Perhaps we can get a conference call with Judger Whelan right away to clarify this.

----- Original Message -----
**From:** Gabriel Vivas
**To:** ellendowd@sbcglobal.net
**Cc:** grousseve@cde.ca.gov
**Sent:** Wednesday, March 19, 2008 9:13 AM
**Subject:** RE: Response to Complaint

Dear Ellen,

Thanks for your inquiry. I agree with you that the court's order did not explicitly extend the time. My interpretation, however, was that the extension of time was implicit.

I'm certain the court anticipated we'd be filing a 12(b)(6) motion. I think the court's order was his way of avoiding potential procedural issues that would arise in the context of a 12(b)(6) and which would interfere with the resolution of the main issues raised in your complaint. In other words, I think he anticipated we might get snarled in procedural questions regarding the sufficiency of the pleadings, without necessarily addressing the gist of your case. I took his order to mean that, given the time restrictions, he wanted to address the substantive issues through the TRO, rather than give the defense an opportunity to file a 12(b)(6) or something and spend time deciding procedural matters. I see this as an advantage he gave plaintiffs. Otherwise, we could be arguing some procedural question that might not get resolved for some time. My sense is that he wanted to give plaintiffs a day in court on the merits before it was too late.

That's why I thought an extension of time was implicit in his order. Of course, I may be wrong and perhaps the court would prefer a response to the complaint which, in this case, would mean we might well get snarled in questions surrounding the sufficiency of the complaint.

To resolve the situation and ensure you're protecting your client's interests, I would propose that we agree to extend the time by 30 days for the defense to file a response to the complaint. In the meantime, we can discuss this issue further, if necessary. If we get a ruling before our response is filed, either side may wish to hold the case in abeyance while we take the court's ruling on the TRO up to the 9th Circuit.

Does that make sense?

Gabriel


----------

**From:** ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]
**Sent:** Tuesday, March 18, 2008 6:42 PM
**To:** Gabriel Vivas
**Subject:** Response to Complaint

Dear Gabriel,

I don't believe that Judge Whelan's Order Extending Briefing Schedule extended the time for CDE to respond to the Complaint, which, by CDE's own declarations was served at your offices on February 25, 2008.

CDE's response was due on March 17, 2008, and I have noted that it was neither filed nor served upon me. Please advise me of CDE's understanding of its time to respond to the Complaint. As counsel for Plaintiff, I do have some affirmative duties in this matter, and am seeking clarification. Thank you.

3/19/2008

Sincerely,


Ellen Dowd

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.21.7/1335 - Release Date: 3/19/2008 9:54 AM

3/19/2008



## ellendowd@sbcglobal.net

| | |
|---|---|
| **From:** | <ellendowd@sbcglobal.net> |
| **To:** | "Gabriel Vivas" <GVivas@cde.ca.gov> |
| **Sent:** | Thursday, March 20, 2008 5:08 AM |
| **Subject:** | Re: Response to Complaint |

Gabriel,

As I advised, I have a a mandatory court appearance in Federal Court in Santa Ana today, and I'm in Superior Court

tomorrow. I'm not going to be available for a conference, telephonic or otherwise.

> ----- Original Message -----
> **From:** Gabriel Vivas
> **To:** ellendowd@sbcglobal.net
> **Cc:** Greg Rousseve
> **Sent:** Wednesday, March 19, 2008 3:49 PM
> **Subject:** RE: Response to Complaint
>
> Ellen,
> I haven't heard back from you. do you still want to engage in a conference with the court? I'd be happy to do that if we can arrange it.
>
> **From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
> **Sent:** Wednesday, March 19, 2008 11:04 AM
> **To:** Gabriel Vivas
> **Subject:** Re: Response to Complaint
>
> I have to speak with my clients. The lack of an Answer makes it all the more difficult for me to do the Opposition to Motion For Intervention, because i am not exactly clear on CDE's position.
>
> Since there is neither any implicit or explicit extension for CDE's response, I think you have waived the right to make any motions concerning the Complaint.
>
> Show me one document, pleading, motion ,order in which you even mentioned an exrtension of time to Answer, or, alternatively, any mention of a 12(b)(6) motion? How can you say that you are sure the Court anticipated CDE would be filing a 12(b)(6) motion, when CDE didn;t noitice one.
>
> I have a Federal Court Hearing this afternoon in San Diego, and an all-day Federal Court Settement Conference in Santa Ana tomorrow.
>
> Please e-mail me what CDE's intentions are.
>
> Thank you,
>
> Ellen Dowd
>
> > ----- Original Message -----
> > **From:** Gabriel Vivas
> > **To:** ellendowd@sbcglobal.net
> > **Cc:** Greg Rousseve
> > **Sent:** Wednesday, March 19, 2008 10:36 AM
> > **Subject:** RE: Response to Complaint

3/20/2008

## ellendowd@sbcglobal.net

**From:**    "Gabriel Vivas" <GVivas@cde.ca.gov>
**To:**        <ellendowd@sbcglobal.net>
**Sent:**     Thursday, March 20, 2008 8:12 AM
**Subject:** RE: Response to Complaint

I understand. Well, then I will file an exparte request with the court asking for an extension of time. I'll be sure you get a copy.

Thanks for your consideration of my request.

Gabriel

**From:** ellendowd@sbcglobal.net [ellendowd@sbcglobal.net]
**Sent:** Thursday, March 20, 2008 5:08 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

Gabriel,

As I advised, I have a a mandatory court appearance in Federal Court in Santa Ana today, and I'm in Superior Court
tomorrow. I'm not going to be available for a conference, telephonic or otherwise.

----- Original Message -----
**From:** Gabriel Vivas
**To:** ellendowd@sbcglobal.net
**Cc:** Greg Rousseve
**Sent:** Wednesday, March 19, 2008 3:49 PM
**Subject:** RE: Response to Complaint

Ellen,
I haven't heard back from you. do you still want to engage in a conference with the court? I'd be happy to do that if we can arrange it.

**From:** ellendowd@sbcglobal.net [mailto:ellendowd@sbcglobal.net]
**Sent:** Wednesday, March 19, 2008 11:04 AM
**To:** Gabriel Vivas
**Subject:** Re: Response to Complaint

I have to speak with my clients. The lack of an Answer makes it all themore difficult for me to do the Opposition to Motion For Intervention, because i am not exactly clear on CDE's position.

Since there is neither any implicit or explicit extension for CDE's response, I think you have waived the right to make any motions concerning the Complaint.

Show me one document, pleading, motion ,order in which you even mentioned an exrtension of time to Answer, or, alternatively, any mention of a 12(b)(6) motion?  How can you say that you are sure the Court anticipated CDE would be filing a 12(b)(6) motion, when CDE didn;t noitice one.

I have a Federal Court Hearing this afternoon in San Diego, and an all-day Federal Court Settement Conference in Santa Ana tomorrow.

3/20/2008