MARSHA A. BEDWELL, State Bar No. 094860
General Counsel
AMY BISSON HOLLOWAY, State Bar No. 163731
Assistant General Counsel
GABRIEL C. VIVAS, State Bar No. 092434
Deputy General Counsel
GREGORY ROUSSEVE, State Bar No. 084262
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, CA 95814
Telephone: (916) 319-0860
Facsimile: (916) 319-0155
gvivas@cde.ca.gov

Attorneys for Defendant California Department of Education

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, et al., | Case No. 08-CV-0226 W (AJB) |
| Plaintiff, | **DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S OPPOSITION TO PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| CALIFORNIA DEPARTMENT OF EDUCATION, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………...…i

TABLE OF AUTHORITIES…………………………….....………………………...…ii, iii, iv

INTRODUCTION……………………………………………………………………………....1

STATEMENT OF FACTS……………………………………………....……………………….2

THE STATUTORY FRAMEWORK OF THE IDEA…………….………………………….……….3

LEGAL STANDARD FOR INTERIM EQUITABLE RELIEF……………………...……………….4

I.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS
BECAUSE THERE IS NO EVIDENCE OF DISPARATE RESULTS BETWEEN
SEHO AND OAH AND BECAUSE THERE IS NO
LEGAL SUPPORT FOR THEIR REMAINING CLAIMS………...……………………6

     A.     There Is No Disparity In Due Process Hearing Results…………………6

     B.     ALJ's at OAH are Qualified and Their Qualifications
Meet Legal Standards………………………………………...……...…6

     C.     CDE Remains Legally Required to Contract With a Non-
Governmental Third Party…......................................................................7

     D.     CDE Has Not Violated The Supremacy Clause…………………………8

II.     THE BALANCE OF THE HARDSHIPS LEANS HEAVILY AGAINST
ISSUANCE OF A TRO………………………………………………………………9

     A.     Plaintiffs Failed to Offer Any Reliable Proof to Support Their
Claims of Irreparable Harm…………………………………………….9

     B.     Every Member of the Proposed Class Has an Adequate Remedy
At Law…………………………………………………………………..11

     C.     Granting the TRO would Jeopardize CDE's Ability to Comply
With Federal Law and Continue Providing Due Process Hearings
And Mediations…………………………………………………………12

     D.     Granting the TRO Would Jeopardize $1.16 Billion Dollars in
Federal IDEA Funds……………………………………………………13

CONCLUSION………………………………………………………………………………14

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Arcamuzi v. Continental Air Lines, Inc.*
819 F.2d 935, 937 (9th Cir. 1987) .................................................................5

*Barnes v. Gorman*
 536 U.S. 181, 186 (2002).............................................................................8

*Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*
 584 F.2d 308, 315 (9th Cir. 1978 .................................................................5

*Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*
 458 U.S. 176, 190, fn. 11(U.S.N.Y., 1982) ...............................................8

*Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*
236 F. Supp.2d 1152, 1154 (D. Haw. 2002) ...............................................4

*Chalk v. United States District Court*
 840 F.2d 701, 704 (9th Cir. 1988) ..............................................................4

*County of Westchester v. New York*
 286 F.3d 150, 153 (2d Cir. 2002).............................................................13

*Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc.*
448 F.3d 1118, 1124 (9th Cir. 2006) ...........................................................5

*Givemepower Corp. v. Pace Compumetrics, Inc.*
2007 WL 951350, 8 (S.D. Cal.) (S.D. Cal.,2007)....................................10

*GoTo.Com, Inc. v. Walt Disney Co.*
202 F.3d 1199, 1210 (9th Cir. 2000) ...........................................................5

*Hawkins v. Berkeley Unified School District*
2008 WL 681880 at p. 1 (N.D. Cal. March 11, 2008)…………………......11

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*
887 F. Supp. 1320, 1323 (N.D. Cal. 1995) ..................................................4

*Mazurek v. Armstrong*
 520 U.S. 968, 972 (1997).............................................................................5

*Mitchell v. Helms*
 530 U.S. 793, 863-864 (2000) ..................................................................10

*NAACP, Inc. v. Town of East Haven*
 70 F.3d 219, 223 (2nd Cir. 1995) ..........................................................5, 14

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*
 762 F.2d 1374, 1376 (9th Cir. 1985) ...........................................................5

*O'Shea v. Littleton*

414 U.S. 488, 502 (U.S. Ill. 1974) ............................................................................11

*Pennhurst State Sch. & Hosp. v. Halderman*
451 U.S. 1, 17 (1981) .......................................................................................8

*Pinnacle Armor, Inc. v. U.S.*
2008 WL 108969, (E.D. Cal.,2008) .................................................................5, 14

*Professional Engineers in Calif. Govt. v. Dept. of Transportation*
15 Cal. 4th 543, (1997) ..............................................................................8

*Professional Engineers in California Government v. Kempton*
40 Cal. 4th 1016, 1035, (Cal., 2007) ...............................................................8

**Statutes**

20 U.S.C.
Section 1400 et seq.[IDEA] ...........................................................................3
Section 1400(d) ............................................................................................3
Section 1412(a) ............................................................................................4
Section 1415(a) ............................................................................................2
Section 1415(f) ............................................................................................4
Section
1415(f)(3)(A) .........................................................................................4, 7, 8
Section 1415(f)(3)(A)(i) ................................................................................4
Section 1415(i)(2)(A) .............................................................................2, 4, 11
Section 1415, et. seq. ....................................................................................3

20 U.S.C.A.
Section 1416(e)(3) .......................................................................................13

34 C.F.R.
Sections 300.1, et seq ....................................................................................3
Sections 300.500 through § 300.536................................................................13
Sections 300.506.............................................................................................4
Section  300.507.............................................................................................4
Section  300.508.............................................................................................4
Section  300.511(c) ................................................................................4, 7, 9
Section  300.518.............................................................................................11

5 CCR
Section 3000, et seq ......................................................................................4
Section 3080, et seq ......................................................................................4

CAL. ED. CODE
Section 56000 et seq ....................................................................................4
Section 56501 et seq .....................................................................................4
Section 56504.5.............................................................................................4
Section 56504.5(a) ........................................................................................4

Section 56504.5(b)........................................................................................................4
Section 56505(h)...........................................................................................................4
Section 56505(k)...........................................................................................................4

California Constitution
CAL CONST. art. VII, § 1..........................................................................................7, 8
CAL CONST. art. XXII, § 1................................................................................................8

MARSHA A. BEDWELL, State Bar No. 094860
General Counsel
AMY BISSON HOLLOWAY, State Bar No. 163731
Assistant General Counsel
GABRIEL C. VIVAS, State Bar No. 092434
Deputy General Counsel
GREGORY ROUSSEVE, State Bar No. 084262
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, CA 95814
Telephone:  (916) 319-0860
Facsimile:  (916) 319-0155
gvivas@cde.ca.gov

Attorneys for Defendant California Department of Education

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, et al., | ) Case No. 08-CV-0226 W (AJB) |
| | ) |
| | ) |
| | ) **DEFENDANT CALIFORNIA** |
| Plaintiff, | ) **DEPARTMENT OF EDUCATION'S** |
| v. | ) **OPPOSITION TO PLAINTIFF'S** |
| | ) **REQUEST FOR A TEMPORARY** |
| | ) **RESTRAINING ORDER** |
| CALIFORNIA DEPARTMENT OF EDUCATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## INTRODUCTION

Issuance of a Temporary Restraining Order in this case would result in California being unable to provide due process hearings and mediations for special education students and their parents and it could also lead to California being found ineligible for over $1.1 billion dollars in special education funds. Either or both of these results would have devastating consequences on all of California's school districts. In contrast, plaintiffs have shown no evidence of irreparable harm to the proposed

class in the absence of a TRO and they have failed to produce any reason to believe their case has any merit. Accordingly, the application for a TRO must be denied.

Plaintiffs' case is based on the assertion that current due process hearing officers are biased and unqualified as reflected by the low percentage of cases in which parents prevail now versus the rate at which parents prevailed during the period that McGeorge School of Law, Special Education Hearing Office (SEHO) was the contractor. A comparison between the last two years of SEHO's decisions with the first three years of decisions by the California Office of Administrative Hearings shows there is no appreciable difference in the rate of success for parents.

Plaintiffs claim parents won 50% of their cases when decided by SEHO whereas they only prevail in 10% of their cases today. CDE's review of the hearing results, however, shows that parents prevailed in 14% of the decisions between 2003 and 2005 and that parents prevailed in slightly fewer than 11% of the cases after the change in 2005. Moreover, decisions favored school districts in 53% of the cases before the change and 55% after. Split decisions remained at 35% and 34% respectively. *Declaration of Shane Berli in Support of California Department of Education's Opposition to TRO*, attached hereto as Defendant's Exhibit A.

Moreover, members of the proposed class have an adequate remedy at law. By definition, each member of the proposed class has been aggrieved by a decision by a hearing officer. Therefore, each member of the proposed class is entitled to bring an appeal to this Court whenever he or she is aggrieved by a decision of an Administrative Law Judge (ALJ). 20 U.S.C. 1415(i)(2)(A).

Thus, the balance of hardships overwhelmingly tips in favor of CDE. The absence of irreparable harm to plaintiffs, coupled with the absence of legal merit to the underlying action, when contrasted with the potentially ruinous effects on California's special education community leads inescapably to the conclusion that plaintiffs' petition for a TRO is missing the elements necessary to show a need for the relief requested.

## STATEMENT OF FACTS

CDE is legally required to enter into an interagency agreement or contract with a non-profit entity to conduct special education mediation and due process hearings. 20 U.S.C. § 1415(a). CDE and OAH entered into an interagency agreement in May 2005 wherein OAH was to provide due

process hearings and mediation services for special education students as provided in the Individuals with Disabilities Education Improvement Act in 2004 (IDEA) 20 U.S.C. § 1415, et. seq.. (*Plaintiff's Complaint*, *Exh*. 2.)  The agreement remains in place but is set to expire by its own terms on June 30, 2008. *Id*.

The McGeorge School of Law, Special Education Hearing Office (SEHO), which existed up through December 31, 2005, no longer exists and has remained inoperational since that date.  CDE is unaware of any readily identifiable entity currently qualified and with the resources necessary to undertake the responsibility of providing due process hearings and mediation services to special education students and their parents. *Declaration of James Bellotti in Support of Defendant California Department of Education in Opposition to Plaintiff's Application for a TRO*, *Par*. 8.

OAH has issued 318 due process decisions since it began holding due process hearings on July 1, 2005. Of those, 176 (55%) were decided in favor of school districts (55%),  109 (34%) were split decisions, and 33 (11%) were decided in favor of parents. *Declaration of Shane Berli in Support of California Department of Education's Opposition to TRO*, attached hereto as Defendant's Exhibit A. For two years before OAH began hearing cases, the Special Education Hearing Office (SEHO) issued 252 decisions. Of those, 134 (53%) decisions favored school districts, 83 (33%) were split decisions, and 35 (14%) were decided in favor of parents. *Id*.

To ensure continued compliance with federal laws and regulations, CDE and the OAH are in the process of negotiating an interagency agreement that would become operative commencing on the close of business June 30, 2008. Under the terms of the expected interagency agreement, OAH would provide all mediation and due process hearings for California's special education students and their parents as required by the IDEA and its implementing regulations. *Bellotti Declaration*, *Par*. 7.

### THE STATUTORY FRAMEWORK OF THE IDEA

In 1975, Congress enacted the Education of the Handicapped Act (renamed the Individuals with Disabilities Education Improvement Act in 2004: 20 U.S.C. §§ 1400 et seq.[IDEA]).  The IDEA and its implementing regulations, 34 C.F.R. sections 300.1 et seq., provide procedural and substantive standards for educating students with disabilities. 20 U.S.C. § 1400(d).

A state choosing to participate in the IDEA must submit a plan setting forth policies,

procedures, and program descriptions. 20 U.S.C. §1412(a). California elected to participate in IDEA, adopted a state plan, and enacted a series of statutes and regulations designed to comply with the federal requirements. Cal. Ed. Code §§ 56000 et seq.; Cal. Code Regs., tit. 5, §§ 3000 et seq.

Whenever there is a proposal, or refusal, to initiate or change the identification, evaluation, or educational placement of a child, or the provision of a FAPE, the child's parents have the right to challenge the result by requesting an administrative "due process hearing" before an *independent and impartial* hearing officer. 20 U.S.C. § 1415(f); Cal. Ed. Code §§ 56501 et seq.; 34 C.F.R. §§ 300.506, 300.507, and 300.508.

CDE provides due process hearings through independent administrative law judges at the OAH through an interagency agreement. Pursuant that agreement, with the ALJs at OAH conduct these hearings and have authority to make final administrative decisions. See, 20 U.S.C. § 1415(f)(3)(A)(i); 34 CFR § 300.511(c); Cal. Ed. Code §56505(h). Either party aggrieved by the final administrative decision may then seek *de novo* judicial review in a court of competent jurisdiction. 20 U.S.C. § 1415(i)(2)(A); Cal. Ed. Code § 56505(k).

The independent hearing officers who hear due process complaints are hired and trained by OAH, a separate agency of California state government. Cal. Ed. Code § 56504.5(a). In addition, the hearings are administratively controlled by OAH in accord with their regular procedures for scheduling, noticing, and preserving the record of the proceedings and the procedural regulations adopted by the California State Board of Education. 5 CCR § 3080, et seq. CDE does not and cannot control the day-to-day operation of the due process procedures by OAH. Cal. Ed. Code § 56504.5(b).

## LEGAL STANDARD FOR INTERIM EQUITABLE RELIEF

When the nonmoving party has received notice, as in this case, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. See *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc*., 236 F. Supp. 2d 1152, 1154 (D.Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co*., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The "basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits," *Chalk v. United States District Court*, 840 F.2d 701, 704 (9th Cir. 1988). The status quo, however, is not simply any situation before the filing of the lawsuit. Rather, status quo is the last

uncontested status that preceded the parties' controversy. *GoTo.Com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000); *Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In the Ninth Circuit, preliminary injunctive relief is available to a party who demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor. *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* If the plaintiff shows no chance of success on the merits, however, the injunction should not issue. *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers,* 584 F.2d 308, 315 (9th Cir. 1978). Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury. *Arcamuzi v. Continental Air Lines, Inc*., 819 F.2d 935, 937 (9th Cir. 1987)

Generally, where the moving party seeks to enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must establish both irreparable injury and a probability of success on the merits. *NAACP, Inc. v. Town of East Haven, 70 F.3d 219, 223 (2nd Cir.1995)* (hiring of police and firefighters); *Pinnacle Armor, Inc. v. U.S.* 2008 WL 108969, (E.D.Cal.,2008). Here, because plaintiffs are attempting to enjoin execution of an interagency agreement between two state agencies, a heightened standard is applicable in this case and should be employed.

///

///

///

///

///

///

# I.
## PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS BECAUSE THERE IS NO EVIDENCE OF DISPARATE RESULTS BETWEEN SEHO AND OAH AND BECAUSE THERE IS NO LEGAL SUPPORT FOR THEIR REMAINING CLAIMS.

### A.     There Is No Disparity In Due Process Hearing Results.

The foundation supporting plaintiffs' case is their assertion that there is a bias against parents at OAH as shown by a 50% success rate for parents before OAH assumed responsibility for due process hearings and mediations.  That claim is simply wrong. Parents achieved complete success in only 14% of cases in the last two years[1] before the interagency agreement with OAH. *Berli Declaration*, *Pars.* 5 and 6.

OAH has issued 318 due process decisions since it began holding due process hearings on July 1, 2005. Of those, 176 (55%) were decided in favor of school districts (55%), 109 (34%) were split decisions, and 33 (11%) were decided in favor of parents. *Berli Declaration, Par. 5.*  For two years before OAH began hearing cases, the Special Education Hearing Office (SEHO) issued 252 decisions. Of those, 134 (53%) decisions favored school districts, 83 (33%) were split decisions, and 35 (14%) were decided in favor of parents. *Id.*

Rather than show a disparity in results, these figures show that due process hearings are being decided in about the same way today as they were the last two years SEHO heard cases. Since there is no reason to believe that cases decided over the last two years of SEHO's hearings were decided any differently than before, it would be reasonable to infer that there has not been a change in results altogether.

### B.  ALJs At OAH Are Qualified And Their Qualifications Meet Legal Standards.

Plaintiffs' assertion that ALJs are unqualified lacks evidentiary support. As shown below, the assertions of inadequate training and knowledge lack evidentiary support and there is no specific statutory requirement for training, experience or background and , as seen below, only general

---

[1] It is unclear from Plaintiffs' claims what time period plaintiffs reference in their assertions regarding prior outcomes.  Given the brevity of the period OAH has been conducting due process hearings, CDE compared the last two years of hearings under SEHO with the first years of performance by OAH.

requirements governing qualifications altogether.  Thus, states are left to determine the qualifications needed for hearing officers.

Plaintiffs' argument that ALJs at OAH are unqualified contrasts sharply with applicable federal provisions. The minimum qualifications required by federal law for an impartial hearing officer may be found at 20 U.S.C. §1415(f)(3)(A), and in the corresponding regulation at subdivision (c) of 34 C.F.R. § 300.511, which mirrors the statute and states:

"(1) At a minimum, a hearing officer--

(i) Must not be--

(A) An employee of the SEA or the LEA that is involved in the education or care of the child; or

(B) A person having a personal or professional interest that conflicts with the person's objectivity in the hearing;

(ii) Must possess knowledge of, and the ability to understand, the provisions of the Act, Federal and State regulations pertaining to the Act, and legal interpretations of the Act by Federal and State courts;

(iii) Must possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and

(iv) Must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice."

Plaintiffs' arguments to the effect that there must be a certain amount of training, experience and continuing training are all based on no more than counsel's personal opinions.  As a result, plaintiffs have failed to show that CDE has violated any law.  As seen, there is nothing in the IDEA that supports plaintiffs' arguments. There has been no showing that any of the ALJs employed by OAH lacks the academic background, training or knowledge sufficient to perform their duties.

## C.    CDE Remains Legally Required To Contract With A Non-Governmental Third Party.

In an apparent effort to suggest that CDE may contract with an entity outside of California government, plaintiffs argue that the "civil service mandate" (Cal. Const., art. VII, § 1), which

essentially keeps California agencies from contracting for services that could be performed by state employees, no longer applies because it was ruled unconstitutional in *Professional Engineers in Calif. Govt. v. Dept. of Transportation,* 15 Cal.4[th] 543 (1997); *App. For TRO*, p. 2. *Professional Engineers* is inapposite because the court in that case did not address the constitutionality of section 1, Article VII of the California Constitution. Instead, the court addressed the "Fair Competition and Taxpayer Savings Act" which was approved by California voters as "Proposition 35" on November 7, 2000. Proposition 35 granted to the "State of California and all other governmental entities, including, but not limited to, cities, counties, cities and counties, school districts and other special districts, local and regional agencies and joint power agencies" the "choice and authority" to "contract with qualified private entities for *architectural and engineering services for all public works of improvement*." Cal. Const., art. XXII, § 1. (emphasis provided). The most important point about Professional Engineers in this case is that Proposition 35 applied only to contracts involving architectural and engineering services. *Professional Engineers in Calif. Govt. v. Kempton*, 40 Cal.4th 1016, 1035 (Cal., 2007). Therefore, the implied restrictions on the state's authority to contract with private entities remain intact. Cal. Const., art. VII, § 1. As a result, even if CDE wanted to contract with a non-governmental entity such as SEHO, the state's constitutional provision would prohibit such an agreement.

### D.    CDE Has Not Violated The Supremacy Clause.

Plaintiffs further argue CDE has violated the U.S. Constitution's Supremacy Clause by condoning a lesser standard of qualifications for ALJs than is provided under the IDEA. *App. For TRO*, p. 13. This argument lacks merit both because plaintiffs fail to point to any part of the IDEA that plaintiffs claim CDE has violated.

IDEA is Spending Clause legislation that conditions federal financial assistance for special education on compliance with the Act's requirements. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley,* 458 U.S. 176, 190, fn. 11(U.S.N.Y., 1982). Because Spending Clause programs are in the nature of a "contract" so that " 'if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.' " *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

The qualifications for hearing officers are found at 20 U.S.C. § 1415(f)(3)(A), and in the

corresponding regulation at subdivision (c) of 34 C.F.R. § 300.511.  As set forth above, these provisions do not mandate a specific level of training, experience or background. There certainly is no "unambiguous" statement in IDEA that has been violated by CDE in its contract with OAH or in CDE's oversight of due process proceedings. Other than plaintiffs' counsel's opinion, plaintiffs have failed to show how any of the ALJs employed by OAH fails to meet the criteria in either statute or regulation.

## II.
## THE BALANCE OF THE HARDSHIPS LEANS HEAVILY AGAINST ISSUANCE OF A TRO.

### A.    Plaintiffs Failed to Offer <u>Any</u> Reliable Proof to Support Their Claims of Irreparable Harm.

Plaintiffs rely on Exhibits 3 through 10 attached to their complaint as evidence that irreparable injury will result if the TRO requested is not granted.  The exhibits cited, however, are no more than statistical reports prepared by OAH.  Plaintiffs' have offered no more than conjecture to support the oft-repeated assertion that irreparable harm will come to the proposed class in the absence of injunctive relief.

Plaintiffs claim that "irreparable harm has already occurred to students, who are prevailing in due process hearings only 10% of the time." *Plaintiff's Application for TRO*, pp. 9-10.  There is, however, no showing of any specific harm that has befallen any student other than the claimed harm to C.S. who plaintiffs admit has an appeal pending before this Court. *Plaintiff's Application for TRO*, p.10.  Moreover, assuming parents only prevail in 10% of the cases, this percentage, standing alone, cannot form the basis of a conclusion that ALJs are biased.  Most importantly, the proportion of cases where parents prevailed entirely or in part is almost equal to the proportionate share of cases decided prior to OAH assuming responsibility for due process hearings. *Berli Declaration, Pars. 5 and 6.*

Plaintiffs allege irreparable harm has been suffered by "(m)any other students (who) have been sitting at home, deprived of any education based upon the unlawful conduct of the school district, and the inability to obtain appropriate relief from OAH." *Plaintiff's Application for TRO*, p.10.  Plaintiffs also claim there are other children in "inappropriate school placements which, not only prevent them from learning, but create frustration, low self-esteem and school phobia." *Plaintiff's Application for TRO*, pp.10-11.  In support of these most serious allegations, plaintiffs provide nothing. There is not

one single declaration by a parent, teacher, expert, or anyone (other than the unsupported claims about C.S.) attesting to children sitting at home because a school district's "unlawful conduct" or because of the "inability to obtain appropriate relief from OAH." Obviously missing is any effort to provide this Court with evidence of low self-esteem, phobia or any other affliction brought about by inappropriate placement that has gone unaddressed by OAH.

Plaintiff's conclusions are all based upon conjecture which cannot support a finding of irreparable harm. *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 951350, at p. 8 (S.D. Cal. March 23, 2007) (Conclusory statements are insufficient to warrant injunctive relief.)

Plaintiffs additionally assert there is a "trend" among school districts to file for due process against students whose parents fail to appear at due process hearings for lack of representation resulting in school districts prevailing at those hearings. *Plaintiff's Application for TRO*, p.11. (cf., *Mitchell v. Helms*, 530 U.S. 793, 863-864 (2000) (O'Connor, J., concurring) ("[I]t is entirely proper to presume that school officials will act in good faith.").

In support of the claim that there is a trend by school districts to take advantage of unrepresented parents, plaintiffs cite to plaintiffs' counsel's declaration to the effect that school district filed for due process in 17 out of 76 cases filed with OAH between July 30, 2007 and February 15, 2008 and that parents were unrepresented in those cases. *Id.*

Plaintiffs' asserted "trend" is contradicted by the percentage of cases that go to hearing out of the total number of cases filed. During comparable time periods, OAH received 7,985 requests for due process hearings of which 318 went to hearing (4%). SEHO received 6265 similar requests of which 252 went to hearing (4%). *Id.*

Moreover, school districts are required to file a request for due process whenever it determines that the proposed special education program to which a parent does not consent is necessary to provide a child with FAPE. Cal. Ed. Code § 56346(f). Thus, many of the filings claimed to be the result districts taking advantage of unrepresented parents may easily be due to disagreements with parents over educational programs.

Another form of irreparable harm alleged is the inability to "rehabilitate" ALJs so that they may be "trusted to comply with IDEA and the Interagency Agreement going forward." The ALJ's bias

against parents and students has "had an obvious chilling effect, and parents are no longer comfortable enforcing their children's rights." *Plaintiff's Application for TRO*, p.11.  Again, plaintiffs failed to provide any actual evidence or support for this conclusory argument.

Indeed, plaintiffs' "chilling effect" argument is contradicted by the absence of change in the percentage of cases that go to due process hearing today versus those that went to hearing during the time SEHO was the contractor. As shown above, 4% of the 7,985 requests for due process hearings actually went to hearing before OAH. During the last two years of the SEHO contract, of the 6265 filings, 4% went to hearing (4%).  *Declaration of James Bellotti in Support of Defendant California Department of Education in Opposition to Plaintiff's Application for a TRO*, Par. 9.  Rather than show a chilling effect, the figures show a consistent pattern of the number of cases that proceed to hearing and which parties prevail.

### B. Every Member of the Proposed Class Has an Adequate Remedy At Law.

In addition to showing irreparable harm, a party must also show the absence of an adequate remedy at law. *O'Shea v. Littleton,* 414 U.S. 488, 502 (U.S.Ill. 1974).  Plaintiffs and the proposed class all have an adequate remedy at law.

After a due process proceeding, "any party aggrieved by the findings and decision" of the administrative proceedings may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *Hawkins v. Berkeley Unified School Dist.,* 2008 WL 681880 at p. 1 (N.D. Cal. March 11, 2008). Moreover, students who request a due process hearing are entitled to "stay put" which guarantees them continued placement at the last placement that was "agreed upon" by the district and the student's parents. 34 CFR § 300.518.

This action was brought by a special education student and his parent after they were unsuccessful in their challenge of his school district's determination of FAPE through a due process hearing. *Complaint*, Doc. No. 1, *Pars*. 16-24.  The proposed class consists of all those who, like plaintiff, have failed to obtain the relief they sought in a due process hearing.  *Complaint*, *Par.* 30  The plaintiffs and all those who are similarly situated may avail themselves of this Court's authority, which provides them with an adequate remedy at law.

**C.  Granting the TRO would jeopardize CDE's ability to comply with federal law and continue providing due process hearings and mediations.**

In contrast to the absence of irreparable harm to plaintiffs, an order from this Court halting the progress of negotiations toward execution of an interagency agreement between OAH and CDE could prove disastrous California's 677,875 children with special needs who are enrolled in California's schools. *Bellotti Declaration*, *Pars.* 6, 8, 9.

As a condition of receiving the IDEA funds, states must provide assurances related to policies and procedures. One such assurance is that children with disabilities and their parents are afforded the procedural safeguards required by 34 CFR § 300.500 through § 300.536. Included is the right to an impartial due process hearing where the hearing officer is not an employee of the state education agency or a local education agency that is involved in the education or care of the child. *Bellotti Declaration, Par.* 5.

To ensure continued compliance with federal laws and regulations, CDE and the OAH are in the process of negotiating an interagency agreement that would become operative commencing on the close of business June 30, 2008. Under the terms of the expected interagency agreement, OAH would provide all mediation and due process hearings for California's special education students and their parents as required by the IDEA and its implementing regulations. *Bellotti Declaration*, *Par.* 7.

An order from this Court halting further negotiations or preventing CDE from executing an interagency agreement with OAH would leave California without any due process hearings or mediations after June 30, 2008.  To make matters worse, there is no alternative entity that could replace OAH at the moment.  CDE is unaware of any readily identifiable entity currently qualified and with the resources necessary to undertake the responsibility of providing due process hearings and mediation services to special education students and their parents. *Bellotti Declaration*, *Par.* 8.

CDE's negotiations with OAH are part of an effort to ensure continued compliance with federal laws and regulations concerning providing impartial hearings and mediations.  Therefore, it is imperative that there be no interruption in the delivery of this service to parents of disabilities children. If plaintiff's Application for a Temporary Restraining Order is granted, there will be an interruption in the delivery of due process hearings and mediation services. As a result, California would be out of

compliance with the IDEA and in grave danger of facing a withholding of an estimated 2008-09 grant award of $1,165,972,611 of federal IDEA funds. *Bellotti Declaration*, *Pars.* 5, 6, 9.

  **D. Granting the TRO would jeopardize $1.16 billion dollars in federal IDEA funds.**

Here it is particularly important to take note of the discretion vested in the United States Secretary of Education who "is primarily responsible for the interpretation and implementation of the IDEA and has been granted regulatory and enforcement powers." See *County of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002). To that end, the IDEA includes a substantial compliance provision, authorizing the Secretary to, inter alia, withhold further payments to a state under the Act, if (s)he determines there has been a "substantial failure to comply" with the Act. 20 U.S.C.A. § 1416(e)(3).

  The Secretary's authority may be seen and remains viable as exemplified in a 2003 communication exchange between CDE and the federal government. In May 2003, the Director of the Special Education Division (SED) within the CDE contacted the United States Department of Education, Office of Special Education and Rehabilitative Services. In her letter to the federal officials, the SED Director requested that federal officials clarify what would be, if any, the consequences of California having an interruption in providing parents with access to a system of special education due process hearings and mediations. On May 22, 2003, the CDE received a reply from the Director of the Office of Special Education Programs for the United States Department of Education stating that should there be an interruption in California's ability to provide a system of impartial hearings and mediations, California would be considered out of compliance with federal law and subject to sanctions that could include withholding of California's federal funds under Part B. (*Letter from Stephanie S. Lee, Director Office of Special Education Programs*, attached hereto as *Defendant's Exhibit* A to *Bellotti Declaration*.) Though Ms. Lee's letter was written nearly five years ago, the situation is not significantly different and that the results of any interruption in California's ability to provide a system of impartial hearings and mediations would result in clear liability for sanctions, including withholding of federal funding for special education. *Bellotti Declaration, Par.* 6.

  The IDEA grant for 2007-08 is $1,150,175,848. For the 2008-09 year, it is estimated to be $1,165,972,611. *Bellotti Declaration, Par.* 4. In sum, were this Court to issue a TRO as requested by plaintiffs, CDE not only would be out of compliance with the IDEA, California would be at risk of

loosing substantial amounts of federal funding that would impact the lives of all special education children in the state.

### CONCLUSION

As shown above, plaintiffs' legal arguments are completely lacking in merit and  plaintiffs have failed to show any proof of irreparable harm.  To obtain the equitable relief sought, plaintiffs needed to establish <u>both</u> irreparable injury <u>and</u> a probability of success on the merits. *NAACP, Inc. v. Town of East Haven,* 70 F.3d 219, 223 (2nd Cir. 1995); *Pinnacle Armor, Inc. v. U.S.*, 2008 WL 108969, (E.D. Cal., 2008).  Plaintiffs failed on both counts.  Coupled with the clear showing by CDE of the irreparable harm to California's special education students, the inescapable conclusion is that plaintiffs' application for a temporary restraining order must be denied.


Dated: April 14, 2008


　　　　　　　　　　　　   /s/  Gabriel C. Vivas                            
　　　　　　　　　　　　  GABRIEL C. VIVAS
　　　　　　　　　　　　  Deputy General Counsel