1  Ellen Dowd, Esq.
2  State Bar Number 141206
   2658 Del Mar Heights Road #228
3  Del Mar, California  92014
   (858) 342-8360
4  Fax (858) 755-6348
   ellendowd@sbcglobal.net
5

6  **Attorney for Plaintiff, C.S**

7

8

9

10                    UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12  C.S., by and through his Conservator,     ) CASE NO.:  08 CV 0226 W (AJB)
13  MARY STRUBLE, on behalf of himself        ) PLAINTIFF'S MEMORANDUM OF
    and all others similarly situated,        ) POINTS AND AUTHORITIES IN
14                                             ) REPLY TO DEFENDANTS'
                                               ) CALIFORNIA DEPARTMENT OF
15              Plaintiff,                     ) EDUCATION AND OFFICE OF
                                               ) ADMINISTRATIVE HEARINGS'
16  v.                                         ) OPPOSITIONS TO PLAINITFF'S
                                               ) APPLICATION FOR TEMPORARY
17                                             ) RESTRAINING ORDER
    CALIFORNIA DEPARTMENT OF                   )
18  EDUCATION, a State Agency, et al.          ) Date:   April 28, 2008
                                               ) Judge: Hon. Thomas J. Whelan
19              Defendant.

20

21

22

23

24

25

26

27

28

0                          08 CV 0226 W (AJB)
                                         Plaintiff's Memorandum of Points
                                         and Authorities Reply to CDE's and
                                         OAH's Oppositions to TRO

# I.

## PROCEDURAL HISTORY

On February 5, 2008, Plaintiff, as class representative, commenced this action for a Permanent Injunction enjoining California Department of Education ("CDE") from contracting with Office of Administrative Hearings, Special Education Division ("OAH") for the provision of Mediation and Due Process Hearings, pursuant to IDEA, to special education students and their parents throughout the state of California. The gravaman of the class action is that CDE allowed OAH to violate IDEA and related special education federal and state statutes and regulations, in violation of the Interagency Agreement No. 4427, including that, "OAH agrees to provide such hearing and mediation services pursuant to and in accordance with the requirements of federal and stats laws and regulations, including but not limited to services specifically detailed in this agreement." (Ex. 2 to Complaint, Interagency Agreement, Ex. A- Scope of Work, paragraph A-General Scope). Included in the "services specifically detailed in this agreement" is that "OAH, with stakeholder input and input will provide 80 hours specialized training annually in special education law and issues, mediation techniques, pre-hearing process and current pedagogical issues." (Ex. 2 to Complaint, Interagency Agreement, Ex. A- Scope of Work, paragraph C-3, Training). The Interagency Agreement does not contain an automatic renewal clause. The Interagency Agreement will expire on by its own terms on June 30, 2008 (Ex. 2 to Complaint, Interagency Agreement, Ex. A- page 2).

On February 20, 2008, Plaintiff applied for a Temporary Restraining Order enjoining CDE from re-contracting the Interagency Agreement with OAH for the term July 1, 2008-June 30, 2011. On March 7, 2008 OAH filed a Motion for Intervention. CDE's response to Plaintiff's Complaint was due on March 17. 2008. Although CDE threatened to file a [late] 12 (b)(6) motion, on March 25, 2008, CDE filed an Answer to Complaint.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

On April 7, 2008, OAH's Motion for Intervention was granted. Plaintiff, in this action, seeks only to enjoin CDE prospectively, and seeks no relief against OAH, such as immediate termination of the Interagency Agreement. If Plaintiff intended to seek recourse against CDE and OAH, this would not have taken place in federal court, it would have been through an audit request through the State of California.

Plaintiff, as representative of a purported class of disabled students and their parents who have exhausted the administrative Due Process remedy, and received less than complete relief from OAH, seeks the TRO as a last resort, after, through counsel and parents, imploring CDE since summer, 2007 to find an entity other than OAH to contract with beginning July 1, 2008 (See accompanying Declaration of Dayon Higgins, particularly concerning the September 11, 2007 meeting with CDE). CDE and OAH have both opposed the TRO, coincidentally on many of the same grounds, however their arguments are flawed, and their concerted actions constitute misuse of public power for personal gain. This has had, and will continue to have a negative affect on government performance, and on the well-being of disabled individuals in the State of California.

## II.

## ARGUMENT

### 1.    OAH's and CDE's Arguments in their Oppositions Are Flawed.

#### A. Status Quo

CDE in its Opposition incorrectly argues that in seeking the TRO, Plaintiff is trying to change the status quo, rather than maintain it. It is very clear in Plaintiff's Application for TRO, and reiterated here, that Plaintiff's reasoning for the TRO is not to oust OAH of the current Interagency Agreement, but to allow the current Interagency Agreement to expire on June 30, 2008 without renewing it with OAH to afford opportunities for investigation and due diligence which may result in an

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

award of the Interagency Agreement to a more appropriate entity. *"Status quo ante litem"* means the last uncontested status that preceded the pending controversy. *Tanner Motor Livery, Ltd. V. Avis,* 316 F. 2d 804, 809 (9th Cir. 1963). That is precisely the status Plaintiff wishes to maintain.

## B.    Civil Service Mandate

Likewise, CDE's Opposition incorrectly states that CDE must contract with a governmental agency. "...even if CDE wanted to contract with a non-governmental entity such as SEHO, the state's constitutional provision would prohibit such an agreement." (CDE Opp. p. 8, ll. 15-16). This is contradicted by CDE's own public notice on its webpage dated April 20, 2008, (Ex. 1 to accompanying Declaration of Ellen Dowd) that, "Requires the CDE to enter into an interagency agreement with another state agency or contract with a nonprofit organization or entity to conduct mediation conferences and due process hearings." (emphasis added).

CDE also claims in its Opposition that, "...there is no alternative entity that could replace OAH at the moment."(CDE Opp. p. 12, ll. 20-21 (Emphasis added). This isn't a defense—it's a default position. At the moment is now, April 21, 2008. The contract expires on June 30, 2008. Although attempts were made to determine what, if any, steps were being taken since the September 11, 2007 meeting at which CDE was urged to place the July 1, 2008 contract out for bid the Public Records Act Request (Ex. 2 to Declaration of Ellen Dowd) were refused on the grounds of attorney-client privilege. (Ex. 3 to Declaration of Ellen Dowd), now, for the first time in their respective Oppositions through the declarations of Bellotti and Laba it is disclosed that CDE and OAH have been in negotiations for the July 1, 2008 contract. Bellotti's Declaration on behalf of CDE, paragraph 7, states, "To ensure continued compliance with federal laws and regulations, CDE and the Office of Administrative Hearings (OAH) are in the process of negotiating

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

an interagency agreement that would become operative commencing on the close of business June 30, 2008, under which OAH would provide all mediation and due process hearing  for all California's special education students and their parents.  It is my belief that CDE's agreement with OAH will ensure that as of July 1, 2008, California will have in place a system to provide special education due process hearings and mediations as required by federal laws and regulations."  Make no mistake, having something "in place" to comply with the federal law that mandates CDE have a system "in place" is very different from having a system in place that does and will comply with the substance of federal law protecting the rights of disabled students and their parents.  This is another "default position" of CDE.

Bellotti's Declaration goes on to state, in essence, that he knows of no other entity "in California or elsewhere" [?] qualified and with the necessary resources to undertake the due process duties, and that OAH must get the contract in order to avoid interruption of said due process duties.  "It is my belief that if there is any interruption with providing special education parents timely access to due process hearings and mediations, California will be out of compliance with federal law and regulations."  (Bellotti Dec. pp. 3-4., ll. 27-1).  This, again, is an attempt to justify granting the contract to OAH by default.  CDE should have taken this matter seriously beginning in the summer of 2007, and it would have avoided this dilemma.

Additionally, as will be set forth in more detail below in the Section F, below, the word "timely" is ironic, as the federal regulations mandate that each and every due process hearing decision be final and mailed to the parties within a 45-day timeline from the filing of the Due Process Hearing 20 U.S.C § 1416(a)(3)(B), 34 C.F.R § 300.511(c) and Cal. Ed. Code §56501.5(d).  OAH's and CDE's concerted violation of this rule was raised in Declaration of Ellen Dowd in Support

4

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

of Plaintiff's Application for TRO, and was not addressed by either CDE or OAH in their Oppositions.

**C.    SEHO Is Irrelevant To this Action, Only OAH's Performance Is Relevant**

In their Oppositions, both CDE and OAH defend OAH's actions by detailed comparison to its predecessor, SEHO. There is no application by Plaintiff to have the contract restored to SEHO, therefore, such analysis is irrelevant. Moreover, OAH selectively chose specific quarters for comparison of the performance of SEHO and OAH. Even, assuming *arguendo*, that SEHO's win-loss record was as dismal for special education students as OAH's record, two wrongs don't make a right. Is OAH is implying that SEHO got away with violating IDEA, so OAH should be allowed to?

In OAH's Opposition it is clear that OAH is comfortable with their performance in which OAH claims students completely prevail about 10% of the time. In response to the irreparable injury continuing to students, OAH's argument (OAH Opp. p. 9, ll. 1-2), that, "...it is pure speculation to suggest that any supposed past percentage would hold in the future," would give hope that students would fare better in the future. Unfortunately, OAH was waging this argument against Plaintiff's calculations from July 1, 2005 through September 30, 2007, that students were only prevailing about 10% of the time.[1] As of the Quarterly Report issued January 30, 2008 (Ex. 15 to Declaration of Laba), which in addition to the second quarter statistics (October 1, 2007-December 31, 2007), it amended the first quarter statistics (July 1, 2007- September 30, 2007), and computed the startling statistic that in the combined first and second quarters, July 1, 2007-January 30,

---

[1] In its Answer to Complaint, CDE stated repeatedly that the data in the Quarterly Reports speak for themselves. After getting rid of the misleading words, 'Students had a successful outcome __%", and focusing on the actual amount of time students obtained complete relief sought, if averages 10%.

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

2008, students completely prevailed in <u>8%</u> of Due Process Decisions (Dec. Laba Ex. 15, p. 320). Obviously past performance is not indicative of future performance if the data on past performance is defective.

### D.    OAH's Performance in Mediations Is Irrelevant

Here, the identified purported class members are students and parents who have been through Due Process culminating in a Decision which grants them less than complete relief. Students and parents who go to mediation are not aggrieved purported members of this class.

In the Declaration of Sherianne Laba, she details the outstanding job the OAH ALJs are doing in mediations. ALJs who act as mediators do not write Decisions. Mediations are voluntary. If a party to a mediation believes it would be a waste of time because the ALJ doesn't understand the law, then that party can decline mediation. If the OAH ALJs want to continue doing special education mediations, this would be acceptable, as long as they are not continuing to conduct due process hearings and issuing decisions.

### E.    Plaintiff Has Already Exhausted Administrative Remedies

OAH alleges in its Opposition that Plaintiff need exhaust administrative remedies further by awaiting the ruling of the federal court in the appeal of Plaintiff's Due Process Decision. An appeal in federal court is not an "administrative remedy," and the relief sought in Plaintiff's appeal and the relief sought herein are completely different. A determination of Plaintiff's appeal will not be determinative of the instant action. However, the vehicle of a class action for the relief of permanent injunction was chosen specifically because if Plaintiff's appeal is settled or won, and, if Plaintiff can no longer represent the purported class, then another aggrieved Plaintiff could be substituted.

The exhaustive steps taken by Plaintiff's counsel imploring CDE to take administrative action are detailed in the Complaint, as well as in Declarations of

6    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

Tania Whitleather to Plaintiff's Application for TRO and the accompanying Declaration hereto of Dayon Higgins. Plaintiff has taken all reasonable and necessary steps to avoid the filing of this action, to no avail.

**F.  The United States Department of Education Should Intervene or Otherwise Act To Prevent the Ongoing Harm Caused by OAH and CDE**

In its Opposition, CDE correctly states that there is a mechanism by which the U.S. Department of Education can intercede pursuant to its regulatory and enforcement powers, (CDE Opp. p. 13, ll. 4-6). However, in order for the U. S. Department of Education, and, in particular, the U.S. Office of Special Education Programs (OSEP) to investigate, accurate data showing non-compliance must be imparted. During the week of October 2, 2006, OSEP conducted a verification visit to CDE to get an understanding of CDE's "systems for general supervision, data collection and reporting..." In OSEP's confirmatory letter concerning the verification visit (Ex. 4 to Declaration of Ellen Dowd, p. 7), OSEP found OAH and CDE were out of compliance with the Part B Regulations in 34 C.F.R. § 300.511(a) and (c), which were re-designated under the reauthorization of IDEA as 34 C.F.R. § 300.515(a) and (c). Under these Part B sections, which, are among the federal funding requirements, as well as 20 U.S.C § 1415(g)(2) OAH must:

> Upon completion of the due process hearing, the Administrative Law Judge shall prepare a written, reasoned decision. The decision shall include reason(s) for any nonpublic school placement or agency services or reimbursement for any nonpublic school placement or agency services. The decision shall be mailed to all parties within 45 days from receipt of the request for a hearing.

With regard to any extensions of the 45-day timeline, IDEA is explicit that such extensions may only be requested by one of the parties to the due process, not by the ALJ. "Either party to a hearing may request an extension from the Administrative Law Judge, which request shall be granted upon a showing of good

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points and Authorities Reply to CDE's and OAH's Oppositions to TRO

cause. Any extension shall extend the time for rendering a final administrative decision for a period only equal to the length of the extension." 34 C.F.R. § 300.511(c). In October, 2006 OSEP found OAH and CDE to be out of compliance with this regulation.

On February 2, 2007, OSEP notified CDE in a letter that by February 1, 2008, CDE must submit data demonstrating compliance with this regulation. (Ex. 4 to Declaration of Ellen Dowd, p. 7). However, in the February 1, 2008 Annual Performance Report by CDE to the U.S. Department of Education, on page 136 CDE states, "100 percent of due process requests were fully adjudicated within the 45-day timeline or a timeline that was properly extended by the hearing officer at the request of a party." (Ex. 5 to Declaration of Ellen Dowd p. 4).

However, the very Decision that is the catalyst for this action, rendered on November 20, 2007 (Ex. 1, pages 1-2 of Complaint, ftn. 1), states, "Because of the waiver of the resolution session period, the 45-day time limit for hearing and decision began to run the day after September 6, 2007 (Ed. Code §56501.5, subd. (d)). The parties stipulated to an extension of the deadline to give the ALJ sufficient time to review the evidence and written closing argument of the parties." This is an absolute violation of IDEA, and unlawfully extends the time in which students must wait to either obtain relief from OAH, or appeal to federal court. The statutory scheme envisions that if a party to a due process hearing requests an extension from the ALJ for good cause (unavailability of expert witness, previously-scheduled hearing, etc.), and the ALJ grants the extension, then the ALJ receives a corresponding extension of the 45 days for Decision. There is no provision for the ALJ to request a waiver or stipulation of extension of the statutory 45-days. However, in making its inaccurate statement in the February 1, 2008 report, CDE overlooks a new form created by OAH in which parties are

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

asked to stipulate to extend time for Decision (Ex. 6 to Declaration of Ellen Dowd). Parents who do not want to pressure or anger the ALJs must agree to these unlawful extensions under duress.

It is obvious that CDE and OAH are acting in concert to perpetuate unlawful activity that has caused irreparable harm, and will continue to cause irreparable harm if not stopped. Mary Hudler, the California Director of Special Education Division and the liaison to U.S. Department of Education, was just notified of the skewed data at the Advisory Commission on Special Education Meeting on March 20-21, 2008 (See Declaration of Dayon Higgins). There is currently a meeting scheduled with Ms. Hudler and parents and advocates on May 23, 2008. The U.S. Department of Education has been lied to; but for such lies, may very well have imposed the sanctions against CDE suggested in OSEP's February 2, 2007 letter (Ex. 4 to Dowd Declaration). It is imperative that the status quo be maintained until the U.S. Department of Education has an opportunity to either intervene in this action, or take other actions against CDE.

## 2.    Irreparable Harm/Likelihood of Success on the Merits

Again, CDE and OAH advance arguments in their Oppositions that are contrary to law. All parties agree that there is a compelling public interest involved in this case. Although OAH argues that the Equal Protection Clause does not play a role because disabled students are not a "suspect" class entitled to strict scrutiny (OAH Opp. p. 13-14, ll. 20-3), OAH overlooks the balancing of interests of the parties in favor of the protected class. It is undisputed that disabled students are a protected class. The mandate for the IDEA arose after the landmark decision of *Brown v. Board of Education*. Parents of disabled children started to seek redress in court. Two District Court cases, *Pennsylvania Association for Retarded Children (PARC) v. Pennsylvania* (PA, 1971), and *Mills v. Board of Education,* (DC, 1972) provided the foundation for establishing the right of children with

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

disabilities to a free, appropriate public education in the least restrictive environment by interpreting the equal protection guarantee of the 14th Amendment.

As OAH cited in its Opposition, IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education.. designed to meet their unique needs and prepare them for further education, employment and independent living." *Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 502 F. 3d 811,817-18 (9th Cir. 2007). Therefore, part of the mandate of IDEA is to prepare disabled students to enter society as productive adults. This is effected by the provision of educational services—not money. No monetary damages are requested in this case, nor can any monetary damages be adequate to compensate the irreparable harm to disabled students. According to the accompanying declaration of Mary Struble, her son, C.S. became 18 during the pendancy of their dispute with the school district. Although C.S. is conserved, he could drop out of school at will. This would prevent him from receiving a diploma or an adequate education. As indicated in the declaration of Mary Struble, C.S. was out of school beginning in May, 2007, and has not been provided with a FAPE. He has been depressed, has self-doubts about returning to school and for his future, and has suffered irreparable harm by not having a Due Process Decision within the statutory timeline, and, then, by having the Decision unlawfully delegate compensatory education to the IEP Team.

Under these circumstances, as the federal government has statutory enforcement over OAH's and CDE's compliance with IDEA, it is generally presumed that where a statutory violation is clearly shown (establishing probability of success on the merits) "passage of the statute is itself an implied finding by Congress that violations will harm the public." *United States v. Nutri-cology, Inc.* 982 F. 2d 394, 398 (9th Cir. 1992).

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

In establishing likelihood of success on the merits, as stated in Plaintiff's Application For TRO, as the amount of harm increases, the requirement for success on the merits decreases. In the continuum, there is a balancing of hardships that must occur based upon the seriousness of this issue to the public. Plaintiff doesn't have to prove his case on the merits at this time. Certainly, with the degree of secrecy and deception that has resulted from CDE's contract with OAH[2] further discovery is necessary to completely prove Plaintiff's case.

Balancing of the relative hardships weighs heavily in granting the TRO to maintain the status quo of the contract expiring in June 30, 2008. This would allow the heretofore duped U.S. Department of Education to determine what action to take with regard to CDE, and it would also give CDE the opportunity to perform its over-due due diligence in locating other agencies or nonprofit entities who would be amenable to performing the duties being contracted. It appears from all of the information in the Oppositions and declarations thereto, that the bulk of the negotiations between OAH and CDE are completed. If, after reasonable attempts, CDE is unsuccessful in finding other appropriate contractors, and if the U.S. Department of Education doesn't intervene or otherwise act to disrupt the relationship between CDE and OAH concerning special education due process hearings, then the TRO can be vacated. It is guaranteed under this scenario that the status quo between CDE and OAH will continue until June 30, 2008. Therefore, absolutely no immediate harm will occur to CDE or OAH if the TRO is granted.

---

[2] Disturbingly, in Plaintiff's Opposition to Defendant's Ex Parte Extension of Time to File Defendant's Response to Plaintiff's Application for TRO and Exhibits thereto (Document 10 to docket) Plaintiff uncovered a February, 2008 attempt by CDE to make a rule change requiring ALJs to have not 80 hours training, but 20 hours training after the first year. After the commencement of this actions and Application for TRO, on February 29, 2008, CDE withdrew this proposed rule change. However, for the first time in OAH's Opposition and ALJ Laba's Declaration is it revealed that this change was actually effected in May, 2007, without any notice or public comment. (Laba Dec. to Opposition p. 2 ¶6).

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO

Interestingly, neither CDE nor OAH addressed the issue of a bond, as they must be very confident that Plaintiff's request for TRO will be denied. However, should this court balance the hardships and equities in favor of the TRO, then Plaintiff, again, respectfully requests that the bond requirement be minimal.

## IV

## CONCLUSION

Based upon the foregoing, Plaintiff's Application for TRO should be granted, and should be issues immediately.

Dated: April 21, 2008

Respectfully submitted,

Ellen Dowd, Attorney for
Plaintiff, C.S.

12

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to TRO