**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

C.S. by and through his Conservator, MARY STRUBLE, on behalf of himself and all others similarly situated,

Plaintiffs,

vs.

CALIFORNIA DEPARTMENT OF EDUCATION, et. al.,

Defendants.

CASE NO. 08-CV-0226 W (AJB)

**ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (Doc. No. 4)**

On February 5, 2008 Plaintiffs C.S., et. al. ("Plaintiffs") commenced this class action against Defendant California Department of Education ("Defendant" or "CDE") alleging IDEA Act, Supremacy Clause, and Equal Protection violations and seeking injunctive relief. (Doc. No. 1.) On February 19, 2008 Plaintiffs moved for a temporary restraining order ("TRO") to restrain Defendant CDE from contracting with the Office of Administrative Hearings. (Doc. No. 4.) Several briefing schedules and extensions followed. (Doc. Nos. 7, 12, 18.)

On April 8, 2008 the Court granted Defendant Ron Diedrich's, in his official capacity as director of chief administrative law judge of the state of California Office of Administrative Hearings ("Defendant" or "OAH"), motion to intervene as a Defendant in this action. (Doc. No. 35.) The Court now takes the application for temporary restraining order under submission without oral argument. See S.D. Cal. Civ. R.

7.1(d)(1). For the following reasons, the Court **DENIES** Plaintiffs' application for a temporary restraining order. (Doc. No. 4.)

## I. <u>BACKGROUND</u>

The Individuals with Disabilities Education Act ("IDEA") and implementing regulations provide procedural and substantive standards for educating students with disabilities. 20 U.S.C. § 1400. As a condition of receiving federal funds, states must establish procedures to ensure that special education students are receiving a free appropriate public education ("FAPE"). 20 U.S.C. § 1415(a). The parents of special education students may challenge the educational placement of their child by requesting an administrative "due process hearing" before an independent and impartial hearing officer. 20 U.S.C. § 1415(f).

Plaintiff C.S. is an eighteen year-old, conserved student who qualifies for special education under the Autism eligibility category. (*Compl.* ¶ 16.) Plaintiff alleges that he participated as a party in an administrative due process hearing, which was conducted in such a way as to deny him certain federal and constitutional rights. (*Id.* ¶ 10.)[1] Plaintiff C.S. brings this action on behalf of himself and all others similarly situated.

Defendant California Department of Education ("CDE") is a California agency tasked to administer the California education system. (*Id.* ¶ 25.) By receiving federal funds, IDEA mandates that CDE provide disabled students' parents with impartial administrative due process hearings. (*Id.*) Defendant CDE contracts with Defendant Office of Administrative Hearings ("OAH") to conduct these hearings. (*Id.* ¶ 26.) Under the contract, or interagency agreement, OAH must provide Administrative Law Judges ("ALJs") with certain knowledge and training in special education law. (*Id.* ¶ 10.) The contract also requires that CDE oversee the ALJ training and implementation

---

[1]The Court finds it important to note that Plaintiff C.S. is currently appealing the result of his administrative due process hearing before Judge Larry Alan Burns in the Southern District of California. <u>See</u> <u>Struble v. Fallbrook Union High School District</u>, No. 07cv2328 LAB (CAB) (S.D.Cal. filed Dec. 13, 2007). As of the date of this order, discovery is ongoing and Judge Burns has not rendered a final decision.

of special education law.  (*Id.*)

On February 5, 2008 Plaintiffs filed suit against Defendant CDE, alleging that CDE failed to adequately supervise OAH's administrative hearing process.  (Doc. No. 1.)  The gist of Plaintiffs' complaint is that CDE's contractual relationship with OAH is unlawful because the ALJs are neither appropriately trained nor following or implementing relevant federal law.  (*Id.* ¶ 3.)  Plaintiffs allege that C.S., and all others similarly situated, have been denied due process as a result of poor ALJ performance. (*Id.* ¶ 17.)

On February 19, 2008 Plaintiffs moved for a temporary restraining order, arguing that CDE should be enjoined from renewing the current interagency contract with OAH that expires on July 1, 2008.  (Doc. No. 4.)  On March 7, 2008 Ron Diedrich, in his official capacity as Director and Chief Administrative Law Judge of the State of California Office of Administrative Hearings ("OAH"), moved for an order permitting OAH to intervene as a defendant in this action.  (Doc. No. 14.)  Per OAH's request, the Court established a briefing schedule with the goal of granting or denying the intervenor motion before CDE's TRO opposition was due.  (Doc. No. 18.)  Among other things, the Court ordered that Plaintiffs oppose OAH's motion by March 24, 2008, an amount of time consistent with the time allotted to oppose a noticed motion under the Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(1), (2).

On March 24, 2008 Plaintiffs opposed OAH's motion to intervene. (Doc. No. 21.)  The same day, Plaintiff moved *ex parte* for an Order to Show Cause why Defendant CDE should not be ordered to file an answer to Plaintiffs' complaint.  (Doc. No. 24.) The Court denied Plaintiffs' motion as moot when CDE filed an answer the next day, on March 25, 2008. (Doc. No. 26.)  On April 8, 2008 the Court granted OAH's motion to intervene as a Defendant, and OAH was added to the case.  (Doc. No. 35.)

On April 14, 2008 both CDE and OAH opposed Plaintiffs' application for TRO. (Doc. Nos. 36, 37.)  On April 22, 2008 Plaintiffs filed their Reply.  (Doc. No. 41.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure outline the procedures a federal court must follow when deciding whether to grant a temporary restraining order. See Fed. R. Civ. P. 65. The standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction. Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996); Franklin v. Scribner, Civil No. 07-0438 BTM (LSP), 2007 WL 1491100, at *3 (S.D. Cal. May 21, 2007). The Ninth Circuit has prescribed the following equitable criteria for determining whether to grant injunctive relief:

> (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief. The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits... [T]he required degree of irreparable harm increases as the probability of success decreases.

Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., 367 F.3d 1108, 1111 (9th Cir. 2004) (quoting Miller ex. rel. N.L.R.B. v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994)). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974); accord L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980); Del Toro-Chacon v. Chertoff, 431 F. Supp. 2d 1135, 1139-40 (W.D. Wash. 2006).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Additionally, where the moving

party seeks to enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must meet a heightened standard establishing both irreparable injury and a probability of success on the merits. Pinnacle Armor, Inc. v. United States, No. CV F 07-1655 LJO DLB, 2008 WL 108969, at *5 (E.D.Cal. Jan. 7, 2008) (citing NAACP, Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995)).

## III. DISCUSSION

### A. Plaintiffs Have Not Shown a Likelihood of Success On The Merits

Plaintiffs argue that Defendants are violating the IDEA and the Supremacy and Equal Protection clauses of the United States Constitution. (*Pls.' TRO.* 13–15.) Specifically, Plaintiffs argue that Defendants' inability and unwillingness to properly train ALJs violates the standards set forth in IDEA, a federal law the preempts any state regulation. (*Id.* 13–14.) Additionally, Plaintiffs argue an equal protection violation because OAH and CDE interpret IDEA as to favor school districts and not students. (*Id.* 14–15.)

CDE, on the other hand, argues that the ALJs are qualified and that their qualifications meet relevant federal standards. (*CDE Opp'n* 6–8.) Additionally, CDE contends that there is no equal protection violation because under the current interagency agreement, students and school districts are "winning" and "losing" at about the same rate as when due process hearings were conducted by the Special Education Hearing Office ("SEHO").[2] (*Id.* 6.)

OAH argues that Defendants have met all of IDEA's safeguards, and have even

[2]Plaintiffs, in their Reply, argue that "SEHO is irrelevant to his action, only OAH's performance is relevant." (*Pls.' Reply* 5–6.) The Court wonders, then, how this argument squares with the analysis and allegations in Plaintiffs' Complaint, where an entire section is devoted to a "Comparison of Due Process Hearing Data Under OAH and Under its Predecessor, Special Education Hearing Office 'SEHO.'" (*Compl.* ¶¶ 45–53.) Even in their motion for TRO, Plaintiffs argue that they are being irreparably harmed because they are only prevailing 10% of the time in due process hearings, implying that Plaintiffs enjoyed greater rights when SEHO administered due process hearings and students allegedly succeeded 50% of the time. (*Pls.' TRO* 9–10; *Compl.* ¶ 46.)

exceeded them when it comes to hiring and training ALJs. (*OAH's Opp'n* 12.) Moreover, OAH argues that because laws involving disabled students do not trigger "strict scrutiny" analysis, Plaintiffs have not met their burden to show that Defendants have acted irrationally in implementing relevant laws. (*Id.* 13–14.)

The IDEA is Spending Clause legislation, and courts should be wary of reading unwritten substantive standards into the Act. See Bd. of Educ. v. Rowley, 458 U.S. 176, 190, 190 n.11 (1982) ("We would be less than faithful... if in this case we were to disregard the statutory language and legislative history... by concluding that Congress had imposed upon the States a burden of unspecified proportions and weight, to be revealed only through case-by-case adjudication in the courts."). If Congress intends to impose a condition on the grant of federal monies, it must do so unambiguously. Barnes v. Gorman, 536 U.S. 181, 186 (2002).

Both Plaintiffs and Defendants agree that the relevant section under IDEA is 20 U.S.C. § 1415(f)(3)(A), which states:

> (3) Limitations on hearing.
> (A) Person conducting hearing. A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum--
> (i) not be--
> (I) an employee of the State educational agency or the local educational agency involved in the education or care of the child; or
> (II) a person having a personal or professional interest that conflicts with the person's objectivity in the hearing;
> (ii) possess knowledge of, and the ability to understand, the provisions of this title [20 USCS §§ 1400 et seq.], Federal and State regulations pertaining to this title [20 USCS §§ 1400 et seq.], and legal interpretations of this title [20 USCS §§ 1400 et seq.] by Federal and State courts;
> (iii) possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and
> (iv) possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.[3]

---

[3]Elsewhere, Plaintiffs mention 34 C.F.R. § 300.515(a) and (c), which requires ALJs to prepare and mail a written decision within forty-five days of a due process hearing. Also, Plaintiffs allege that Defendants have failed to provide parents a list of free or reduced cost-representation in violation of California Education Code § 56502(h). Regardless of whether Plaintiffs could even get the relief they request—enjoining a new CDE-OAH contract—to

The Equal Protection clause of the Fourteenth Amendment commands that all persons similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982). Absent any classification of a suspect or quasi-suspect class, then legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985). Thus, a state law challenged on Equal Protection grounds must be upheld if it has any plausible relationship to a legitimate government purpose. Nordlinger v. Hahn, 505 U.S. 1, 11 (1992).

Plaintiffs have not shown that they are likely to succeed on the merits of this case. Although Plaintiffs allege, over many pages, various transgressions committed by CDE, OAH, and the ALJs, they have not tied any of these alleged improprieties to the violation of any specific federal law. The IDEA generally requires that the hearing officer not be an employee of a state or local educational agency, not have a conflict of interest, possess sufficient knowledge of special education law, and possess written skills sufficient to render decisions in due process hearings. See 20 U.S.C. § 1415(f)(3)(A). Simply, Plaintiffs have not offered sufficient evidence suggesting that ALJs are employed by state or local educational agencies, are conflicted, do not possess knowledge of special education law, and do not possess the written skills sufficient to render decisions in due process hearings. To the extent Plaintiffs allege that ALJs are performing their jobs unsatisfactorily, Plaintiffs' opinions and anecdotal observations are not indicative of a violation of general Spending Clause legislation sufficient to support an extraordinary TRO remedy.

Plaintiffs' specific focus, instead, is on the particulars of the CDE-OAH contract, which, *inter alia*, requires that ALJs receive certain training and establishes procedures for enacting new rules. (*Pls.' TRO* 3–7.) For example, Plaintiffs argue that OAH has

---

remedy these allegations of relatively minor procedural violations, the Court finds that Plaintiffs have not produced sufficient evidence to support a likelihood of success on the merits or to show irreparable injury or to suggest that the harm from these minor violations outweighs the harm from enjoining a new CDE-OAH contract.

not given ALJs eighty hours of proper special education training; Defendants respond with declarations stating that, indeed, the ALJs have received such training. (Compare *Pls.' TRO* 3–5 with *OAH Opp'n* 12.) Regardless of whether the training occurred, the eighty-hour requirement is not federal law—it is an obligation between two contracting parties. Nowhere have Plaintiffs argued that they have standing to challenge the fulfillment or continuance of these contractual obligations. See Fowler v. United States, 258 F. Supp. 638, 644 (C.D. Cal. 1966) (stating that a TRO will not ordinarily be granted if any debate or doubts are created by the record as to the merits of the claimed relief or power of the court to act).

Nor have Plaintiffs articulated a cognizable theory showing that Defendants likely violated the Equal Protection clause. To the extent Plaintiffs intend to show that Defendants implement IDEA in a way that classifies or distinguishes special education students, Plaintiffs have not shown that these classifications are irrational.

On the whole, Plaintiffs have demonstrated a sincere desire to improve the lot of California's special education students. Unfortunately, although Plaintiffs may personally feel that California is not doing enough to provide a FAPE to those with exceptional needs, Plaintiffs have not shown that they are likely to succeed in proving that Defendants violated the Constitution or any of IDEA's generalized provisions. See Barnes v. Gorman, 536 U.S. 181, 186 (2002) (stating that if Congress intends to impose a condition on the grant of federal monies, it must do so unambiguously). Without some proof that Defendants actually violated a specific federal law, the Court is powerless to act. Accordingly, because much of Plaintiffs' argument contains complaints unmoored from federal requirements, Plaintiffs have failed to make the clear showing necessary to justify the drastic remedy of a TRO.[4]

---

[4]For instance, Plaintiffs' motion frets about old due process hearings, (*Pls.' TRO* 4,); correspondence between Plaintiffs' counsel and the United States Department of Education (*Id.* 5,); discussions between Plaintiffs' counsel and CDE (*Id.* 5–7,); funding requests regarding OAH (*Id.*,); the meaning of "status quo," (*Pls.' Reply* 2–3,); OAH's performance in mediation, (*Id.* 6,); and Plaintiffs' Reply apparently requests that the United States Department of Education intervene in this action. (*Id.* 7–8.) None of these diversions are relevant to what

**B. Plaintiffs Have Not Shown the Possibility of Irreparable Injury**

Plaintiffs argue that they have suffered irreparable harm because special education students prevail only 10% of the time in due process hearings. (*Pls.' TRO* 9–10.) Additionally, Plaintiff C.S. argues that he has suffered irreparable harm because Fallbrook Union High School never advised him or his parents that he may not get a high school diploma. (*Id.*) Others similarly situated are allegedly at home suffering "frustration, low self-esteem and school phobia." (*Id.* 11.) Likewise, Plaintiffs allege that parents no longer feel safe enforcing their children's rights. (*Id.*)

Both CDE and OAH, in response, contend that Plaintiffs' irreparable injury allegations are unsupported by statistics or evidence. (*CDE Opp'n* 10–11.) Moreover, Defendants argue, Plaintiffs have an adequate remedy at law. (*Id.* 11.)

A preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999). In addition to showing irreparable harm, a party must also show the absence of an adequate remedy at law. O'Shea v. Littleton, 441 U.S. 488, 502 (1974). Under the IDEA, Parents dissatisfied by an ALJ's due process hearing decision may appeal the decision by filing a civil action in federal or state court. 20 U.S.C. § 1415(e)(2).

Though unclear, Plaintiffs appear to complain that if OAH and CDE are not prevented from contracting, they will suffer several alleged irreparable harms: (1) low success rates in due process hearings; (2) Fallbrook High School's failure to provide Plaintiff C.S. with a FAPE; (3) other school districts denying similarly situated Plaintiffs a FAPE; (4) ongoing feelings of frustration and low self-esteem by all Plaintiffs; and (5) injury to parents and students disenchanted by the process of pursuing due process violations.

---

Plaintiffs must show to invoke federal judicial relief: namely, that particular parties in the lawsuit violated some sort of federal or state law.

Unfortunately for Plaintiffs, all of the harm they allege is either unsupported by any significant evidence or may by remedied by law. First, Plaintiffs' discontent over the allegedly too-low student due process hearing success rate is strongly countered by Defendants' affidavits showing similar success rates under SEHO's administration.[5] Regardless, any "win-loss" statistics are not probative as to any irreparable harm—whether a student prevails is weighed on a host of individual factors, and the decision is appealable.

More importantly, Plaintiff C.S. is already exercising his statutory right to appeal his due process hearing decision before Judge Burns in this very District. See Struble v. Fallbrook Union High School District, No. 07-cv-2328 LAB (CAB) (S.D.Cal. filed Dec. 13, 2007). Irreparable injury does not exist where Plaintiff C.S. has an adequate remedy at law; indeed, determining whether the State of California, Defendants, or Fallbrook High School irreparably harmed or will harm C.S. could conflict with Judge Burns' ability to render a decision.[6] In other words, regardless of whether the CDE-OAH contract is enjoined by this Court, Plaintiff C.S. may receive the relief he seeks. Additionally, as OAH has already rendered Plaintiff C.S.'s due process decision, it is unclear how enjoining any *new* CDE-OAH contract, to take effect in July 2008, would remedy or prevent any alleged irreparable injury to him. Identical concerns apply to all "similarly situated" Plaintiffs who already enjoy a right to appeal.

Concerning parents' and students' feelings of low self-esteem, depression, and mistrust of the administrative hearing process, Plaintiffs have only provided self-serving declarations in their Reply to support these allegations. Moreover, Plaintiffs have not shown that these alleged injuries are recognized as irreparable harm, or that enjoining

---

[5]The Court surmises that this is relevant to the extent that Plaintiffs seek to compare the 10% success rate to what is presumably (for them) the more palatable 50% success rate under SEHO.

[6]Plaintiffs' argument that "this District Court appeal will take months, if not a year, to resolve, and, then may be the subject of a 9th [sic] Circuit appeal..." is unpersuasive. The fact remains that Plaintiff C.S. enjoys a remedy at law for any injury that Defendants allegedly have inflicted upon him.

any *new* OAH-CDE contract will do anything to rectify or prevent these injuries—if anything, restraining a new contract will only help the speculative class of people yet to challenge a FAPE in a due process hearing.[7]

Once again, Plaintiffs opine about how California allegedly mismanages its administrative procedures and the parental and student impact thereon. Unfortunately, that is not enough to demonstrate the possibility of irreparable injury. Because every injury Plaintiffs complain of is unsupported by evidence or may be properly appealed by statute, the Court finds that Plaintiffs have not met their burden of showing a possibility of irreparable harm.

### C. <u>The Balance of Hardships Does Not Favor Either Party</u>

Plaintiffs argue that, under the current structure, students and parents are constantly harmed because they may be forced to press an annual due process claim and subject themselves to the same inexperienced and undertrained ALJs. (*Pls.' TRO* 12–13.) Plaintiffs then pose a serious of rhetorical questions apparently designed to show that neither Defendant would be harmed by enjoining contract negotiations. (*Id.*)

CDE contends, in response, that not having a contract in place could jeopardize the entire procedure for hosting due process hearings for hundreds of thousands of California special education students. (*CDE Opp'n* 12.) CDE also alleges that because no other agency exists to administer the due process system, California risks violating a federal funding condition if the contract is not signed. (*Id.* 12–13.)

OAH argues that Plaintiff C.S., currently appealing his individual decision, is not currently suffering hardship. (*OAH Opp'n* 16.) By contrast, OAH contends, enjoining the CDE-OAH contract would leave California special education students without any dispute resolution process. (*Id.* 16.)

Plaintiffs' hardship claims must be tempered with the fact that they are entitled

---

[7]The Court also assumes that a district court may remand cases to ALJs after a due process appeal, but Plaintiffs have not shown that the risk of injury by a new CDE-OAH contract on remand is anything more than speculative.

to a statutory right of appeal before a tribunal unaffiliated with CDE or OAH; indeed, Plaintiff C.S. is currently pursuing his appeal in this very District. Without any injunction, it is entirely possible that Plaintiff C.S. will eventually obtain the relief he seeks. Any argument that Plaintiffs might have to pursue a claim every year is entirely speculative and unsupported by any evidence in the record.

On the other hand, Defendants have posed credible arguments on behalf of all special education students in California. For instance, Defendants argue that not having an interagency agreement in place could leave *every* California special education student without the opportunity to pursue a due process claim—including, presumably, members of Plaintiffs' class. Furthermore, Defendants present evidence that CDE risks losing federal funding if no due process administration system is in place after June 30, 2008. (*Bellotti Decl*. Ex. A.)

Given the above, the Court cannot say that the balance of hardships weighs in Plaintiffs' favor, especially when Plaintiff C.S. is in the midst of his own appeal and it is unclear how enjoining any *new* contract will remedy any harm Plaintiffs have already suffered. Conversely, all of California's special education students may suffer, and CDE could lose significant federal funding, if this Court enjoins the CDE-OAH contract.

Given the nature of this suit, any "public interest" analysis closely resembles the balance of hardships analysis. Because Plaintiffs have not met their burden under the first three prongs of the TRO test, the Court declines to make a preliminary decision about where the public interest lies. At this point, it suffices to say that the public has a strong interest in both providing qualified ALJs and ensuring that California's special education system remains a functioning whole.

///

## IV. CONCLUSION

Plaintiffs have not shown a probability of success on the merits and irreparable injury needed for the issuance of a temporary or preliminary order restraining OAH and

CDE from contracting with each other. The core of Plaintiffs' problem is an inability to show that Defendants' conduct actually violated federal law and that Plaintiffs would be irreparably harmed if the Court failed to enjoin any new contract. Combined with serious questions over standing and the risk that CDE loses federal funding, the Court finds that Plaintiffs have not shown that they are deserving of an order at this time enjoining any contract or negotiations between OAH and CDE. Accordingly, the Court **DENIES** Plaintiffs' motion for a temporary restraining order. (Doc. No. 4.)

**IT IS SO ORDERED.**

DATED: April 30, 2008

Hon. Thomas J. Whelan
United States District Judge