MARSHA A. BEDWELL, State Bar No. 094860
General Counsel
AMY BISSON HOLLOWAY, State Bar No. 163731
Assistant General Counsel
GABRIEL C. VIVAS, State Bar No. 092434
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, CA 95814
Telephone:  (916) 319-0860
Facsimile:   (916) 319-0155
gvivas@cde.ca.gov

Attorneys for Defendant California Department of Education

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, et al.,<br><br>Plaintiff,<br>v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>Defendants. | Case No. **08-CV-0226 W (AJB)**<br><br>**DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S OPPOSITION TO PLAINTIFFS' REQUEST FOR RECONSIDERATION** |

## INTRODUCTION

Defendant, California Department of Education (CDE), submits this opposition in response to plaintiffs' request for reconsideration of this Court's April 30, 2008 order denying plaintiffs' request for a Temporary Restraining Order (TRO).  Plaintiff seeks reconsideration on the grounds that there is newly discovered evidence. As shown below, plaintiffs' request is not only meritless, it is frivolous because there is no factual or legal support for the request.

# I.

## PLAINTIFFS' MOTION FOR RECONSIDERATION SHOULD BE DENIED

### A.    Legal Standard for Reconsideration

In applicable part, this Court's Chamber's Rules limit motions based on newly discovered evidence to the following circumstances: "Motions for reconsideration are disfavored unless a party shows that there is new evidence, a change in controlling law, or establishes that the Court committed clear error in its earlier ruling."

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. [Citation omitted]. There may also be other, highly unusual, circumstances warranting reconsideration." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.* 5 F.3d 1255, 1263 (9th Cir. 1993). Rule 60 of the Federal Rules of Civil Procedure defines "newly discovered evidence" as evidence that "with reasonable diligence, could not have been discovered in time to move for a new trial …" FED. R. CIV. P. 60(b)(2).

To succeed in a motion based upon newly discovered evidence, "the moving party must establish that the evidence was such that it could not have been discovered by the exercise of diligence in time to be presented in the original proceedings and that the evidence was not merely cumulative or tending to impeach or contradict a witness." *Phillips v. Crown Central Petroleum Corp.,* 395 F. Supp. 735, 759 (D.C. Md. 1975).

A party who the claims to have newly discovered evidence that was available prior to a ruling but failed to bring it forward is not allowed reconsideration based on that evidence. "The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). "Obviously, evidence that was available to the moving party prior to entry of the judgment is not 'newly discovered' evidence within the meaning of Rule 60(b)." *McIntyre-Handy v. APAC Customer Services, Inc.*, 2006 WL 1771048, (E.D. Va. 2006).

In *Phillips* the newly-discovered evidence resulted from a deposition taken in other litigation after the trial in that case was concluded. When a witness testified for plaintiff in the *Phillips* case, counsel for the defendant had in their possession a copy of an affidavit of the witness indicating the nature of his testimony. It does not appear that the witness' deposition was taken in the *Phillips* case. There was, however, no reason shown why that could not have been done before he testified at the *Phillips* trial. The evidence claimed to be "newly discovered" was in existence at the time of the trial in the *Phillips* case and could have been discovered by the exercise of due diligence by defendant's attorneys. *Phillips v. Crown Central Petroleum Corp.*, 395 F. Supp. At 759.

### B.     Plaintiffs' "New" Evidence Is Neither New Nor Justifies Reconsideration

#### 1.     Counsel's request for documents from OAH was for information that had existed since 2005.

What is needed is some background as to what documents are "new". There is no explanation anywhere in plaintiffs' request for reconsideration for why plaintiffs chose not to make an earlier request for documents. In Paragraph 6 of her declaration in support of the motion for reconsideration, plaintiffs' counsel asserts that: "New facts, that were not extant a the time of Plaintiff's Application or Plaintiff's Reply now exist, which support the severity of the harm to disabled students, as well as give rise to additional authority in support of the Temporary Restraining Order."

In Paragraphs 9 through 11, counsel tells of her failure to obtain records from OAH after she filed a Public Records Act[1] then concludes, at Paragraph 12, that her failure to obtain those documents means "there may be many more documents generated by OAH similar to exhibit "B" hereto." [*sic.*]. Counsel concludes that there are "many more documents generated by OAH similar to exhibit 'B'" (Par. 12) (counsel's statement implicitly alleges that Exhibit B is evidence of illegal conduct). Counsel's implied conclusion, however, is wildly speculative and is, at best, support for the proposition that there are many documents that evince that hearings have been continued, including hearings

---

[1] Cal. Govt. Code § 6252, et.seq.

extended upon stipulation of the parties. This is supported by a review of her correspondence and the responses from OAH. Counsel's letter dated April 9, 2008 (attached to counsel's declaration as Exhibit A) asks for "any and all written requests, stipulations, waivers, orders, and/or any other documentation generation by OAH or signed by any OAH ALJ extending the deadline for issuance of a Decision in a special education due process proceeding from July 1, 2005 to the present." This would necessarily mix all documents related to extensions of time into one batch. Consequently, counsel's conclusion that there must be a plethora of cases where the ALJ violated the 45 day timeline is wholly without reason. Counsel's request included not only those cases where counsel claims that ALJs extend the time illegally, but also for cases where the parties agreed and the ALJ extended the time at their request. This distinction is crucial because not all extensions of the 45 day limitation violate the IDEA. The ALJ may extend the time of the hearing beyond the time limitations "at the request of either party." 34 CFR § 300.515(c). Hence, counsel's request was overbroad and likely to produce mostly irrelevant documents that would not only fail to be considered newly discovered, but would be completely immaterial.

Finally, the request was made for documents that existed long before this case was filed. Counsel asked for "any and all" documents produced from July 1, 2005 to the present. Other than perhaps documents drafted in 2008, all of the requested documents were in existence well before counsel made the request. Counsel had three years to make the request for documents but waited until after filing her case to make the request. Under any standard, the documents sought cannot be considered newly discovered evidence. *Phillips v. Crown Central Petroleum Corp.*, *supra* 395 F. Supp. At 759.

### 2.    Plaintiffs Misstated the Contents of CDE's Report to the U.S. DOE

Plaintiffs attempt to add support for their request by claiming that the CDE "misrepresented" to the United States Department of Education's Office of Special Education Programs (OSEP) the actual number of cases decided within "the statutory 45-day timeline." *Plaintiffs' Complaint Par. 15.* At Paragraph 17 of counsel's declaration in support of her request for reconsideration, she asserts – based

upon "personal knowledge of the facts stated herein" (Par. 3) - that CDE reported "100 percent of due process hearing requests were fully adjudicated within the 45-day timeline…"

Nowhere in the relevant section of the report referenced by plaintiffs does CDE say it has achieved 100% compliance. Rather, in a text box titled "Measure and Rigorous <u>Target</u>" (emphasis added) the report says: "One hundred percent of due process hearing requests will be fully adjudicated within the 45-day timeline or a timeline that is properly extended…" (http://www.cde.ca.gov/sp/se/qa/documents/apr0506.doc, p. 102.)  As seen by the language following the text box, the statement means that CDE's <u>target</u> is 100% compliance, which was the goal CDE reported to OSEP. Nowhere did CDE assert that OAH had met that goal as of the date of the report. Furthermore, the report relied upon by plaintiff as "new" was dated 2/1/08, is a public document and was available to plaintiff at all times prior to this Motion for Reconsideration. As such, under *<u>Phillips</u>*, it is not newly discovered evidence.

**II.**

**PLAINTIFFS INCORRECTLY ASSUME THAT ANY VIOLATION OF
THE 45-DAY TIMELINE IS PER SE A VIOLATION OF FAPE**

Plaintiffs allege that OAH and CDE violated IDEA and automatically deny FAPE each time an ALJ's decision is issued more than forty-five days after the due process complaint is filed.  In support, plaintiffs rely on *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d 71 (D.C. Cir. 2003). *Blackman,* which is not binding on this Court, held that the failure to provide an IEP, the failure to hold a due process hearing, or the failure to provide a written determination in a timely manner after requests for an IEP meeting or a hearing have been made constitutes the denial of a FAPE. *Id*. at p. 79 (noting that where there is a denial of a FAPE because no hearing has been held and no determination has been issued, and a proper placement therefore has not been made, there results a per se harm to the student). However, *Blackman* expressly noted that "[w]hile a slight delay in the provision of a hearing after a request has been made or a slight delay in rendering a decision may be an excusable procedural infirmity in some cases, the failure to offer the parents and their children a timely hearing for months after the expiration of the 45-day period ... crosses the line from process to substance." *Id*. (emphasis added).

Plaintiffs also rely on *Massey v. Dist. of Columbia*, 400 F. Supp. 2d 66 (D.C. Cir. 2006), a case involving the same school district defendant as in *Blackman*. In *Massey* the court held that a procedural violation constituted a denial of a FAPE where the district failed to issue a timely placement for a disabled student, failed to respond appropriately to the parents' request for a due process hearing, and failed to timely hold the resolution session. *Massey v. Dist. of Columbia*, *supra*, 400 F. Supp. 2d at 75. The court found that the "litany of the [school district's] failures reveals that it is apparently unable to follow statutory procedures in the first place. Worse yet, [the school district] appears to be incompetent to address, in the manner required by the IDE[I]A, a parent's complaints about those failures." *Id.* at 74.

The instant case is factually distinguishable from *Blackman* and *Massey*. The plaintiffs in those cases were denied hearings, not decisions, within the statutory time frame. Additionally, the school district already had been held liable for systematic procedural failures in a class action suit.

The only allegation in this matter is that OAH ALJs violate the timeline provisions of 34 C.F.R. § 300.511 in issuing decisions. In *E.M. ex rel. E.M. v. Pajaro Valley Unified School Dist.,* 2006 WL 3507926, (N.D. Cal. 2006) the court held that the violation of the forty-five day time line does not constitute a per se injury in fact as against either OAH or CDE. In that case, the court rejected *Blackman* and *Massey*'s holdings, opting instead to require a greater showing of harm than a mere violation of the 45 limitation. CDE asks this Court to follow *E.M.* because it is the most sensible approach.

The IDEA's 45 day limitation is not an absolute deadline. Indeed, the regulation expressly allows a hearing officer to grant specific extensions of time beyond the 45-day time period at the request of either party. 34 C.F.R. § 300.515(c). Since the time period may be extended upon a unilateral request by either party, the forty-five-day limitation should be viewed more in the nature of a guideline than a rigid requirement the violation of which results in automatic reversal. *See*, *Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Dept.,* 899 A.2d 1258, 1267 (R.I. 2006). Some degree of actual harm must be shown. Without that requirement, reversals could result even in cases where the ALJ issued a flawless decision. Ironically, such a rule could result in school districts getting reversals of decisions favorable to parents. As noted by our Supreme Court recently, "Litigating a due process complaint is an expensive affair…" *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 58-59

(2005). Reversing cases simply because a decision is not reached within 45 days can only make the process even more expensive with little, or nothing, in return. Those monies should be spent on educating children rather than litigating marginal issues where the only potential beneficiaries are attorneys.

### III.

**EVEN IF RECONSIDERATION WERE GRANTED, THIS COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFFS' COMPLAINT CONCERNING ALLEGED VIOLATIONS OF THE 45-DAY TIMELINE BECAUSE PLAINTIFFS HAVE FAILED TO STATE A CASE OR CONTROVERSY AS REQUIRED BY ARTICLE III OF THE UNITED STATES CONSTITUTION.**

This Court does not have jurisdiction over plaintiffs' allegations concerning alleged violations of the 45-day timeline, because plaintiffs have failed to state a case or controversy as required by Article III of the United States Constitution. Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts." *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1195 (9th Cir. 2007). Here, the plaintiffs bear the burden of establishing standing's three constitutional requirements. *Lujan v. Defenders of Wildlife, supra*, 504 U.S. at 561. First, they must establish that they suffered an injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, (citations, internal quotation marks, and footnote omitted). Second, they must establish "a causal connection between the injury and the conduct complained of." *Id.* Third, they must establish that it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (citation and internal quotation marks omitted). Plaintiffs have failed to show how they satisfy any of the requirements set forth to establish standing. There is a general claim that the Office of Administrative Hearings fails to meet the 45 day timeline and nothing else, except argument. There is no discussion of how any single individual has been injured, in fact. On the contrary, plaintiffs rely

solely on their assertion that any violation is per se a reason to overturn an administrative hearing officer's decision. As shown above, the "per se" argument by plaintiffs is legally meritless.

## CONCLUSION

Reconsideration of this Court's ruling on the TRO is not warranted because Plaintiff's have not met their burden of showing any newly discovered evidence.

Dated: May 21, 2008                    Respectfully submitted,

                                                MARSHA A. BEDWELL
                                                General Counsel
                                                AMY BISSON HOLLOWAY
                                                Assistant General Counsel

                               By:     __/s/_____

                                                GABRIEL C. VIVAS
                                                Deputy General Counsel

                                                Attorneys for Defendant