Ellen Dowd, Esq.
State Bar Number 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014
(858) 342-8360
Fax (858) 755-6348
ellendowd@sbcglobal.net

**Attorney for Plaintiff, C.S**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION, a State Agency, et al.<br>Defendant. | CASE NO.: 08 CV 0226 W (AJB)<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' CALIFORNIA DEPARTMENT OF EDUCATION AND OFFICE OF ADMINISTRATIVE HEARINGS' OPPOSITIONS RECONSIDERATIO OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER<br><br>Date:  June 2, 2008<br>Judge: Hon. Thomas J. Whelan |

0

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO

## I.
## UPDATED PROCEDURAL HISTORY

On May 12, 2008, this honorable Court issued an Order Setting Briefing Schedule For Plaintiff's Motion For Reconsideration.

On May 23, 2008 Defendant's California Department of Education ("CDE") and California Office Of Administrative Hearings, Special Education Division ("OAH") submitted their respective Oppositions to Motion For Reconsideration. Plaintiff, C.S. hereby respectfully submits its Reply to the Oppositions.

## II.
## BACKGROUND

On February 5, 2008, Plaintiff, as class representative, commenced this action for a Permanent Injunction enjoining California Department of Education ("CDE") from contracting with Office of Administrative Hearings, Special Education Division ("OAH") for the provision of Mediation and Due Process Hearings, pursuant to Individuals With Disabilities Education Act "IDEA", 20 U.S.C. § 1400, et seq. to special education students and their parents throughout the State of California. IDEA, and related regulations (34 C.F.R § 300.00 et seq., were specifically enacted to provide equal protection to appropriate educational programs to disabled students, and provide procedural and substantive mandates which states must follow in order to receive federal funding for special education.

Congress passed the Education of the Handicapped Act ("EHA") provided the foundation for establishing the right of children with disabilities to a free, appropriate public education in the least restrictive environment by interpreting the equal protection guarantee of the 14th Amendment.

The mandate for EHA's successor, IDEA arose after the landmark decision of *Brown v. Board of Education,* 347 U.S. 483 (1954), when Congress learned that a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, "and to assure that the rights of

1    08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO

handicapped children and their parents or guardians are protected 20 U S.C. § 1400(B)(3). In *Brown v. Board of Education*, the need for education equality was considered to be "perhaps the most important function of state and local governments." *Id.* In responding to the problems and disparities in states' educational systems for disabled students, "Congress did not content itself with the passage of a simple funding statute. Rather, the EHA confers upon disabled students an enforceable substantive right to public education in participating States *Honig v. Doe,* 484 U.S. 305, 311, citing, B*oard of Education of Henrick Hudson Central District v. Rowley,* 458 U.S. 176 (1982).the interpretation by Congress in two related District Court decisions, *Pennsylvania Association for Retarded Children (PARC) v. Pennsylvania* (343 F. Supp. 279 (PA 1972), and *Mills v. Board of Education,* 348 F. Supp. 866 (DC 1972). The goals of IDEA were (1) to assure that all children with disabilities receive a free appropriate public education that emphasizes special education and related services designed to meet their unique needs, (2) to protect the rights of children with disabilities and their parents and guardians, and (3) to assist the states in providing for the effective education of all children with disabilities. Federal funds are used to enable the states to comply with the mandate of IDEA.

    While the Equal Protection Clause of the 14th Amendment is usually looking at questions pertaining to "suspect" or "protected" classes of citizens to determine whether a statute affecting such a class of citizens should be given, "strict scrutiny" or "rational basis". However, in enacting the IDEA, and supporting regulations, Congress gave the class composed of "disabled students and their parents" their own protective legislation, the purpose of which, as stated by Justice Brennan in *Honig* "is [to] establish procedural safeguards designed to ensure parental participation in decisions concerning their disabled children and to provide administrative and judicial review of any decisions with which the parents disagree." *Id.* at 305.

2

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO

In holding that Congress, in enacting 20 U.S.C. § 1415(e)(3)'s, automatic "stay put" injunction the Act's drafters did not make any exception in 1415(e)(3) for any emergency exception for dangerous students, the U.S. Supreme Court stated that, we are therefore not at liberty to engraft onto the statute an exception Congress chose not to create." *Honig,* 484 U.S. at 325.

IDEA is to be strictly construed as enacted, and was enacted to ensure the equal educational rights to a class consisting of special education students and their parents.

### III.
### ARGUMENT

**1. The IDEA and Related Regulations Are To Be Enforced As Enacted.**

Under IDEA Part B sections, which, are among the federal funding requirements, as well as 20 U.S.C § 1415(g)(2) OAH must:

> Upon completion of the due process hearing, the Administrative Law Judge shall prepare a written, reasoned decision. The decision shall include reason(s) for any nonpublic school placement or agency services or reimbursement for any nonpublic school placement or agency services. The decision shall be mailed to all parties within 45 days from receipt of the request for a hearing.

Additionally, 34 C.F.R. 300.515(a) mandates: The public agency must ensure that not later then 45 days after the expiration of the 30 day [resolution] period under 34 C.F.R. 300.510(b), or the adjusted time periods described in 34 C.F.R. 300.510(c):

- A final decision is reached in the hearing; and
- A copy of the decision is mailed to each of the parties.

3

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO

California Education Code §56505(f)(3) parallels this mandate in stating, "the written decision shall be mailed 'no later than 45 days after the expiration of the 30-day [resolution] period pursuant to subdivision (c) of Section 56501.5.

Courts generally find that the use of the words "shall' and "must" imposes a mandatory, not a discretionary duty of compliance. *U.S. v. Chavez,* 627 F. 2d 953 (9th Cir. 1980); *U.S. v. Kaluna,* 152 F. 3d 1069 (9th Cir. 1998) and 192 F. 3d 1188 9th Cir. 1999§; *Doggett v. U.S.,* 875 F. 2d 684 (9th Cir. 1999).

The existence of the Stipulation To Extend Time for Decision (Ex. 6 to Declaration of Ellen Dowd in Support in Reply to Opposition for TRO) is a clear violation of the IDEA mandate, and the new evidence, consisting of a response to a public records act request, that there may be "potential production of a huge volume of material" in response to Plaintiff's request for copies of all stipulations like the Stipulation To Extend Time for Decision (Ex. E to Declaration of Ellen Dowd in Support of Motion for Reconsideration of Application for TRO), indicates that the violation of the mandate of the 45-day timeline may be systematic.

### 2. The New Evidence Supports Issuance of the TRO, as This May Forestall the Revocation of Federal Funding For Special Education.

If, as Defendants argue, the 45-day timeline is a mere "goal" to aim for (which, Defendants concede has not ever been met by OAH), why, in response to OSEP's 2/2/07 directive to CDE and OAH that they must comply with the 45-day rule to ensure continued federal funding (Ex. 4, p. 15 to Declaration of Ellen Dowd in Support in Reply to Opposition for TRO), did CDE deliberately on 2/1/08 in its State Annual performance report state to OSEP that "100 percent compliance of due process hearing requests were fully adjudicated within the 45-day timeline or a timeline that was properly extended by the hearing officer at the request of either

4

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO

party." (Ex. 5, p. 4 to Declaration of Ellen Dowd in Support in Reply to Opposition for TRO).

While CDE is arguing with regard to the TRO that the 45-day timeline is merely "guidance," why didn't CDE make this same argument to OSEP, instead of alleging that there was already 100% compliance. OSEP put CDE and OAH on notice on 2/2/07, and CDE, to obtain continued funding told OSEP what it wanted to hear on 2/1/08. While no one knows when or if OSEP pulls all of the federal funding as a result of CDE and OAH's actual non-compliance with the 45-day mandate, it would be tragic to review this in hindsight when the opportunity to enforce a federally-protected educational program statute was applied for to the Court, and denied.

California's special education students and their parents expect and deserve better. Just because these students reside in California and may enjoy state rights, doesn't justify depriving them of their federal rights.

## IV.
## CONCLUSION

Through discovery, Plaintiff will obtain supplemental proof of its claims against Defendants. However, in order to maintain the status quo, and to avoid loss of funding do to OAH's and CDE's actions, which would be extremely harmful to special education students, foregoing, Plaintiff's Application for TRO should be granted, and should be issued immediately.

Dated: May 28, 2008

Respectfully submitted,

Ellen Dowd, Attorney for Plaintiff, C.S.

5

08 CV 0226 W (AJB)
Plaintiff's Memorandum of Points
and Authorities Reply to CDE's and
OAH's Oppositions to Reconsideration
Of TRO