# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.S., by and through his Conservator, MARY STRUBLE, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br> vs.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION, et. al.,<br><br>        Defendants. | CASE NO. 08-CV-0226 W (AJB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 48.)** |

   On April 30, 2008 this Court denied Plaintiff C.S.'s ("Plaintiff") application for temporary restraining order ("TRO") to enjoin a contract between Defendant California Department of Education ("CDE") and Defendant Office of Administrative Hearings ("OAH"). (Doc. No. 47.) Pending before the Court is Plaintiff's motion for reconsideration of the Court's April 30, 2008 Order denying Plaintiff's application for a TRO. (Doc. No. 48.) The Court takes the matter under submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the Court **DENIES** Plaintiff's motion for reconsideration. (Doc. No. 48.)

///
///
///

- 1 -

08cv0226W

## I. BACKGROUND

The Individuals with Disabilities Education Act ("IDEA") and implementing regulations provide procedural and substantive standards for educating students with disabilities. 20 U.S.C. § 1400. As a condition of receiving federal funds, states must establish procedures to ensure that special education students are receiving a free appropriate public education ("FAPE"). 20 U.S.C. § 1415(a). The parents of special education students may challenge the educational placement of their child by requesting an administrative "due process hearing" before an independent and impartial hearing officer. 20 U.S.C. § 1415(f). The hearing officer is required to deliver a copy of his decision to the parties within forty-five days, which can be extended by agreement. 34 C.F.R. § 300.515.

Plaintiff C.S. is an eighteen year-old, conserved student who qualifies for special education under the Autism eligibility category. (*Compl.* ¶ 16.) Plaintiff alleges that he participated as a party in an administrative due process hearing, which was conducted in such a way as to deny him certain federal and constitutional rights. (*Id.* ¶ 10.)[1] Plaintiff C.S. brings this action on behalf of himself and all others similarly situated.

Defendant California Department of Education ("CDE") is a California agency tasked to administer the California education system. (*Id.* ¶ 25.) By receiving federal funds, IDEA mandates that CDE provide disabled students' parents with impartial administrative due process hearings. (*Id.*) Defendant CDE contracts with Defendant Office of Administrative Hearings ("OAH") to conduct these hearings. (*Id.* ¶ 26.) Under the contract, or interagency agreement, OAH must provide Administrative Law Judges ("ALJs") with certain knowledge and training in special education law. (*Id.* ¶ 10.) The contract also requires that CDE oversee the ALJ training and implementation of special education law. (*Compl.* ¶ 10.)

---

[1] The Court finds it important to note that Plaintiff C.S. is currently appealing the result of his administrative due process hearing before Judge Larry Alan Burns in the Southern District of California. See Struble v. Fallbrook Union High School District, No. 07cv2328 LAB (CAB) (S.D.Cal. filed Dec. 13, 2007). As of the date of this order, discovery is ongoing and Judge Burns has not rendered a final decision.

On February 5, 2008 Plaintiff filed suit against Defendant CDE, alleging that CDE failed to adequately supervise OAH's administrative hearing process. (Doc. No. 1.) The gist of Plaintiff's complaint is that CDE's contractual relationship with OAH is unlawful because the ALJs are neither appropriately trained nor following or implementing relevant federal law. (*Id.* ¶ 3.) Plaintiff alleges that C.S., and all others similarly situated, have been denied due process as a result of poor ALJ performance. (*Id.* ¶ 17.)

On February 19, 2008 Plaintiff moved for a temporary restraining order, arguing that CDE should be enjoined from renewing the current interagency contract with OAH that expires on July 1, 2008. (Doc. No. 4.) On March 7, 2008 Ron Diedrich, in his official capacity as Director and Chief Administrative Law Judge of the State of California Office of Administrative Hearings ("OAH"), moved for an order permitting OAH to intervene as a defendant in this action. (Doc. No. 14.) Per OAH's request, the Court established a briefing schedule with the goal of granting or denying the intervenor motion before CDE's TRO opposition was due. (Doc. No. 18.) Among other things, the Court ordered that Plaintiff oppose OAH's motion by March 24, 2008, an amount of time consistent with the time allotted to oppose a noticed motion under the Local Rules. See S.D. Cal. Civ. R. 7.1(e)(1), (2).

On March 24, 2008 Plaintiff opposed OAH's motion to intervene. (Doc. No. 21.) The same day, Plaintiff moved *ex parte* for an Order to Show Cause why Defendant CDE should not be ordered to file an answer to Plaintiff's complaint. (Doc. No. 24.) The Court denied Plaintiff's motion as moot when CDE filed an answer the next day, on March 25, 2008. (Doc. No. 26.) On April 8, 2008 the Court granted OAH's motion to intervene as a Defendant, and OAH was added to the case. (Doc. No. 35.)

On April 9, 2008 Plaintiff's counsel, Ellen Dowd ("Dowd"), contacted OAH and made a Public Records Act request for "any and all written requests, stipulations, waivers, orders, and/or any other documentation generated by OAH or signed by any OAH ALJ extending the deadline for issuance of a Decision in a special education due

process proceeding from July 1, 2005 to the present." (*Ellen Dowd Decl.* Ex. A (emphasis in original).) On April 21, 2008 OAH denied Dowd's request, stating that because the agency had adjudicated approximately 9,000 cases since July 1, 2005, Dowd's request was overly broad and unduly burdensome. (*Ellen Dowd Decl.* Ex. E.) OAH invited Dowd to submit a more tailored request before the agency would begin "an unnecessary search for a 'needle in a haystack' or, conversely, the potential production of a huge volume of material that is unduly burdensome...." (*Id.*) OAH also returned the fifty dollar check that accompanied Dowd's letter, which would have covered five hundred pages of records. (*Pl.'s Mot. for Reconsideration* 2.)

On April 30, 2008 the Court denied Plaintiff's application for TRO (the "Order"). (Doc. No. 47.) On May 9, 2008 Plaintiff moved this Court to reconsider its April 30 Order denying Plaintiff's application for TRO.[2] (Doc. No. 48.) On May 13, 2008, per Plaintiff's request, the Court issued an order shortening the briefing schedule. (Doc. No. 50.) On May 23, 2008 Defendants CDE and OAH opposed Plaintiff's motion for reconsideration. (Doc. Nos. 52, 53.) On May 28, 2008 Plaintiff submitted his Reply brief. (Doc. No. 58.)

## II. LEGAL STANDARD

Motions for reconsideration are disfavored unless a party shows that there is new evidence, a change in controlling law, or establishes that the Court committed clear error in its earlier ruling. School Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); Hon. Thomas J. Whelan Chamber Rules. Reargument should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided. Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3rd Cir. 1995).

---

[2]The Court accepted Plaintiff's motion despite Plaintiff failing to first move for leave to file the motion, a procedural move required by Chamber Rules.

## III. DISCUSSION

As a threshold matter, the Court must express concern over how Plaintiff's grievances have shifted throughout the course of this litigation. Whereas Plaintiff's TRO application primarily concerned undertrained judges and low student success rates, the reconsideration motion argues solely about ALJs rendering decisions beyond 34 C.F.R. section 300.515's forty-five day timeline—an issue Plaintiff barely elucidated in the original motion. This discrepancy clouds the lens with which the Court must reconsider its Order, especially where it is unclear if Plaintiff has been harmed by any alleged forty-five day violation[3] and if enjoining a CDE-OAH contract would actually remedy this alleged IDEA violation.

Plaintiff argues that he has newly discovered evidence which renders the Court's prior Order clearly erroneous in its depiction of the forty-five day rule as a "relatively minor violation." (*Pl.'s Mot. for Reconsideration* 2.) Specifically, Plaintiff contends that because he requested documents from OAH regarding due process proceeding deadlines, and OAH responded that Plaintiff's request was unduly burdensome, this proves some sort of IDEA violation worthy of an extraordinary TRO remedy. (*Id.*)

Defendant CDE argues, in response, that Plaintiff cannot move for reconsideration based on "new evidence" because most of the documents Plaintiff requested have existed (many of them publicly available) for almost three years. (*CDE Opp'n* 4.) Further, CDE argues that Plaintiff misinterprets relevant documents and improperly assumes that every forty-five day violation is a *per se* denial of FAPE. (*Id.* 6.)

Defendant OAH argues, in response, that the data Plaintiff requested from OAH already existed in public records and was incorporated into the declaration of Sherianne Laba, filed with OAH's opposition on April 14, 2008. (*OAH Opp'n* 4.) OAH further contends that Plaintiff misinterprets OAH's response to Dowd's Public Records Act

---

[3]The Court also reminds Plaintiff that her separate due process appeal, Struble v. Fallbrook Union High School District, No. 07cv2328 LAB (CAB) (S.D. Cal. filed Dec. 13, 2007), would likely be the proper proceeding to raise this issue. Plaintiff's counsel is also reminded that neither of these actions should be used as vehicles to seek broad remedies for which her client does not have standing.

request, essentially manufacturing a claim that "new evidence" might exist. (*OAH Opp'n.* 4–6.)

A motion for reconsideration cannot be based on evidence that could reasonably have been discovered prior to the court's ruling. Hopkins v. Andaya, 958 F.2d 881, 887 n.5 (9th Cir. 1992). A party's failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.' School Dist. No. 1J, 5 F.3d at 1263.

Plaintiff rhetorically insinuates that because OAH's letter stated "…the potential production of a huge volume of material…", this must mean that OAH has over five hundred pages of documents regarding unlawful forty-five day deadline extensions. Characterizing OAH's reply to Dowd's document request, however, as "new evidence" is extremely speculative at best, and disingenuous at worst. Taken in context, OAH simply told Dowd that her vague request could refer to many documents; not just documents regarding due process hearings, not just correspondence regarding forty-five day deadlines, and not just situations where ALJs did not legally extend the decision deadline per 34 C.F.R. section 300.515(c) (allowing ALJ to extend deadline "at the request of either party"). In no way does OAH's letter to Dowd prove the existence of a great number of unlawful, non-consensual forty-five day deadline violations. Likewise, Plaintiff selectively interprets documents between CDE and the United States Department of Education, and provides no real evidence of the extent to which CDE or OAH are in violation of the forty-five day decision requrement.[4]

Additionally, most of the documents that Dowd purportedly asked for were available long before her April 9, 2008 Public Records Act request. Because the "evidence" was in existence at the time Plaintiff filed his TRO, and could have been discovered by the exercise of due diligence of Plaintiff's counsel, the documents (or,

---

[4]For instance, the Declaration of Ellen Dowd, paragraph 18 suggests that Exhibit B to the Declaration is evidence of an improper extension by an ALJ of the forty-five day deadline. Exhibit B is a stipulation, **signed by Dowd herself**, agreeing to waive the forty-five day time limit. Rather than an ALJ improperly extending the deadline, Dowd's exhibit appears lawful per 34 C.F.R. section 300.515.

more accurately, OAH's *reply* to Dowd's *request* for documents) cannot form the basis of a motion for reconsideration. See also Phillips v. Crown Central Petroleum Corp., 395 F. Supp. 735, 759 (D. Md. 1975). Rather, the appearance is that Plaintiff is trying to supplement tangential arguments raised in his original application and Reply, and grasping at language in the Court's April 30, 2008 Order. (See *Order Denying TRO* 6 n.3.)

Besides Plaintiff's inability to produce any "new evidence," additional problems remain regarding his likelihood of success on the merits. Although Plaintiff argues that failing to meet statutory deadlines constitutes a *per se* denial of FAPE, courts differ on how strictly the forty-five day deadline must be enforced. Compare Blackman v. Dist. of Columbia, 277 F. Supp. 2d 71 (D.C. Cir. 2003) (holding that a gross failure to provide timely due process hearings and determinations is a denial of FAPE), with Doe v. E. Greenwich Sch. Dist., 899 A.2d 1258, 1268 n.9 (R.I. 2006) (characterizing forty-five day limitation as a "guideline" rather than "rigid requirement" and criticizing Blackman for ignoring party request exception); E.M. ex. rel. E.M. v. Pajaro Valley Unified School Dist., 2006 WL 3507926 (N.D. Cal. Dec. 5, 2006) (distinguishing Blackman and concluding that forty-five day deadline violation does not constitute a *per se* injury against either OAH or CDE).

Finally, disharmony exists between Plaintiff's new arguments and relief requested. Initially, Plaintiff's TRO application asked the Court to enjoin a contract or contract negotiations between OAH and CDE, nothing more. Defendants, in response, argued that enjoining the contract risked losing federal funding. Now Plaintiff argues that, because the alleged deadline violations put CDE/OAH at risk of losing federal funding, the OAH-CDE contract must be enjoined. Nowhere does Plaintiff's argument reconcile or counter the catch-22: Plaintiff gets relief because of deadline violations that risked losing federal funding, and then federal funding is pulled because the contract was

enjoined.[5] Nor does Plaintiff ever explain precisely how enjoining any new OAH-CDE contract will ensure that all due process decisions are rendered within forty-five days. For the same reasons in the Court's April 30, 2008 Order Denying Plaintiff's Application For TRO, incorporated herein by reference, the Court **DENIES** Plaintiff's motion for reconsideration.

IV. <u>CONCLUSION</u>

For the above reasons, the Court **DENIES** Plaintiff's motion for reconsideration.

**IT IS SO ORDERED.**

DATED:  June 9, 2008

_____
Hon. Thomas J. Whelan
United States District Judge

---

[5]The Court also notes that Dowd changes the character of the requested TRO in paragraph 19 of her declaration: "the [TRO] seeks to avoid such penalties by requiring CDE to contract with an agency that will abide by the law." Plaintiff's original TRO merely requested that CDE and OAH not contract with each other.